JONATHAN K. LEVINE (SBN: 220289)
ELIZABETH C. PRITZKER (SBN: 146267)
BETHANY CARACUZZO (SBN: 190687)
**PRITZKER LEVINE LLP**
180 Grand Avenue, Suite 1390
Oakland, CA 94612
Telephone:  (415) 692-0772
Facsimile:   (415) 366-6110
Email: jkl@pritzkerlevine.com
          ecp@pritzkerlevine.com
          bc@pritzkerlevine.com

Attorneys for Interested Party ALLAN YOUNG

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No: 3:17-cv-00223-RS |
| Plaintiff, | |
| vs. | **INTERESTED PARTY ALLAN YOUNG'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND FOR APPOINTMENT OF RECEIVER** |
| SAN FRANCISCO REGIONAL CENTER, LLC; THOMAS M. HENDERSON; CALIFORNIA GOLD MEDAL, L.P.; CALLSOCKET, L.P.; CALLSOCKET II, L.P.; CALLSOCKET III, L.P; COMPREHENSIVE CARE OF OAKLAND, L.P.; NA3PL, L.P.; WEST OAKLAND PLAZA, L.P; CALLSOCKET III, LLC; COMPREHENSIVE CARE OF CALIFORNIA, LLC; IMMEDIA, LLC; NORTH AMERICA 3PL, LLC; | |
| | Date: March 2, 2017 |
| | Time: 1:30 p.m. |
| | Dept.: Courtroom 3, 17th Floor |
| | Judge: Hon. Richard Seeborg |
| Defendants, | |
| -and- | |
| CALLSOCKET HOLDING COMPANY, LLC; CALLSOCKET III HOLDING COMPANY, LLC; CENTRAL CALIFORNIA FARMS, LLC; BERKELEY HEALTHCARE DYNAMICS, LLC; JL GATEWAY, LLC., | |
| Relief Defendants. | |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. RELEVANT BACKGROUND .......................................................................................... 3

    A. The *Young v. Henderson* Action............................................................................... 3

    B. The *SEC v. San Francisco Regional Center* Action.................................................. 6

III. LEGAL ARGUMENT......................................................................................................... 7

    A. The SEC Is Not Entitled To An Injunction With Respect To The Entities Already Under The Control Of The Receiver In The *Young* Action ...................................... 7

        1. Legal Standard Applicable to SEC's Preliminary Injunction Motion ................ 7

        2. The SEC Cannot Make the Required Showing for a Broad Injunction.............. 9

    B. The SEC Is Not Entitled To The Appointment Of A Receiver Over The Entities Already Under The Control Of The Receiver In The *Young* Action....................... 11

    C. There Is No Basis For This Court To Order The Transfer Of The Assets Of The Receivership Estate In The *Young* Action To This Court ...................................... 13

    D. There Is No Basis For This Court To Stay The Earlier-Filed *Young* Action ......... 14

IV. CONCLUSION.................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281(1970)...14, 15

*Granny Goose Foods, Inc. v. Bhd. of Teamsters,* 415 U.S. 423 (1974) ....................................7, 8

*League of Wilderness Defenders v. Connaughton*, 752 F.3d 755 (9th Cir. 2014) .................. 8, 10

*Munaf v. Geren,* 553 U.S. 674 (2008) ......................................................................................... 7

*SEC v. Cavanagh*, 155 F.3d 129 (2d Cir. 1998) ..........................................................................8

*SEC v. Eadgear, Inc.*, No. 3:14–CV–04294–RS, 2014 WL 6900938 (N.D.Cal. Dec. 8, 2014)..............................................................................................................................................8

*SEC v. Homestead Props., L.P.,* No. SACV09–01331CJCMLGX, 2009 WL 5173685 (C.D. Cal. Dec. 18, 2009) ....................................................................................................... Ftnt. 8

*SEC v. Schooler*, 902 F.Supp.2d 1341 (S.D. Cal. 2012) ..............................................................8

*SEC v. Trabulse*, 526 F.Supp.2d 1008 (N.D.Cal. 2007)........................................................ 8, Ftnt. 8

*SEC v. Wencke,* 577 F.2d 619, 622 (1978) (*Wencke I*)..............................................................12

*SEC v. Wencke*, 622 F.2d 1363 (1980) ("*Wencke II*")...........................................................7, 11, 12

*SEC v. Unique Fin. Concepts, Inc*. 196 F.3d 1195 (11th Cir.1999)..............................................8

*Wesch v. Folsom*, 6 F.3d 1465 (11th Cir. 1993)..........................................................................14

*Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008).................................................7, 8


**STATUTES**

15 U.S.C. §§ 77t(b) (Securities Act) ............................................................................................7

15 U.S.C. §§ 78u(d) and (c) (Exchange Act.) ..............................................................................7

Interested party Allan Young respectfully submits this opposition to the motion by plaintiff Securities and Exchange Commission (SEC) for a preliminary injunction and for the appointment of a receiver.  Mr. Young is the named plaintiff in an individual and derivative action entitled *Young v. Henderson* that has been actively litigated in the Alameda County Superior Court since July 2015 and which, to date, has already recovered more than $29 million of misappropriated investor funds.  Mr. Young, in his individual capacity and derivatively on behalf of the nominal defendants in the *Young* action, opposes the SEC's motion for the reasons set forth below

## I. INTRODUCTION

In January 2017, more than two years after the SEC received a whistleblower complaint about defendant Thomas Henderson and his management of certain call center businesses funded by foreign limited partner investors under the federally-administered Employment-Based Immigration Fifth Preference, or EB-5, program, the SEC filed a civil complaint action against Henderson and others, in this Court.  The SEC's complaint alleges securities fraud claims under the Securities Act of 1933 and the Securities Exchange Act of 1934.  Dkt. No. 1.

