DAVID J. MILLSTEIN, ESQ. (CSB# 87878)
GERALD S. RICHELSON, ESQ. (CSB #267705)
MILLSTEIN & ASSOCIATES
100 The Embarcadero, Suite 200
San Francisco, CA 94105
Telephone: (415) 348-0348
Facsimile:  (415) 348-0336
Email: dmillstein@millstein-law.com
Email: grichelson@millstein-law.com

DANIEL B. LUNDY, ESQ. (N.Y. BAR ONLY)
KLASKO IMMIGRATIONLAW PARTNERS, LLP
1601 Market Street, Suite 2600
Philadelphia, PA 19103
(215) 825-8600
(215) 825-8699 (Fax)
Email: dlundy@klaskolaw.com

**Attorneys for Proposed Interveners:**
EB-5 INVESTERS IN: SAN FRANCISCO REGIONAL CENTER, LLC; CALIFORNIA GOLD MEDAL, LP; CALL SOCKET, LP; CALLSOCKET II, LP; CALLSOCKET III, LP; COMPREHENSIVE CARE OF OAKLAND, LP; NA3PL, LP; WEST OAKLAND PLAZA LP and RELATED ENTITIES INVOLVED IN THE SECURITY EXCHANGE COMMISION V. SAN FRANCISCO REGIONAL CENTER, LLC, ET. AL. CIVIL COURT ACTION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiffs,<br><br>v.<br><br>SAN FRANCISCO REGIONAL CENTER, LLC; THOMAS M. HENDERSON; CALIFORNIA GOLD MEDAL, L.P.; CALLSOCKET, L.P.; CALLSOCKET II, L.P.; CALLSOCKET III, L.P.; COMPREHENSIVE CARE OF OAKLAND, L.P.; NA3PL, L.P.; WEST OAKLAND PLAZA, L.P.; CALLSOCKET, LLC; CALLSOCKET II, LLC; CALLSOCKET III, LLC; COMPREHENSIVE CARE OF CALIFORNIA, LLC; IMMEDIA, LLC; and NORTH AMERICA 3PL, LLC,<br><br>Defendants, and | Case No.: 3:17-cv-00223-RS<br><br>**DECLARTION OF YUHONG MA IN SUPPORT OF EB-5 INVESTORS' OPPOSITION TO THE MOTION FOR PRELIMINARY INJUNCTION.**<br><br>Date Filed: February 9, 2017 |

1

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6 | CALLSOCKET HOLDING COMPANY, LLC; CALLSOCKET III HOLDING COMPANY, LLC; BERKELEY HEALTHCARE DYNAMICS, LLC; CENTRAL CALIFORNIA FARMS, LLC; and JL GATEWAY, LLC,<br><br>Relief Defendants, and |

I, Yuhong Ma, hereby declare as follows:

1. I am one of the EB-5 Investors affected by the proceedings herein. I make this declaration based on personal knowledge, except where noted herein as statements made on information and belief, which statements I believe to be true. If called as a witness, I could competently testify to the statements made in this declaration.

2. I am a citizen of China, currently residing in the United States, along with my two children, on a conditional green card issued pursuant to the United States Citizenship and Immigration Service's EB-5 Program.

3. In September 2013, I made a $500,000 capital contribution to CallSocket II, LP and together with $50,000 syndication fee to be a limited partner of CallSocket II, LP. My I526 petition was submitted at the same time and got approved in 2015. I entered the United States on conditional green card on January 16, 2016.

4. In connection with my immigration petition, CallSocket II, LP submitted a business plan to the USCIS, stating clearly that the capital from all investors will be used to buy two buildings and to run the call center service in those two buildings. The plan was approved by USCIS to my knowledge. Later I was informed that both the buildings were bought and in the name of CallSocket II, LP.

5. After I entered the United States on the conditional green card, I visited the CallSocket II, LP in person and found the Dufwin Tower was under renovation to house the expanding business and some of the preparation work had been done way ahead. So I was very confident about the future and went back to China to move my entire home to the United States. I bought a new house and moved all my family belongings here. My kids quit

their prestigious schools in China. In order to help them to adapt to a totally new education system, I required their full devotion to English learning.

6. However, in December 2016, I found out that the call center business was taken over by a receiver, due to the lawsuit between the two general partners. Even worse, when I visited the website of the state court and read related court files, I found that the receiver sold all the buildings that were supposed to house the call center business. The receiver also shut down the CallSocket, LP business. As far as I know no investors from that project got their I829 approved yet. The employee number of CallSpcket II, LP downsized quickly from more than 60 to around 20 in December 2016 which will affect adversely the investors who are going to file their I829 petitions in the coming months including me. We have around 10 investors need to file I829 petitions in March, May, August, and October of 2017 respectively.

7. The good news was that the judge from the state court finally realized the essence of EB-5 projects is to help the investors to get their permanent residency instead of financial gaining. Later the Judge required the plaintiff, the SFRC (San Francisco Regional Center) and the receiver to come up with a business plan to continue the call center business in order to file the soon upcoming I829 petitions. The hearing was planned on Jan. 24 before the SEC complaint on Jan. 17, 2017.

8. Both the plaintiff and the SFRC submitted a proposal to continue the business. However the receiver submitted two proposals. One is to run the business, but that plan is exactly the same one SFRC submitted to the USCIS 5 years ago, not even a minor revision made, for example the potential customer letters were from 5 years ago. She has no intent to run the business to help investors get the permanent residency. The second proposal is unbelievable. It is to sell the business and give back whatever left to investors. She then contacted a new regional center named Golden Gate Global to introduce us to that regional center to file a new EB-5 petition. According to that business plan, she would have received a service fee of $12,500 per investor. That means we need to contribute another $500,000 and file a new I526 petition to wait for another 4-5 years to get a new conditional green card. We have retained an attorney to represent us in the state court to oppose to the receiver's proposals.

9. Now federal court is recommending the receiver to take over the whole business. Many of us are concerned that she might not protect the investors' interest properly due to her misunderstanding of the EB-5 immigration. We want to ensure any steps possible are taken to preserve the business and create jobs in order to get our permanent green cards. I talked with many investors and we feel the same way. Just like me, most of the investors moved to live in the United States, many of them moved kids to the new school, and quit their jobs. Some even shut down their business in China to begin a new one here. It's virtually a disaster for us to have to leave the United States and go back to China. There's no chance our kids can catch up with the study progress in China. We all invested for very low returns in order to immigrate to the U.S.

I declare under penalty of perjury that the foregoing is true and correct. Executed February 9, 2017, at __Orange_ County, California.

By: _____