DAVID J. MILLSTEIN, ESQ. (CSB# 87878)
GERALD S. RICHELSON, ESQ. (CSB #267705)
MILLSTEIN & ASSOCIATES
100 The Embarcadero, Suite 200
San Francisco, CA 94105
Telephone: (415) 348-0348
Facsimile:  (415) 348-0336
Email:  dmillstein@millstein-law.com
Email:  grichelson@millstein-law.com

DANIEL B. LUNDY, ESQ. (N.Y. BAR ONLY)
KLASKO IMMIGRATION LAW PARTNERS, LLP
1601 Market Street, Suite 2600
Philadelphia, PA 19103
(215) 825-8600
(215) 825-8699 (Fax)
Email: dlundy@klaskolaw.com

**Attorneys for Proposed Interveners:**
EB-5 INVESTERS IN: SAN FRANCISCO REGIONAL CENTER, LLC; CALL SOCKET, LP; CALLSOCKET II, LP; CALLSOCKET III, LP; COMPREHENSIVE CARE OF OAKLAND, LP; and RELATED ENTITIES INVOLVED IN THE SECURITY EXCHANGE COMMISION V. SAN FRANCISCO REGIONAL CENTER, LLC, ET. AL. CIVIL COURT ACTION

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiffs,<br><br>     v.<br><br>SAN FRANCISCO REGIONAL CENTER, LLC; THOMAS M. HENDERSON; CALIFORNIA GOLD MEDAL, L.P.; CALLSOCKET, L.P.; CALLSOCKET II, L.P.; CALLSOCKET III, L.P.; COMPREHENSIVE CARE OF OAKLAND, L.P.; NA3PL, L.P.; WEST OAKLAND PLAZA, L.P.; CALLSOCKET, LLC; CALLSOCKET II, LLC; CALLSOCKET III, LLC; COMPREHENSIVE CARE OF CALIFORNIA, LLC; IMMEDIA, LLC; and NORTH AMERICA 3PL, LLC,<br><br>          Defendants, and | Case No.: 3:17-cv-00223-RS<br><br>**AMENDED OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION.**<br><br><br>Date Filed: January 17, 2017 |

1

**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION.**

CALLSOCKET HOLDING
COMPANY, LLC; CALLSOCKET III
HOLDING COMPANY, LLC;
BERKELEY
HEALTHCARE DYNAMICS, LLC;
CENTRAL CALIFORNIA FARMS,
LLC; and JL GATEWAY, LLC,

Relief Defendants, and

## MEMORANDUM OF POINTS AND AUTHORITIES

Interested Parties, Feng Li, Yuanyuan Kou, Xiaojun Li, Xiaoting Zhang, Ping Ni, Tan Wenbin, Jingyi Yan, Hao Chen, Yiling Ni, Shaoyun Dong, Yilai Ni, Li Ma, Meng Cai, Yiqi Yu, Fei Zhu (Zhou), Yonghong Zeng, Sunhai Liu, Yuxia Chen, Xilin Fang, Wei Wang, Rong Luo (Ming-ho Chen), Chunjian Xin, Xuebin Wang, Jifeng Yu, Yuhong Ma, Yu Zhuang, Yuhua Jiang, Baoyi Peng, Li Luo, Jianxin Wang, Shuhong Zhang, Jiaen Chen, Xin Wei, Senjing Tang, Xiaoqing Zhao, QingJiang Yuan, Zhenghui Huang, ZhiJun Li, Xiaoping Li, Ajay Gupta, Yifan Wu, Lan Hong Yang (Hongyang Lan), Jianmei Zhu (Zhou), Chunlian Zhan, Weihua Wu (Winston), Peijun Zhu, Yan Qu, Congren Han, Songjun Ma, Shaoqing Zeng, and several other EB-5 investors[i] (hereinafter "EB-5 Investors"). respectfully submit the following memorandum of law in support of their Opposition to Plaintiff's Motion for a Preliminary Injunction:

## I.

## INTRODUCTION

The EB-5 Investors are foreign nationals primarily from China and India investing in San Francisco Regional Center LLC ("SFRC") and other related entities in large part in attempts to obtain permanent legal residency under the United States Citizenship and Immigrations Service's ("USCIS") EB-5 Immigrant Investor Program.  Like the state court action entitled Allan Young v. Thomas M. Henderson et. al. Case No.: RG-15-778891 pending in the Superior Court of California for the County of Alameda, the present action concerns the alleged misuse of funds by San Francisco Regional Center, LLC and related entities through its principle Thomas M.

