UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff,

v.

SAN FRANCISCO REGIONAL CENTER
LLC, et al.,

Defendants.

Case No. 17-cv-00223-RS

**ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION AND TO
APPOINT A RECEIVER**

## I. INTRODUCTION

This action was initiated by the Securities Exchange Commission against defendant
Thomas Henderson and a number of entities with which he was involved.  The SEC contends
Henderson engaged in a wide-ranging scheme to defraud at least 215 persons who have invested
approximately $107 million in businesses under his control, along with an additional $8.9 million
in fees.  Certain of those businesses are already under the oversight of a receiver, appointed by the
Alameda Superior Court in an action brought against Henderson by a former business partner.
The SEC now seeks appointment of a receiver in this federal action over those and other
businesses, as well as a preliminary injunction.

As explained below, there is only limited opposition to the request for appointment of a
receiver, and even less to the entry of a preliminary injunction.  Good cause appearing, both
requests will be granted.

United States District Court
Northern District of California

1

## II.  BACKGROUND

2

3          A.  The allegations

4          As alluded to above, the SEC contends that beginning in September of 2010, Henderson

5   and "his companies" have defrauded more than two hundred persons of approximately $107

6   million in investments in the businesses, plus an additional nearly $9 million charged as fees. The

7   SEC asserts Henderson used his companies, including San Francisco Regional Center, LLC

8   ("SFRC"), to entice foreign nationals to invest in specific enterprises that purportedly qualified

9   under the Employment-Based Immigration Fifth Preference program ("the EB-5 program"),  a

10   federal program administered by the U.S. Citizenship and Immigration Services ("USCIS").  The

11   EB-5 program provides a means for foreign nationals to qualify for U.S. residency by investing

12   $500,000 or more in a specified project determined to have created or preserved at least 10 jobs

13   for United States workers.

14          Over the past five years, Henderson, through SFRC, has sponsored a total of seven projects

15   under the EB-5 program. He and the entities he controls solicit funds from investors using private

16   placement memoranda and business plans unique to each project.  Each investor contributes

17   $500,000 in exchange for a security interest in a limited partnership that represents it will use the

18   funds to operate, or make loans to, a specific, job-creating business.

19          The SEC alleges that rather than using each investor's funds in the manner investors were

20   promised, Henderson siphoned off millions of dollars for his own use and to fund his non-EB-5

21   business ventures.  Henderson also purportedly sent millions of investors' dollars to overseas

22   marketing agents, in contravention of representations to the investors and to the law governing

23   EB-5 projects.  Finally, the SEC claims Henderson engaged in an elaborate "shell game" of using

24   funds solicited for one EB-5 project to fund other EB-5 projects, which was contrary to

25   representations to investors, who were told their investment would be used for a specific EB-5

26   project.  According to the SEC, these actions have not only seriously jeopardized the investors'

27   prospects for an economic return, but also their ability to obtain permanent residency through the

28

CASE NO. 17-cv-00223-RS
2

1    EB-5 program.

2

3              B.  The parties and interested third parties

4                   1. *Named defendants*

5              (a)  Thomas M. Henderson—the sole individual defendant, and alleged principal behind

6    the purported scheme.

7              (b)  SFRC –a company purportedly owned and/or controlled by Henderson at the time of

8    the alleged wrongdoing.  Henderson obtained authorization from USCIS to operate SFRC as an

9    EB-5 "Regional Center" that would sponsor EB-5 projects in and around Oakland, California.

10             (c)  Immedia, LLC—another company owned and/or controlled by Henderson into which

11   and/or through which some of the investor funds were allegedly funneled.

12             (d)  The seven limited partnerships formed to operate the EB-5 projects:

13                   California Gold Medal, L.P
                     CallSocket, L.P.
14                   CallSocket II, L.P.
                     CallSocket III, L.P.
15                   Comprehensive Care of Oakland, L.P.
                     NA3PL, L.P.
16                   West Oakland Plaza, L.P

17

18             (e)  Five LLCs that serve as general partners of the five respective above-listed limited

19   partnerships with similar names:[1]

20
                     CallSocket, LLC
21                   CallSocket II, LLC
                     CallSocket III, LLC
22                   Comprehensive Care of California, LLC
                     North America 3PL, LLC
23

24

25

_____

26   [1]  SFRC was the general partner of the remaining two limited partnerships listed above (West Oakland Plaza and California Gold Medal).

27

28

CASE NO. 17-cv-00223-RS

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1      2.  *"Relief" defendants*

2          The complaint also names as "relief defendants" certain entities that are not accused of

3   having directly committed any legal violations, but are alleged to be holding funds or real estate

4   that was diverted from the EB-5 projects.  They are:

5
            CallSocket Holding Company, LLC;
6           CallSocket III Holding Company, LLC;
            Central California Farms, LLC;
7           Berkeley Healthcare Dynamics, LLC;
            JL Gateway, LLC
8

9

10     3.  *Others who submitted briefs and appeared at argument*

11         (a)  Allan Young—a self-described "interested party" who apparently was Henderson's

12  partner on the CallSocket projects.  Young is the named plaintiff in an individual and derivative

13  action entitled *Young v. Henderson* that has been litigated in the Alameda County Superior

14  Court since July 2015.  He asserts the receiver appointed in that action has already recovered more

15  than $29 million of misappropriated investor funds, to date.

16

17         (b)  Susan Uecker—the receiver appointed in the state court action.

18

19         (c)  "The EB-5 investors"—individuals who are self-described as "foreign nationals

20  primarily from China and India" and who invested in SFRC and its related entities largely for the

21  purpose of obtaining permanent legal residency under the EB-5 program.

