1 | Elizabeth Berke-Dreyfuss (Bar No. 114651)
**WENDEL, ROSEN, BLACK & DEAN LLP**
2 | 1111 Broadway, 24th Floor
Oakland, California 94607-4036
3 | Telephone:  (510) 834-6600
Fax:  (510) 834-1928
4 | Email:  edreyfuss@wendel.com

5 | Attorneys for Susan L. Uecker, Receiver

6

7

8 | UNITED STATES DISTRICT COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

10 | SAN FRANCISCO DIVISION

11

12 | SECURITIES AND EXCHANGE COMMISSION, | Case No. 3:17-CV-00223-RS

13 | Plaintiff,

14 | vs.

15 | SAN FRANCISCO REGIONAL CENTER, LLC; THOMAS M. HENDERSON; CALIFORNIA | **RECEIVER'S MOTION FOR ORDER: (1) AUTHORIZING SALE OF PERSONAL PROPERTY OF CENTRAL CALIFORNIA**
16 | GOLD MEDAL, L.P.; CALLSOCKET, L.P.; CALLSOCKET II, L.P.; CALLSOCKET III, | **FARMS, LLC; (2) APPROVING AGREEMENT WITH MID-VALLEY**
17 | L.P.; COMPREHENSIVE CARE OF OAKLAND, L.P.; NA3PL, L.P.; WEST | **SERVICES, INC.; AND (3) AUTHORIZING RETENTION OF**
18 | OAKLAND PLAZA, L.P.; CALLSOCKET, LLC; CALLSOCKET II, LLC; CALLSOCKET | **BROKER AND LISTING OF JL GATEWAY, LLC PROPERTY FOR SALE**
19 | III, LLC; COMPREHENSIVE CARE OF CALIFORNIA, LLC; IMMEDIA, LLC; and
20 | NORTH AMERICA 3PL, LLC,
21 | Defendants, | Date:       September 28, 2017
Time:      1:30 p.m.
22 | -and- | Place:     450 Golden Gate Ave.
23 | CALLSOCKET HOLDING COMPANY, LLC; | 17th Floor, Ctrm. 3
CALLSOCKET III HOLDING COMPANY, | San Francisco, CA 94102
24 | LLC; BERKELEY HEALTHCARE DYNAMICS, LLC; CENTRAL CALIFORNIA | Judge:   The Hon. Richard Seeborg
25 | FARMS, LLC; and JL GATEWAY, LLC,
26 | Relief Defendants.

27

28

009589.0024/4780951.10 | RECEIVER'S MOTION FOR ORDER: (1) AUTHORIZING SALE OF PERSONAL PROPERTY | 1 | 3:17-CV-00223-RS

1

2

## TABLE OF CONTENTS

Page

3   I.      INTRODUCTION ................................................................................................ 5

4   II.     LEGAL AUTHORITY ........................................................................................ 5

5           A.      District Court Power To Administer The Receivership. ........................... 5

6           B.      Deference To The Receiver's Business Judgment. ................................... 6

7   III.    PROPOSED ACTIONS ...................................................................................... 7

8           A.      California Gold Medal, LLC and Central California Farms, LLC............................ 7

9                   1.      Business Operations ..................................................................... 8

10                  2.      Investor Status – I-526 Status and Risks for California Gold Medal, LLC Investors.................................................................................. 9

11

12                  3.      Receiver's Recommendation  and Request ................................... 9

13                          a.      Approval Of Agreement With M. Davis Group............................ 10

14                          b.      Approval Of Agreement With Mid-Valley Services, Inc. ............... 11

15          B.      West Oakland Plaza, L.P. And JL Gateway, LLC ................................... 12

16                  1.      Business Operations ................................................................... 12

17                  2.      Investor Status-I-526 Status And Risks for West Oakland Plaza, L.P........ 13

18                  3.      Receiver's Recommendation and Request ................................... 13

    IV.     CONCLUSION .................................................................................................. 15

19

20

21

22

23

24

25

26

27

28

RECEIVER'S MOTION FOR ORDER: (1)
AUTHORIZING SALE OF PERSONAL
PROPERTY

2

3:17-CV-00223-RS

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

1

# **TABLE OF AUTHORITIES**

2

**Page**

3

## **CASES**

4

*Bennett v. Williams*
5
    892 F.2d 822 (9th Cir. 1989) ........................................................................................ 6

