JINA L. CHOI (NY Bar No. 2699718)
ERIN E. SCHNEIDER (Cal. Bar No. 216114)
  schneidere@sec.gov
ANDREW J. HEFTY (Cal. Bar No. 220450)
  heftya@sec.gov
SUSAN F. LAMARCA (Cal. Bar No. 215231)
  lamarcas@sec.gov
THOMAS J. EME (Ill. Bar No. 6224870)
  emet@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2800
San Francisco, CA 94104
(415) 705-2500

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 3:17-cv-00223-RS |
| Plaintiff, | |
| v. | SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO NON-PARTY INTERVENORS CHIN, SHIMAMOTO AND BRONSON'S "TAKINGS" CLAIM (ECF 294) |
| SAN FRANCISCO REGIONAL CENTER, LLC; THOMAS M. HENDERSON; CALIFORNIA GOLD MEDAL, L.P.; CALLSOCKET, L.P.; CALLSOCKET II, L.P.; CALLSOCKET III, L.P.; COMPREHENSIVE CARE OF OAKLAND, L.P.; NA3PL, L.P.; WEST OAKLAND PLAZA, L.P.; CALLSOCKET, LLC; CALLSOCKET II, LLC; CALLSOCKET III, LLC; COMPREHENSIVE CARE OF CALIFORNIA, LLC; IMMEDIA, LLC; NORTH AMERICA 3PL, LLC; | Date:   January 25, 2018<br>Time:   1:30 p.m.<br>Place:  Courtroom 3<br>        450 Golden Gate Ave., 17th Floor<br>        San Francisco, CA 94102<br><br>Judge:  The Hon. Richard Seeborg |
| Defendants, | |
| CALLSOCKET HOLDING COMPANY, LLC; CALLSOCKET III HOLDING COMPANY, LLC; CENTRAL CALIFORNIA FARMS, LLC; BERKELEY HEALTHCARE DYNAMICS, LLC; JL GATEWAY, LLC; | |
| Relief Defendants. | |

The Securities and Exchange Commission ("SEC") files this opposition to the "takings" claim against the government submitted as part of Non-Party Intervenors Clement Chin, Kevin Shimamoto and Jennifer Bronson's Opposition to the Receiver's Motion for Order Authorizing: (1) Closing North America 3PL, LLC and (2) Retaining Broker for Listing and Sale of Berkeley Healthcare Dynamics, LLC Property (ECF No. 294) ("Non-parties' Opp."). Non-party Intervenors assert a so-called "takings" claim, variously arguing that either the approval of the Court of the Receiver's Motion would effect a "judicial taking" or that the government is effecting a regulatory taking of their purported ownership interests in an entity, Relief Defendant Berkeley Healthcare Dynamics, LLC ("BHD, LLC"), which in turn supposedly owns real property. *See* Non-parties' Opp. at 22-24.

A "takings" claim against the government is properly submitted as a noticed motion, which gives the government a full opportunity to respond. However, rather than insist that Non-parties file a separately noticed motion (and seek Court approval to do so), the SEC files this opposition to both affect expediency and to provide the Court with relevant law and facts pertinent to addressing Non-parties' Constitutional attack on this Court's authority to order critical remedial relief that is in the interest of all investors and creditors of the receivership estate. (The SEC previously filed its Response to the Receiver's Motion, largely supporting her request and proposing minor modifications to her proposed order. *See* ECF 293.)

Non-parties' takings claim fails for several reasons. First, Non-parties fail to state a legally cognizable taking. Indeed, it is unclear precisely who they claim is the governmental actor. Second, Non-parties have failed to even allege that the purported taking was "without just compensation," as required under the Sixth Amendment for any such claim to be cognizable, or ripe. The claims process has not yet begun in this case. Rather, Non-parties attack the Court's authority to issue orders, arguing that the Receiver should be stopped before she can effect the purported taking, further asserting that the Receiver's requested relief is so unusual or rare that it somehow effects a taking. *See* Non-Party Opp. at 16. Numerous federal courts have authorized the sale of real property by receivers in a multitude of situations, including property titled in the name of relief defendants such as Relief Defendant BHD, LLC.

