JEFFER MANGELS BUTLER & MITCHELL LLP
BENNETT G. YOUNG (Bar No. 106504)
byoung@jmbm.com
JOSEPH N. DEMKO (Bar No. 113104)
jdemko@jmbm.com
Two Embarcadero Center, 5th Floor
San Francisco, California 94111-3813
Telephone: (415) 398-8080
Facsimile: (415) 398-5584

Special Counsel for Receiver Susan L. Uecker

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

SAN FRANCISCO REGIONAL CENTER, LLC; THOMAS M. HENDERSON; CALIFORNIA GOLD MEDAL, L.P.; CALL SOCKET, L.P.; CALL SOCKET II, L.P.; CALLSOCKET III, L.P.; COMPREHENSIVE CARE OF OAKLAND, L.P.; NA3PL, L.P.; WEST OAKLAND PLAZA, L.P.; CALLSOCKET, LLC, CALLSOCKET II, LLC; CALLSOCKET III, LLC; COMPREHENSIVE CARE OF CALIFORNIA, LLC; IMMEDIA, LLC; and NORTH AMERICA 3PL, LLC,,

Defendants.

-and-

CALLSOCKET HOLDING COMPANY, LLC; CALLSOCKET III HOLDING COMPANY, LLC; BERKELEY HEALTHCARE DYNAMICS, LLC; CENTRAL CALIFORNIA FARMS, LLC; and JL GATEWAY, LLC,

Relief Defendants

Case No. 3:17-CV-00223-RS

**DECLARATION OF SUSAN L. UECKER IN SUPPORT OF RECEIVER'S RENEWED MOTION FOR ORDER AUTHORIZING RECEIVER TO RETAIN REAL ESTATE BROKER TO LIST AND SELL REAL PROPERTY OF BERKELEY HEALTHCARE DYNAMICS, LLC**

Date: August 2, 2018
Time: 1:30 p.m.
Place: 450 Golden Gate Ave.
17th Floor, Ctrm. 3
San Francisco, CA 94102
Judge: The Hon. Richard Seeborg

I, Susan L. Uecker, declare:

1. I am the duly appointed the duly appointed receiver (the "Receiver") for Defendants San Francisco Regional Center, LLC ("SFRC"); California Gold Medal, L.P.; CallSocket, L.P.; CallSocket II, L.P.; CallSocket III L.P.; NA3PL, L.P. ("NA3PL, LP"); West Oakland Plaza, L.P.; CallSocket, LLC; CallSocket II, LLC; CallSocket III, LLC; Immedia, LLC; and Relief Defendants CallSocket Holding Company, LLC; CallSocket Holding III Holding Company, LLC; Central California Farms, LLC; and JL Gateway, LLC; Comprehensive Care of California, LLC; Comprehensive Care of Oakland, L.P. and North America 3PL, LLC ("NA3PL, LLC"), and Berkeley Health Care Dynamics, LLC ("BHD") pursuant to the Court's Order Appointing Receiver and Monitor entered herein on March 29, 2017 ("Appointing Order") (Docket No. 100) and the Court's June 5, 2017 Order Extending Scope of Receivership (the "Extension Order"). (Docket No. 171.) As Receiver, I am in possession of the books, records and files of BHD and NA3PL, LLC. The following facts are true of my own personal knowledge or based upon my review of the books and records of BHD and NA3PL, LLC, and if called as a witness, I would and could competently testify thereto, except as to those matters that are alleged upon information and belief, and as to those matters, I believe them to be true. I make this declaration in support of my Receiver's Renewed Motion for Order Authorizing Receiver to Retain Real Estate Broker to List and Sell Real Property of Berkeley Healthcare Dynamics, LLC Property (the "Motion").

2. I respectfully request, pursuant to paragraph 36 of the Appointing Order, that the Court enter an Order authorizing me to retain Colliers Parish International, Inc. dba Colliers International ("Colliers International") to list and sell the real property known as 1700 20th Street, Oakland, California (the "20th Street Warehouse"). At this time I seek only authority to retain Colliers International to list the warehouse. Once a buyer is identified, I will bring a further motion to confirm the sale of the 20th Street Warehouse and to escrow the net proceeds of sale

after paying the indebtedness owed to East West Bank and all undisputed transfers of EB-5 investor funds.

3. The 20th Street Warehouse is owned by Relief Defendant BHD. Although title to the 20th Street Warehouse is in the name of BHD, the tracing of funds from bank statements received from Marvin Tate, CPA indicates that the real property was purchased with funds from another EB-5 Defendant, CallSocket, L.P. Other than holding title to the real estate, BHD does not operate a business. As far as I am aware, BHD is solely a passive owner of real property, with no employees and no business operations.

