# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by and between Leeds Disston ("Disston") and Casalina & Disston ("Casalina") on the one hand, and Susan L. Uecker, Receiver ("Receiver") on the other hand, (collectively, the "Parties"). This Agreement is entered into with reference to the following facts and recitals.

## RECITALS

A.     On January 17, 2017, the Security and Exchange Commission ("SEC") commenced that litigation entitled *Securities and Exchange Commission v. San Francisco Regional Center, LLC*; *Thomas M. Henderson*; *California Gold Medal, L.P.*; *CallSocket, L.P.*; *CallSocket II, L.P.*; *CallSocket III L.P.*; *Comprehensive Care of Oakland, L.P.*; *NA3PL, L.P.*; *West Oakland Plaza, L.P.*; *CallSocket, LLC*; *CallSocket II, LLC*; *CallSocket III, LLC*; *Comprehensive Care of California, LLC* ; *Immedia, LLC*; *North America 3PL, LLC*, Defendants, and *CallSocket Holding Company, LLC*; *CallSocket III Holding Company, LLC*; *Berkeley Healthcare Dynamics, LLC*; *Central California Farms, LLC*; *and JL Gateway, LLC*, Relief Defendants in the United States District Court for the Northern District of California (the "District Court") as Case No. 3:17-cv-00223-RS (the "Action").

B.     On January 20, 2017, the SEC filed a motion seeking, among other relief, an order appointing a receiver over the entity Defendants and Relief Defendants.  The District Court entered the Order Granting Motion for Preliminary Injunction and to Appoint a Receiver on March 23, 2017, pursuant to which the Court, among other things, appointed Susan L. Uecker as Receiver over Defendants San Francisco Regional Center, LLC ("SFRC"); California Gold Medal, L.P.; CallSocket, L.P.; CallSocket II, L.P.; CallSocket III L.P.; NA3PL, L.P.; West Oakland Plaza, L.P.; CallSocket, LLC; CallSocket II, LLC; CallSocket III, LLC; Immedia, LLC; and Relief Defendants CallSocket Holding Company, LLC; CallSocket III Holding Company, LLC; Central California Farms, LLC; JL Gateway, LLC (the "Receivership Defendants"); and as Monitor over Defendants Comprehensive Care of California, LLC; Comprehensive Care of Oakland, L.P.; North America 3PL, LLC; and Relief Defendant Berkeley Healthcare Dynamics, LLC (the "Monitor Defendants"). Pursuant to the terms of the Order Granting Motion for Preliminary Injunction and Motion to Appoint a Receiver, on March 29, 2017 the Court entered the Order Appointing Receiver and Monitor ("Appointment Order").

C.     On June 5, 2017, the Court entered its Order Extending Scope of Receivership appointing Susan Uecker as Receiver over the Monitor Defendants Comprehensive Care of California, LLC; Comprehensive Care of Oakland, L.P.; North America 3PL, LLC; and Relief Defendant Berkeley Healthcare Dynamics, LLC.  The Receivership Defendants and the Monitor Defendants are collectively referred to herein as the "Receivership Entities."  The Receiver had previously been appointed receiver over various entities in the Alameda County Superior Court Case No. RG15778891.

D.     Prior to the appointment of the Receiver, Leeds Disston of Casalina & Disston was counsel for all or some of the Receivership Entities, and obtained funds from some of the

entities for legal fees and other expenses, which funds were deposited into a trust account held by Casalina & Disston under the name of SFRC ("SFRC Trust Account").

     E.     Shirley Ma paid SFRC the sum of $1,000,000 ("Ma Proceeds") which funds were deposited into the Casalina & Disston SFRC Trust Account.

     F.     Thomas M. Henderson ("Henderson") who is also named as a Defendant in the Action, owns an interest with Aileen Yen in a single family residence located at 666 Mandana Boulevard, Oakland, California 94610 ("Mandana Property").

     G.     Henderson and Aileen Yen owed, among other debts, the sum of $1,000,000 to Community Bank of the Bay ("Community Bank") pursuant to that Promissory Note dated November 6, 2014, Secured by a Deed of Trust which encumbers the Mandana Property ("Community Bank Note and Deed of Trust"). A true and correct copy of the Community Bank Note and Deed of Trust are attached hereto as **Exhibit A,** as modified by subsequent agreements.

     H.     Disston transferred the Ma Proceeds to the Community Bank in exchange for an assignment of the Community Bank Note and Deed of Trust in Disston's favor ("Assignment"). A true and correct copy of the Assignment is attached hereto as **Exhibit B.** Community Bank transferred the original Note and Deed of Trust to Disston.

     I.     The Receiver contends that the transfer of the Ma Proceeds to the Community Bank in payment of Henderson's obligation in exchange for the Assignment of the Community Bank of the Bay Note and Deed of Trust to Disston is a voidable transfer pursuant to California Civil Code Section 3439 et seq., and the Receiver is entitle to avoid the transfer and obtain the Community Bank Note and Deed of Trust.

     J.     Disston contends that the Assignment was security for his legal fees, and he is owed the sum of $877,000, in addition to sums he has been paid to date. Disston contends that prior to the Assignment, his legal fees were secured by an assignment of profits owed to SFRC by Comprehensive Care of California, LLC.

