## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by and between Thomas M. Henderson ("Henderson") and Aileen Yen ("Yen") on the one hand, and Susan L. Uecker, Receiver ("Receiver") on the other hand, (collectively, the "Parties").  This Agreement is entered into with reference to the following facts and recitals.

## RECITALS

A.      Henderson was named as a defendant in the action styled *Securities and Exchange Commission v. San Francisco Regional Center, LLC; Thomas M. Henderson; California Gold Medal, L.P.; CallSocket, L.P.; CallSocket II, L.P.; CallSocket III L.P.; Comprehensive Care of Oakland, L.P.; NA3PL, L.P.; West Oakland Plaza, L.P.; CallSocket, LLC; CallSocket II, LLC; CallSocket III, LLC; Comprehensive Care of California, LLC; Immedia, LLC; North America 3PL, LLC, Defendants, and CallSocket Holding Company, LLC; CallSocket III Holding Company, LLC; Berkeley Healthcare Dynamics, LLC; Central California Farms, LLC; and JL Gateway, LLC, Relief Defendants*, filed by the Securities and Exchange Commission ("SEC") on January 17, 2017, in the United States District Court for the Northern District of California (the "District Court") as Case No. 3:17-cv-00223-RS (the "Action").

B.      On January 20, 2017, the SEC filed a motion seeking, among other things, an order appointing a receiver over the entity Defendants and Relief Defendants.  The District Court entered the Order Granting Motion for Preliminary Injunction and to Appoint a Receiver on March 23, 2017, pursuant to which the Court, among other things, appointed Susan L. Uecker as Receiver over Defendants San Francisco Regional Center, LLC; California Gold Medal, L.P.; CallSocket, L.P.; CallSocket II, L.P.; CallSocket III L.P.; NA3PL, L.P.; West Oakland Plaza, L.P.; CallSocket, LLC; CallSocket II, LLC; CallSocket III, LLC; Immedia, LLC; and Relief Defendants CallSocket Holding Company, LLC; CallSocket III Holding Company, LLC; Central California Farms, LLC; JL Gateway, LLC (the "Receivership Defendants"); and as Monitor over Defendants Comprehensive Care of California, LLC; Comprehensive Care of Oakland, L.P.; North America 3PL, LLC; and Relief Defendant Berkeley Healthcare Dynamics, LLC (the "Monitor Defendants").  Pursuant to the terms of the Order Granting Motion for Preliminary Injunction and Motion to Appoint a Receiver, on March 29, 2017, the Court entered the Order Appointing Receiver and Monitor ("Appointment Order").

C.      On June 5, 2017, the Court entered its Order Extending Scope of Receivership appointing Susan Uecker as Receiver over the Monitor Defendants Comprehensive Care of California, LLC; Comprehensive Care of Oakland, L.P.; North America 3PL, LLC; and Relief Defendant Berkeley Healthcare Dynamics, LLC.  The Receivership Defendants and the Monitor Defendants are collectively referred to herein as the "Receivership Entities."

D.      On December 21, 2017 and thereafter, the SEC, Henderson, and the Receiver engaged in settlement negotiations that resulted in this Agreement.  As a result, the SEC will be filing Defendant Thomas M. Henderson's Consent To Final Judgment (the "Consent To Final Judgment") and the Proposed Final Judgment As To Defendant Thomas M. Henderson (the "Final Judgment") in the Action.  The Parties' obligations under this Agreement are expressly conditioned on the SEC's filing of the Consent to Final Judgment and Final Judgment.

WHEREFORE, in consideration of the foregoing recitals and the acts required by this Agreement, the Parties hereby agree as follows:

## AGREEMENT

1.      **Incorporation of Recitals.**  The Recitals in **Paragraphs A** through **D** form a material part of this Agreement and are fully incorporated herein, and made a part hereof.

2.      **Effective Date Of Agreement.**  The "Effective Date" of this Agreement shall be the date on which the District Court enters the Final Judgment in the Action.

3.      **The Property.**  As used herein, the "Property" is the real property located in Alameda County, State of California, as more particularly described in **Exhibit A** hereto, and more commonly known as 666 Mandana Boulevard, Oakland, California, Assessor's Parcel Number 011-0875-025.

4.      **The Promissory Note.**  Within five (5) days of entry of the Final Judgment in the Action, Henderson as a Maker, shall execute a Promissory Note Secured By Deed Of Trust in the principal sum of FIVE HUNDRED SEVENTY-TWO THOUSAND FOUR HUNDRED AND FIFTY-SIX DOLLARS AND 31/100S ($572,456.31) payable to the Receiver (the "Promissory Note") in the form attached hereto as **Exhibit B**.  The Promissory Note shall be secured by a deed of trust against the Property, as more particularly described in Paragraph 5 below.

