UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>SAN FRANCISCO REGIONAL CENTER LLC, et al.,<br><br>Defendants. | Case No. 17-cv-00223-RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

I. INTRODUCTION

In this civil enforcement action, the Securities Exchange Commission seeks partial summary judgment in the form of a finding that defendants San Francisco Regional Center, LLC ("SFRC"), and North America 3PL, LLC ("NA3PL, LLC") violated the federal securities laws. Based on such alleged liability, the SEC further seeks an order requiring NA3PL, LLC and relief defendant Berkeley Healthcare Dynamics, LLC ("BHD, LLC") jointly and severally to disgorge the sum of $23.9 million, representing ill-gotten gains purportedly netted in the scheme, together with interest. While the motion is unopposed with respect to defendants SFRC and NA3PL, LLC, and has merit, the SEC has not shown that it is entitled to disgorgement in that amount from relief defendant BHD, LLC. Accordingly, the motion will be granted in part, and denied in part.

## II. BACKGROUND

As the parties are familiar with the general factual background of this action and its procedural history, those matters will not be recounted here. For purposes of the present motion, the following basic facts are undisputed.

Relief defendant BHD, LLC owns a warehouse in Oakland that was originally intended to house one of the EB-5 businesses promoted by defendant Thomas Henderson through defendant SFRC. BHD, LLC, and its warehouse are currently under the management of the Receiver appointed in this action. Although the business was moderately profitable prior to this litigation, it is no longer operating. Ongoing expenses of maintaining the property have been funded through court-approved loans from the general receivership estate to BHD, LLC, to be repaid upon sale of the warehouse.

The EB-5 limited partnership associated with the warehouse project was called NA3PL, LLP ("the Partnership").[1] The EB-5 investors each contributed $500,000 to the Partnership, plus a $60,000 "syndication fee," to become limited partners. The Private Placement Memorandum disclosed that the Partnership would not have an ownership interest in the warehouse business or the warehouse itself. Rather, the capital contributions of the 40 limited partners ($20 million) were to be *loaned* to NA3PL, LLC, which was described as the actual "Job Creating Entity," under the EB-5 program. (The syndication fees paid by the investors were to go to various purported Partnership expenses.) NA3PL, LLC also was not to own the warehouse. Rather, it would lease the warehouse from BHD, LLC.[2]

---

[1] The Partnership is a named defendant in this action and is under the management of the Receiver. The SEC's present motion, however, seeks no relief against it.

[2] The SEC faults defendants for "structuring transactions to deliberately deprive EB-5 investors of ownership interests in real estate purchased with investor funds." It is far from clear that there was anything wrongful with structuring the investments as debts rather than equity, presuming the nature of the transactions was disclosed adequately. Intervenors argue EB-5 investors *preferred* such arrangements, because it theoretically would lead to earlier repayment of the capital. In any event, the SEC does not press an argument that the structure of the transaction itself violated securities laws.

The warehouse was originally purchased by an entity known as Berkeley Healthcare Dynamics, LP ("BHD, LP"), which is not a party here. BHD, LP was owned 99% by its general partner, BHD, LLC, and 1% by a limited partner who was an individual associated with Thomas Henderson. BHD, LLC, in turn, was originally owned 50% by SFRC, and 25% each by Intervenors Chin and Shimamoto. Subsequently Intervenor Bronson obtained a 10% interest, through a reduction in SFRC's shares.

The original warehouse purchase was funded by just under $2.7 million from SFRC, a $100,000 deposit made by Chin individually, and $6.2 million from a lender, Calmwater Capital 3, secured by a mortgage. Just under two years later, title to the warehouse was transferred from BHD, LP to BHD, LLC, in connection with a refinancing. The new lender, East West Bank, allegedly insisted on the transfer from the limited partnership to its general partner, the LLC. The documents described BHD, LLC as the "successor" to BHD, LP, and an exemption from transfer tax was claimed on the basis that grantors and the grantees in the conveyance were "comprised of the same parties who continue to hold the same proportionate interest in the property . . . ." At that time, BHD, LLC (through Chin) also executed a promissory note to repay SFRC the approximately $2.7 million it had contributed to the original purchase.[3]

The SEC's disgorgement claim pursued against NA3PL, LLC and BHD, LLC in this motion has three elements, plus interest. First, the SEC seeks disgorgement of the funds SFRC contributed to the original purchase of the warehouse, based on a showing that those funds actually came from other EB-5 projects. That amount, referenced above as "just under $2.7 million" is $2,699,181. Second, SEC asks for disgorgement of an *additional* $2.7 million it has shown was transferred into BHD, LLC from other entities to cover various expenses.[4] Third, and

---

[3] Intervenors emphasize the assumption of debt to defend the transfer of title between the entities as a legitimate business transaction. While it does appear there was nothing wrong with the transfer itself, it does not eliminate issues arising from SFRC's contribution to the original purchase and the tainted source of those funds.