The SEC's complaint was followed by this motion for a preliminary injunction and for the appointment of a receiver.  The sweeping nature of the SEC's requested relief is unprecedented. Among other things, the SEC seeks as part of its motion an injunction that covers entities and business that are nominal defendants in derivative litigation filed in the Alameda Superior Court by Mr. Young nearly 20 months ago, in July 2015.  The SEC also seeks to displace the court-appointed receivership that has, to date, already successfully restored $29 million in misappropriated investor funds to the limited partnerships from which they were diverted.  And, as if that were not enough, the SEC also asks that the Court transfer the funds and assets out of the Superior Court receivership to this Court, and stall the progress the Superior Court receiver has made by shutting that receivership down and staying the *Young v. Henderson* matter altogether.

There is no legal or factual basis for the extraordinary relief the SEC seeks.  Legally, the SEC has failed to meet its burden to show, through "substantial" or "clear" evidence, that it is entitled to the form of injunction it seeks.  The SEC's motion fails because it ignores that fact that

an existing Superior Court receivership already has marshalled and is presently preserving the assets of at least six affiliated entities described generally herein as the CallSocket Entities. There is no need to enjoin any "future" securities law violations by these Entities because they already are being managed and protected by the Superior Court under a court-authorized receivership.

There also is no legal authority for the SEC's request that the Court simply divest the Superior Court receivership of the millions it has collected for investors through Mr. Young's actions in the *Young v. Henderson* litigation, and to turn that money over to a newly-proposed federal receiver in the SEC action. Those funds, too, are already being protected by the Superior Court receiver.

Finally, there is no basis for the SEC's request to stay the *Young v. Henderson* litigation altogether. The *Young* litigation involves different parties and different claims: none of these claims overlap with the SEC's securities fraud claims here. And, the *Young* litigation is substantially advanced. Mr. Young has been diligently litigating in the action for almost 20 months, succeeding on multiple appeals and in proceedings filed in the U.S. Bankruptcy Court. A well-qualified and experienced receiver has been in place for more than 10 months, since March 2016. Discovery is well underway. The Superior Court is actively managing the case and its oversight of the receiver, holding case management conferences monthly, on average. Trial is scheduled to commence on September 11, 2017. And, in contrast to the newly-filed SEC action, which is in its infancy, as a result of Mr. Young's efforts to date, more than $29 million has been returned to the CallSocket I, II and II limited partnerships. Enjoining the *Young* action will do nothing to aid this Court's jurisdiction or ability to adjudicate this SEC's enforcement action. It will, however, severely prejudice the parties and progress of the *Young* litigation.

The SEC's motion for a preliminary injunction and for appointment of a receiver should be denied, in the form requested. To avoid any potential conflicts going forward, Mr. Young is committed to working cooperatively and in a coordinated manner with the SEC and the Superior Court-appointed receiver. Cooperation and coordination is far preferable, and far less prejudicial, to the relief the SEC requests, which is unwarranted under the circumstances.

## II. RELEVANT BACKGROUND

### A. The *Young v. Henderson* Action

*Young v. Henderson* is a direct and derivative action filed in Alameda County Superior Court in July 2015 by Mr. Young, who asserts claims on his own behalf and derivatively on behalf of six California limited liability companies and limited partnerships (the "CallSocket Entities") that Mr. Young has an ownership and financial interest in.[1] Mr. Young asserts claims for breaches of fiduciary duty, conversion, breaches of contract, breaches of the implied covenant of good faith and fair dealing, declaratory relief, violations of Cal. Corp. Code §§ 17701, and for an accounting. The defendants in *Young* are three individuals (Thomas Henderson and his two sons) and 17 entities that were owned, managed and controlled by the Hendersons at the time the action was filed.[2] All defendants in *Young* have answered the operative complaint, the case is at issue and discovery is well underway. Levine Decl., ¶¶ 2-3.

The primary business purpose of the CallSocket Entities was to have been the ownership, development, management and operation of call centers authorized by the federal government to facilitate investments and job creation in Oakland under the federal EB-5 visa program. But it now appears that almost all of the $55 million raised from foreign limited partner investors has been misappropriated by certain defendants and used for purposes other than operating call centers to create sustainable jobs in the Oakland area.

Mr. Young alleges in his complaint that he has been frozen out of the business and operations of the CallSocket Entities because defendants have been engaging in a continuing course of self-dealing using the assets and funds of the CallSocket Entities for their personal use and benefit, unrelated to any legitimate company purpose and to the detriment of plaintiff and the CallSocket Entities.