2

**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION.**

Henderson ("Henderson").  In neither the present action nor the state court action are any of the EB-5 Investors alleged to be party to the alleged securities fraud and/ or breaches of contract/ common counts alleged against Henderson.

The EB-5 Investors are, in fact, the victims of the alleged fraud and contract causes of action against Henderson and the SFRC related entities.  The EB-5 Investors, however, differ from traditional victims of securities fraud and corporate mismanagement.  The EB-5 Investors investment in the SFRC related entities was premised not only on receipt of a return on that investment, but on their ability to obtain lawful permanent resident status (a.k.a. a "green card") as a result of that investment.  Many of the investors have in fact moved their families to the United States already, and abandoned their lives and careers abroad.  While the Proposed Interveners would like to see their capital investment protected in a similar fashion as many victims of securities fraud, their primary motivation for making the investment was the ability to immigrate to the United Stated pursuant to Section 203(b)(5) of the Immigration and Nationality Act.  As such, they request any appointment of receiver or other action in this matter be pursuant to their input in regards their ability to maintain their attempts to obtain permanent legal residency under the USCIS EB-5 program.

The SEC has filed a motion for preliminary injunction seeking to appoint a receiver over all of the above named defendants, enjoin the above named defendants from further securities fraud, stay the state court action, enjoin the state court receivership, and appoint the state court receiver as the receiver in the present federal action.  The EB-5 Investors seek to provide input to make sure that all operating entities continue to operate in a manner not jeopardizing their ability to obtain permanent resident status.  In advancement of that goal the Prospective Interveners seek to have Comprehensive Care of Oakland ("CCOO") excluded from the receivership, and for the court to appoint a receiver other than Susan L. Ueker to oversee the entities, and order whomever acts as receiver to specifically consider the effects of their actions on the EB-5 Investors' ability to obtain permanent legal residency under the EB-5 program in making their decisions relating the various businesses.  EB-5 Investors are informed and believe that Henderson no longer has any ownership interest in CCOO, CCOO is in operation and certified to provide services under CalMed, Medicare, and MediCade the creation of a receiver would

3

**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION.**

jeopardize its ability to continue to do so.  Ms. Ueker's actions to date, further, have jeopardized the Proposed Interveners' ability to obtain permanent residency by selling of company assets and failing to hire needed staff.  Accordingly, EB-5 Investors, request the court exclude CCOO from the receivership and appoint a receiver other than Ms. Ueker who will be instructed to specifically consider Prospective Interveners' ability to obtain permanent residency under the EB-5 program.

## II.

## STATEMENT OF FACTS

The Securities and Exchange Commissions ("SEC") brings the present against Henderson, SFRC, and other EB-5 program investment projects for securities fraud.  The suit alleges that Henderson through SFRC and other EB-5 investment vehicles raised upwards of $107 million in securities issued to approximately 215 investors as a means to participate in the Employment-Based Immigration Fifth Preference program ("EB-5").  The SEC alleges that Henderson though SFRC and other entities co-mingled investor funds from multiple EB-5 projects as well as used at least $9.6 million for his own benefit.

## III.

## LEGAL ARGUMENT

### A.    Legal Standard.

A preliminary injunction is proper upon a showing of either "(1) a combination of probable success and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardship tips in its favor."  *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 2004 F.3d 8676, 874 (9th Cir. 2000); *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (en banc).  It has been said that these two formulations "represent two points on a sliding scale" such that "the required degree of irreparable harm [which is low under the first test, which requires but a possibility of irreparable harm to the moving party] increases as the probability of success [which is high under the first test, which

**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION.**

requires a showing of probable success] decreases.  *Prudential Real Estate Affiliates*, 204 F.3d at 874.[1]

In addition, "In deciding whether to grant the injunction, the court must balance the equities between the parties and give due regard to the public interest."  *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 833 (9th Cir. 2002).  Consistent with the above the United States Supreme Court recently set forth the standard for granting a preliminary injunction: "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008).