22

23         (d)  WOMAC Properties, Inc., and JLG Associates—entities associated with relief

24  defendant JL Gateway, LLC.  They are plaintiffs in a lawsuit *WOMAC Properties, Inc., et al. v.*

25  *San Francisco Regional Center, LLC, et al.*  filed in September of 2015 in Alameda County

26  Superior Court.

27

28
                                                      CASE NO.  17-cv-00223-RS

1    (e) Taylor and Patchen— a law firm that submitted a one page brief on behalf of eleven

2    individuals claiming to be "interested parties" – presumably investors—in California Gold Medal,

3    L.P.  The brief supports and joins in the SEC's request for a receiver.

4

5                                        III.  DISCUSSION

6        A.  Preliminary injunction

7        There is some dispute among the parties as to what standard applies in actions like this

8    where the SEC seeks a preliminary injunction.  The SEC proposes that it is entitled to a

9    preliminary injunction if it can establish (1) a prima facie case of previous violations of the

10   securities laws (2) and a reasonable likelihood that the wrong will be repeated. *S.E.C. v. Unique*

11   *Fin. Concepts*, 196 F.3d 1195, 1199 n. 2 (11th Cir.1999).  Although the Ninth Circuit has not

12   expressly adopted this standard, it appears to be emerging as the accepted rule.  *See*, *e.g.*, *SEC v.*

13   *Capital Cove Bancorp LLC*, 2015 WL 9704076 (C.D. Cal. 2015) (reviewing authorities and

14   concluding "[i]n light of SEC's statutory authority and the general acceptance of this standard by

15   other district courts in the Ninth Circuit, the Court will apply the two-part standard in this

16   matter.")

17       Regardless of the precise articulation of the standard, a preliminary injunction is

18   appropriate here.  It may be, as some of the defendants and other interested parties have argued,

19   that the SEC's showing of a likelihood of future harm is not especially strong, but given the

20   narrow scope of the relief provided by preliminary injunction, the SEC's motion will be granted.

21   The proposed injunction filed by the SEC will be signed and filed at the time the order on the

22   receivership is filed.

23

24       B.  Receivership

25       While there is dispute about *who* should serve as a receiver, only a few defendants or other

26   parties oppose appointment of a receiver *per se*, at least over their own operations.  Most

27   strenuously, defendants Comprehensive Care of Oakland, LP and its general partner

28

United States District Court
Northern District of California

CASE NO. 17-cv-00223-RS

1    Comprehensive Care of California, LLC (collectively  "CompCare") argue they are operating a

2    successful and "model" EB-5 business—a nursing facility with sub-acute care certification—in

3    which Henderson no longer is involved.  CompCare contends appointment of a receiver could

4    trigger a loan default and decertification of the facility.  Defendant North America 3PL, LLC and

5    relief defendant Berkeley Healthcare Dynamics, LLC (collectively "BHD") similarly contend they

6    are operating a successful warehouse business with various contractual relationships that could be

7    jeopardized by the appointment of a receiver.

8          Non-parties WOMAC Properties, Inc., and JLG Associates argue for exclusion of relief

9    defendant JL Gateway from any receivership.  JL Gateway itself, however, is part of the group of

10    "SFRC related entities," that is represented by counsel in this action and that expressly does not

11    oppose appointment of a receiver.

12          Finally, while non-party Young supports continued state-court receivership over the

13    CallSocket entities (which was imposed at his urging in the suit he brought in Alameda Superior

14    Court), he argues some sort of "dual receivership" should go forward rather than have the existing

15    receivership supplanted by any appointment of a receiver in this action.  Young offers that he will

16    cooperate to ensure that the two receiverships, and the two actions, are well-coordinated going

17    forward.  The CallSocket entities themselves, however, are represented in this proceeding by the

18    receiver Susan Uecker (through her counsel) and do *not* object to appointment of a federal

19    receiver.

20          Having carefully considered the record and the briefing of the parties, and having taken the

21    briefing of non-parties into account in the nature of *amicus*, the Court finds:

22          1.  Appointment of a receiver is appropriate at this juncture except as to the CompCare

23    entities and the BHD entities.

24          2.  A "dual receivership" of any form is not appropriate.  The receivership in this action

25    will therefore include the CallSocket entities.

26          3.  The most appropriate person to serve as the receiver is Susan Uecker.

27          4.  At this point in time, Uecker will also be appointed as a monitor over the CompCare

28

United States District Court
Northern District of California

1  and BHD entities.  She will be expected to provide the Court a report within 45 days as to:

2      (a) whether there are reasons justifying expansion of her authority over those

3      entities from "monitor" to "receiver," and;

4      (b) the likelihood, if any, that her appointment as a receiver over any or all of those

5      entities would cause disruption to any of those entities' contractual relationships

6      with third parties.

7      5.  A stay of all state court actions is appropriate and necessary to effect the purposes of the

8  receivership.

9      Accordingly, the SEC's motion to impose a receivership in this action will be granted, as

10  limited above.  Within five days of the date of this order, the SEC shall submit a revised proposed

11  order, approved as to form by counsel of record for all named parties in this proceeding, effecting

12  the appointment of Uecker as receiver and monitor, respectively.

14  IV. CONCLUSION

16      The SEC's motions are granted, to the extent set out above.  A revised proposed order

17  appointing a receiver shall be submitted as specified.

21  **IT IS SO ORDERED**.

23  Dated:  March 23, 2017

                RICHARD SEEBORG
                United States District Judge

United States District Court
Northern District of California

CASE NO. 17-cv-00223-RS

7