6
*CFTC v. Tooworth Int'l., Ltd.*
    205 F.3d 1107 (9th Cir. 1999) ...................................................................................... 6
7

8
*In re Thinking Machines Corp.*
    182 B.R. 365 (D. Mass. 1995) ...................................................................................... 6

9
*In re Thinking Machines Corp.*
    67 F.3d 1021 (1st Cir. 1995) ........................................................................................ 6
10

11
*SEC v. Basic Energy & Affiliated Resources*
    273 F.3d 657 (6th Cir. 2001) ........................................................................................ 6

12
*SEC v. Capital Consultants, LLC*
    397 F.3d 733 (9th Cir. 2005) ........................................................................................ 6
13

14
*SEC v. Elliot*
    953 F.2d 1560 (11th Cir. 1992) .................................................................................... 6

15
*SEC v. Forex Asset Management, LLC*
    242 F.3d 325 (5th Cir. 2001) ........................................................................................ 6
16

17
*SEC v. Hardy*
    803 F.2d 1034 (9th Cir. 1986) ................................................................................. 5, 6

18
*SEC v. Kirkland*
    2008 WL 4264532 (M.D. Fla. Sept 12, 2008) .......................................................... 11
19

20
*SEC v. Wang*
    944 F.2d 80 (2d Cir. 1991) .......................................................................................... 6

21
*Southwestern Media, Inc. v. Rau*
    708 F.2d 419 (9th Cir. 1983) ........................................................................................ 6
22

23
## **STATUTES**

24
28 U.S.C.
25
    § 2001 ............................................................................................................. 10, 11, 12
    § 2001(b) ..................................................................................................................... 11
26
    § 2004 ............................................................................................................. 10, 11, 12

27

28

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

1     Susan L. Uecker, the duly appointed receiver (the "Receiver") for Defendants San

2  Francisco Regional Center, LLC; California Gold Medal, L.P.; CallSocket, L.P.; CallSocket II,

3  L.P.; CallSocket III L.P.; NA3PL, L.P.; West Oakland Plaza, L.P.; CallSocket, LLC; CallSocket

4  II, LLC; CallSocket III, LLC; Immedia, LLC; Comprehensive Care of California, LLC;

5  Comprehensive Care of Oakland, L.P.; and North America 3PL, LLC; and Relief Defendants

6  CallSocket Holding Company, LLC; CallSocket III Holding Company, LLC; Central California

7  Farms, LLC; JL Gateway, LLC; and Berkeley Healthcare Dynamics, LLC (collectively the

8  "Receivership Entities"), will and does hereby move the above-captioned Court on **September 28,**

9  **2017, at 1:30 p.m.** (or as soon thereafter as the Court may hear) for an order with respect to the

10  Receiver's Motion for Order:  (1) Authorizing Sale of Personal Property of Central California

11  Farms, LLC; (2) Approving Agreement with Mid-Valley Services, Inc., and (3) Authorizing

12  Retention of Broker and Listing of JL Gateway, LLC Property for Sale ("Motion").

13     The Receiver seeks authorization to enter into an agreement to sell the remaining personal

14  property located at a former dairy plant ("Tipton Plant") the real property owned by Relief

15  Defendant Central California Farms, LLC ("Central California Farms"), located at 417 and 615 N.

16  Burnett Road, Tipton, California ("Tipton Property") to the M. Davis Group for $25,000.

17     In addition, the Receiver seeks authorization to enter into an agreement with Mid-Valley

18  Services, Inc., with respect to the Tipton Property to provide that entity with a deed in lieu of

19  foreclosure, because that property is worth less than the amount of the debt and defaulted taxes.

20     Last, the Receiver seeks authorization to retain Colliers Parrish International, Inc., dba

21  Colliers International as brokers for the listing, marketing and sale of the real property located at

22  800-900 Market Street, Oakland, California, owned by Relief Defendant, JL Gateway, LLC.

23     The Receiver's Motion is brought pursuant to provisions of the Order Appointing Receiver

24  and Monitor ("Appointment Order"), ¶¶ 35-38. (Docket No. 100) and the Court's general

25  equitable powers over equity receiverships and the Receiver's business judgment.