In addition to the legal infirmity of their takings claim, Non-parties make little effort to

articulate a factual basis for their takings claim. Instead, they make the conclusory declaration that a sale of the warehouse (to anyone other than their preferred buyer) would interfere with their "investment-backed expectations," pointing only generally to "Operating Agreements." *Id*. at 23. Their vague factual theories further support the need for a robust examination of their claims through a claims process, where they would stand to receive compensation for any truly supported claims they have for the value of the real property. Indeed, the Non-parties' suggested cure for their alleged taking – in the form of a purchaser who pays the Non-parties, instead of the Receiver, for the value of the warehouse – suggests a goal of avoiding the claims process so that they are never required to substantiate the basis for their claims against the receivership estate. Their takings claim, and their requested delay of the sales process, should be rejected.

### *Legal Standards for Establishing a "Takings" Claim*

The Takings Clause of the Fifth Amendment prohibits the taking of private property for public use without just compensation. United States Const. Amend. V. Courts recognize two types of compensable takings. The first are those which effect a permanent, "physical invasion" of private property. *Golden Pac. Bancorp v. United States,* 15 F.3d 1066, 1071 (Fed. Cir. 1994). In the second, a regulatory scheme may go "too far" if it has nearly the same effects as the complete destruction of the claimant's rights, and constitutes a compensable taking. *Id*. at 1072. The latter claims are analyzed on a case-by-case basis, with consideration given to "the character of the governmental action, its economic impact, and its interference with reasonable investment-backed expectations." *Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 83 (1981). "[N]either property rights nor contract rights are absolute . . . Equally fundamental with the private right is that of the public to regulate it in the common interest. . . ."[T]he guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the objective sought to be attained." *Id*. at 84-85 (*quoting Nebbia v. New York*, 291 U.S. 502, 523, 525). *See Penn Central Transp. Co. v. City of New York*, 438 U.S. 104 (1978) (describing case-by-case, factual analysis required when a regulatory taking is claimed).

Non-parties appear to posit a third type of "judicial takings" claim. As the precedent upon

which Non-parties rely recognized: "[T]he United States Supreme Court is divided on the question of whether a judicial action may, itself constitute a taking." *Surfrider Found. v. Martins Beach 1, LLC*, 14 Cal. App. 5th 238, 258 (2017) (citations omitted).  Non-parties ignore this division, even though they cite the very same precedent as establishing the judicial takings doctrine.  *See* Non-parties Opp. at 22, citing *Stop the Beach Renourishment Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 715 (2010) (Scalia, J., plurality).  As the *Surfrider* decision observed, an equally-divided plurality of the Supreme Court considered that a court decision could theoretically effect a compensable taking (though not in that case), while an equal number of Justices declined to determine whether the actions of a court could *ever* effect a taking.  *See Surfrider*, 15 Cal. App. 5th at 260-61 (*citing Stop the Beach*, 560 U.S. at 715, 727, 733-34).[1]  Non-parties also declare that the Ninth Circuit "recognized the viability of the judicial takings doctrine" in *Vandevere v. Lloyd*, 644 F.3d 947, 963 n.4 (9th Cir. 2011), but the footnote they cite merely refers to the theoretical point addressed by the plurality decision in *Stop the Beach*.  As is true for each of the other cases upon which Non-parties rely, no taking of a compensable property interest was found in *Vandevere*.

### *Non-parties Fail to Assert a Cognizable "Takings" Claim*

Non-parties' Opposition is especially vague in describing the nature of the "property interest" they claim will be (but has not yet been) taken if the Court were to approve the Receiver's motion to hire a broker to market the warehouse property.  At most, Non-parties claim they have "valid contracts at issue [that] include the BHD Operating Agreement, which establish rights under California law, as described and invoked by the Receiver, to the purchase of a Former Member's minority interest by a majority of the remaining members." Non-parties' Opp. at 23.  This vague statement is a far cry from the showing any litigant must make to establish a taking without just compensation; but based on the record evidence, Non-parties would not be able to establish a

---

[1] The concurrence by Justice Breyer (in which Justice Ginsburg joined) warned that such a judicial takings doctrine "would invite a host of federal takings claims without the mature consideration of potential procedural or substantive legal principles that might limit federal interference in matters that are primarily the subject of state law." *Stop the Beach,* 560 U.S. at 743 (Breyer, J., concurring).  Justice Kennedy found that the Due Process Clause better explained limitations on judicial power.  *Id*. at 735 (Kennedy, J., concurring).

compensable taking based upon these contracts, in any event.