4. According to the Buyer's Final Settlement Statement dated December 20, 2012, the 20th Street Warehouse was purchased for $8,250,000. A copy of the Buyer's Settlement Statement is attached as Exhibit 1. The purchase price was funded with $2,699,181.21 from SFRC, $100,000 from Clement Chin ("Chin") and a loan from Calmwater Capital 3, LLC in the amount of $6,200,000. The funds deposited by SFRC were EB-5 investor monies that had been transferred to SFRC from CallSocket, L.P. and the funds deposited by Chin were a loan, a portion of which has been repaid, as described below. Thus, over 96% of the funds used to purchase the 20th Street Warehouse were EB-5 investor monies.

5. The 20th Street Warehouse is an approximately 92,000 square foot warehouse building situated on a parcel of real property of about 4.75 acres. The 20th Street Warehouse was leased to NA3PL, LLC. I closed NA3PL, LLC, as authorized by the Court in its Order Granting Motion For Authorization to Close North America 3PL, LLC and Denying without Prejudice Motion to Retaining [sic] Broker for Listing and Sale of Warehouse. (Dkt. No. 336.) As a result, the property is currently vacant.

6. There has been significant interest in purchasing the 20th Street Warehouse. Although I have not listed the property and have not actively marketed it, I have received four unsolicited offers to purchase the property from four different interested parties. The highest of these unsolicited purchase offers is at $18.5 million and the offeror has indicated that it may be willing to increase its bid. The brokers for these parties have continued to contact me. Based on this and the information provided to me by Collier's International, I believe that the property most

likely can be sold for price of at least the amount of the unsolicited offer of $18.5 million and that there is a strong possibility of a sale for a higher price.

7. I have become aware that two different operating agreements exist for BHD, both of which have the same date. One operating agreement, dated October 17, 2012, lists as the members SFRC, Chin, and Kevin Shimamoto ("Shimamoto") and lists as the managers SFRC, Chin and Shimamoto. Under this operating agreement, SFRC had 50% of the equity and Shimamoto and Chin had 25% each. A copy of this operating agreement is attached as Exhibit 2.

8. The second operating agreement, also dated October 17, 2012, lists as the members Thomas Henderson ("Henderson"), Chin, and Shimamoto and lists these same three individuals as the managers of BHD. Under this operating agreement, Henderson had 50% of the equity and Shimamoto and Chin had 25% each. A copy of this operating agreement is attached as Exhibit 3. Both versions of the operating agreement are signed by Henderson, Chin, and Shimamoto.

9. As far as I can determine, neither Chin, Shimamoto, or Jennifer Bronson ("Bronson") ever contributed any capital to BHD. I understand that Chin lent $100,000 to Berkeley Healthcare Dynamics, L.P., the predecessor to BHD, in connection with the acquisition of the 20th Street Warehouse, but these funds were treated as debt, not equity. Of this amount, $20,000 has been repaid, leaving $80,000 still owing.

10. I am informed that in September 2014 BHD refinanced the 20th Street Warehouse with a loan from East West Bank. The promissory note payable to East West Bank and the deed of trust securing the note are both signed by Henderson, Chin and Shimamoto. A copy of the note and of the deed of trust are attached as Exhibit 4 and 5, respectively. The loan from East West Bank was personally guaranteed by, among others, Henderson, Chin, Shimamoto, and SFRC. A copy of the guaranty is attached as Exhibit 6. Bronson did not sign the loan documents and is not a guarantor of the loan. The principal amount currently outstanding is approximately $5,813,831 as of June 14, 2018 and the monthly payments are approximately $33,000.

11. I am further informed that in connection with the loan, BHD delivered to East West Bank a Limited Liability Company Resolution to Borrow/Grant Collateral. A copy of the Resolution is attached as Exhibit 7.

12. I am informed that in September 2014, BHD opened bank accounts at East West Bank. A copy of the signature card is attached as Exhibit 8.

13. I am informed that the members of NA3PL, LLC are Henderson, with a 40% interest; Chin, with a 25% interest; Shimamoto, with a 25% interest; and Bronson, with a 10% interest that purportedly was assigned to her by Henderson in January 2013.

14. Attached marked Exhibit 9 is an email dated October 2, 2015 that was sent from the email address jennifer@sfeb5.com to "Marvin". I understand that this is Jennifer Bronson's email address and that "Marvin" is Marvin Tate, the CPA for SFRC.

15. Attached marked Exhibit 10 is an email dated October 2, 2015 that was sent from the email address jennifer@sfeb5.com to Kevin Shimamoto, Clement Chin, and Tom Henderson, with a copy to Marvin Tate.

16. Attached marked Exhibit 11 is an email dated October 6, 2015 that was sent from the email address jennifer@sfeb5.com to Marvin Tate.

17. BHD is running out of cash. Because the 20th Street Warehouse is vacant, BHD has no revenues, but it continues to have the expenses of owning the real property. BHD's monthly expenses are approximately $57,000 per month. This figure includes monthly debt service of approximately $33,000 on the loan from East West Bank and $17,500 per month for 24 hour security services which is required given the property's location. Attached marked Exhibit 12 is a list of the monthly expenses of the property.

18. There are large expenses related to the 20th Street Warehouse which will have to be paid in the near future. The first installment of real property taxes in the approximate amount of $65,000 will be due December 1, 2018. In addition, the insurance on the property expires on November 9, 2018. The premium for the existing insurance policy was $40,555. A renewal policy will cost at least this much.