     K.     The Receiver contends that there are additional basis to void the Assignment and object to any claim that Disston or Casalina & Disston may have in the Receivership Estate.

     L.     The Parties wish to resolve their disputes without the need for litigation.

     WHEREFORE, in consideration of the foregoing recitals and the acts required by this Agreement, the parties hereby agree as follows:

## AGREEMENT

     **1.**     **Incorporation of Recitals**. The Recitals in Paragraphs A through L form a material part of this Agreement and are fully incorporated herein, and made a part hereof.

     **2.**     **Effective Date Of Agreement**. The "Effective Date" of this Agreement shall be 61 days after the date on which the District Court enters an order approving this Settlement.

3.     **Settlement Terms**. Within 15 days after the Effective Date, Disston will execute an assignment of his interests in the Community Bank Note and Deed of Trust substantially in the form attached hereto as **Exhibit C** ("Disston Assignment"), and turn over the original executed version of the Community Bank Promissory Note, all modifications, the Deed of Trust, and Assignment (collectively "New Assignment Document"). Upon receipt of the executed Disston Assignment and the New Assignment Documents, the Receiver will pay Disston the sum of $150,000. In addition, the Casalina and Disston claim in the Receivership Estate will be allowed in the sum of $250,000 ("Disston Receivership Estate Claim"). The Receiver makes no representations or warranties on the amount of the pro rata distributions to creditors that will be paid, and thus makes no representations or warranties on the amount of the distribution that Disston shall receive on the Disston Receivership Estate Claim.

4.     **Release of the Receiver**.

A.     Release. Conditioned on the full execution of this Agreement, the consideration of which is hereby acknowledged, Disston and Casalina, each and on behalf of all their successors, representatives, attorneys, assigns, devisees, or transferees (the "Disston Releasors") hereby fully and completely release, remise, acquit and forever, absolutely and unconditionally discharge the Receiver, and each and all of her agents, employees, contractors, attorneys, representatives, devisees, assigns, transferees, and successors (collectively, the "Receiver Releasees") from any and all actions, causes of actions, claims, demands, rights, debts, obligations, liabilities, interests, contracts, duties, damages, costs, attorneys' fees, expenses or losses of every kind, nature, character, or description whatsoever, by whomever asserted, whether known or unknown, anticipated or unanticipated, direct or indirect, fixed or contingent, arising from any matter, cause or thing, whatsoever occurred, done or omitted, as of the Effective Date of this Agreement relating to any matters arising out of, related to or connected with (a) the receivership in the Action; (b) the Receivership Entities; and (c) any and all claims asserted in the Action, and all claims arising out of or related to the events described therein (collectively, "Disston Released Claims").

B.     Waiver of Civil Code Section 1542. Conditioned on the full execution of this Agreement, the consideration of which is hereby acknowledged, and the payment of $150,000, and an allowed claim in the sum of $250,000, it is intended that the release in Paragraph 3.A. above shall be effective as a bar to each and every action, cause of action, claim, liability, obligation, damage, right, interest, injury, loss, salary, commission, benefit, attorney fee and cost, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, that the Disston Releasors may have against the Receiver, on the other hand, relating to any matters arising out of, related to or connected with Disston Released Claims, and the Disston Releasors expressly waive any and all rights under Section 1542 of the California Civil Code, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED THE SETTLEMENT WITH THE DEBTOR.

Provided, however, nothing contained in Paragraph 4.A. and this Paragraph 4.B. shall release or relieve the Receiver Releasors of her representations, warranties, covenants, obligations, undertakings and agreements under this Agreement of which the Receiver in her representative capacity shall remain fully liable and obligated therefor and shall survive the execution and delivery of this Agreement.

5. **Releases of Disston and Casalina & Disston**.

A. <u>Release</u>. Conditioned on (a) the District Court's prior approval of this Agreement, (b) the full execution of this Agreement, the consideration of which is hereby acknowledged, and (c) timely receipt of the New Assignment Documents, the Receiver on behalf of herself and all of the Receivership Defendants and Relief Defendants, and each of their representatives, attorneys, assigns, devisees, or transferees (the "Receiver Releasors"), on the one hand, hereby fully and completely release, remise, acquit and forever, absolutely and unconditionally discharge Disston and Casalina of and from any and all actions, causes of actions, claims, demands, rights, debts, obligations, liabilities, interests, contracts, duties, damages, costs, attorneys' fees, expenses or losses of every kind, nature, character, or description whatsoever, by whomever asserted, whether known or unknown, anticipated or unanticipated, direct or indirect, fixed or contingent, arising out of, related to or connected with (a) the receivership in the Action; (b) the Receivership Entities; and (c) any and all claims asserted in the Action, and all claims arising out of or related to the events described therein (collectively, the "Receiver Released Claims"). Any release of the Receiver Released Claims against Disston and Casalina by the Receiver in this Agreement is undertaken solely in the Receiver's capacity as the court-appointed Receiver in the Action, is made only subject to and conditioned upon approval by the District Court of this Agreement, and does not include the waiver of any claims that third parties may have.