5.      **The Deed of Trust & Special Power of Attorney.**  Within five (5) days of entry of the Final Judgment in the Action, Henderson and Yen as Trustors, shall execute a Deed Of Trust And Assignment Of Rents and Rider To Deed Of Trust And Assignment Of Rents (collectively the "Deed of Trust") in the form attached hereto as **Exhibit C** against the Property in favor of the Receiver, as beneficiary, as security for payment of and all obligations evidenced by (a) the Promissory Note; (b) all unpaid taxes and assessments affecting the Property (including any special district assessments), including without limitation, for the 2016-2017 and 2017-2018 tax years, plus all penalties and interest thereon, that are delinquent or will become due and payable on or before January 25, 2019 to the extent that they exceed the Estimated Taxes as defined in Paragraph 10  (c) the performance of every obligation and agreement of Trustors under the Deed of Trust; and (d) payment of all sums expended or advanced by the Receiver as beneficiary, under or pursuant to the terms of the Deed of Trust.  Henderson and Yen each also represents and warrants that each shall execute a Special Power of Attorney within five (5) days of entry of the Final Judgment in the Action in the form attached hereto as **Exhibit D**. The Parties agree that the original form of the Special Power of Attorney shall be held by Arnold & Porter and the Receiver shall not be authorized to act under the Special Power of Attorney unless Henderson fails to exercise the Prepayment option set forth in Paragraph 6(F) by December 28, 2018.  If Henderson exercises the Prepayment option as defined in Paragraph 6(F), notwithstanding any provision otherwise of this Agreement or the Special Power of Attorney, the Special Power of Attorney shall be revoked, and of no effect.  If Henderson fails to exercise the Prepayment option as defined by Paragraph 6(F) by December 28, 2018, Arnold & Porter shall promptly deliver the original Special Power of Attorney to Receiver, and the Receiver shall be authorized to record and to take any action provided by the Special Power of Attorney. Henderson and Yen acknowledge that the execution of the Deed of Trust and Special Power of

Attorney is a material part of this Agreement, and any performance of this Agreement by the Receiver is conditioned upon timely receipt of the Deed of Trust and Special Power of Attorney signed by both Henderson and Yen. In the event the Property is sold as part of this Agreement pursuant to Paragraph 14, Henderson and Yen agree that neither of them will assert their entitlement to a "homestead" exemption related to their ownership of the Property and expressly waive their homestead protections under any applicable state or federal law.

6.     **Occupation of the Property.** Henderson and Yen may occupy the Property until January 25, 2019 on the terms and conditions set forth herein, and shall vacate the Property and deliver possession of it to the Receiver by no later than 3:00 p.m. on January 25, 2019, unless the conditions set forth in Paragraph 6(F) below are met, in which case Henderson and Yen will have no obligation to vacate the Property or deliver possession of it to the Receiver.

A.     **Condition of the Property.** At all times during the Settlement Period (defined below in Paragraph 9), Henderson and Yen shall maintain the Property in good and safe condition, working order and repair, reasonable wear and tear excepted, and shall not commit waste. Henderson and Yen shall not remove, destroy, or suffer the removal or destruction of any improvements in a manner that would materially diminish the value of the Property, and they shall not remove any appliances, built-in furniture or fixtures

B.     **No Lease Agreements.** Henderson and Yen each warrants and represents that only Henderson and Yen currently reside at the Property and that they have not entered into any leases or rental agreements regarding the Property with any person or entity, and Henderson and Yen each promises that neither Henderson nor Yen will enter into any leases or rental agreements regarding the Property with any person or entity at any time in the future.

C.     **No Encumbrances.** Other than the previously disclosed lien of Community Bank of the Bay which has been assigned to Leeds Disston (the "Disston Lien"), the potential judgment lien of Julia Minasian and Catherine Plansky (the "Minasian Lien"), and unpaid property taxes and assessments, Henderson and Yen each agrees that neither Henderson nor Yen shall grant, nor shall they suffer to exist, any liens and/or encumbrances and any claims thereof upon the Property, or any part thereof or interest therein at any time during the Settlement Period (defined in Paragraph 9 below).

D.     **Terms of Vacating Property.** When vacating the Property and turning possession over to the Receiver, Henderson and Yen shall leave the Property in broom clean condition, with fixtures and improvements intact and maintained in good workmanlike manner, and shall cause no waste to the property. Henderson and Yen shall not remove any property attached to the Property. No later than the Departure Date, Henderson and Yen shall deliver to the Receiver all keys to all interior and exterior doors to the Property.

E.     **Payment To Yen.** Upon timely vacating the Property in accordance with Paragraphs 6 and 7, and in full settlement of Yen's disputed claim of her share of any equity in the Property, the Receiver shall pay to Yen $250,000 (Two Hundred Fifty Thousand Dollars) from the sale of the Property ("Yen Payment"). The Receiver shall make the Yen Payment upon closing of any sale of the Property. It is understood and agreed that the Receiver shall use her

best efforts to apply the proceeds of the sale of the Property related to the assignment to the Receiver of the Disston Lien to pay Yen, as further described in Paragraph 14.