[4] Intervenors argue some of those monies were appropriately paid from NA3PL, LLC (the warehouse tenant) to BHD, LLC (the landlord), to reimburse it for various expenses it had

most significantly, the SEC seeks "disgorgement" of $17.4 million that it has shown was raised from investors in the Partnership, but which was diverted to SFRC for other uses. Those monies were never in the possession of BHD, LLC. To the extent some of the funds raised by the Partnership did pass through NA3PL, LLC, the $17.4 million is the amount that was never returned to it or provided to the Partnership. Finally, the SEC requests prejudgment interest at the rate specified in 26 U.S.C. § 6621 for tax underpayment.

III. DISCUSSION

The SEC's request for a finding that SFRC and NA3PL, LLC violated the federal securities laws by diverting EB-5 investors funds from the purposes for which they were solicited is unopposed and is well-supported by the record. That portion of the motion is therefore granted. The request for an order of disgorgement against NA3PL, LLC in the amount requested is also unopposed and adequately supported, and is granted on that basis. As to BHD-LLC, however, the SEC has not shown it is entitled to "disgorgement" of funds never in the possession of that entity.

As the Ninth Circuit has made clear in the context of SEC enforcement actions,

> To assert jurisdiction over—and ultimately obtain disgorgement from—[parties] as relief defendants, the SEC was required to demonstrate that [those parties] (1) *received ill-gotten funds* and (2) do not have a legitimate claim to those funds.

*Sec. & Exch. Comm'n v. World Capital Mkt., Inc.*, 864 F.3d 996, 1004 (9th Cir. 2017) (emphasis added). While it is no defense to an obligation to disgorge that a party *no longer* has the funds,[5] the SEC has not shown any legal basis to require an entity—particularly a relief defendant who has not even been charged with wrongdoing—to "disgorge" something it never had. The cases

---

incurred that were actually the tenant's responsibility under the lease. Intervenors have not shown, however, that there is any factual dispute that those funds came from and/or were commingled with misdirected investor funds, and therefore are subject to disgorgement.

[5] *See id.* at 1007, quoting *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1098 (9th Cir. 2010) ("A person who controls the distribution of illegally obtained funds is liable for the funds he or she dissipated as well as the funds he or she retained.")

CASE NO. 17-cv-00223-RS
4

offered by the SEC in its motion all reflect the concept that disgorgement applies to something the defendant has actually received. For example:

> Once the district court has found federal securities law violations, it has broad equitable power to fashion appropriate remedies, including ordering that culpable defendants disgorge *their profits*.

*SEC v. Razmilovic*, 738 F.3d 14, 31 (2nd Cir. 2013) (emphasis added).

> Disgorgement is designed to deprive a wrongdoer of *unjust enrichment*.

*SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998) (emphasis added).

> Unlike other remedies, disgorgement is not designed to compensate victims or to punish wrongdoers . . . but is instead meant to deter wrongdoing by forcing a defendant *to give up the amount he was unjustly enriched* . . . . Disgorgement, in other words, is judicial vindication of the promise that crime *does not pay*."

*SEC v. Amerindo Investment Advisors Inc.*, 2014 WL 2112032, at *4 (S.D.N.Y. May 6, 2014) (emphasis added).

The SEC argues that BHD, LLC can nevertheless be required to "disgorge" monies it never received, given its close relationship to other defendants, the complicated intermingling of funds, overlapping ownership, and similar factors. These theories, which strongly resemble a conspiracy claim and expressly invoke the doctrine of alter-ego, perhaps could gain traction where a party has not been named merely as a relief defendant. In essence, though, the SEC is arguing that BHD, LLC should be treated as if it were a *participant* in the wrongdoing. Having not pursued such claims against BHD, LLC previously in this litigation, the SEC cannot transform it from a relief defendant to a full defendant in the context of this motion.[6]

---

[6] *SEC v. First Pac. Bancorp*, *supra*, provides further support for the result here. In that case, disgorgement was ordered against a primary defendant, the CEO of banking entities alleged to have violated securities laws. The defendant argued he had "received no personal benefit" from the wrongfully-acquired funds. In upholding disgorgement, the Ninth Circuit observed that, contrary to his argument, the defendant effectively obtained (and retained) the funds by "milking

## IV. CONCLUSION

The motion is denied to the extent it seeks to require disgorgement by BHD-LLC of the $17.4 million in diverted investor funds it never received. The motion is otherwise granted. The SEC may submit a proposed order with interest calculations revised accordingly within 14 days of the date of this order. The Intervenors or any party may file any objections to the interest calculations of the proposed order within 3 court days thereafter.

**IT IS SO ORDERED**.

Dated: January 10, 2019

RICHARD SEEBORG
United States District Judge

---

the asset," and "paying himself hundreds of thousands of dollars in salaries, commissions, and consulting, management and legal fees." 142 F.3d 1186, 1192. Thus, although the funds in question had not been paid *directly* to the defendant, disgorgement was appropriate because he had indirectly received them and "[t]he district court was not required to trace every dollar of the offering proceeds fraudulently retained by [the defendant]." *Id.* at n. 6. Here, in contrast, the SEC has not shown the $17.4 million even indirectly went to BHD-LLC, and it is not a primary defendant charged with wrongdoing.

CASE NO. 17-cv-00223-RS

6