---

[1] The CallSocket Entities are named as nominal defendants in *Young* and include three California limited liability companies (CallSocket, LLC, CallSocket II, LLC, and CallSocket III, LLC) and three California limited partnerships (CallSocket, L.P., CallSocket II, L.P., and CallSocket III, L.P.). Each CallSocket LLC is the general manager of its respective CallSocket LP.

[2] A copy of the operative Verified Second Amended Derivative and Direct Complaint in *Young* is attached as Exhibit A to the Declaration of Jonathan K. Levine, submitted herewith.

In March 2016, after learning that the Hendersons had sold a building purchased with limited partner funds and appeared to be trying to sell three other buildings that also were purchased with limited partner funds, Mr. Young moved for the appointment of a receiver (Susan L. Uecker) to protect the assets and operations of the CallSocket Entities while the *Young* litigation was ongoing. Mr. Young's motion was granted on March 24, 2016, and Ms. Uecker has been serving as the receiver in the *Young* action since then, with responsibility for managing the operations and finances of the CallSocket Entities and the buildings purchased or operated with CallSocket limited partner funds.[3] Levine Decl., ¶¶ 5-6 and Exs. B-C.

What came to light after the appointment of the receiver was shocking. Virtually all of the $55 million raised from the foreign limited partners was gone, taken by the Hendersons (through their various entities) and used to purchase commercial real estate in downtown Oakland, pay personal and living expenses for the Hendersons, finance other businesses owned and controlled by the Hendersons, pay for employees working in their other business, and to provide free rent to the Hendersons, their attorney and a host of Henderson-owned and controlled businesses. Millions of dollars of limited partner funds were commingled among different entities and limited partner funds from one partnership were used to purchase property held in the name of another partnership. Levine Decl., ¶ 7.

Since the receiver's appointment in March 2016, Mr. Young and his counsel have been working diligently with the receiver and the Court to restore as much of the $55 million in investor funds as possible. Operations at the CallSocket I call center were wound down when it was disclosed that the call center was losing millions of dollars a year, had never been profitable, and had no money to continue operations. Levine Decl., ¶ 9. Runway, a technology incubator in San Francisco that is part of CallSocket I's business, is now being marketed for sale by the receiver and any proceeds from the sale of Runway's assets will also be returned to the CallSocket Entities. *Id.*, ¶ 13. Operations at the CallSocket II call center are continuing at this time under the oversight of

---

[3] Ms. Uecker's appointment as receiver was opposed by defendants in the *Young* action. Her receivership has been renewed twice by the Superior Court, in July and November 2016. Levine Decl., ¶ 6 and Exs. D-E. Defendants opposed the motions to renew as well.

the receiver and the Superior Court. *Id.*, ¶ 10. Four of the five buildings purchased and operated with CallSocket limited partner funds have now been sold, generating more than $29 million that has been returned to the CallSocket Entities. *Id.*, ¶ 11. The fifth building has not yet been sold, but remains under the control of the receiver.[4] *Id.*, ¶ 12.

Mr. Young and his counsel have been vigorously opposed at every step and in every conceivable way by defendants in the *Young* action, and the litigation has been contentious and hard-fought. Notwithstanding defendants' vigorous opposition in numerous courts, Mr. Young has prevailed at every step and in every forum. Defendants unsuccessfully appealed Superior Court orders directing the receiver to sell assets and recoup and preserve investor funds, twice to the California Court of Appeal, and once to the California Supreme Court. Levine Decl., ¶ 16. They tried unsuccessfully to remove the case to federal court. *Id.*, ¶ 15. They unsuccessfully initiated two separate proceedings in the United State Bankruptcy Court, both of which were promptly dismissed by Chief Judge Roger L. Efremsky.[5] *Id.*, ¶¶ 19-21. And before Alameda County Superior Court Judge Brad Seligman (Complex Department), defendants have lost motions to quiet title, to attack Mr. Young's derivative standing, and to challenge the scope of the receiver's authority to act for the benefit of the receivership estate. *Id.*, ¶¶ 17-18.

The Superior Court has actively managed the litigation, with regular case management conferences and direct oversight of any discovery disputes. Levine Decl., ¶ 22. Discovery has been underway for more than a year and the parties have already exchanged hundreds of thousands of

---

[4] The four buildings that have sold are located at 409 13th Street, 1740 Broadway, 519 17th Street, and 2015 Broadway in Oakland. The fifth building that has not yet been sold is located at 1700 20th Street in Oakland. Levine Decl., ¶¶ 11-12.

[5] While the applicable standards differ in bankruptcy court, the reasons why Judge Efremsky summarily dismissed the two bankruptcy filings in favor of letting the action proceed in the Superior Court are certainly relevant here. Judge Efremsky found that the interests of the parties were being well-protected already in the *Young* action, that the *Young* action was being handled by "an experienced Superior Court Judge, well versed in conflicts and litigation matters," that a receiver had been appointed seven months ago and "pursuant to careful court oversight" was already restoring assets to the estate, and that it would be costly and time-consuming and increase litigation costs and expenses to start a new judicial proceeding when the Young action was well underway and a receiver already had been in place for seven months. Levine Decl., ¶ 20 and Ex. M.

pages of documents. *Id.*, ¶ 23. Trial is scheduled to commence in seven months (September 2017). *Id.*, ¶ 24.