**A.       The Balance of the Hardships Tips Heavily in Favor of the EB-5 Investors.**

As an alternative to showing "a combination of probable success and the possibility of irreparable harm," Plaintiff may obtain interim injunctive relief by showing that "serious questions are raised and the balance of hardship tips in its favor."  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. Cal. 2000).

In evaluating the balance of hardships, a court must consider the impact that granting or denying a motion for a preliminary injunction will have on the respective enterprises.  *International Jensen, Inc. v. Metrosound USA, Inc.*, 4 F.3d 819, 827 (9th Cir. 1993).  In order to grant an injunction, such a balance requires a showing that the irreparable injury to be sustained by Plaintiff would be more burdensome than the harm caused to Defendant through imposition of the injunction.  *See Id.*  "Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown to be infringing, such an argument in defense merits little equitable consideration."  *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 924 F. Supp. 1559, 1574 (S.D. Cal. 1996) (*quoting Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988)).

---

[1]  *See also Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F. 3d 1115, 1119 (9th Cir. 1999), *quoting Nat'l Ctr. for Immigrants Rights v. INS*, 743 F.2d 1365, 1369 (9th Cir. 1984).

**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION.**

The EB-5 program allows foreign nationals who invest $1 million (or $500,000 if the investment is in a Targeted Employment Area) into a New Commercial Enterprise in the United States, and whose investment results in the creation of at least ten, new jobs for United States workers, to qualify first for conditional permanent resident status, then unconditional permanent resident status in the United States.  Obtaining permanent resident status is a three stage process. First, an EB-5 investor must make a qualifying investment into a New Commercial Enterprise and file an I-526 petition.  The I-526 petition contains documentation showing that the investment is a qualifying investment under the program rules, and contains predictions about when and how the job creation requirement will be met.

Second, once the I-526 petition is approved, the investor must apply for an immigrant visa at the U.S. consulate abroad, or file an application for adjustment of status if he or she is already in the United States in lawful non-immigrant status.  Once the investor enters the country with an immigrant visa, or the application for adjustment of status is granted, the investor becomes a conditional resident,

Third, between 21 and 24 months after becoming a conditional resident, the investor must file an I-829 petition which demonstrates that the investor has maintained the investment in the new commercial enterprise, and the jobs either have been created or will be created within a reasonable time.  If the New Commercial Enterprise is dissolved, or the investors receive any of their $1 million or $500,000 back, then they simply do not qualify for unconditional permanent residence.  Similarly, if the jobs have not been created, or are not likely to be created within a reasonable time, then the investor would not be eligible for unconditional permanent residence. If the investor's I-829 petition is denied, the investor and his or her family members are placed in removal (formerly deportation) proceedings.  As a result, the failure of an EB-5 business has immigration and life consequences, not just financial consequences.  These consequences-deportation after many years of living in the United States- are particularly severe.  As a result, EB-5 investors typically prioritize the receipt of their unconditional permanent residence over the return of their investment funds.

This fact makes EB-5 investors different from all other types of investors that might be victimized by fraud and deceit or misappropriation of funds, and makes a different approach to

**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION.**

resolving such claims necessary in EB-5 cases.  While ordinarily a receiver's efforts are focused exclusively on preserving and recovering assets for the eventual distribution to creditors and investors, that result is likely fatal to the immigration interests of the EB-5 investors, and could well result in the deportation of the investors and their family members that are in the United States, and the denial of the I-526 petitions or immigrant visa/adjustment of status applications for those who are not already conditional residents.  Given that these entities were financed primarily with EB-5 money, and the EB-5 investors are the ultimate victims of the alleged fraud and misappropriation, and, as such are the class of persons whose interests are sought to be protected by the SEC action in the first place, their interests should be given priority to the extent possible.