26     The Receiver's Motion is supported by the following Memorandum and the declarations of

27  Susan L. Uecker and Aileen Dolby and the exhibits and the proposed form of order granting this

28  Motion attached hereto as **Exhibit A**, and the Request for Judicial Notice filed herewith.

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1    <u>**MEMORANDUM IN SUPPORT OF MOTION**</u>

2    **I.      INTRODUCTION**

3            This matter was initially brought before the court pursuant to a complaint filed on January

4    17, 2017, by the Securities and Exchange Commission (the "SEC"), alleging that the named

5    Defendants had exploited a federal EB-5 visa program by defrauding investors seeking to invest in

6    the job creation program, earn a return on their investments and obtain a permanent U.S. visa as a

7    way towards United States residency.  (Docket No. 1).

8            On January 20, 2017, the SEC filed a motion seeking, among other things, an order

9    appointing a receiver over the entity Defendants and Relief Defendants.  (Docket No. 10).

10          Following oral argument, the court entered the Order Granting Motion for Preliminary

11   Injunction and to Appoint a Receiver on March 23, 2017, pursuant to which the Court, among

12   other things, appointed Susan L. Uecker as Receiver over most of the entities and Monitor over

13   four entities.  Thereafter, the Receiver was appointed receiver over the remaining four entities.

14   (Docket Nos. 96, 100, 171).

15          Pursuant to the provisions of the Appointment Order, on June 26, 2017, the Receiver filed

16   her Recovery Plan.  (Appointment Order, ¶ 49, Docket No. 185).  That plan addressed crucial

17   issues with respect to the Received Entities and whether investors have a realistic opportunity to

18   secure their immigration benefits through the EB-5 program given that, as alleged in the SEC's

19   complaint, investor funds have been diverted and/or comingled, and the probability that San

20   Francisco Regional Center, LLC ("SFRC") will lose its regional center status from the USCIS.  In

21   bringing this Motion, the Receiver has relied on the recommendations made by her special

22   immigration counsel with respect to the impact of the loss of the regional center status on the

23   investors in the various entities as well her business judgment in determining the appropriate

24   actions to be taken.

25   **II.     LEGAL AUTHORITY**

26          **A.      District Court Power To Administer The Receivership.**

27          A district court's power to administer an equity receivership is extremely broad.  *SEC v.*

28   *Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986); *SEC v. Forex Asset Management, LLC*, 242 F.3d

1    325, 331 (5th Cir. 2001); *SEC v. Basic Energy & Affiliated Resources*, 273 F.3d 657, 668 (6th Cir.

2    2001); *SEC v. Elliot*, 953 F.2d 1560, 1566 (11th Cir. 1992); *SEC v. Wang*, 944 F.2d 80, 85 (2d Cir.

3    1991).

4        The "primary purpose of equity receiverships is to promote orderly and efficient

5    administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at

6    1038.  The Ninth Circuit has explained:

> A district court's power to supervise an equity receivership and to
> determine the appropriate action to be taken in the administration of
> the receivership is extremely broad.  The district court has broad
> powers and wide discretion to determine the appropriate relief in an
> equity receivership.  The basis for this broad deference to the district
> court's supervisory role in equity receiverships arises out of the fact
> that most receiverships involve multiple parties and complex
> transactions.

12    *SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005) (citations omitted); *see also*,

13    *CFTC v. Tooworth Int'l., Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999) ("This court affords 'broad

14    deference' to the court's supervisory role, and 'we generally uphold reasonable procedures

15    instituted by the district court that serve th[e] purpose' of orderly and efficient administration of

16    the receivership for the benefit of creditors.").  Accordingly, this court has broad equitable powers

17    and discretion in formulating procedures, schedules and guidelines for administration of the estate,

18    and should authorize the Receiver's actions as proposed in her Motion.