The very precedent Non-parties rely upon makes clear that "prospective business opportunities" are not compensable. *PVM Redwood Co., Inc. v. United States*, 686 F.3d 1327, 1329 (9th Cir. 1982). Thus, in *PVM Redwood* – contrary to Non-parties' argument (*see* Opp. at 23) – the Ninth Circuit upheld the dismissal of a takings claim that was founded on a theory, similar to Non-parties' theory here, that government action had thwarted future business opportunities that they had contracted (or hoped to contract) for. *Id*.[2] Similarly, Non-parties' vague assertion of potential contract rights finds no support from *Keeler v. City of San Diego*, 2014 WL 1796710 (S.D. Cal. 2014), which they also cite. *See* Non-parties' Opp. at 23. As the district court described in *Keeler*, a takings claim must be founded on a property interest that is recognized under state law. *Id*. at *3. "But a mere unilateral expectation or an abstract need is not a property interest entitled to protection." *Id*. (*quoting Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 161 (1980)). Ultimately, the district court in *Keeler* was unable to determine whether the claimed interest – a judgment lien – was a protected state property interest, but dismissed the claim for failure to plead that the defendant had engaged "in any recognized form of a taking." *Id*. at *7.

Finally, Non-parties ask this Court to consider their claim under the regulatory takings analysis of *Penn Central*, in which the Supreme Court described the various factors courts have used to examine both the nature of the claimed encroachment on a property right, as well as the public good promoted by a governmental policy, to determine whether there is a compensable taking. *See* Non-parties Opp. at 23-24. By invoking *Penn Central*, Non-parties appear to contend that the claimed taking is akin to a regulatory taking, but they assert that "there is no question that the proposed returns from such a liquidation would not go toward public programs promoting the common good." *Id*. at 24. Non-parties' contention is specious. The Court has put in place a Receiver to manage the assets of the entity defendants and relief defendants, including Relief Defendant BHD, LLC, to ensure the fair and equitable marshalling and maintenance of those assets over which

---

[2] Non-parties appear to have mistaken the dissenting opinion of one judge for the holding by the Ninth Circuit in their brief. *See* Non-parties' Opp. at 23 (*citing PVM Redwood*, 6686 F.2d at 330 (Alarcon, J., dissenting)).

numerous investors and creditors are expected to assert claims. The appointed Receiver is not requesting authorization to market the warehouse property to enrich *herself*, or any other particular individual; her mission is one classically established for the public good.[3] Indeed, if she is able to do her job, Non-parties themselves stand to benefit, if they do have valid claims against the receivership estate.

### *Non-parties Cannot Establish a Taking "Without Just Compensation"*

Non-parties' failure to show that they will not receive "just compensation" is similarly fatal to their claim. In short, Non-parties have not yet engaged in the claims process that the Receiver will administer, and any takings claim is therefore not ripe. Lack of ripeness is fatal to any takings claim. *See, e.g., Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.,* 452 U.S. 264, 297 (1981) (challenge to mining act was not ripe where claimants had not availed themselves of administrative proceedings and Court found that "a mutually acceptable solution might well be reached with regard to individual properties"); *Agins v. Tiburon,* 447 U.S. 255, 260 (1980) (challenge to zoning ordinance as a regulatory taking was not ripe where owners had not submitted development plan); *Penn Central*, 438 U.S. at 136-37 (finding that, on the record presented, appellants could not show that they had been prohibited from occupying "*any* portion" of the airspace over Grand Central Terminal, rendering their claim of a taking of air rights premature).

As a critical corollary to the ripeness requirement, a taking of property for public use may not be enjoined or stopped if it can be compensated. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984). "The Fifth Amendment does not require that compensation precede the taking." *Id.* (citation omitted). Non-parties ignore this requirement entirely, instead merely declaring that the Receiver's lawful request should be denied so that their own proposal may be heard first. Non-parties fail to cite any authority that would support their extraordinary request. Just as significant, by

---

[3] Indeed, to the extent the Non-parties claim a so-called "judicial" taking will be effected by a Court order granting the Receiver the relief she seeks, the order requested from the Court is one grounded in its equitable powers. Moreover, this entire action is brought under the federal Securities Acts, which were enacted to support the public's interest in fair and reliable securities markets. It is difficult under these circumstances to ascertain how any the "government" actions here are not designed to promote the common good.

suggesting that a deal that they would craft for the sale or "restructuring" of the warehouse – rather than one the Receiver might select after following the dictates of 28 U.S.C. § 2001 to achieve a fair and competitive result – Non-parties implicitly concede that they are merely arguing over how much money they should ultimately receive and who they should have to share the bounty with. Such questions are best considered based on a complete record, only after Non-parties have fully substantiated any claims they may make to the Receiver in an orderly and robust claims process.