19. In my experience, obtaining insurance for a vacant building is often difficult as insurers perceive a greater degree of risk and are reluctant to underwrite a policy. Insurance can be hard to obtain and expensive

20. As of May 31, 2018, I had $279,117 on deposit in my accounts for BHD. Of this

amount, $200,000 is pledged as a reserve account for the benefit of East West Bank, leaving $79,000 in free cash. At the monthly burn rate of $57,000, the receivership account for BHD will soon be out of money, with no funds in BHD to pay the real property taxes and insurance premiums when those payments come due. I therefore believe that the 20th Street Warehouse should be sold promptly.

21. Attached marked Exhibit 13 is the North America 3PL Business Plan dated April 2014. Attached marked Exhibit 14 is the North America 3PL Business Plan dated April 2015.

22. I was given copies of three promissory notes, each of which is executed by NA3PL, LLC as borrower in favor of NA3PL, LP as lender (the "NA3PL Notes"). Copies of these notes are attached as Exhibits 15, 16, and 17. I understand that Intervenors dispute the validity of these notes and dispute the validity of BHD's guaranty.

23. I am informed that in February 2017, Randy Sugarman, at that time the managing member of SFRC, made a demand through counsel for payment of the past due payments on one of the NA3PL Notes. A copy of the demand letter is attached marked Exhibit 18. I am further informed that no payment was made in response to this demand.

24. Pursuant to the Order Granting Motion For Authorization to Close North America 3PL, LLC and Denying without Prejudice Motion to Retaining [sic] Broker for Listing and Sale of Warehouse (Dkt. No. 336.), my counsel and I met with Intervenors and their counsel on March 5, 2018. The parties have also exchanged a total of seven letters. The parties' discussions are at an impasse.

25. The parties agree that the net amount of EB-5 investor funds that were transferred to BHD and its predecessor, Berkeley Healthcare Dynamics, L.P., from SFRC and NA3PL, LP is $5,465,356.88 before interest. However, Intervenors dispute that the Receiver can recover the amount of EB-5 investor funds that were transferred to Berkeley Healthcare Dynamics, L.P., from SFRC and NA3PL, LP. The parties also do not agree on whether BHD is liable on its guaranty of the NA3PL Notes.

26. Intervenors have not provided to me evidence that Intervenors' proposed purchaser has the ability to perform and close the transaction proposed by Intervenors.

27. I have determined, in my business judgment, as set forth in greater detail below, that the 20th Street Warehouse should be listed for sale for the following reasons:

- BHD conducts no business, and only holds title to the 20th Street Warehouse. Given the strong real estate market and the large amount of equity in the property, the Receiver should be authorized to employ Colliers International to list the 20th Street Warehouse for sale to maximize the return to all investors.
- Since the court ordered wind down of NA3PL in February 2018 there has been no rental income. The ongoing debt service and other costs of maintaining the property are burdensome to the receivership estate.
- Available funds at May 31, 2018 are $279,117 which includes the operating account of $56,240 and East West reserve account of $222,877. The East West loan requires that BHD maintain the reserve, but the funds in the reserve account will need to be used to pay the mortgage commencing in July 2018.
- The insurance renewal comes up November 9, 2018 and will be difficult to renew and costly due to the vacant building.
- The Receiver has received three unsolicited offers from potential purchasers. She is confident that if the property is marketed, these offers will increase benefitting the estate.

28. Pursuant to Paragraph 36 of the Appointment Order, I am "authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the receivership estates." I request authorization to enter into an Exclusive Authorization to Sell Agreement ("Listing Agreement") with Colliers Parrish International, Inc., dba Colliers International for the listing, marketing and sale of the 20th Street Warehouse. Any sale of the property will the subject of a separately noticed motion, and subject to overbidding. A true and correct copy of the Listing Agreement is attached as Exhibit 19. Pursuant to the terms of the Listing Agreement:

- The Listing Agreement is for 3 months after court approval is received;
- The broker's commission shall be 3%;
- All sales are subject to court approval; and
- Dual agency is prohibited.

29. I believe that the Listing Agreement is in the best interest of the receivership estate because Colliers International has extensive experience in the commercial real estate market for

Alameda County; the commission is limited to 3% and dual agency is prohibited. I request approval of the Listing Agreement pursuant to Paragraph 36 of the Appointment Order.

30. Attached marked Exhibit 20 is the internally prepared balance sheet for SFRC as of October 31, 2015.

31. Attached marked Exhibit 21 is a copy of the SFRC Employee Handbook.

32. Attached marked Exhibit 22 is a copy of a Loan Agreement dated March 14, 2014 between North America 3PL, LLC as borrower and NA3PL, L.P. as lender.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on the 18th day of June, 2018 at San Francisco, California.

*/s/ Susan L. Uecker*
Susan L. Uecker

JMBM Jeffer Mangels Butler & Mitchell LLP