B. <u>Waiver of Civil Code Section 1542</u>. Conditioned on (a) the full execution of this Agreement, the consideration of which is hereby acknowledged, (b) timely receipt of the executed New Assignment Documents, and (c) prior approval of this Agreement by the District Court, it is intended that the release in Paragraph 4.A. above shall be effective as a bar to each and every action, cause of action, claim, liability, obligation, damage, right, interest, injury, loss, salary, commission, benefit, attorney fee and cost, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, that the Receiver Releasors may have against the Disston Releasees relating to any matters arising out of, related to or connected with the Receiver Released Claims. To that extent, the Receiver Releasors expressly waive any and all rights under Section 1542 of the California Civil Code, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED THE SETTLEMENT WITH THE DEBTOR.

Provided, however, nothing contained in Paragraph 5.A. and this Paragraph 5.B. shall release or relieve the Disston Releasors from their representations, warranties, covenants, obligations, undertakings and agreements under this Agreement of which Disston and Casalina & Disston

shall remain fully liable and obligated therefor and shall survive the execution and delivery of this Agreement.

6.    **Sole Owner Of Released Claims**.  The Parties each warrant and represent that each has not assigned, transferred or otherwise encumbered any of the claims, demands, causes of action or interest herein settled, released, assigned, or transferred including, without limitation, any of the Receiver Released Claims or the Disston Released Claims, or any portion thereof, and that the Parties are each  fully entitled and authorized to enter into this Agreement. Disston and Casalina   each further represent and warrant that his or her rights and obligations under this Agreement are not subject to any claims by a bankruptcy estate, bankruptcy trustee, assignee for the benefit of creditors, receiver, liquidation estate or dissolution estate.  Disston and Casalina each agree to protect, defend, indemnify and hold harmless the Receiver Releasees from and against any claim, demand, damage, debt, liability, account, obligation, cost, expense, lien, action and cause of action, including the payment of attorney's fees and costs actually incurred, whether or not litigation be commenced, based on, in connection with, or arising out of any such assignment, transfer or encumbrance in any way related to the Receiver Released Claims.

7.    **Covenant Not To Sue**.  The Parties each covenant  and agree  to forever refrain from instituting, prosecuting, maintaining or aiding in the commencement or prosecution of any action to enforce any  Released Claim set forth herein.

8.    **Choice of Law**.  This Agreement shall be construed in accordance with and all disputes hereunder shall be controlled by the laws of the State of California without regard to California's choice of law rules.

9.    **Severability**.  In the event any provision of this Agreement is held to be invalid, void, voidable, illegal or unenforceable, the remaining provisions of this Agreement will remain in full force and effect.

10.   **Authority**.  Disston and Casalina each represent  and warrant that they have the full right, power, legal capacity and authority to execute and enter into this Agreement and to execute all other documents and perform all other duties as may be necessary or required in connection with the performance of this Agreement.  No approval or consent not heretofore obtained by any person or entity is necessary in connection with the execution of this Agreement by Disston or Casalina , for the performance of their obligations under this Agreement.  The Receiver's execution and performance of this Agreement is subject to and conditioned upon prior approval of this Agreement by the District Court.

11.   **Advice of Counsel**.  The Parties, and each of them, have read this Agreement and have had the benefit of legal counsel in entering into the same and each warrants, represents and agrees that they and each of them each understands all of the terms and the legal effect of this Agreement and each is voluntarily executing the same of their own free will.  In the event that any party elects not to utilize such counsel, such party does so of such party's own free will and election. Disston is an attorney authorized to practice law in the State of California as of the date of this Agreement.

12. **Counterpart Execution**. This Agreement is being executed in one (1) or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The Parties agree that signatures to this Agreement transmitted via facsimile, electronically and/or photocopies of signatures have the same force and effect and are considered the same as originals.

13. **Entire Agreement**. This Agreement together with the Assignment of the Community Bank Note and Deed of Trust and the Court Order approving this Agreement constitute the entire agreement and understanding between the Parties in relation to the subject matter hereof and there are no promises, representations, warranties, conditions, provisions or terms related thereto other than those set forth in this Agreement. This Agreement together with the Assignment of the Community Bank Note and Deed of Trust, supersedes all previous understandings, agreements and representations between the Parties. Each party acknowledges that no other party, nor any agent or any attorney of any party, has made any promise, representation or warranty whatsoever, express or implied, not expressly contained herein, concerning the subject matter hereto so as to induce such party to execute and perform this Agreement, and each party acknowledges that he or she has not executed this Agreement in reliance on any promise, representation or warranty, express or implied, which is not contained herein.

14. **No Waiver**. No waiver in any instance by any party of any provision of this Agreement shall be deemed a waiver by such party of such provision in any other instance or a waiver of any other provision hereunder in any instance.

15. **Amendment**. This Agreement cannot be modified except in writing signed by all of the respective Parties hereto.

16. **Time of Essence**. Time is of the essence under this Agreement.

17. **Headings**. The Section headings of this Agreement and titles given to Exhibits are for reference purposes only and are to be given no effect in the construction or interpretation of this Agreement.

18. **No Admissions or Denials**. By entering this Agreement, neither party admits nor denies any allegations related to the disputes set forth herein or any other claims that are being released as a result of this Agreement.

19. **Attorneys' Fees**. In the event any Party brings an action at law or in equity to enforce, interpret, or redress the breach of this Agreement (including, without limitation, any suit, arbitration, entry of judgment, post-judgment motion or enforcement, appeal, bankruptcy, litigation, attachment or levy) the prevailing Party in such action shall be entitled to his/her/its litigation expenses and reasonable attorneys' fees incurred in additional to any other relief as may be provided by law.

20. **Parties To Bear Own Costs**. Disston and Casalina & Disston shall each bear their own costs and attorneys' fees incurred in or related to this Agreement. The Receiver's costs and attorneys' fees incurred in or related to the Action, the receivership, and prior dealings

of the parties and to the negotiation, preparation and execution of this Agreement shall be governed by receivership law.

**21.**   **Notices.**   Unless otherwise expressly provided for herein, any notice or legal service to be delivered pursuant to this Agreement shall be in writing and shall be deemed delivered upon service, if served personally or by overnight courier (i.e., Federal Express), or three (3) days after deposit in the United States Mail if mailed by first class mail, postage prepaid, registered or certified with return receipt requested, and addressed to the other party at the following address, or such address as may be designated in accordance herewith, with a courtesy copy to be served at the email address indicated:

If to Leeds Disston and Casalina & Disston:

Leeds Disston
Casalina & Disston
409 13th Street, 9th Floor
Oakland, Ca 94612
casdiss@yahoo.com

If to the Receiver:

Susan L. Uecker, Receiver
Uecker & Associates, Inc.
1613 Lyon Street, Suite A
San Francisco, California 94115

and a copy to:

Tracy Green
Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, California 94607
tgreen@wendel.com

IN WITNESS WHEREOF, the undersigned have executed and delivered this Settlement Agreement on the date set forth opposite their respective signatures below.

Dated: _____          _____
                                                              Susan L. Uecker, Receiver

Dated: 7/2/2018                                   _____
                                                              Leeds Disston

                                                              CASALINA & DISSTON

Dated: 7/2/2018                                   _____
                                                              Leeds Disston, Partner

009589.0024\5116380.3                                              7

of the parties and to the negotiation, preparation and execution of this Agreement shall be governed by receivership law.

21. **Notices**. Unless otherwise expressly provided for herein, any notice or legal service to be delivered pursuant to this Agreement shall be in writing and shall be deemed delivered upon service, if served personally or by overnight courier (i.e., Federal Express), or three (3) days after deposit in the United States Mail if mailed by first class mail, postage prepaid, registered or certified with return receipt requested, and addressed to the other party at the following address, or such address as may be designated in accordance herewith, with a courtesy copy to be served at the email address indicated:

If to Leeds Disston and Casalina & Disston:

Leeds Disston
Casalina & Disston
409 13th Street, 9th Floor
Oakland, Ca 94612
casdiss@yahoo.com

If to the Receiver:

Susan L. Uecker, Receiver
Uecker & Associates, Inc.
1613 Lyon Street, Suite A
San Francisco, California 94115

and a copy to:

Tracy Green
Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, California 94607
tgreen@wendel.com

IN WITNESS WHEREOF, the undersigned have executed and delivered this Settlement Agreement on the date set forth opposite their respective signatures below.

Dated: 7/11/18                          _____
                                         Susan L. Uecker, Receiver

Dated: _____          _____
                                         Leeds Disston

                                         CASALINA & DISSTON

Dated: _____          _____
                                         Leeds Disston, Partner

009589.0024\5116380.3                    7

# EXHIBIT A
# TO
# SETTLEMENT AGREEMENT

# PROMISSORY NOTE



| Principal | Loan Date | Maturity | | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,000,000.00 | 11-06-2014 | 11-06-2015 | | 141 / 61 | | MS | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**   THOMAS M. HENDERSON
AILEEN YEN
1 EMBARCADERO WEST #365
OAKLAND, CA 94607

**Lender:**   Community Bank of the Bay
Main Office
180 Grand Avenue, Suite 1550
Oakland, CA 94612
(510) 433-5400

---

**Principal Amount: $1,000,000.00**          **Interest Rate: 5.500%**          **Date of Note: November 6, 2014**

**PROMISE TO PAY.** I ("Borrower") jointly and severally promise to pay to Community Bank of the Bay ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million & 00/100 Dollars ($1,000,000.00), together with interest on the unpaid principal balance from November 6, 2014, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 5.500%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** I will pay this loan in one principal payment of $1,000,000.00 plus interest on November 6, 2015. This payment due on November 6, 2015, will be for all principal and all accrued interest not yet paid. In addition, I will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning December 6, 2014, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. All payments must be made in U.S. dollars and must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 5:00 PM Pacific Time, Lender will credit my payment on the next business day.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Community Bank of the Bay, 180 Grand Avenue, Suite 1550 Oakland, CA 94612.

**LATE CHARGE.** If a payment is 11 days or more late, I will be charged 6.000% of the unpaid portion of the principal and interest overdue or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon maturity, whether scheduled or accelerated by Lender because of my default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by 4.000 percentage points.

**DEFAULT.** I will be in default under this Note if any of the following happen:

   **Payment Default.** I fail to make any payment when due under this Note.

   **Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

   **Default in Favor of Third Parties.** I or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of my property or my ability to repay this Note or perform my obligations under this Note or any of the related documents.

   **False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

   **Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

   **Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

   **Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

   **Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

   **Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

   **Cure Provisions.** If any default, other than a default in payment is curable and if I have not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if I, after Lender sends written notice to me demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

## EXHIBIT A

# PROMISSORY NOTE
## (Continued)

Page 2

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. I also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of Alameda County, State of California.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $15.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**COLLATERAL.** I acknowledge this Note is secured by the following collateral described in the security instrument listed herein: a Deed of Trust dated November 6, 2014, to a trustee in favor of Lender on real property located in Alameda County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**LENDER'S EXPENDITURES.** Borrower agrees to pay all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Note. Lender may hire or pay someone else to help enforce this agreement or to collect the Loan, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower shall also pay all court costs, in addition to all other sums provided by law. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** I may notify Lender if Lender reports any inaccurate information about my account(s) to a consumer reporting agency. My written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Community Bank of the Bay 180 Grand Avenue, Suite 1550 Oakland, CA 94612.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

**PRIOR TO SIGNING THIS NOTE, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE AND THE ATTACHED NOTICE TO COSIGNER. I, AND EACH OF US, AGREE TO THE TERMS OF THE NOTE.**

**I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

X _____
THOMAS M. HENDERSON

X _____
AILEEN YEN

---

**Originator Names and Nationwide Mortgage Licensing System and Registry IDs:**

Organization: **Community Bank of the Bay**          NMLSR ID: _____

Individual: _____          NMLSR ID: _____

LASER PRO Lending, Ver. 14.1.0.009  Copr. Harland Financial Solutions, Inc. 1997, 2014.  All Rights Reserved.  - CA  F:\CFI\LPL\D20.FC  TR-1264  PR-22

# CHANGE IN TERMS AGREEMENT

| Principal $1,000,000.00 | Loan Date 03-18-2016 | Maturity 05-05-2016 | | Call / Coll 141 / 61 | Account | Officer MS | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** THOMAS M. HENDERSON
AILEEN YEN
1 EMBARCADERO WEST #365
OAKLAND, CA 94607

**Lender:** Community Bank of the Bay
180 Grand Avenue Suite 1550
Oakland, CA 94612
(510) 433-5400

---

**Principal Amount: $1,000,000.00**          **Interest Rate: 5.500%**          **Date of Agreement: March 18, 2016**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** A loan evidenced by a promissory note dated November 6, 2014 in the original principal amount of $1,000,000.00 and referencing Loan No. 190010371, modified by that certain Change In Terms Agreement dated as of November 9, 2015 ("Note"). The outstanding principal balance due under the Note, as of the date of this Agreement, is $1,000,000.00.

**DESCRIPTION OF COLLATERAL.** A lien on real property evidenced by that certain Deed of Trust dated November 6, 2014, and recorded November 12, 2014, in the Official Records of Alameda County as Instrument No. 2014272519.

**DESCRIPTION OF CHANGE IN TERMS.** The Note is hereby modified as follows: The date on which all outstanding principal is due and payable (together with any accrued but unpaid interest thereon) ("Maturity Date") is hereby extended from January 6, 2016 to May 5, 2016.

**PAYMENT.** I will pay this loan in one principal payment of $1,000,000.00 plus interest on May 5, 2016. This payment due on May 5, 2016, will be for all principal and all accrued interest not yet paid. In addition, I will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning April 6, 2016, with all subsequent interest payments to be due on the same day of each month after that.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT AND THE ATTACHED NOTICE TO COSIGNER. I, AND EACH OF US, AGREE TO THE TERMS OF THE AGREEMENT.

**BORROWER:**

x _Thomas m Henderson_          x _Aileen Yen_
THOMAS M. HENDERSON                    AILEEN YEN

**LENDER:**

COMMUNITY BANK OF THE BAY

x _____
Authorized Signer

LaserPro, Ver. 15.5.20.036  Copr. D+H USA Corporation 1997, 2016.  All Rights Reserved.  - CA  F:\CFI\LPL\D20C.FC  TR-1264  PR-22

201

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,000,000.00 | 05-31-2016 | 07-04-2016 | | 141 / 61 | | WK | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** THOMAS M. HENDERSON
AILEEN YEN
1 EMBARCADERO WEST #365
OAKLAND, CA  94607

**Lender:** Community Bank of the Bay
180 Grand Avenue Suite 1550
Oakland, CA  94612
(510) 433-5400

---

**Principal Amount: $1,000,000.00**          **Interest Rate: 5.500%**          **Date of Agreement: May 31, 2016**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** A loan evidenced by a promissory note dated November 6, 2014 in the original principal amount of $1,000,000.00 and referencing Loan No. 190010371, modified by that certain Change In Terms Agreement dated as of November 9, 2015 and Change in Terms Agreement dated as of March 18, 2016 ("Note"). The outstanding principal balance due under the Note, as of the date of this Agreement, is $1,000,000.00.

**DESCRIPTION OF COLLATERAL.** A lien on real property evidenced by that certain Deed of Trust dated November 6, 2014, and recorded November 12, 2014, in the Official Records of Alameda County as Instrument No. 2014272519.

**DESCRIPTION OF CHANGE IN TERMS.** The Note is hereby modified as follows:  The date on which all outstanding principal is due and payable (together with any accrued but unpaid interest thereon) ("Maturity Date") is hereby extended from May 5, 2016 to July 4, 2016.

**PAYMENT.** I will pay this loan in one principal payment of $1,000,000.00 plus interest on July 4, 2016.  This payment due on July 4, 2016, will be for all principal and all accrued interest not yet paid.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  All interest payable under this loan is computed using this method.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect.  Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms.  Nothing in this Agreement will constitute a satisfaction of the obligation(s).  It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement.  If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it.  This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT AND THE ATTACHED NOTICE TO COSIGNER.  I, AND EACH OF US, AGREE TO THE TERMS OF THE AGREEMENT.

**BORROWER:**

X _____
THOMAS M. HENDERSON

X _____
AILEEN YEN

**LENDER:**

**COMMUNITY BANK OF THE BAY**

X _____
Authorized Signer

---

LaserPro, Ver. 16.1.10.003  Copr. D+H USA Corporation 1997, 2016.  All Rights Reserved.  - CA  F:\CFI\LPL\D20C F C. TR-1264  PR-22

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,000,000.00 | 11-09-2015 | 01-06-2016 | | 141 / 61 | | MS | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:**  THOMAS M. HENDERSON
AILEEN YEN
1 EMBARCADERO WEST #365
OAKLAND, CA  94607

**Lender:**  Community Bank of the Bay
Main Office
180 Grand Avenue, Suite 1550
Oakland, CA  94612
(510) 433-5400

---

**Principal Amount: $1,000,000.00**          **Interest Rate: 5.500%**          **Date of Agreement: November 9, 2015**

**DESCRIPTION OF EXISTING INDEBTEDNESS.**  A loan evidenced by a promissory note dated November 6, 2014 in the original principal amount of $1,000,000.00 and referencing Loan No. 190010371 ("Note"). The outstanding principal balance due under the Note, as of the date of this Agreement, is $1,000,000.00.

**DESCRIPTION OF COLLATERAL.**  A lien on real property evidenced by that certain Deed of Trust dated November 6, 2014, and recorded November 12, 2014, in the Official Records of Alameda County as Instrument No. 2014272519.

**DESCRIPTION OF CHANGE IN TERMS.**  The Note is hereby modified as follows:  The date on which all outstanding principal is due and payable (together with any accrued but unpaid interest thereon) ("Maturity Date") is hereby extended from November 6, 2015 to January 6, 2016.

**PAYMENT.**  I will pay this loan in one principal payment of $1,000,000.00 plus interest on January 6, 2016. This payment due on January 6, 2016, will be for all principal and all accrued interest not yet paid. In addition, I will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning December 6, 2015, with all subsequent interest payments to be due on the same day of each month after that.

**INTEREST CALCULATION METHOD.**  Interest on this loan is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**CONTINUING VALIDITY.**  Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT AND THE ATTACHED NOTICE TO COSIGNER. I, AND EACH OF US, AGREE TO THE TERMS OF THE AGREEMENT.

**BORROWER:**

x _Thomas M Henderson_
THOMAS M. HENDERSON

x _[signature]_
AILEEN YEN

**LENDER:**

COMMUNITY BANK OF THE BAY

x _[signature]_
Authorized Signer

LaserPro, Ver. 15.3.0.044  Copr. D+H USA Corporation 1997, 2015.  All Rights Reserved.  - CA  F:\CFI\LPL\D20C.FC  TR-1264  PR-22



Recording requested by.
Stewart Title 7508
Escrow #0180 114322

**RECORDATION REQUESTED BY:**
Community Bank of the Bay
Main Office
180 Grand Avenue, Suite 1550
Oakland, CA 94612

**WHEN RECORDED MAIL TO:**
Community Bank of the Bay
180 Grand Avenue, Suite 1550
Oakland, CA 94612

**SEND TAX NOTICES TO:**
THOMAS M. HENDERSON
AILEEN YEN

2014272519      11/12/2014 12:50 PM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:      52.00

10   PGS



FOR RECORDER'S USE ONLY

# DEED OF TRUST

**THIS DEED OF TRUST** is dated November 6, 2014, among Thomas M. Henderson and Aileen Yen, as Tenants in Common ("Trustor"); Community Bank of the Bay, whose address is Main Office, 180 Grand Avenue, Suite 1550, Oakland, CA 94612 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Community Bank of the Bay, whose address is 180 Grand Avenue, Ste 1550, Oakland, CA 94612 (referred to below as "Trustee").

**CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Alameda County, State of California:**

Lot 5, Block "C", Map of East Piedmont Heights, filed March 19, 1907, Map Book 22, Page 55, Alameda County Records

The Real Property or its address is commonly known as **666 Mandana Blvd., Oakland, CA 94610.** The Assessor's Parcel Number for the Real Property is 011-0875-025.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Trustor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property

189

# DEED OF TRUST
## (Continued)

with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $10,000.00. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender, together with such other hazard and liability insurance as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the Improvements on the Real Property. Policies shall be

# DEED OF TRUST
## (Continued)

written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $10,000.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**LENDER'S EXPENDITURES.** If Trustor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Trustor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Trustor has made in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature and shall remain in full force and effect until such time as Trustor's Indebtedness is paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed

# DEED OF TRUST
## (Continued)

of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** At Lender's option, Trustor will be in default under this Deed of Trust if any of the following happen:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Break Other Promises.** Trustor breaks any promise made to Lender or fails to perform promptly at the time and strictly in the manner provided in this Deed of Trust or in any agreement related to this Deed of Trust.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Trustor, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any

# DEED OF TRUST
## (Continued)

bankruptcy or insolvency laws by or against Trustor.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of Trustor's property in which Lender has a lien. This includes taking of, garnishing of or levying on Trustor's accounts with Lender. However, if Trustor disputes in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if Trustor gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after Lender sends written notice to Trustor demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Trustor's obligations under this Deed of Trust, after Trustor's failure to do so, that decision by Lender will not affect Lender's right to declare Trustor in default and to exercise Lender's remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law

# DEED OF TRUST
## (Continued)

or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender will have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Alameda County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any person may change his or her address for notices under this Deed of Trust by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors. It will be Trustor's responsibility to tell the others of the notice from Lender.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** What is written in this Deed of Trust and in the Related Documents is Trustor's entire agreement with Lender concerning the matters covered by this Deed of Trust. To be effective, any change or amendment to this Deed of Trust must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the

# DEED OF TRUST
## (Continued)

Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Alameda County, State of California.

**Joint and Several Liability.** All obligations of Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Trustor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Trustor will not have to comply with the other provisions of this Deed of Trust. Trustor also understands that if Lender does consent to a request, that does not mean that Trustor will not have to get Lender's consent again if the situation happens again. Trustor further understands that just because Lender consents to one or more of Trustor's requests, that does not mean Lender will be required to consent to any of Trustor's future requests. Trustor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Deed of Trust is not valid or should not be enforced, that fact by itself will not mean that the rest of this Deed of Trust will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Deed of Trust even if a provision of this Deed of Trust may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury.** To the extent permitted by applicable law, all parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following words shall have the following meanings when used in this Deed of Trust:

**Beneficiary.** The word "Beneficiary" means Community Bank of the Bay, and its successors and assigns.

**Borrower.** The word "Borrower" means THOMAS M. HENDERSON and AILEEN YEN and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Community Bank of the Bay, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Note.** The word "Note" means the promissory note dated November 6, 2014, **in the original principal amount of $1,000,000.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

## DEED OF TRUST
### (Continued)

Page 8

---

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means Community Bank of the Bay, whose address is 180 Grand Avenue, Ste 1550, Oakland, CA 94612 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means THOMAS M. HENDERSON and AILEEN YEN.

EACH TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH TRUSTOR AGREES TO ITS TERMS.

**TRUSTOR:**

X _____
**THOMAS M. HENDERSON**

X _____
**AILEEN YEN**

---

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_      )
                           ) SS
COUNTY OF _Alameda_      )

On _November 7_ , 20_14_ before me, _Sharon M. Alvey Notary Public_
                                                      (here insert name and title of the officer)

personally appeared **THOMAS M. HENDERSON and AILEEN YEN**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

```
┌─────────────────────────────┐
│      SHARON M. ALVEY         │
│   NOTARY PUBLIC - CALIFORNIA │
│     COMMISSION # 2008119     │
│     CONTRA COSTA COUNTY      │
│  My Comm. Exp. February 23, 2017 │
└─────────────────────────────┘
```

(Seal)

# DEED OF TRUST
## (Continued)

Page 9

**Originator Names and Nationwide Mortgage Licensing System and Registry IDs:**

Organization: **Community Bank of the Bay**                    NMLSR ID: **1198242**

Individual: _____                    NMLSR ID: _____

## (DO NOT RECORD)
# REQUEST FOR FULL RECONVEYANCE
### (To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____

Date: _____          Beneficiary: _____

                                                By: _____

                                                Its: _____

LASER PRO Lending, Ver. 14.1.0.009   Copr. Harland Financial Solutions, Inc. 1997, 2014.   All Rights Reserved.   - CA
F:\CFI\LPL\G01.FC  TR-1264  PR-22

197

# EXHIBIT "A"

## LEGAL DESCRIPTION

Order No.:     01180-114322
Escrow No.:    01180-114322

The land referred to herein is situated in the State of California, County of Alameda,  City of Oakland and described as follows:

Lot 5, Block "C", Map of East Piedmont Heights, filed March 19, 1907, Map Book 22, Page 55, Alameda County Records.

APN:  011-0875-025

(End of Legal Description)

198

# EXHIBIT B
# TO
# SETTLEMENT AGREEMENT

RECORDING REQUESTED BY
Casalina and Disston
409 13th Street, 9th floor
Oakland, CA 94612

AND WHEN RECORDED MAIL TO

Casalina and Disston
409 13th Street, 9th floor
Oakland, CA, 94612

## ASSIGNMENT OF DEED OF TRUST

**FOR VALUE RECEIVED,** the undersigned hereby grants, assigns and transfers to  Leeds Disston
all beneficial interest under that certain Deed of Trust dated November 6, 2014
executed by Thomas M. Henderson and Aileen Yen as tenants in common, Trustors on November 6, 2014,
Community Bank of the Bay, Trustee,
and recorded as Instrument No. 2014272519 on November 12, 2014 of Official Records in the County Recorder's office of Alameda,
County, California, AS DESCRIBED IN SAID DEED OF TRUST.
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all
rights accrued or to accrue under said Deed of Trust.

Dated  8/26/16

_Richard Hagarty, SVP_

A notary public or other officer completing this
certificate verifies only the identity of the
individual who signed the document to which this
certificate is attached and not the truthfulness,
accuracy, or validity of that document.

State of California
County of  Santa Clara
On  8-26-16  before me  Jenny Boister Notary Public
(here insert name and title of the officer), personally appeared Richard Hagarty , who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.**
WITNESS my hand and official seal.

Signature  Jenny Boister                          (Seal)

DOCUMENT PROVIDED BY STEWART TITLE OF CALIFORNIA, INC.

AEAGNDT1.DOC

JENNY BOISTER
Commission # 2080020
Notary Public - California
Santa Clara County
My Comm. Expires Sep 26, 2018

## EXHIBIT B

199



# EXHIBIT C
# TO
# SETTLEMENT AGREEMENT

RECORDING REQUESTED BY
Susan L. Uecker, Receiver
Uecker & Associates, Inc.
1613 Lyon Street, Suite A
San Francisco, California 94115

WHEN RECORDED MAIL TO:
Tracy Green, Esq.
Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607

APN: 011-0875-025

## ASSIGNMENT OF DEED OF TRUST AND PROMISSORY NOTE

FOR VALUE RECEIVED, the undersigned ("Assignor") hereby grants, assigns and transfers to Susan L. Uecker, Receiver, pursuant to the Order Appointing Receiver and Monitor, entered on March 29, 2017 (Docket No. 100) and the June 5, 2017 Order Extending Scope of Receivership, entered in the pending litigation Securities and Exchange Commission v. San Francisco Regional Center, LLC et al, Case No. 3:17-cv-00223 RS, pending before the United States District Court for the Northern District of California ("Assignee"), all beneficial interest under that certain Deed of Trust dated November 6, 2014 executed by Thomas M. Henderson and Aileen Yen, Trustors to Community Bank of the Bay, Trustee, and recorded on November 12, 2014, as Instrument No. 2014272519 of the Official Records in the office of the County Recorder of Alameda County, California, AS DESCRIBED IN SAID DEED OF TRUST. An unrecorded copy of the document conveying said Deed of Trust to Assignor is attached as Exhibit A.

This assignment is made together with the Promissory Note (as amended) or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust. A legal description of the real property covered by said Deed of Trust is attached as Exhibit B.

Date: _____          _____
                                    Leeds Disston

## EXHIBIT C

## ALL PURPOSE ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California          )
County of Alameda          )


On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



Signature _____ (Seal)
                    Notary Public

# EXHIBIT A

## CONVEYANCE TO ASSIGNOR

RECORDING REQUESTED BY
Casalina and Disston
409 13th Street, 9th floor
Oakland, CA 94612


AND WHEN RECORDED MAIL TO


Casalina and Disston
409 13th Street, 9th floor
Oakland, CA, 94612

## ASSIGNMENT OF DEED OF TRUST

**FOR VALUE RECEIVED**, the undersigned hereby grants, assigns and transfers to  Leeds Disston
all beneficial interest under that certain Deed of Trust dated November 6, 2014
executed by Thomas M. Henderson and Aileen Yen as tenants in common, Trustors on November 6, 2014,
Community Bank of the Bay, Trustee,
and recorded as Instrument No. 2014272519 on November 12, 2014 of Official Records in the County Recorder's office of Alameda,
County, California, AS DESCRIBED IN SAID DEED OF TRUST.
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all
rights accrued or to accrue under said Deed of Trust.

Dated  8/26/16

_RICHARD HAGARTY_, SVP

> A notary public or other officer completing this
> certificate verifies only the identity of the
> individual who signed the document to which this
> certificate is attached and not the truthfulness,
> accuracy, or validity of that document.

State of California
County of  Santa Clara
On  8-26-16  before me  Jenny Boister, Notary Public,
(here insert name and title of the officer), personally appeared Richard Hagarty, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.**
WITNESS my hand and official seal.

Signature  Jenny Boister                    (Seal)

DOCUMENT PROVIDED BY STEWART TITLE OF CALIFORNIA, INC.                                    AGNDT1.DOC

JENNY BOISTER
Commission # 2080020
Notary Public - California
Santa Clara County
My Comm. Expires Sep 26, 2018

199

## EXHIBIT B

## LEGAL DESCRIPTION

Lot 5, Block "C", Map of East Piedmont Heights, filed March 19, 1907, Map Book 22, Page 55, Alameda County Records.

APN: 011-0875-025

(End of Legal Description)