        **F.**    **Prepayment of Promissory Note and Penalties Due to SEC and Other Amounts Expended by Receiver.**  If Henderson pays (1) $500,000 (Five Hundred Thousand Dollars) of the principal sum of the Promissory Note to the Receiver, (2) the civil penalty of $750,000 (Seven Hundred Fifty Thousand Dollars) to the SEC pursuant to Henderson's Consent to Final Judgment in the Action, (3) $150,000 (One Hundred Fifty Thousand Dollars) to the Receiver to fully reimburse the Receivership Estate for the amount paid by the Receiver to acquire the Disston Lien, and (4) the amount necessary to fully reimburse the Receivership Estate for any amount paid by the Receiver to acquire the Minasian Lien, and all moneys are received in good, cleared funds on or before December 28, 2018, then (i) the Promissory Note shall be deemed satisfied and released in its entirety (and Henderson and Yen shall have the sole obligation to pay any unpaid Estimated Taxes on the Property); (ii) Henderson and Yen shall have no obligation to vacate to the Property; (iii) the Receiver shall have no right to sell the Property; (iv) the Confession of Judgment for Possession and Special Power of Attorney shall be voided and of no effect; (v) to the extent any right, title, and interest in the Property was transferred or assigned to the Receiver by the Deed of Trust or otherwise, it shall revert to Henderson and Yen; and (vi) to the extent the Receiver has been assigned the Disston and/or Minasian Lien, the liens shall be fully satisfied, discharged, and extinguished.  Additionally, in the event that the conditions of this Paragraph 6(F) are satisfied, the Releases set forth in Paragraphs 18 and 19 will be void and of no effect as to the following Releases only: (i) any Releases granted by the Receiver Releasors in favor of Yen, and (ii) any Releases granted by the Yen Releasors in favor of the Receiver Releasees. Further, in the event that the conditions of this Paragraph 6(F) are satisfied, the Receiver agrees to reasonably cooperate in executing any documents necessary to consummate and record the transactions reflected in this Paragraph 6(F), including but not limited to those necessary to release, discharge and extinguish the Promissory Note, the Confession of Judgment for Possession, the Deed of Trust, the Disston and/or Minasian Liens, and the Special Power of Attorney.  Receiver represents and warrants that she shall execute any such document within five (5) days of the Henderson and Yen's request.

        **7.**    **The Departure Date.**  January 25, 2019, or such earlier date as Henderson and Yen may vacate and turn over possession of the Property to the Receiver shall be referred to as the "Departure Date."

        **8.**    **Confession of Judgment for Possession.**  Within five (5) days of entry of the Final Judgment, Henderson and Yen agree to execute the Judgment by Confession, Stipulation Re Judgment by Confession, and Statement by Defendant Authorizing Entry of Judgment by Confession in the form attached hereto as **Exhibits E-1, E-2,** and **E-3**, and Henderson and Yen agree that their respective legal counsel shall execute the Certificate of Attorney's Examination of Proposed Judgment in the form attached hereto as **Exhibits F-1 and F-2** within five (5) days of entry of the Final Judgment in the Action.  So long as (a) no Event of Default as defined in Paragraph 15 has occurred, and (b) in the event of any Event of Default, Henderson or Yen has cured such default within any applicable cure period, and (c) Henderson and Yen vacate the Property by no later than January 25, 2019, in accordance with the provisions of Paragraphs 6 and 7 above, the Receiver shall not file the Confession of Judgment for Possession or the Declaration of Counsel in Support of Confession of Judgment for Possession.  The Receiver also

shall not file the Confession of Judgment for Possession or the Declaration of Counsel in Support of Confession of Judgment for Possession in the event Henderson or Yen satisfies the conditions of Paragraph 6(F).  Henderson and Yen each represents and warrants that within five days of entry of the Final Judgment in the Action Henderson and Yen shall execute the Confession of Judgment for Possession and that their respective legal counsel will execute the Declaration of Counsel in Support of Confession of Judgment for Possession.  Henderson and Yen each acknowledges that the execution of the Confession of Judgment for Possession by Henderson and Yen and the execution of the Declaration of Counsel in Support of Confession of Judgment for Possession by Henderson and Yen's respective legal counsel are a material part of this Agreement, and any performance of this Agreement by the Receiver is conditioned upon timely receipt of the Confession of Judgment for Possession signed by both Henderson and Yen and the Declaration of Counsel in Support of Confession of Judgment for Possession signed by Henderson and Yen's respective legal counsel.

**9.    Settlement Period.**  The period from December 21, 2017, through and including the Departure Date shall be referred to herein as the "Settlement Period."  Henderson shall have no obligation to make any payments on the Promissory Note during the Settlement Period and the Receiver shall not take any steps to foreclose on the Property during the Settlement Period, except in the event of a breach of this Agreement or an Event of Default as set forth in Paragraph 15 below.

**10.    Property Taxes.**  The estimated amount of all unpaid taxes and assessments affecting the Property (including any special district assessments), including without limitation, for the 2016-2017 and 2017-2018 tax years, plus all penalties, costs, and interest thereon, that are delinquent or will become due and payable on or before January 25, 2019, in the sum of $72,456.31 ("Estimated Taxes"), shall be included in the principal amount of the Promissory Note.  Any additional taxes, costs, assessments, penalties and interest affecting the Property that may accrue and be due on or before January 25, 2019, and that exceed the Estimated Taxes shall be secured by the Deed of Trust.

**11.    Insurance.**  Henderson and Yen shall maintain at their own cost, and within ten (10) days of the Effective Date of this Agreement, Henderson and Yen shall provide the Receiver with written evidence of: (a) insurance against all risks of direct physical loss or damage covering the Property (including, without limitation, any improvements constructed thereon) insuring against loss or damage by fire, lightning, earthquakes and other perils, on an all risk basis, such coverage to be (i) in an amount not less than the full insurance value of the improvements on a replacement cost basis or (ii) in the amount of $2.0 million, whichever is greater, with Susan L. Uecker, Receiver" named as loss payee for the full amount of the insurance proceeds; and (b) comprehensive general liability insurance on the Property with a limit of not less than $1.0 million per occurrence.  All such insurance shall name "Susan L. Uecker, Receiver" as an additional insured.  At all times during the Settlement Period, Henderson and Yen shall continue to maintain such insurance on the Property, shall not allow it to lapse, and shall provide written proof of insurance upon renewal and at such other times as the Receiver may request from time to time, through the Departure Date.  All of the insurance policies required hereby shall be evidenced by one or more Certificates of Insurance delivered to the Receiver by Henderson and Yen.  In the event the Receiver believes that Henderson and Yen have committed a breach of this Paragraph 11 by failing to procure and maintain such insurance,

the Receiver shall provide Henderson and Yen with written notice and fifteen (15) days to cure the alleged default prior to proceeding with foreclosure pursuant to Paragraph 15 below.  Failure to pay for and maintain adequate insurance on the Property under this provision shall be an Event of Default (defined in Paragraph 15 below).

12.    **Waiver and Relinquishment of Claims.**  Henderson and Yen each agree to waive and relinquish any and all rights to file a claim or claims against, and/or to receive a distribution from, the Receivership Estate(s) and/or any of the entities in the Receivership Estate(s), including each of the Defendants and Relief Defendants.  Henderson makes this waiver in connection with his Consent to Final Judgment entered or to be entered in the Action.  Nothing in this Agreement or otherwise is intended to cause a change in the tax status of any of the Receivership Entities, Receivership Estates, Defendants and Relief Defendants.  Yen's obligations under this Paragraph 12 are expressly conditioned upon her release by the Receiver Releasees, and if the prepayment conditions of Paragraph 6(F) are met by Henderson such that she does not obtain a release by the Receiver Releasees, her obligations under this Paragraph 12 are also extinguished, such that she may file claims against the Receivership Estates and/or any of the entities in the Receivership Estate(s), including each of the Defendants and Relief Defendants.

13.    **Stipulation Regarding Privilege With Respect To Documents.**  This Paragraph 13 applies to documents and emails that have been provided to the Receiver during the course of the receivership of the Receivership Entities, but in which Henderson has asserted privilege claims, including, but not limited to the attorney client privilege, the work product doctrine and any other privileges, such as financial privacy (the "Henderson Privilege Claims").  Based on Henderson's privilege claims, Henderson has objected to the Receiver or her attorneys reviewing or otherwise utilizing documents subject to the Henderson Privilege Claims in the course of the receivership.  The Parties hereto agree that the Receiver may now review all documents subject to the Henderson Privilege Claims, but that such review shall not waive Henderson's right to assert Henderson's Privilege Claims in any subsequent matter or proceeding against him or involving him brought by third-parties not involving claims brought by the Receiver or Receivership Estate(s).

14.    **Sale of the Property.**  After the Departure Date, the Receiver may take the necessary steps to market and sell the Property.  Henderson and Yen shall reasonably cooperate in any such sale, including, but not limited to executing any documents necessary to consummate a sale of the Property, including, but not limited to, any grant deed, quitclaim deed, or deed in lieu of foreclosure (the "Sale Documents"), to the extent the Receiver is not able to execute any document under the Special Power of Attorney.  Henderson and Yen each represents and warrants that they shall execute any such Sale Documents within five days of the Receiver's request.  Henderson and Yen each acknowledges that such cooperation and the execution of such Sale Documents by Henderson and Yen is a material part of this Agreement, and any performance of this Agreement by the Receiver is conditioned upon timely receipt of any such Sale Documents signed by both Henderson and Yen.  From the sale proceeds, the ordinary and customary costs of sale and broker's commission and real property taxes will be paid first as is customary in any sale.  The Receiver will have submitted a demand for payment in the sum of $1,000,000 (One Million Dollars) on the assigned Disston Lien from escrow, and the Parties agree that those proceeds shall be allocated in the following order of priority:

1. $250,000 (Two Hundred Fifty Thousand Dollars) to Yen pursuant to Paragraph 6(E) above;
2. $572,456.31 (Five Hundred Seventy-Two Thousand Four Hundred Fifty-Six and 31/100S) to the Receivership Estate based on the amount of the principal sum of the Promissory Note minus the amount of the Estimated Taxes, upon which the Promissory Note shall be deemed fully satisfied and discharged;
3. The remaining balance to the SEC to be applied toward the reduction of the civil penalty of $750,000 (Seven Hundred Fifty Thousand Dollars) to the SEC pursuant to Henderson's Consent to Final Judgment in the Action.

Thereafter, the remaining sale proceeds shall be distributed from escrow as follows:

1. To pay any amount necessary to satisfy the Minasian Lien, or, if the Minasian Lien has been assigned to the Receiver, to pay the Receivership Estate for the amount paid by the Receiver for the assignment;
2. To the SEC to be applied toward the reduction of the civil penalty of $750,000 (Seven Hundred Fifty Thousand Dollars) to the SEC pursuant to Henderson's Consent to Final Judgment in the Action.
3. To the Receivership Estate, if any sale proceeds remain.

**15.    Event of Default.**  Any of the following shall be an "Event of Default" under this Agreement:  (a) any failure to timely execute the Promissory Note, Deed of Trust, and/or the Assignments; (b) any failure to provide evidence of insurance and to maintain insurance on the Property in accordance with Paragraph 11 above; (c) failure to vacate the Property on or before the Departure Date in accordance with the terms and conditions of Paragraphs 6 and 7 above; or (d) if Henderson or Yen file a bankruptcy petition within one (1) year of the Effective Date. Upon the occurrence of an Event of Default, and after Henderson or Yen has failed to cure the default within any cure period that may be provided in this Agreement, interest shall begin to accrue on the principal amount of the Promissory Note at the rate of ten percent (10%) per annum from the date of breach or default, and the Receiver may foreclose the Deed of Trust on the Property.

**16.    Uncontested Foreclosure.**  If an Event of Default occurs and Henderson and Yen each fails to cure it, or Henderson or Yen breaches this Agreement, Henderson and Yen each acknowledges that they will be in default under the terms of this Agreement, and in such event, Henderson and Yen each consents to the Receiver and/or her agents, employees, attorneys or representatives proceeding with an uncontested non-judicial foreclosure of the Property under California Civil Code § 2924 *et seq.*  The Receiver shall provide Henderson and Yen a minimum of twenty days' written notice of any Trustee's Sale pursuant to this paragraph.  Such notice shall be provided by the posting on the Property and by overnight delivery addressed to Henderson and Yen at the Property.  Subject to the terms of this paragraph, Henderson and Yen each agrees that they will not contest any foreclosure properly conducted pursuant to this paragraph. Henderson and Yen each also agrees that they will not oppose any eviction proceedings, including any unlawful detainer proceeding.  Henderson and Yen each also hereby consents and agrees that neither Henderson nor Yen will object to the issuance of a writ of possession, if one becomes necessary.  Should the Receiver breach any part of this Agreement, then Henderson and Yen shall have the right to contest any foreclosure, unlawful detainer proceedings, eviction, writ

of possession and turnover of the Property to the Receiver or any other purchaser at a foreclosure sale.

**17.     Duty to Cooperate.**  In order to cooperate with the Receiver, Henderson agrees to speak with, provide information and documents to, and otherwise reasonably cooperate with the Receiver and the Receiver's legal counsel in their investigation, recovery, and liquidation of assets of the Receivership Entities, and in their defense against third party claims to the assets of the Receivership Entities.  Henderson agrees to testify, if necessary, and at reasonable times and locations, both in deposition and at trial, without need of a subpoena requiring his attendance.  If the Receiver determines that service of a subpoena is necessary, Henderson agrees to accept service of a subpoena by service upon Arnold & Porter Kaye Scholer LLP, or such other counsel as he may designate.

**18.     Release of the Receiver.**

**A.     Release.**  Conditioned on (a) the District Court's prior approval of this Agreement, (b) the full execution of this Agreement, the consideration of which is hereby acknowledged, and (c) the performance of the Receiver's obligations under this Agreement,, Henderson, individually and on behalf of all his successors, representatives, attorneys, assigns, devisees, or transferees, and including any claimants for which Henderson has the power to release (the "Henderson Releasors"), and Yen, individually and on behalf of all her successors, representatives, attorneys, assigns, devisees, or transferees, and including any claimants for which Yen has the power to release (the "Yen Releasors") hereby fully and completely release, remise, acquit and forever, absolutely and unconditionally discharge the Receiver, and each and all of her agents, employees, contractors, attorneys, representatives,  devisees, assigns, transferees, and successors (collectively, the "Receiver Releasees"), on the other hand, of and from any and all actions, causes of actions, claims, demands, rights, debts, obligations, liabilities, interests, contracts, duties, damages, costs, attorneys' fees, expenses or losses of every kind, nature, character, or description whatsoever, by whomever asserted, whether known or unknown, anticipated or unanticipated, direct or indirect, fixed or contingent, arising from any matter, cause or thing, whatsoever occurred, done or omitted, as of the Effective Date of this Agreement relating to any matters arising out of, related to or connected with (i) the receivership in the Action; (ii) the Receivership Entities; and (iii) any and all claims asserted in the Action, and all claims arising out of or related to the events described therein (collectively, "Henderson Released Claims" and "Yen Released Claims").

**B.     Waiver of Civil Code Section 1542.**  Conditioned on (a) the District Court's prior approval of this Agreement, (b) the full execution of this Agreement, the consideration of which is hereby acknowledged, and (c) the performance of the Receiver's obligations under this Agreement,, it is intended that the release in Paragraph 18.A. above shall be effective as a bar to each and every action, cause of action, claim, liability, obligation, damage, right, interest, injury, loss, salary, commission, benefit, attorney fee and cost, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, that the Henderson Releasors or the Yen Releasors may have against the Receiver Releasees, on the other hand, relating to any matters arising out of, related to or connected with Henderson Released Claims or the Yen Released Claims. To that extent, the Henderson Releasors and the Yen Releasors

expressly waive any and all rights under Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED THE SETTLEMENT WITH THE DEBTOR.

Provided, however, nothing contained in Paragraph 18.A. and this Paragraph 18.B. shall release or relieve the Receiver from her representations, warranties, covenants, obligations, undertakings and agreements under this Agreement of which the Receiver shall remain fully liable and obligated therefor and shall survive the execution and delivery of this Agreement.

**The Yen Releasors' releases of the Receiver Releasees described herein shall be void and of no effect in the event that the conditions of Paragraph 6(F) regarding Prepayment are satisfied by Henderson.**

19.    **Releases of Henderson and of Yen.**

A.    **Release.**  Conditioned on (a) the District Court's prior approval of this Agreement, (b) the full execution of this Agreement, the consideration of which is hereby acknowledged, and (c) timely receipt of the executed Promissory Note, Deed of Trust, Assignments, and Confession of Judgment for Possession from Henderson and Yen, and the executed Certificate of Attorney's Examination of Judgment from Henderson's and Yen's respective legal counsel, the performance of Henderson's and Yen's respective obligations under this Agreement, the Receiver on behalf of herself and all of the Receivership Defendants and Relief Defendants, and each of their representatives, attorneys, assigns, devisees, or transferees (the "Receiver Releasors"), on the one hand, hereby fully and completely release, remise, acquit and forever, absolutely and unconditionally discharge Henderson and Yen of and from any and all actions, causes of actions, claims, demands, rights, debts, obligations, liabilities, interests, contracts, duties, damages, costs, attorneys' fees, expenses or losses of every kind, nature, character, or description whatsoever, by whomever asserted, whether known or unknown, anticipated or unanticipated, direct or indirect, fixed or contingent, arising out of, related to or connected with (i) the receivership in the Action; (ii) the Receivership Entities; and (iii) any and all claims asserted in the Action, and all claims arising out of or related to the events described therein (collectively, the "Receiver Released Claims").  Any release of the Receiver Released Claims against Henderson or against Yen by the Receiver in this Agreement is undertaken solely in the Receiver's capacity as the court-appointed Receiver in the Action, is made only subject to and conditioned upon approval by the District Court of this Agreement, and does not include the waiver of any claims that third parties, including investors in the Receivership Entities, may have.

B.    **Waiver of Civil Code Section 1542.**  Conditioned on (a) the District Court's prior approval of this Agreement, (b) the full execution of this Agreement, the consideration of which is hereby acknowledged, and (c) the performance of Henderson's and

Yen's respective obligations under this Agreement, it is intended that the release in Paragraph 19.A. above shall be effective as a bar to each and every action, cause of action, claim, liability, obligation, damage, right, interest, injury, loss, salary, commission, benefit, attorney fee and cost, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, that the Receiver Releasors may have against the Henderson Releasees or against the Yen Releases relating to any matters arising out of, related to or connected with the Receiver Released Claims. To that extent, the Receiver Releasors expressly waive any and all rights under Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED THE SETTLEMENT WITH THE DEBTOR.

Provided, however, nothing contained in Paragraph 19.A. and this Paragraph 19.B. shall release or relieve Henderson or Yen from his or her representations, warranties, covenants, obligations, undertakings and agreements under this Agreement of which Henderson and Yen shall remain fully liable and obligated therefor and shall survive the execution and delivery of this Agreement.

**The Receiver Releasors' releases of Yen described herein shall be void and of no effect in the event that the conditions of Paragraph 6(F) regarding Prepayment are satisfied by Henderson.**

**20.     Payment to Arnold & Porter Kaye Scholer LLP In Consideration of Release of Indemnification Claims by Henderson.**  Within 10 days of an Order by the District Court approving this Settlement Agreement, the Receiver shall pay the sum of $50,000 (Fifty Thousand Dollars) to Arnold & Porter Kaye Scholer LLP ("Arnold & Porter") for the benefit of Henderson and in consideration of the settlement of any alleged claims for indemnification of attorneys' fees Henderson incurred defending this Action.  Henderson agrees and acknowledges that he is releasing all other claims to indemnification for attorneys' fees from the Receivership Estate by the releases under Paragraph 18 of this Agreement.  The payment referenced in this Paragraph 20 shall be made directly to Arnold & Porter.  In the event that the Court does not enter the Final Judgment or there is an appeal of the Final Judgment that results in this Agreement being set aside, Arnold & Porter shall return the payment.

**21.     Sole Owner Of Released Claims.**  Henderson and Yen each warrants and represents that each has not assigned, transferred or otherwise encumbered any of the claims, demands, causes of action or interest herein settled, released, assigned, or transferred including, without limitation, any of the Receiver Released Claims, or any portion thereof, and that Henderson and Yen is each fully entitled and authorized to enter into this Agreement. Henderson and Yen each further represents and warrants that his or her rights and obligations under this Agreement are not subject to any claims by a bankruptcy estate, bankruptcy trustee, assignee for the benefit of creditors, receiver, liquidation estate or dissolution estate.  Henderson and Yen each agrees to protect, defend, indemnify and hold harmless the Receiver Releasees

from and against any claim, demand, damage, debt, liability, account, obligation, cost, expense, lien, action and cause of action, including the payment of attorneys' fees and costs actually incurred, whether or not litigation be commenced, based on, in connection with, or arising out of any such assignment, transfer or encumbrance in any way related to the Receiver Released Claims.

22.     **Covenant Not To Sue.**  Henderson and Yen each covenants and agrees to forever refrain from instituting, prosecuting, maintaining or aiding in the commencement or prosecution of any Receiver Released Claims.

23.     **Choice of Law.**  This Agreement shall be construed in accordance with and all disputes hereunder shall be controlled by the laws of the State of California without regard to California's choice of law rules.

24.     **Severability.**  In the event any provision of this Agreement is held to be invalid, void, voidable, illegal or unenforceable, the remaining provisions of this Agreement will remain in full force and effect.

25.     **Authority.**  Henderson and Yen each represents and warrants that he or she has the full right, power, legal capacity and authority to execute and enter into this Agreement and to execute all other documents and perform all other duties as may be necessary or required in connection with the performance of this Agreement.  No approval or consent not heretofore obtained by any person or entity is necessary in connection with the execution of this Agreement by Henderson or Yen, for the performance of Henderson's or Yen's obligations under this Agreement.  The Receiver's execution and performance of this Agreement is subject to and conditioned upon prior approval of this Agreement by the District Court.

26.     **Advice of Counsel.**  The Parties, and each of them, have read this Agreement and have had the benefit of legal counsel in entering into the same and each warrants, represents and agrees that they and each of them each understands all of the terms and the legal effect of this Agreement and each is voluntarily executing the same of their own free will.  In the event that any Party elects not to utilize such counsel, such Party does so of such Party's own free will and election.

27.     **Counterpart Execution.**  This Agreement is being executed in one (1) or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  The Parties agree that signatures to this Agreement transmitted via facsimile, electronically and/or photocopies of signatures have the same force and effect and are considered the same as originals.

28.     **Entire Agreement.**  This Agreement together with the Promissory Note, Deed of Trust, Assignments, the Confession of Judgment for Possession, the Declaration of Counsel in Support of Confession of Judgment for Possession, Consent to Final Judgment and Proposed Final Judgment constitute the entire agreement and understanding between the Parties in relation to the subject matter hereof and there are no promises, representations, warranties, conditions, provisions or terms related thereto other than those set forth in this Agreement, the Promissory Note, Deed of Trust, Assignments, the Confession of Judgment for Possession, the Declaration

of Counsel in Support of Confession of Judgment for Possession, Consent to Final Judgment and Proposed Final Judgment.  This Agreement together with the Promissory Note, Deed of Trust, Assignments, the Confession of Judgment for Possession, the Declaration of Counsel in Support of Confession of Judgment for Possession, Consent to Final Judgment and Proposed Final Judgment, supersedes all previous understandings, agreements and representations between the Parties.  Each Party acknowledges that no other Party, nor any agent or any attorney of any Party, has made any promise, representation or warranty whatsoever, express or implied, not expressly contained herein, concerning the subject matter hereto so as to induce such Party to execute and perform this Agreement, and each Party acknowledges that he or she has not executed this Agreement in reliance on any promise, representation or warranty, express or implied, which is not contained herein.

**29.     No Waiver.**  No waiver in any instance by any Party of any provision of this Agreement shall be deemed a waiver by such Party of such provision in any other instance or a waiver of any other provision hereunder in any instance.

**30.     Amendment.**  This Agreement cannot be modified except in writing signed by all of the respective Parties hereto.

**31.     Tax Consequences.**

  A. Henderson and Yen each agrees they are not relying on any statements of the Receiver or her agents, representatives or employees regarding the tax consequences of this Agreement.

  B. In accordance with Paragraph 12 above, the Receiver does not intend to distribute any Receivership Estate assets or property to Henderson.

  C. It is Henderson's position that he expressly disclaims any obligation to pay taxes on any income or capital gains made on Receivership property.

  D. The Receiver agrees to provide Henderson and his accountant and attorneys reasonable cooperation in providing information and materials relevant to tax considerations of Henderson arising from Receivership properties and transactions.

**32.     Time of Essence.**  Time is of the essence under this Agreement.

**33.     Headings.**  The section headings of this Agreement and titles given to exhibits are for reference purposes only and are to be given no effect in the construction or interpretation of this Agreement.

**34.     No Admissions or Denials.**  By entering into this Agreement, no Party admits nor denies any allegations related to the Action or any other claims that are being released as a result of this Agreement.

**35.     Attorneys' Fees.**  In the event any Party brings an action at law or in equity to enforce, interpret, or redress the breach of this Agreement (including, without limitation, any

suit, arbitration, entry of judgment, post-judgment motion or enforcement, appeal, bankruptcy, litigation, attachment or levy) the prevailing Party in such action shall be entitled to his/her/its litigation expenses and reasonable attorneys' fees incurred in additional to any other relief as may be provided by law.

**36.    Parties To Bear Own Costs.**  Except for the payment reflected in Paragraph 20 of this Agreement, Henderson and Yen shall each bear their own costs and attorneys' fees incurred in or related to the Action, the receivership, and prior dealings of the Parties and to the negotiation, preparation and execution of this Agreement.  The Receiver's costs and attorneys' fees incurred in or related to the Action, the receivership, and prior dealings of the Parties and to the negotiation, preparation and execution of this Agreement shall be governed by the Appointment Order, and will not be borne by Henderson or Yen.

**37.    Notices.**  Unless otherwise expressly provided for herein, any notice to be delivered pursuant to this Agreement shall be in writing and shall be deemed delivered upon service, if served personally or by overnight courier (i.e., Federal Express), or three (3) days after deposit in the United States Mail if mailed by first class mail, postage prepaid, registered or certified with return receipt requested, and addressed to the other Party at the following address, or such address as may be designated in accordance herewith:

If to Thomas M. Henderson:

Thomas M. Henderson
666 Mandana Boulevard
Oakland, California 94610
    With a copy to:

        Gilbert R. Serota
        Arnold & Porter Kaye Scholer LLP
        Three Embarcadero Center, 10th Floor
        San Francisco, California 94111-4042

        And a copy to:

        Susan F. LaMarca
        Securities And Exchange Commission
        44 Montgomery Street, Suite 2800
        San Francisco, California 94104

If to Aileen Yen:

Aileen Yen
666 Mandana Boulevard
Oakland, California 94610

        And a copy to:

Susan F. LaMarca
Securities And Exchange Commission
44 Montgomery Street, Suite 2800
San Francisco, California 94104

If to the Receiver:

Susan L. Uecker, Receiver
Uecker & Associates, Inc.
1613 Lyon Street, Suite A
San Francisco, California 94115

With a copy to:
Elizabeth Berke-Dreyfuss
Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, California 94607

And a copy to:

Susan F. LaMarca
Securities And Exchange Commission
44 Montgomery Street, Suite 2800
San Francisco, California 94104

**[Signatures on following page]**

**IN WITNESS WHEREOF**, the undersigned have executed and delivered this Settlement Agreement on the date set forth opposite their respective signatures below.

Dated: _____    _____

Susan L. Uecker, Receiver

Dated: _6/29/18_    _Thomas M. Henderson_

Thomas M. Henderson

Dated: _June 29 2018_    _Aileen Yen_

Aileen Yen

**IN WITNESS WHEREOF**, the undersigned have executed and delivered this Settlement Agreement on the date set forth opposite their respective signatures below.

Dated: _6/27/18_

_____
Susan L. Uecker, Receiver

Dated: _____

_____
Thomas M. Henderson

Dated: _____

_____
Aileen Yen

009589.0024\5119623.2                        15