### B. The *SEC v. San Francisco Regional Center* Action

The *SEC* action was commenced in this Court in January 2017, more than two years after the SEC first received a whistleblower complaint about Thomas Henderson and his management and operation of the CallSocket entities, eighteen months after the *Young* action was filed, and ten months after the receiver was appointed in the *Young* action.   Levine Decl., ¶ 26.

There are substantial and material differences between the two actions.  The *SEC* complaint asserts securities fraud claims exclusively under the Securities Act of 1933, 15 U.S.C. § 77, and the Securities Exchange Act of 1934, 15 U.S.C. § 78.  Dkt. No. 1.  The *Young* complaint, in contrast, asserts claims exclusively under California law for breaches of fiduciary duty, conversion, breaches of contract, breaches of the implied covenant of good faith and fair dealing, declaratory relief, violations of Cal. Corp. Code §§ 17701, and for an accounting.  Levine Decl., Ex. A.

The parties in each action are also materially different.  The plaintiffs are different in each action.  The CallSocket Entities are nominal defendants in the *Young* action on whose behalf claims are being litigated by Mr. Young on a derivative basis.  In the *SEC* action, the CallSocket Entities are named defendants accused of committing federal securities fraud.[6]  In addition, there are 12 defendants in the *Young* action that are not parties in the *SEC* action, and six defendants in the *SEC* action that are not parties in the *Young* action.[7]

There are substantial differences in the procedural posture of the two actions as well.  The *Young* action is well-advanced.  The complaint has been answered by all parties and the case is at issue.  A receiver has been in place for months, discovery has been underway for more than a year

---

[6] The *SEC* complaint does not accuse Mr. Young of any wrongdoing.

[7] The defendants in the *Young* action that are not parties in the *SEC* action are: Michael and Matthew Henderson; Berkeley Healthcare Dynamics, L.P.; CallTeks Security, LLC; City Brand Media, LLC; Magnin Events, LLC; Tesh, LLC; This is There Restaurant Group, LLC; Hydrant Media, LLC; HF Telco, LLC; Metro Wifi Rail, L.P.; and GeoDomain Development Ventures, LLC. The defendants in the *SEC* action that are not parties in the *Young* action are: West Oakland Plaza, L.P.; Comprehensive Care of Oakland, LLC; CallSocket Holding Company, LLC; CallSocket III Holding Company, LLC; Berkeley Healthcare Dynamics, LLC; and Central California Farms, LLC.

and there is a firm trial date in seven months.  Most notably, as a result of Mr. Young's and the receiver's efforts in the *Young* action, $29 million of limited partner funds already have been recovered, an entity (Runway) is for sale that will return more investor funds, and one building remains under the control of the receiver that, if sold, will return millions more to the receivership estate.  Levine Decl., ¶ 31.

In contrast, the SEC action is in its infancy.  The time to respond to the complaint has not yet even run, initial disclosures have not been made, discovery has not commenced, the Rule 26(f) conference has not occurred and no Rule 26(f) report has been filed, and the initial case management conference is still more than two months away.  *See* Dkt. No. 27.  On this record, it is not surprising that the SEC has, to date, recovered no investor funds.  Levine Decl., ¶ 32.

### III. LEGAL ARGUMENT

#### A. The SEC Is Not Entitled To An Injunction With Respect To The Entities Already Under The Control Of The Receiver In The *Young* Action

Mr. Young does not contest the general authority afforded the SEC under Section 20(b) of the Securities Act of 1993 and Section 21(d)(1) of the Exchange Act of 1934 to seek injunctive relief in a federal court "whenever it appears to the Commission that any person is engaged in or is about to engage in acts or practices" which violate the securities laws.  *See* 15 U.S.C. §§ 77t(b) (Securities Act); 15 U.S.C. §§ 78u(d) and (c) (Exchange Act.); *SEC v. Wencke*, 622 F.2d 1363, 1368-69 (1980) ("*Wencke II*"). The present motion, however, ignores the fundamental bases for securing such an injunction and, in doing so, undermines the legal footing on which the SEC relies.

##### 1. Legal Standard Applicable to SEC's Preliminary Injunction Motion

A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren,* 553 U.S. 674, 676 (2008) (internal quotations marks omitted). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex v. Camenisch,* 451 U.S. 390, 395 (1981). "[T]he party seeking the injunction ... bear[s] the burden of demonstrating the various factors justifying preliminary injunctive relief...." *Granny Goose Foods, Inc. v. Bhd. of Teamsters,* 415 U.S. 423, 441 (1974).  A district court may issue a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief." *Winter*

*v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008); *and see SEC v. Trabulse*, 526 F.Supp.2d 1008 (N.D.Cal. 2007) (SEC's burden requires a "substantial showing" that a preliminary injunction enjoining violations of the securities is appropriate); *SEC v. Cavanagh*, 155 F.3d 129, 132 (2d Cir. 1998) (SEC held to "substantial showing" standard).

The SEC, as "the party seeking the injunction ... bear[s] the burden of demonstrating the various factors justifying preliminary injunctive relief...." *Granny Goose Foods,* 415 U.S. at 441. Here, the SEC posits that a preliminary injunction may issue if the SEC has "substantial" or "clear" evidence establishing (1) a *prima facie* case that Defendants have violated the securities laws, and (2) a reasonable likelihood that Defendants will repeat their violations. *See* Mot. (ECF 10) at 221, *citing SEC v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 n.2 (11th Cir.1999).

While this two-part standard has been applied in SEC enforcement actions by some federal courts,[8] the Ninth Circuit "has not expressly adopted" it. *See SEC v. Eadgear, Inc.*, No. 3:14–CV–04294–RS, 2014 WL 6900938, at *1 (N.D.Cal. Dec. 8, 2014) (citing *SEC v. Schooler*, 902 F.Supp.2d 1341, 1344-45 n. 2 (S.D. Cal. 2012) [there is 'not clear authority on the standard to be applied" to motions for preliminary injunctions brought by the SEC in the Ninth Circuit].) A district court may, therefore, choose to employ the stricter standard generally governing the issuance of preliminary injunctions in civil actions, and require the SEC to meet its burden here with "substantial" or "clear" evidence establishing (1) a likelihood of success on the merits; (2) the likelihood of irreparable injury in the absence of preliminary relief; (3) that the balance of equities tips in favor of issuing the requested injunction; and (4) that an injunction is in the public interest. *League of Wilderness Defenders v. Connaughton*, 752 F.3d 755, 759 (9th Cir. 2014), quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *and see SEC v. Eadgear*, 2014 WL 6900938, at *1 (analyzing SEC's preliminary injunction motion under traditional stricter standard).

Mr. Young submits that the relief requested by the SEC is far too sweeping, and fails to satisfy the requirements for a preliminary injunction under either legal standard.

---

[8] *See. e.g., SEC v. Homestead Props., L.P.,* No. SACV09–01331CJCMLGX, 2009 WL 5173685, at *2 (C.D. Cal. Dec. 18, 2009) (using proposed two-part standard in determining whether to issue preliminary injunction requested by SEC); *SEC v. Trabulse,* 526 F.Supp.2d at 1012 (same)

### 2. The SEC Cannot Make the Required Showing for a Broad Injunction

The SEC contends that defendant Thomas Henderson, in his role as managing member of SFRC, made numerous material misrepresentations and omissions of fact in connection with the purchase or sale of limited partner investor shares in each of several EB-5 limited partnerships. These misrepresentations and omissions, according to the SEC, extend to limited partnership agreements, private placement memoranda, and business plans provided by Henderson and SFRC to foreign limited partner investors in, among others, Comprehensive Care of Oakland, LLC; CallSockets I, II and III; NA3PL, L.P.; West Oakland Plaza, L.P.; and California Gold Medal, LP. *See* Mot. (ECF 10) at pp. 4-8, 21-24. The SEC alleges these representations and omissions by Henderson and SFRC were fraudulent and deceptive, in that Henderson represented that funds solicited from foreign investors for these EB-5 projects would be collected and used for each project, as a distinct business, but instead were commingled among the EB-5 projects as well as other Henderson-related business, used to pay illegal finders' fees, and misspent or misappropriated by Henderson for his own personal benefit (including the purchase of a personal residence). *See id*, at pp. 4-8, 16-20, and 21-25.

Mr. Young does not take issue with the SEC's allegations regarding the wrongful actions of Mr. Henderson and SFRC regarding the investor funds at issue. Indeed, for nearly 20 months, Mr. Young has made a similar evidentiary showing in the *Young v. Henderson* action. These efforts caused a receiver (Susan Uecker) to be appointed by the Alameda County Superior Court in March 2016. Levine Decl., ¶¶ 5-6.[9] Since her receivership appointment, Ms. Uecker has had the responsibility for managing the operations and finances of the CallSocket Entities and for overseeing certain commercial real estate purchased or operated with CallSocket limited partner funds. *Id*, ¶ 6. Mr. Young and his counsel have been working diligently with Ms. Uecker in the Superior Court action to restore as much of the $55 million in CallSocket investor funds as possible. *Id*, ¶ 8. As a result of these efforts, wasteful money losing CallSocket I call center operations were wound down, and four of the five buildings purchased and operated with CallSocket limited partner

---

[9] The SEC proposes Ms. Uecker for selection as a co-receiver in this action. Mot. (ECF 10) at p.32.

funds were sold, generating over $29 million for return to the CallSocket Entities. *Id,* ¶¶ 9, 11. These funds are being held and preserved in a court-supervised escrow account during the pendency of the Superior Court action.

Accordingly, Mr. Young agrees there is substantial evidence to enable the SEC meet the first prong of its proposed two-part preliminary injunction standard, i.e., that defendant Henderson, through his actions as manager of SFRC, has engaged in actions that violate the federal securities laws. *See* Mot. (ECF) at p. 21. Where the motion falters, however, is in the SEC's failure to come forward with "clear" or "substantial" evidence to demonstrate the second part of the two-part test: a reasonable likelihood that "[d]efendants securities law violations," at least with respect to the CallSocket Entities "will likely be repeated in the absence of a preliminary injunction" in the form requested by the SEC. *Id*, at p. 26.

The SEC can never make this required showing with respect to the CallSocket Entities. While Mr. Henderson and SFRC may have created or utilized these Entities to commit or further the commission of *prior* securities law violations, they cannot do so now. This is because each of the CallSocket Entities is now under the control of Ms. Uecker, the Superior Court-appointed receiver. Levine Decl., ¶¶ 5-13. Ms. Uecker's actions in managing and operating these Entities as part of her receivership appointment are subject to continuing oversight and supervision of the Alameda County Superior Court. *See id*. Given this posture, the SEC can never make out its burden to show that the CallSocket Entities – all of which are defendants in the SEC action – are reasonably likely to continue violating the federal securities laws in the absence of a preliminary injunction. The SEC's motion fails, therefore, even under the less stringent, two-part standard required for a preliminary injunction that the SEC proposes in its motion.

For similar reasons, the SEC also cannot meet the more stringent standard for preliminary injunctive relief. *See Connaughton*, 752 F.3d at 759. With operation of the CallSocket Entities already under the control and supervision of the Superior Court receiver, there is no likelihood of irreparable injury – to the SEC or to CallSocket limited partner investors – in the absence of preliminary relief. Similarly, as SFRC's and Henderson's role in managing and operating the CallSocket Entities has been displaced by the existence of the court-appointed receiver and the

oversight of the Superior Court, no inequity will result if the SEC's requested injunction is denied, at least as to these Entities. And, as CallSocket I, II and III limited partner investment funds are protected under the receivership order previously entered in the Superior Court action, the requested injunction is unnecessary to further the interests of the CallSocket investors, or the public generally.

The SEC has not met its burden. The requested injunction is not legally justified and is far too broad in its reach. The Court should deny the SEC's preliminary injunction motion as it applies to the entities already under the control of the Superior Court receiver.

### B. The SEC Is Not Entitled To The Appointment Of A Receiver Over The Entities Already Under The Control Of The Receiver In The *Young* Action

For similar reasons, the SEC also has not met its legal burden to show that a receiver is "needed ***over all the defendants***," including the CallSocket Entities, so that "remaining investors' assets, including business, real estate and cash, can be marshalled and preserved against further isappropriation and dissipation" by defendants Henderson and SFRC. *See* Mot. (ECF 10), at p.27 (bold italics supplied).

The SEC cites *Wencke II* for the simple proposition that a district court "may appoint a receiver in a securities fraud action brought by" the SEC. *See* Mot. (ECF 10) at p.27; *Wencke II*, 622 F.3d at 1365. While again, Mr. Young does not contest the Court's discretionary authority to appoint a receiver where circumstances warrant it, the SEC has not met its burden to show why the receivership order it seeks is necessary, or even appropriate, in this instance.

First, the sweeping nature of the SEC's proposed receivership is unprecedented. It proposes that the Court displace the existing, 10-month-long Superior Court receivership, along with a valid Superior Court order establishing that receivership, with a new order appointing an entirely new receiver. *See* Mot. (ECF 10) at pp. 27-32. The SEC further proposes that this new receiver take "exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated," not only of defendant SFRC, but of each of eighteen other named defendants and so-called relief defendants. *See* SEC's [Proposed] Order Appointing Receiver (ECF 10-2) at pp.1-2. Among others, the SEC's proposed receiver would take "exclusive jurisdiction and possession of assets" of

Case 3:17-cv-00223-RS   Document 50   Filed 02/09/17   Page 15 of 20

1. all of the CallSocket Entities currently under the jurisdiction and control the Superior Court receivership in the *Young v. Henderson* case. *See id*.

2. Second, the SEC has no authority for the kind of upset in judicial order and comity it now proposes. Nothing in *Wencke II* supports such a wholesale interference with ongoing judicial proceedings. In *SEC v. Wencke,* 577 F.2d 619, 622 (1978) (*Wencke I*), the District Court for the Southern District of California brought an existing state court receivership within a newly-created federal receivership. There, however, the state court receivership was merely a devise designed to aid the wrong-doer, Wencke, who had succeeded in appointing himself as receiver over entities that he was later accused of by the SEC and others as mismanaging and looting. *Id*, at 621. Thus, in *Wencke I*, it was necessary to bring the state court receivership into the newly-created federal receivership to stem the wrongdoing, and afford the newly-appointed federal receiver the complete control over Wencke's entities that was needed for the federal receivership to achieve its purposes. *Id*, at 622; *and see Wencke II*, 622 F.2d at 1367 ("To enable the receiver to take complete control over Wencke's entities, the district court… brought Sun Fruit within the federal receivership.").

3. No such similar fact pattern exists in this case. Here, unlike *Wencke*, the Superior Court receivership is not a creation of defendant Henderson or SFRC as an aid to aid to the defendants in facilitating their wrongdoing: rather, it was imposed, over these defendants' strident and repeated objection, precisely in order to ensure that there was a neutral receiver in place (Ms. Uecker) to preserve and protect the properties and assets of the CallSocket Entities during the pending of the *Young v. Henderson* litigation. Levine Decl., ¶¶ 5-7, 14-22. *Wencke* therefore does not apply.

4. Third, unlike *Wencke*, the SEC's motion fails to demonstrate that the receivership order it seeks is "needed over all defendants" as it claims, or to maintain the status quo. To obtain the relief it seeks, the SEC must show that, in the absence of the requested receivership order, "corporate assets of the defendants will be subject to diversion and waste to the detriment of those who were induced to invest in the corporate scheme" at issue. *See* Mot., at p. 27 (citing *SEC v. First Financial Group of Texas*, 645 F.2d 429, 438 (5th Cir. 1981). This, the SEC cannot do – at least with respect to the CallSocket Entities. There simply is no need, as part of this proceeding, for a new receiver to be appointed, specifically in order to marshal and preserve assets of the CallSocket Entities. Ms.

- 12 -  Case No. 3:17-cv-00223-RS
INTERESTED PARTY ALLAN YOUNG'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND FOR APPOINTMENT OF RECEIVER

Uecker, in her pre-existing role as the Superior Court-appointed receiver, is already doing this. Indeed, while nearly all of the $55 million raised from the CallSocket limited partners was gone when Ms. Uecker was appointed receiver in March 2016, having been taken by defendant Henderson and SFRC (through their various entities) and used to purchase commercial real estate, pay personal and living expenses for the Hendersons, finance other businesses owned and controlled by the Hendersons, and provide free rent to the Hendersons, their attorney, and a host of Henderson-owned and controlled businesses, as a direct result of her efforts, Mr. Young has already recovered over $29 million that has been returned to the CallSocket Entities. Levine Decl., ¶ 7-8, 11. A new and newly-constituted federal receivership will do nothing to further these recovery efforts.

There is no basis for the sweeping receivership order the SEC seeks. The Court should deny the SEC's request to displace the existing Superior Court receivership.

### C. There Is No Basis For This Court To Order The Transfer Of The Assets Of The Receivership Estate In The *Young* Action To This Court

Not content in its efforts to merely displace the Superior Court receivership, the SEC proposes that the Court go even further and enter an order transferring all of the assets that are now part of the existing Superior Court receivership estate – including some $26 million in remaining cash proceeds held by the Superior Court receiver[10] -- to this Court. *See* SEC's [Proposed] Order Appointing Receiver (ECF 10-2) at ¶ 2, 7(B), 13. There is no legal or factual basis for the relief the SEC seeks.

The SEC's motion fails to cite a single legal authority permitting it to steal away proceeds obtained by separately-appointed state court receiver, and to add those proceeds to its own federal receivership estate. Mr. Young is not aware of any case that would afford the SEC this remedy. The SEC, of course, is empowered to seek appointment of a receiver to aid its own enforcement efforts, and to protect and preserve monies the Commission is able to procure for investors through

---

[10] During the pendency of the receivership, some of the funds recovered have been used by the receiver, subject to prior approval by the Superior Court, to wind down operation at CallSocket I, to continue limited operations at CallSocket II, and to operate and manage the buildings prior to being sold.

the SEC's independent effort.  But, that is a far cry from what the SEC wants here.  This is not a criminal case.  The SEC, like Mr. Young in the *Young v. Henderson* case, is simply another civil litigant.  It has no legal right, and no claim of priority over, receivership estate proceeds that Mr. Young has obtained through his own civil efforts in the state court litigation.[11]

In addition to lacking a legal basis for its motion, the SEC has failed to establish any need to ensure that all monies recovered by all civil litigants – at both the state and federal level – must necessarily be placed into one receivership estate.  Mr. Young does not oppose having Ms. Uecker serve as co-receiver in the federal SEC action, should the Court decide that a federal receivership is necessary to further the SEC's enforcement effort.  Mr. Young assumes that Mr. Uecker can, if appointed, fulfill her role as a dually-appointed receiver in both actions.  In that event, Mr. Young will work cooperatively with the receiver and the SEC to ensure that no funds collected and retained by Ms. Uecker in the Superior Court receivership estate will be disbursed to CallSocket I, II or II investors without the approval of the SEC and the court.  Levine Decl., ¶¶ 36-38.

### D.   There Is No Basis For This Court To Stay The Earlier-Filed *Young* Action

The SEC also proposes that the Court "exercise its authority" to "enjoin Mr. Young's state court lawsuit."  *See* Mot. (ECF 10) at 30-21.  This argument missed the point.  The question for the Court is not whether it has the authority generally, but whether, on the facts presented here, it is appropriate to exercise that authority.  For the reasons set forth above, there is no factual or legal basis for the Court to completely and indefinitely stay the Superior Court action, particularly when doing so would be highly prejudicial to the parties in the Superior Court action.  Levine Dec., ¶¶ 33-35.

An injunction enjoining the earlier-filed *Young* action is not necessary in aid of this Court's federal jurisdiction.  A federal court injunction is necessary in aid of jurisdiction "'to prevent a state court from so interfering with a federal court's consideration of disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'"  *Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir. 1993) (citing *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive*

---

[11]   To date, Mr. Young's counsel have spent more than 2,070 hours litigating the *Young v. Henderson* action on behalf of Mr. Young and the CallSocket Entities.  Levine Decl., ¶ 25.

*Engineers*, 398 U.S. 281, 295 (1970)).  Furthermore, whenever a court is faced with a question as to the propriety of a federal injunction against state court proceedings, "any doubts…should be resolved in favor of permitting the state court to proceed in an orderly fashion to finally determine the controversy." *Atlantic*, 398 U.S. at 297.

In this instance, there is no reason to suggest that enabling Mr. Young to continue to prosecute his action will in any way impact this Court's ability to consider the merits or dispose of the SEC's enforcement action.  The two actions are substantially and materially different.  The SEC's complaint asserts federal securities fraud claims exclusively under the Securities Act of 1933 and the Securities Exchange Act of 1934.  Dkt. No. 1.  The *Young* complaint, in contrast, asserts claims exclusively under California law for breaches of fiduciary duty, conversion, breaches of contract, breaches of the implied covenant of good faith and fair dealing, declaratory relief, violations of Cal. Corp. Code  § 17701, and for an accounting.  Levine Decl., ¶ 27, and Ex. A thereto.  The parties in each action also are materially different.  In the *Young* action, the CallSocket Entities are nominal defendants on whose behalf the claims are being litigated by Mr. Young on a derivative basis.  In the *SEC* action, the CallSocket Entities are named defendants accused of committing federal securities fraud.  *Id*., ¶ 28.  In addition, there are twelve defendants in the *Young* action that are not parties in the SEC action, and six defendants in the *SEC* action that are not parties in the *Young* action. *Id*., ¶¶ 29-30.

Given the varying nature of the parties, the claims and the defenses as between the two actions, as well as the far advanced nature of the *Young* action, there is no concern that the Superior Court action, if allowed to proceed, would in any way strip this Court of its ability to manage, adjudicate and ultimately dispose of the SEC's complaint.  The Court is jurisdictionally free to decide the federal claims it has before it.  And, to the extent there is any concern that the two actions serve the overlapping interests of certain CallSocket investors, Mr. Young has already indicated to the SEC that he and his counsel are willing to cooperate with the SEC to help ensure that disbursements of the monies collected for the benefit of investors through the *Young* action will occur only after first consulting the SEC and obtaining appropriate court approval. There is thus no need for an injunction as an aid to this Court's jurisdiction.

The second exception to the Anti-Injunction Act, the need "to protect or effectuate [the federal court's prior' judgment," is not relevant here. 28 U.S.C. § 2833. The SEC action is in its infancy. It was filed in January 2017, more than two years after the SEC received a whistleblower complaint about Thomas Henderson and his management and operation of the CallSocket Entities. Levine Decl., ¶ 26. The time to respond to the complaint has not yet run, initial disclosures have not been made, discovery has not commenced, the Rule 26(f) conference as not occurred, and the initial case management conference is still more than two months away. *Id*., ¶ 32; *see also* ECF 27. The case is far from judgment. And, the SEC has recovered no limited partner funds to date. *Id*., ¶ 32.

In contrast, Mr. Young has been diligently litigating the *Young* action for almost 20 months, succeeding on multiple appeals and in proceedings filed in the U.S. Bankruptcy Court. Levine Decl., ¶¶ 2-21. As a result of his efforts, a well-qualified and experience receiver, Ms. Uecker, has capably served as the court-appointed receiver in the *Young* action for more than 10 months, since April 2016. *Id*, ¶ 6. Discovery has been underway in *Young* for more than a year. *Id*, ¶ 23. The Superior Court has actively managed the litigation and its oversight of the receiver, with case management conferences held monthly, on average. *Id*, ¶ 22. Trial is scheduled to commence on September 11, 2017. *Id*, ¶ 24. And, in contrast to the *SEC* action, as a result of Mr. Young's efforts to date, more than $29 million has been returned to the CallSocket Entities. *Id*, ¶ 11. The funds are being preserved and protected, under the Superior Court's supervision, as part of the Superior Court receivership estate. *Id.*

The SEC's request for an injunction is far too sweeping in its scope, and is unnecessary to preserve this Court's jurisdiction or ensure a proper disposition of the SEC's complaint at a later juncture. The motion to enjoin the *Young* action is unwarranted and should be denied, accordingly.

**IV.   CONCLUSION**

For all of the foregoing reasons, the SEC's motion for a preliminary injunction and for the appointment of a receiver in this matter should be denied to the extent it interferes with the existing receivership in the *Young* action. The SEC's request that the assets of the receivership estate in the *Young* action be transferred to this Court and its request for a stay of the *Young* action should be

denied as well.  The SEC should be instructed to work cooperatively and in a coordinated manner with plaintiff and the receiver in the *Young* action.

Dated: February 9, 2017

PRITZKER LEVINE LLP

By:   */s/ Elizabeth C. Pritzker*
      Jonathan K. Levine
      Elizabeth C. Pritzker
      Bethany L. Caracuzzo

Attorneys for Interested Party Allan Young