### B. The State court Receiver Has not Acted in the Best Interest of the EB-5 Investors

So far, the State Court Receiver, Susan L. Uecher, has sold off two of the buildings in which the call centers were located, instituted a hiring freeze that has prevented the call centers from improving their business, and has failed to provide a current and credible plan for operating any of the entities.  In fact, one of her proposals involved having the EB-5 investors invest another $500,000 in a project in a new regional center, and file new I-526 petitions.[2]  These actions have all frustrated the chances of success for the immigration interests of the EB-5 investors.  It does not appear that the State Court Receiver has any experience in EB-5 matters, or that she understands the requirements of the EB-5 program.  The EB-5 investors are deeply concerned that she is not adequately considering their immigration interests, and do not believe that she will protect those interests if appointed in this matter.[3]

We are aware that Kevin Kent, of Conrad O'Brien PC had previously contacted the SEC about the receivership.  The EB-5 investors would propose Mr. Kent as an alternative.  The EB-5 investors are currently reaching out to other possible alternates.

---

[2]  The result of this is the investors would have to start the whole multi-year process of becoming permanent residents over again.

[3]  See: Declaration of Yuhong Ma.

**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION.**

**C.  Comprehensive Care of Oakland LP should be excluded from receivership**

We have been informed by attorneys for Comprehensive Care of Oakland, LP, that it is operating profitably and is on track to create the requisite number of jobs to support all of its investors' I-829 petitions.  We have also been informed that Defendant Henderson was bought out by the current operator of the company, and no longer has an interest in it.  We further have been advised that there is a loan to Comprehensive Care of Oakland, LP, that would be placed in default upon the appointment of a receiver, and that Comprehensive Care of Oakland, LP would also allow Kaiser to terminate its contract with the company.  This information will be set forth in the opposition to be filed by Comprehensive Care of Oakland, LP, with appropriate supporting documents.

Assuming that Comprehensive Care of Oakland, LP is a viable, operating business, and is on track to create all the jobs needed to support all of its investors, and give the fact that placing this company in receivership could seriously jeopardize the viability of this business, and the investors' chances of success on their immigration objectives, the hardships weigh heavily against placing this company in receivership at this time.  If needed, a receiver can be appointed at a later date, however, the EB-5 investors, and the Court, need more time to ascertain the facts of the case.  It would not be appropriate to place the business, and the investors' green cards, at substantial risk at this point.

**D. Plaintiff, SEC, Will Not Be Irreparably Harmed**

The EB-5 investors oppose the appointment of the State Court receiver, but do not generally oppose the appointment of a receiver, with the exception of Comprehensive Care of Oakland, LP.  The EB-5 investors acknowledge that there may be some efficiency gained by appointing the State Court Receiver, but assume that if the State Court Receiver's accounting work has been thorough and well documented, it would not be difficult for a new Receiver to get up to speed.  Additionally, we are informed via a letter to investors from SFRC's attorneys, that although SFRC no longer has an equity interest in Comprehensive Care of California, LLC (the GP of Comprehensive Care of Oakland, LP), it is still the "manager"'; for EB-5 purposes, meaning that the receivership would already have the ability to monitor and control the

**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION.**

management company of Comprehensive Care of Oakland, LP.  If this is the case, there is little danger of further fraud or misappropriation because SFRC is already included in the receivership.

## V.

## CONCLUSION

For the foregoing reasons, EB-5 Investors respectfully request that this Court not appoint a receiver for Comprehensive Care of Oakland, LP and appoint a receiver different from that in the state court who will take more account of the EB-5 Investors immigration status.


Dated:  February 16, 2017                MILLSTEIN & ASSOCIATES



By: _____ */s/Gerald S. Richelson* _____
                                        Gerald S. Richelson, Esq.
                                        Attorneys for Proposed Intervenors

---

[i]  In the event there is any material change which parties have retained our respective firms an amended notice shall be filed.

**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION.**