19        **B.**     **Deference To The Receiver's Business Judgment.**

20        In the estate administration context, courts are deferential to the business judgment of

21    bankruptcy trustees, receivers, and similar estate custodians.  *See, e.g., Bennett v. Williams*, 892

22    F.2d 822, 824 (9th Cir. 1989) ("[W]e are deferential to the business management decisions of a

23    bankruptcy trustee."); *Southwestern Media, Inc. v. Rau*, 708 F.2d 419, 425 (9th Cir. 1983) ("The

24    decision concerning the form of [estate administration] rested with the business judgment of the

25    trustee."); *In re Thinking Machines Corp.*, 182 B.R. 365, 368 (D. Mass. 1995) ("The application of

26    the business judgment rule and the high degree of deference usually afforded purely economic

27    decisions of trustees, makes court refusal unlikely.") (rev'd on other grounds, *In re Thinking

28    Machines Corp.*, 67 F.3d 1021 (1st Cir. 1995)).

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1    The Receiver has determined, in her business judgment, as set forth in greater detail below

2  that:

3        • The Tipton Property should be abandoned from the Receivership Estate
           because the property is worth less than the debt and default taxes and
4          approval of an agreement with Mid-Valley Services, Inc. to accept a deed in
           lieu of foreclosure is in the best interests of the receivership estate;

5

6        • The personal property remaining at the Tipton Plant on the Tipton Property
           should be sold to the M. Davis Group for $25,000; and

7        • The Receivership Estate should retain Colliers International to list, market
           and sell the Market Street Property because Colliers International has
8          extensive experience in the Alameda County commercial real estate market;
           the commission is limited to 3%; and dual agency is prohibited.

9

10 **III.    PROPOSED ACTIONS**

11    The Receiver bases her proposed actions for each of the Received Entities on the Recovery

12 Plan (Docket No. 185) and the Declaration of Robert C. Divine filed in Support of the Recovery

13 Plan ("Divine Decl., Exhibit 1, Recovery Plan, Docket No. 185), and incorporates both the

14 Recovery Plan and Mr. Divine's declaration.

15    **A.    California Gold Medal, LLC and Central California Farms, LLC**

16    To the best of the Receiver's information and belief, none of the investors in California

17 Gold Medal, L.P. have had their I-526s approved by the USCIS and all of the petitions remain

18 pending.  None of the investors have immigrated to the United States.  The Receiver is informed

19 that it is likely that the USCIS will, in all probability, terminate SFRC's regional center status,

20 which will result in either denials or revocations of the investors' petitions.  The Receiver is also

21 informed and believes that there is a discrepancy in the number  and status of the investors

22 between the records of the USCIS and counsel[1] for the investors.  Although the Receiver has

23 communicated with the USCIS, she has not had a response from the USCIS to her inquiries for

24 updated confirming information. Because none of the investors I-526 petitions have been

25 approved and none of the investors have immigrated to the United States prior to a time when the

26

27 [1] Mr. James Yang is immigration counsel for SFRC and almost all investors in California Gold
    Medal, L.P.

28

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1  termination of SFRC's regional center's status appears likely, the Receiver is informed and

2  believes that is highly unlikely that the California Gold Medal, L.P. investors will be able to obtain

3  or retain their immigration benefits.  On that basis, the Receiver, based on her business judgment,

4  recommends that the assets of Relief Defendant, Central California Farms, LLC and the job

5  creating entity, Crystal Golden, LLC, should be liquidated.  Uecker Decl., ¶ 2.

## 1.    Business Operations

7      Under the EB-5 program, California Gold Medal, L.P. was the new commercial enterprise

8  while Crystal Golden, LLC was the job creating enterprise with its location at the Tipton Plant.

9  The Business Plan provided for the use of $50 million from 100 Investors to loan the funds to

10  Crystal Golden, LLC to fund the startup expenses of the company, including production of

11  ultrahigh temperature milk production and the renovation of an existing dairy processing facility.

12  (Recovery Plan, p. 43:15-19, Docket No. 185).

13      Relief defendant Central California Farms, LLC owns the Tipton Property.  The title report

14  indicates a loan of $1.5 million with Mid-Valley Financial, Inc. against the property. The loan

15  comes due on November 1, 2017 at which time the full $1.5 million will be due.  (Recovery Plan,

16  p. 45:9-12, Docket No. 185).  The real property taxes are delinquent in the approximate amount of

17  $160,0000.  The commercial liability and umbrella insurance coverage (due to expire on

18  November 3, 2017) are at issue due to unoccupied building exclusions under the policies.  The

19  current value based on a recent Broker Opinion of Value and reinspection after the recent

20  equipment auction (removal) is $1.1 million, which is less than the current debt and defaulted

21  taxes on the property.  (Recovery Plan, p. 45:13-18, Docket No. 185).

22      In May 2016, California Gold Medal, LLC entered into an agreement with Shambaugh &

23  Son LP ("Shambaugh") for design build services for an UHT/Aseptic Milk Plant at the Tipton

24  Plant.  In January 2017, Shambaugh completed the Scope of Work/Pricing/Schedule Proposal with

25  an estimated guaranteed a cost of approximately $66 million. (Recovery Plan, p. 44:12-16, Docket

26  No. 185).

27      In December 2016 and January 2017, M. Davis Group conducted an auction of a majority

28  of the equipment located at the Tipton Plant, which netted sale proceeds of $259,033.00.  No

1   auction proceeds were turned over to the Receiver.  M. Davis Group, has now submitted a

2   proposal for the remaining Equipment to 1) auction the remaining equipment for an estimated

3   auction price of $25,000.00-$45,000.00 or 2) purchase the remaining equipment directly for

4   $25,000.00.

5   The Tipton Plant has never operated since its purchase in November 2015 for $4 million.

6   (Recovery Plan, p. 44:17-22, Docket No. 185).

7   **2.  Investor Status – I-526 Status and Risks for California Gold Medal, LLC Investors**

8

9   The immigration status and risks for California Gold Medal, L.P. investors were outlined

10   in the Recovery Plan by special immigration counsel:

11   California Gold Medal, L.P. . . . is the Enterprise that is to make a business of
    loaning EB-5 capital to Crystal Golden, LLC (the JCE) to develop and operate a

12   new Ultra-High Temperature milk processing and production facility in Tipton, CA
    for sale and export to global markets.  The JCE was to spend the capital in

13   renovating and upgrading a leased facility, buying equipment, and startup of
    operations.  The plan was to raise $50 million from 100 EB-5 Investors, and job

14   creation projections were based on an assumption of over $6 million in
    construction expenditures, $23 million in equipment purchases, and $241 million

15   revenues in operational year 2.  The economist projected 1,565 direct and indirect
    jobs from operations and equipment expenditures and indirect jobs from

16   construction expenditures. . . .  [T]he USCIS chart reflects 27 investors filed I-526
    petitions, while the chart from James Yang reflects 47 investors who filed I-526,

17   but both charts reflect that all petitions are pending at USCIS.  Thus, termination of
    regional center would give rise to I-526 denial or revocation, which seems likely,

18   and any liquidation of assets would need to lead to prompt re-deployment in similar
    industry.

19

20   (Recovery Plan, Exhibit 1, Divine Decl.,  ¶ 67, Docket No. 185).

21   To be eligible for I-526 approval, investors would need to show credibility of the
    business plan, which may be heavily undermined by the interruption of fundraising

22   arising from the receivership, SEC complaint and allegations, etc.  Any diversion or
    commingling of capital, which appears to be substantial, also would pose

23   challenges to I-526 approval.  I-526 approval for CGM investors appears quite
    unlikely.

24

25   (Recovery Plan, Exhibit 1, Divine Decl.,  ¶ 68, Docket No. 185).

26   **3.  Receiver's Recommendation  and Request**

27   It appears highly unlikely that California Gold Medal, L.P. investors will be able to obtain

28   approval of their I-526s for the following reasons.  The Business Plan for California Gold Medal,

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

L.P. lacks credibility.  The plan was to raise $50 million in revenue for the construction of the ultra high temperature dairy plant, but the Shambaugh & Son LP design build construction bid far exceeded the amount of capital raised.  Approximately $10 million in investors' funds have been diverted and/or comingled.[2]  Because it is unlikely that California Gold Medal, L.P. investors will be able to obtain their immigration benefits primarily based upon the probable termination of SFRC's regional center status (because none of the investors I-526s have been approved and they have not immigrated to the United States), the Receiver believes that liquidation of the assets of Relief Defendants Central California Farms and Chrystal Golden, LLC is warranted at this time. Uecker Decl. ¶ 3.  For those reasons, the Receiver requests the approval of the following:

a.      **Approval Of Agreement With M. Davis Group**

M. Davis Group has submitted a proposal to the Receiver for purchase of the remaining equipment at the Tipton Plant on the Tipton Property.  The proposal is either to auction the equipment with an anticipated return of $25,000 to $45,000, or to pay $25,000 for a straight purchase of the equipment.  The Receiver believes that accepting payment of $25,000 for the remaining equipment is in the best interests of the Receivership Estate.  At auction, M. Davis Group receives 15% of the auction proceeds, and if the equipment only brings the low estimate, the estate will be worse off than if it had simply sold the equipment outright for $25,000.  Also, the Receiver wants to exit the premises quickly and not be responsible for dealing with the removal of the equipment after the auction, which would require the estate to retain insurance possibly past the expiration date of the current policies in November 2017.  Uecker Decl. ¶ 4.

The Receiver may sell the remaining equipment at the Tipton Plant pursuant to the terms of the Appointment Order and 28 U.S.C. §§ 2001, 2004.  Appointment Order, ¶¶ 35-37 (Docket No. 100).  Section 2004 requires that personal property sold pursuant to an order of a court of the United States be sold in accordance with Section 2001, unless the court orders otherwise.  Section 2001 requires that property sold either at a public sale on the court house steps, or as the court

---

[2]  Declaration of Ellen Chen in Support of Plaintiff Securities and Exchange Commission's Motion for Preliminary Injunction and for Appointment of Receiver ("Chen Decl."), p. 9, Table 6, Docket No. 19.

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

RECEIVER'S MOTION FOR ORDER: (1) AUTHORIZING SALE OF PERSONAL PROPERTY

10

3:17-CV-00223-RS

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

1    directs.  28 U.S.C. § 2001(b)³.  Courts may deviate from the statutory sale structure for personal

2    property provided by 28 U.S.C. § 2001 and 2004, because Section 2004 provides "unless the court

3    orders otherwise."  *SEC v. Kirkland*, 2008 WL 4264532 (M.D. Fla. Sept 12, 2008) (private sale of

4    motorcycle approved on Kelly Blue Book value without three appraisals where there was no

5    objection and the cost of three appraisals would have diminished the value received.)  Pursuant to

6    the terms of the Appointment Order, the Receiver requests that the Court authorize the Receiver to

7    enter into the Agreement with M. Davis Group to sell the remaining equipment at the Tipton Plant

8    for $25,000, and to either deem the provisions of 28 U.S.C. §§ 2001 and 2004 satisfied, or provide

9    that "the court otherwise approves the sale."

10                        **b.       Approval Of Agreement With Mid-Valley Services, Inc.**

11          As stated above, the Receiver obtained a Broker Opinion of Value for the Tipton Property

12    of $1.1 million.  The debt against the property is $1.5 million, and the defaulted real estate taxes

13    are $160,000, not including ongoing insurance.  Because the Tipton Property is worth less than the

14    amount of the debt, the Receiver seeks to abandon the property from the Receivership Estate since

15    it represents a liability.  The Receiver contacted Mid-Valley Services, Inc.,⁴ the original lender,

16    who has agreed to accept a deed in lieu of foreclosure for the Tipton Property.  Uecker Decl., ¶ 5.

17    The Receiver requests approval of an agreement with Mid-Valley Services, Inc. through its

18    assignee, Tipton Investment Group, LLC, substantially in the form and substance of the

19    Agreement for Deed in Lieu of Foreclosure and Escrow Instructions attached as Exhibit D to the

20    Uecker Decl., and a determination that the disposition of the Tipton Property in this manner

---

³  Section 2001(b) also authorizes the sale of property by private sale.  However, prior to
confirmation of a private sale, the court must appoint three disinterested persons to appraise the
property, and no private sale can be confirmed that is at a price less than two-thirds of the
appraised value.  28 U.S.C. § 2001(b).  The Receiver is of the opinion that the value of the
remaining equipment at the Tipton Plant could not support the appointment of three appraisers.

⁴  On October 23, 2015, Mid-Valley Services, Inc. assigned a portion of its beneficial interest in
the deed of trust against the Tipton Property to a number of fractionalized interest holders.  Mid-
Valley Services, Inc. was contractually retained as the servicer for the assignees, and has the
authority under the Loan Servicing Agreement to enter into the Agreement for Deed in Lieu of
Foreclosure and Escrow Instruction.

1  pursuant to Paragraphs 35-37 of the Appointment Order is exempt from the provisions of 28

2  U.S.C. §§ 2001 and 2004.

3  **B.  West Oakland Plaza, L.P. And JL Gateway, LLC**

4  Defendant West Oakland Plaza, L.P. is the new commercial enterprise that was supposed

5  to fund the job creating entity, West End Market, LLC.  The Business Plan for West Oakland

6  Plaza, L.P. anticipated that 20 investors would invest $10 million to fund the West End Market,

7  LLC, but only four investors invested in that new commercial enterprise, raising only $2 million.

8  The Receiver is informed and believes that all of the investors' I-526 petitions remain pending

9  before the USCIS, and that none of the investors have immigrated to the United States.  Because

10  none of the investors I-526 petitions have been approved and none of the investors have

11  immigrated to the United States prior to a time when the termination of the SFRC's regional

12  center's status appears likely, the Receiver is informed and believes that it is highly unlikely the

13  West Oakland Plaza, L.P. investors will be able to obtain or retain their immigration benefits.  On

14  that basis, the Receiver, recommends that the assets of Relief Defendant, JL Gateway, LLC,[5] the

15  shopping center located at 800- 900 Market Street, Oakland, California ("Market Street

16  Property"), should be listed for sale at this time.  Uecker Decl., ¶ 6.

17  **1.  Business Operations**

18  West Oakland Plaza, L.P. was the new commercial enterprise that was supposed to be

19  capitalized with $10 million from 20 EB-5.  The Business Plan provided for a loan of the EB-5

20  funds to the job creating entity, West End Market, LLC.   West End Market, LLC was supposed to

21  develop a grocery store and commercial kitchen space in a neighborhood retail center with the EB-

22  5 capital.  (Recovery Plan, p. 40:21-28, Docket No. 185).  The grocery store business was never

23  started, no improvements were ever made to the proposed space within the shopping center and no

24  employees were hired.  Relief Defendant, JL Gateway, LLC holds title to the Market Street

25  Property. Based on the settlement statement, the Market Street Property was purchased in

26

27  ─────────────
[5] Relief Defendant JL Gateway, LLC is owned 75% by San Francisco Regional Center LLC, and
25% for Womac Properties, Inc.

28

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

1 | December 2014 with a deposit of $150,000 from SFRC.  (Recovery Plan, p. 41:10-18, Docket No.

2 | 185).

3 |       The Market Street Property has been valued at $10,400,000 by Colliers International-

4 | Broker Opinion of Value.  The current loan with Thorofare Capital has a balance due of

5 | $6,500,000.  There is value in the Market Street Property to the receivership estate of

6 | approximately $3,900,000.  Uecker Decl., ¶ 7.  As described below, the Receiver proposes to

7 | retain Colliers International to list, market and sell the Market Street Property.

8 |     **2.**     **Investor Status-I-526 Status And Risks for West Oakland Plaza, L.P.**

9 |       The investors' immigration status and risks for West Oakland Plaza, L.P. were set forth in

10 | the Recovery Plan by special immigration counsel:

11 |     West Oakland Plaza, L.P. . . . is the Enterprise intended to raise $10 million from
20 EB-5 investors and loan that capital to West End Market, LLC as the JCE to

12 | develop and operate a grocery store, restaurant, and commercial kitchen in a retail center in West Oakland.  The economic analysis presumed from the JCE's business

13 | plan that it would employ 204 direct employees (123 in grocery, 47 in commissary, 12 in restaurant/café, and 22 cross-over jobs) and concluded that this

14 | would create 96.5 indirect jobs for a total of 300.5 jobs created.

15 |     Only four investors subscribed and filed I-526 petitions, which are pending with
USCIS.  Thus, termination of regional center would give rise to I-526 denial or

16 | revocation, which seems likely, and any liquidation of assets would need to lead to prompt re-deployment in similar industry.  To be eligible for I-526 approval,

17 | investors would need to show credibility of the business plan, which may be heavily undermined by the interruption of fundraising arising from the receivership,

18 | SEC complaint and allegations, etc.  Any diversion or commingling of capital also would pose challenges to I-526 approval. I-526 approval for the WOP investors

19 | appears quite unlikely.

20 | (Recovery Plan, Exhibit 1, Divine Decl.,  ¶ 69-70, Docket No. 185).

21 |     **3.**     **Receiver's Recommendation and Request**

22 |       Although West Oakland Plaza, L.P. was supposed to raise funds from twenty investors,

23 | only four investors subscribed and have filed I-526 petitions.  Investors invested approximately

24 | $2.2 million,[6] far short of the necessary $10 million. The Business Plan lacks credibility, because

25 | the grocery store, West End Market, was never operational, no improvements were ever made, and

26 | no employees were ever hired.  West Oakland Plaza, L.P. investor funds of $786,000 were

27 |

28 | [6] Chen Decl., p. 4, Table 2, Docket No. 19.

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

RECEIVER'S MOTION FOR ORDER: (1)
AUTHORIZING SALE OF PERSONAL
PROPERTY

13

3:17-CV-00223-RS

1   transferred to North America 3PL, LLC and net investor funds of $244,500 were transferred to

2   Immedia, LLC,[7] representing approximately 50% of all investors' funds either commingled or

3   diverted.  In addition to  those funds, $603,000 was transferred to the owner of the Market Street

4   Property, Relief Defendant JL Gateway, LLC.[8]  In addition, it appears that JL Gateway, LLC

5   acquired the Market Street Property with investor funds sourced through CallSocket III, L.P. and

6   NA3PL, L.P.[9]  The approval of West Oakland Plaza investors' I-526 petitions appear unlikely due

7   to such diversion and/or commingling and/or probable termination of SFRC's regional center

8   status.  Accordingly, on that basis, and on her business judgment, the Receiver believes that the

9   Market Street Property should be listed for marketing and sale at this time.  Uecker Decl., ¶ 8.

10         Pursuant to Paragraph 36 of the Appointment Order, the Receiver is "authorized to locate,

11   list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all

12   necessary and reasonable actions to cause the sale or lease of all real property in the Receivership

13   Estates."  The Receiver requests authorization to enter into an Exclusive Authorization to Sell

14   Agreement ("Listing Agreement") with Colliers Parrish International, Inc., dba Colliers

15   International for the listing, marketing and sale of the Market Street Property.  A true and correct

16   copy of the Listing Agreement is attached as Exhibit G to the Uecker Decl.  Pursuant to the terms

17   of the Listing Agreement:

18         • The listing price shall be $10.4 million;

19         • The Listing Agreement is for 6 months, ending on December 31, 2017;

20         • The broker's commission shall be 3%;

21         • All sales are subject to court approval; and

22         • Dual agency is prohibited.

23         The Receiver believes that the Listing Agreement is in the best interest of the receivership

24   estate because Colliers International has extensive experience in the commercial real estate market

25

26   [7] Chen Decl., p. 8, Table 5, Docket No. 19.

27   [8] Chen Decl., p. 8, Table 5, Docket No. 19.

28   [9] Chen Decl., ¶¶ 55-56, Diagram G, Docket No. 19.

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1   for Alameda County; the commission is limited to 3% and dual agency is prohibited.  Filed

2   concurrently herewith is the Declaration of Aileen Dolby in support of the Receiver's Motion

3   attesting to her connections with the receivership estate and her experience as a broker.  The

4   Receiver requests approval of the Listing Agreement pursuant to the terms of the Appointment

5   Order.  Uecker Decl., ¶ 9.

6   **IV.   CONCLUSION**

7          Wherefore, the Receiver prays for an order of this court that:

8          1.      Pursuant to Paragraphs 35-37 of the Appointment Order, the Receiver is authorized

9   to enter into the agreement with M. Davis Group for the sale of the remaining equipment located

10   at the Tipton Plant on the Tipton Property as set forth in the Motion;

11          2.      Pursuant to Paragraphs 36-37 of the Appointment Order, the Receiver is authorized

12   to enter into the agreement with Mid-Valley Services, Inc. to accept a deed in lieu of foreclosure

13   for the Tipton Property as set forth in the Motion;

14          3.      Pursuant to Paragraph 36 of the Appointment Order, the Receiver is authorized to

15   enter into the Listing Agreement with Colliers International as set forth in the Motion; and

16          4.      For such other and further relief as the court deems proper.

17   DATED:  August 23, 2017                   WENDEL, ROSEN, BLACK & DEAN LLP

18

19                                            By:       _/s/  Elizabeth Berke-Dreyfuss_

20                                                    Elizabeth Berke-Dreyfuss
                                                    Attorneys for Susan L. Uecker, Receiver

21

22

23

24

25

26

27

28

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

RECEIVER'S MOTION FOR ORDER: (1)
AUTHORIZING SALE OF PERSONAL
PROPERTY                                    15                    3:17-CV-00223-RS