### *Real Property Sales by a Receiver Are Not Unprecedented, Much Less a "Taking"*

Non-parties also appear to argue that a Receiver's marketing or sale of real property before a judgment constitutes a taking. *See* Non-parties' Opp. at 14 ("The Receiver cites no federal case that has approved a Receiver's request to liquidate property owned and controlled by innocent parties. More fundamentally, the Receiver is asking this Court to authorize an unconstitutional taking of private property."). Non-parties' argument rests on numerous factual fallacies (particularly about what Non-parties own and "control"), which the SEC does not here address, but just as fundamentally misstates the law. First, Non-parties presume – without any legal basis – that the sale of real property is akin to "liquidation of a business" through bankruptcy. It is not, as the statute controlling such sales makes clear. *See* 28 U.S.C. § 2001(c) (distinguishing judicial sales of real property by a receiver from the bankruptcy code).

Second, it is not extraordinary for courts to approve the marketing or sale of real property by a receiver, whether or not a "final judgment" has been entered against any party. *See, e.g., Smith v. SEC*, 653 F3d 121, 129 (2d Cir. 2011) (in upholding the district court's order for a prejudgment sale of a home owned in part by the relief defendant, analogizing to prejudgment sales pursuant to forfeitures); *SEC v. Millenium Bank*, 2009 WL 10689053 (N.D. Tex. July 21, 2009) (rejecting relief defendant's due process claim and ordering sale of property used as residence but purchased with funds obtained in Ponzi scheme); *SEC v. Billion Coupons, Inc.*, 2009 WL 2143531, *3-4 (D. Haw. July 13, 2009) (granting receiver's motion to establish procedures for sale of real and personal property, filed prior to motion for judgment).

That is precisely what the district court ordered in *SEC v. Path America, LLC*, 2016 WL 1588384 (W.D. Wash. Apr. 20, 2016), the EB-5 decision on which Non-parties rely. There, the court

granted in large part the Receiver's motion to market the real property, over objections from the defendant and certain relief defendants. But the Court also ordered that the Receiver market the property both "AS-IS, WHERE-IS," and in a manner seeking bids to complete the original EB-5 real estate development project, in an effort to protect the immigration goals of investors. Notably, no final judgments against any of the defendants or relief defendants had been entered, the project that was marketed involved interests titled in the name in numerous defendants and relief defendants (and interests held by third parties and creditors), and the Receiver's motion had been opposed.

Indeed, Non-parties attempt to distinguish a decision cited by the Receiver in her motion, *SEC v. Am. Capital Invs., Inc.*, 98 F.3d 1133 (9th Cir. 1996), on the ground that a judgment by consent was entered before the proposal for a sale was made to the court. *See* Non-parties' Opp. at 16, 17-18. This is a distinction without a difference in the instant case: the Receiver, who by Court order controls Relief Defendant BHID, LLC, could as readily agree to consent to a judgment against it prior to any sale. Moreover, Non-parties frequent use of the phrase "innocent third parties" does not help their cause, as it simply overlooks the obvious fact that BHD, LLC is a named Relief Defendant because it obtained, and continues to hold, property wrongfully without a bona fide claim to it. *See* Complaint (ECF 1), ¶¶ 31, 108-110; SEC's Mot. for Prelim. Inj. and Appt. of Receiver (ECF 10) at 6, 18-19 (and evidence cited). In any event, even if the Receiver's request were a "rare" or unusual one, such rarity does not transform the lawful exercise of her duties into a "taking." And Non-parties have suggested no authority for such an extreme position.

Accordingly, the SEC respectfully requests that the Court reject Non-party Intervenors' takings claim and instead permit Non-parties to avail themselves of the claims process to be established for this case.

Dated: January 5, 2018

Respectfully submitted,

/s/ *Susan F. LaMarca*
Susan F. LaMarca
Andrew J. Hefty
Thomas Eme
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION