1   Elizabeth Berke-Dreyfuss (Bar No. 114651)
    **WENDEL ROSEN LLP**
2   1111 Broadway, 24th Floor
    Oakland, California 94607-4036
3   Telephone:  (510) 834-6600
    Fax:  (510) 834-1928
4   Email:  edreyfuss@wendel.com

5

6   Bennett G. Young (Bar No. 106504)
    **JEFFER MANGELS BUTLER & MITCHELL LLP**
7   Two Embarcadero Center, 5th Floor
    San Francisco, California 94111-9813
8   Telephone:  (415) 398-8080
    Fax:  (415) 398-5484
9   Email:  byoung@jmbm.com

10  Attorneys for Susan L. Uecker, Receiver

11

12

13                  UNITED STATES DISTRICT COURT

14                 NORTHERN DISTRICT OF CALIFORNIA

15                    SAN FRANCISCO DIVISION

16

17  SECURITIES AND EXCHANGE              Case No. 3:17-CV-00223-RS
    COMMISSION,
18
               Plaintiff,
19
          vs.
20                                       **RECEIVER'S PROPOSED PLAN OF
    SAN FRANCISCO REGIONAL CENTER, LLC;  DISTRIBUTION**
21  THOMAS M. HENDERSON; CALIFORNIA
    GOLD MEDAL, L.P.; CALLSOCKET, L.P.;
22  CALLSOCKET II, L.P.; CALLSOCKET III,
    L.P.; COMPREHENSIVE CARE OF
23  OAKLAND, L.P.; NA3PL, L.P.; WEST
    OAKLAND PLAZA, L.P.; CALLSOCKET,
24  LLC; CALLSOCKET II, LLC; CALLSOCKET
    III, LLC; COMPREHENSIVE CARE OF
25  CALIFORNIA, LLC; IMMEDIA, LLC; and
    NORTH AMERICA 3PL, LLC,
26
               Defendants,
27
          -and-
28
    CALLSOCKET HOLDING COMPANY, LLC;

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

CALLSOCKET III HOLDING COMPANY, LLC; BERKELEY HEALTHCARE DYNAMICS, LLC; CENTRAL CALIFORNIA FARMS, LLC; and JL GATEWAY, LLC,

Relief Defendants.

## I.    PROCEDURAL HISTORY

On January 17, 2017, the Securities and Exchange Commission (the "SEC") filed a complaint commencing this matter, alleging that the named defendants had exploited a federal EB-5 visa program by defrauding investors seeking to invest in job creation programs, earn a return on their investments and obtain a permanent U.S. visa as a way towards United States residency. (Docket No. 1).

On January 20, 2017, the SEC filed a motion seeking, among other things, an order appointing a receiver over the entity defendants and relief defendants.  The Court entered the Order Granting Motion for Preliminary Injunction and to Appoint a Receiver on March 23, 2017, pursuant to which the Court, among other things, appointed Susan L. Uecker as Receiver ("Receiver") over defendant San Francisco Regional Center, LLC ("SFRC"), as well as a majority of the entity defendants and relief defendants, and as Monitor over certain of the remaining entity defendants and relief defendants.  (Docket Nos. 96, 100).  On June 5, 2017, the Court entered its Order Extending Scope of Receivership, appointing Susan L. Uecker as Receiver over the monitor defendants and relief defendants.  (Docket No. 171).

On February 28, 2019, the Receiver filed her Motion for Order Consolidating Receivership Entities for Purposes of Distribution. (Docket No. 561).  On June 3, 2019, the Court entered an Order Re Pending Motions, Docket Nos. 561, 574, 600, And 601, granting, among other things, the Receiver's motion, consolidating substantially all of the entity defendants and relief defendants for purposes of distribution under a proposed plan.[1]  (Docket No. 622).

---

[1] By order entered on May 31, 2019, defendant Comprehensive Care of Oakland, L.P. ("CCOO") was voluntarily dismissed from this action and on that same date, a Final Judgment was entered against Comprehensive Care of California ("CCOC"); thereafter, by order entered on June 20,

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1  Under the Receiver's Plan of Distribution, both creditors of Defendant CCOO and EB-5

2  investors in defendant CCOO shall not receive any distribution on account of their investment,

3  capital contribution or claim because each of their respective claims have been assumed by CCOO

4  pursuant to the terms of a Court approved Settlement Agreement between the Receiver and Shirley

5  Ma ("Ma").  Ma is the 50% owner/member of CCOC, and CCOC is the general partner of CCOO.

6  Under the Settlement Agreement, Ma purchased SFRC's 50% membership interest in CCOC and

7  became the sole owner/member of CCOC.  Pursuant to Paragraph 8.1 of the Settlement

8  Agreement, as part of exiting the receivership, CCOO assumed all of the pre and post receivership

9  contracts and liabilities of CCOO, which included the obligations owing to CCOO's limited

10  partners of, or EB-5 investors in that entity defendant.  The Court approved the Settlement

11  Agreement between the Receiver and Ma by order entered on April 4, 2019 (Docket No. 583) and

12  entered the order terminating the receivership as to CCOO (and CCOC) on June 20, 2019 (Docket

13  No. 630).

14  Similarly, none of the creditors of BHD shall have their claims paid through the Receiver's

15  Plan of Distribution.  The Order Terminating Receivership As To Berkeley Healthcare Dynamics,

16  LLC provided that claims filed solely and exclusively against BHD by East West Bank, Kevin

17  Shimamoto, Clement Chin and Jennifer Bronson would be solely the responsibility of BHD, and

18  upon termination of the receivership, the remaining Receivership Entities shall have no liability on

19  account of those claims (Docket No. 633).

20  ## II.    PLAN DEFINITIONS

21  1.    "Administrative Cash Reserve" means the amount of funds from the Plan Fund that

22  the Receiver shall retain as undistributed funds for purposes of paying potential tax liabilities,

23

24  2019, the receivership was terminated at to both defendants CCOO and CCOC, and the Receiver
discharged. (Docket Nos. 620, 630).  On June 27, 2019, a Final Judgment was entered as to

25  Berkeley Healthcare Dynamics, LLC ("BHD"), and thereafter, by stipulation and order entered on
that same date, the receivership was terminated as to BHD, and the Receiver discharged. (Docket

26  Nos. 633, 634).  As a result of the previously entered orders, the order granting the Receiver's

27  Motion for Order Consolidating Receivership Entities for Purposes of Distribution, consolidated
all entity defendants and relief defendants other than CCOO, CCOC, and BHD.

28

1 expenses to wind down the Consolidated Receivership Estate, and for other unanticipated costs of
2 the Receivership.

3      2.    "Administrative Claims" means accrued and unpaid fees and expenses of the
4 Receiver and the professionals she retained, costs of administration of the Consolidated
5 Receivership Estate, and any other Claim allowed as an Administrative Claim by order of the
6 Court.

7      3.    "Allowed Claim(s)" means a claim(s) by an EB-5 Investor or Claimant that the
8 Receiver has determined is represented by a valid invoice, receivable, right to payment, interest in
9 or debt against the Consolidated Receivership Entities supported by the submissions of the EB-5
10 Investor or Claimant, the books and records of the Consolidated Receivership Entities, or other
11 sources of information reasonably available to the Receiver or which has been allowed by order of
12 the Court.  "Allowed Claim(s)" will be classified under this Plan as Administrative Claims,
13 Priority Claims, Unsecured Creditor Claims, EB-5 Investor Claims, SEC Claims, and Equity
14 Claims. "Allowed Claim(s)" also includes any late-filed Claim approved by the Receiver or by
15 order of the Court.

16      4.    "Appointment Order" means the Order Appointing Receiver and Monitor entered
17 on March 29, 2017 (Docket No. 100) entered in the Case by the Court, a true and correct copy of
18 which is attached hereto as **Exhibit 1**.

19      5.    "Avoidance Action" means any cause of action, or defense against an action, to
20 avoid or recover a transfer of property of the entity defendants or relief defendants or the
21 Consolidated Receivership Estate, including actions, or defenses arising under applicable federal,
22 state or common law.

23      6.    "Case" or "this Case" means the litigation commenced on January 17, 2017, styled
24 *Securities and Exchange Commission v. Thomas M. Henderson, et al.*, Case No. 3:17-cv-00223-
25 RS, pending before the United States District Court for the Northern District of California, San
26 Francisco Division.

27      7.    "Cause of Action" means a claim, right, action, chose in action, suit, or judgment,
28 belonging to the entity defendants and/or relief defendants and/or the Consolidated Receivership

Wendel Rosen  LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1   Estate and any and all claims to recover liabilities, obligations, and debts owing to the entity

2   defendants and/or relief defendants and/or the Consolidated Receivership Estate, whether arising

3   prior to or after March 23, 2017.

4       8.      "Claim" means (i) a right to payment, whether or not such right is reduced to

5   judgment, liquidated, unliquidated, fixed, contingent, matured, disputed, undisputed, legal,

6   equitable, secured or unsecured, or (ii) the right to an equitable remedy for breach of performance

7   if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is

8   reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or

9   unsecured.

10      9.      "Claimant" means a person, other than an EB-5 Investor Claimant, who holds a

11  Claim and the SEC.

12      10.     "Claims Agent" means the Receiver herein, Susan L. Uecker, and is used

13  interchangeably with the Receiver.

14      11.     "Claim Objection" means a written objection served by the Receiver on any person

15  or entity for which the Receiver disputes the Claim filed. The Receiver may also object to any

16  request for payment or transfer of assets even if a formal Proof of Claim was not filed. All Claim

17  Objections shall be resolved pursuant to Order (1) Approving Proposed Claim Form for Non-EB-5

18  Investment Claims Against Receivership Entities; (2) Setting a Claims Bar Date for Submission of

19  Non-EB-5 Investment Claims; (3) Establishing Summary Procedures for Resolution of Disputed

20  Claims ("Claims Order") (Docket No. 482), a true and correct copy of which is attached hereto as

21  **Exhibit 2**.

22      12.     "Commission" or "SEC" means the Securities and Exchange Commission, plaintiff

23  in the Case.

24      13.     "Consolidated Receivership Entities" means defendants San Francisco Regional

25  Center, LLC; California Gold Medal, L.P.; Callsocket, L.P.; Callsocket II, L.P.; Callsocket III,

26  L.P.; NA3PL, L.P.; West Oakland Plaza, L.P.; Callsocket, LLC; Callsocket II, LLC; Callsocket

27  III, LLC; Immedia, LLC; and North America 3PL, LLC and relief defendants Callsocket Holding

28

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

RECEIVER'S PROPOSED PLAN OF DISTRIBUTION         5         3:17-CV-00223-RS

1  Company, LLC; Callsocket III Holding Company, LLC; Central California Farms, LLC; and JL

2  Gateway, LLC.

3       14.     "Consolidated Receivership Estate" means the assets and property, in whatever

4  form, of or from the Consolidated Receivership Entities.

5       15.     "Court" means the United States District Court for the Northern District of

6  California, with jurisdiction over the Case.

7       16.     "Disallowed Claims" include Claims, whether or not formally and timely filed: (i)

8  for management fees, syndication fees and/or late fees; (ii) for the guarantee of a debt or financial

9  obligation of any of the Consolidated Receivership Entities; (iii) for the guarantee of a debt or

10  financial obligation in connection with an EB-5 investment or capital contribution by an EB-5

11  Investor; (iv) that have been disallowed by an order of the Court; (v) for interest, consequential

12  damages, punitive damages or other penalties; (vi) filed with the Receiver after November 26,

13  2018 that has not been accepted by the Receiver or expressly allowed by an order of the Court as a

14  timely filed Claim; and (vii) from an EB-5 Investor who received a return of his or her investment

15  or capital contribution in defendants California Gold Medal, L.P., NA3PL, L.P. and CallSocket

16  L.P. pursuant to the Order Authorizing Receiver (1) To Return Investor Capital Contributions

17  Held In Escrow; And (2) To Pay Fees To Escrow Company (Docket No. 466); (viii) from an EB-5

18  investor for an investment in or capital contribution to CCOO, and/or CCOC; (ix) from any

19  creditor of CCOO; and (x) from any creditor of BHD.  Notwithstanding the foregoing, or any

20  other provision of this Plan, the Receiver's claims against BHD on account of its guaranty of the

21  North American 3PL, LLC Promissory Notes payable to NA3PL, L.P. are not Disallowed Claims

22  and such claims by the Receiver are preserved.

23       17.     "Distribution" means the single or multiple disbursements of money from the

24  Distribution Account or the Consolidated Receivership Entities account to Eligible Claimants

25  pursuant to the Distribution Plan.

26       18.     "Distribution Account" means a checking account or accounts established or

27  previously established by the Receiver to receive or maintain monies from the Consolidated

28  Receivership Entities, and third parties, that are scheduled or intended to be disbursed in

Wendel Rosen  LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

RECEIVER'S PROPOSED PLAN OF DISTRIBUTION      6      3:17-CV-00223-RS

1    accordance with the Distribution Plan.  Multiples of such accounts may be necessary to ensure that

2    the entire amount deposited is insured by the Federal Deposit Insurance Corporation.

3        19.    "Distribution Plan" or "Plan" means this Plan of Distribution for the resolution and

4    distribution of funds to pay Administrative Claims, Priority Claims, Eligible Claimants, the SEC's

5    Claims and the Claims of Equity Holders.

6        20.    "Distribution Plan Notice" means the written notice to EB-5 Investors and

7    Unsecured Creditors that the Plan is approved and they are eligible for a distribution pursuant to

8    this Distribution Plan, unless they receive or have received a Claim Objection. The Distribution

9    Plan Notice will be subject to Court approval.

10       21.    "EB-5 Investor(s)" means a natural person who invested in or made capital

11   contributions to USCIS approved EB-5 New Commercial Enterprise ("NCE") defendants

12   CallSocket, L.P., CallSocket II, L.P., CallSocket III, L.P., NA3PL, L.P., West Oakland Plaza,

13   L.P., and California Gold Medal, L.P., each of which was sponsored by defendant SFRC.  EB-5

14   Investor(s) exclude investors in or limited partners of CCOO because upon exiting the

15   receivership, CCOO assumed all pre and post receivership contracts and liabilities of CCOO,

16   which included the obligations owing to CCOO's limited partners and EB-5 investors in CCOO.

17       22.    "EB-5 Investor Claimants" are those individuals who hold an Allowed EB-5

18   Investor Claim.

19       23.    "EB-5 Investor Claims" means Claims filed or asserted by or on behalf of EB-5

20   Investors.  EB-5 Investor Claims are limited or capped at the amount of the EB-5 Investor's actual

21   investment or capital contribution, but in no event shall exceed $500,000.  Upon approval of the

22   Plan, EB-5 Investor Claimants equity interests in their respective EB-5 NCE defendant shall be

23   extinguished in exchange for an Allowed Claim against the Consolidated Receivership Estate.

24       24.    "Eligible Claimant" means any EB-5 Investor or Unsecured Creditor with an

25   Allowed Claim.

26       25.    "Equity Claims" means Claims of Equity Holders on account of their equity

27   interests.

28

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

26.     "Equity Holder(s)" means any members, shareholders and/or general partners of any of the Receivership Entities, or any person, other than an EB-5 Investor, asserting an equity or ownership interest in any of the Receivership Entities, including BHD.

27.     "Fair Funds" means disgorgement and civil penalties paid to the Commission pursuant to a final judgment or order entered in this Case, that the Commission seeks and obtains Court approval to transfer to the Receiver for distribution to EB-5 Investor Claimants.

28.     "Fair Fund Distribution Account" shall mean a checking account established by the Receiver to accept Fair Funds from the Commission, should the Commission seek and obtain Court approval to transfer Fair Funds to the Receiver for distribution to EB-5 Investor Claimants.

29.     "Late Filed Claims" means any written non-EB-5 Investment Proof of Claim submitted to the Receiver using the approved claim form(s) after November 26, 2018. Late Filed Claims shall be deemed Disallowed Claims, unless accepted by the Receiver or Court as a timely-filed claim.

30.     "Parties in Interest" means anyone known by or to the Receiver who the Receiver reasonably believes has rights that may be impacted by this Plan.

31.     "Plan Fund" means the cash held by the Receiver in a Distribution Account, that is scheduled to be disbursed in accordance with the Distribution Plan for the purpose of paying Class 1, Class 2, Class 3, Class 4 and Class 5 Claims as set forth in this Plan.

32.     "Priority Claims" means any tax, wage, or other Claims entitled to priority distribution under applicable state or federal law, including without limitation 31 U.S.C. § 3713 and any similar state statute.

33.     "Receivership Claims" means any legal claims the Consolidated Receivership Entities have or has against third parties.

34.     "Receivership Entity" or "Receivership Entities" means any Defendant or Relief Defendant in the Case other than Henderson.

35.     "SEC's Claims" means the claim asserted by the SEC based on its causes of action against the Consolidated Receivership Entities as set forth in the SEC's Complaint filed in the Case on January 17, 2017,

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

36.      "Unclaimed Property" means Distributions (i) that are returned to the Receiver as undeliverable and no appropriate forwarding address is received within 90 days after the attempted Distribution by the Receiver is made to such Eligible Claimant; (ii) for which the check making such Distribution is not negotiated within 180 days of its issuance and no request for re-issuance is made within such 180 day period, at which time, such attempted Distribution will be cancelled through a stop payment order or other means; (iii) remaining after the Final Distribution.  The Receiver is under no affirmative obligation to attempt to locate any Eligible Claimant.

37.      "Unsecured Creditor(s)" means a person, other than an EB-5 Investor Claimant, or entity that hold(s) an Allowed Claim that is an Unsecured Creditor Claim(s).

38.      "Unsecured Creditor Claim(s)" means the total amount owed to a Claimant on account of loans agreements, business debts, money judgments that are not EB-5 Investor Claims.

## III.      ASSETS OF THE CONSOLIDATED RECEIVERSHIP ESTATE

A.      Cash:  $27,448,146.73 (as of September 30, 2019);[2]

B.      Other Assets:  40% interest in BHD and potential litigation claims.

## IV.      CLAIMS  AGAINST CONSOLIDATED RECEIVERSHIP ESTATE

### A.      Claims Bar Date and Late Claims

Pursuant to the provisions of the Claims Order, the Receiver served a notice of claims bar date for Non-EB-5 Investment Claims with an accompanying approved Proof of Claim form on all Claimants, which notice and form set November 26, 2018 ("Bar Date") as the last date to file claims for all Claimants.

In the event that any claims are submitted after the Bar Date, in circumstances where it appears that the Eligible Claimant did not have notice of the Bar Date, the absence of an objection on the basis of untimeliness is not a waiver of any rights of the Receiver to file an objection on any other basis, whether any such claim has been submitted in writing or was submitted on an informal basis before or after the Bar Date.

---

[2] The Cash amount includes a reserve account in the amount of $316,328.80, which is the subject of disputed lien claims previously against Henderson's former residence, 666 Mandana Blvd., Oakland, California.

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

The Claims Order provided that any claim submitted after the Bar Date will be barred, except for EB-5 Investor Claims arising from their investment or capital contribution, which were preserved and deferred.  Therefore, other than EB-5 Investors, any person or entity seeking to assert a Claim against the Consolidated Receivership Estate after the Bar Date will need to seek leave of Court to do so (unless the person or entity was not sent the notice of claims Bar Date, in which case, the Receiver in her discretion, may accept the late filed claim as a timely filed claim).

**B.    Objections to Claims**

The Receiver filed Claim Objection(s) pursuant to the terms of the Claims Order. On October 11, 2019, the Receiver filed a Motion for Order Disallowing Certain Claims, in Whole or in Part (Docket No. 692).  On November 19, 2019, the Court entered an Order Granting the Motion to Disallow Certain Claims, in Whole or in Part, as Modified by the Court (Docket No. 704).

The Receiver may, in her discretion, file other or additional objections to Claims, and shall provide notice and an opportunity to respond as may be required pursuant to the Claims Order.

If appropriate or necessary, as may be determined in the Receiver's absolute discretion, the Receiver will file additional motions to seek disallowance of the following non-exclusive categories of claims:

- Claims which have received prior distribution;
- Claims for funds paid to or obligations of non-receivership entities;
- Duplicate claims;
- Late filed Claims not accepted by the Receiver as a timely-filed Claims; and
- Claims to which the Receiver objected in writing and the Claimant did not respond or the Claim Objection has not been resolved.

**C.    Classes of Claimants**

The Receiver has categorized Claims into the following classes for purposes of receiving a Distribution under the Plan:

Class 1:        Allowed Administrative Claims

Class 2:        Allowed Priority Claims

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1    Class 3:      Allowed Unsecured Creditor Claims and EB-5 Investor Claims

2    Class 4:      Allowed SEC's Claims

3    Class 5:      Allowed Equity Holders' Claims

4    These classes of claims and the proposed treatment of each class are discussed below.

5              **1.    Class 1**

6    Class 1 consists of the Allowed Administrative Claims for the Receiver's fees and costs,

7    the fees and costs of professionals retained by the Receiver, expenses of administration of the

8    Consolidated Receivership Estate and any other Claims that are allowed as Administrative Claims

9    by Court order.

10             **2.    Class 2**

11   Class 2 consists of the Allowed Priority Claims. The Allowed Priority Claims will likely

12   consist of tax claims.

13   Anticipated tax claims that would constitute Allowed Priority Claims are tax liabilities at

14   both the federal and state levels attributable to the sale of assets after March 23, 2017.

15   No distribution will be made to Classes 3 or 4 until such time as Class 1 and 2 Claims have

16   been paid in full or sufficient reserves are held to ensure payment in full to Classes 1 and 2.

17             **3.    Class 3**

18   Class 3 consists of the Allowed Unsecured Creditor Claims and EB-5 Investor Claims.

19   Class 3 Allowed Unsecured Creditor Claims are identified on **Exhibit 3A**.  Class 3

20   Allowed EB-5 Investor Claims, which have been divided by the entity defendant USCIS approved

21   EB-5 NCE in which the EB-5 Investor Claimants invested, are identified in **Exhibits 3B** through

22   **3G** as follows:

23        Class 3B:     CallSocket, L.P.          Exhibit "3B"
          Class 3C:     CallSocket II, L.P.       Exhibit "3C"
24        Class 3D:     CallSocket III, L.P.      Exhibit "3D"
          Class 3E:     NA3PL, L.P.               Exhibit "3E"
25        Class 3F:     West Oakland              Exhibit "3F"
                        Plaza, L.P.
26        Class 3G      California Gold           Exhibit "3G"
                        Medal, L.P.

27

28

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

1    This Plan contemplates that the Allowed Unsecured Creditor Claims and Allowed EB-5

2  Investor Claims will be paid as provided by this Plan from the Plan Fund, which shall be funded

3  by cash in the Distribution Account.  If there are insufficient funds to pay Class 3 Claims in full,

4  Class 3 Claimants shall be paid on a pro rata basis.  **PURSUANT TO THE TERMS OF THIS**

5  **PLAN NO PAYMENT SHALL BE MADE TO ANY CLASS 3 CLAIMANT ON ACCOUNT**

6  **OF A CLAIM OR PORTION THEREOF FOR INTEREST, CONSEQUENTIAL**

7  **DAMAGES, PUNITIVE DAMAGES OR OTHER PENALTIES.**

8    Class 3 Claimants who are EB-5 Investor Claimants may also receive an additional

9  distribution from the Fair Fund Distribution Account if such a distribution is approved by the

10 Court pursuant to a proposal by the SEC.  In the event of a distribution to EB-5 Investor Claimants

11 from the Fair Fund Distribution Account, such distribution is separate and apart from Distributions

12 by the Receiver pursuant to the Plan.

13    Upon the receipt of a Distribution Plan Notice, Class 3 EB-5 Investor Claimants shall

14 notify the Receiver, in writing, providing the name, location and account to which the Distribution

15 may be made by use of the Form Statement Of Claim By EB-5 Investor attached hereto as

16 **Exhibit 3H**.  **Any payment of a Class 3 EB-5 Investor Claimant's Distribution to a third**

17 **party shall be only for the convenience of and at the direction of the Class 3 EB-5 Investor**

18 **Claimant in lieu of a payment directly to the Class 3 EB-5 Investor Claimant and shall not**

19 **be considered an investment by any Receivership Entity or by the Receiver on behalf of any**

20 **Class 3 EB-5 Investor Claimant**.

21    **THIS PLAN, THE RECEIVER AND HER PROFESSIONALS DO NOT PROVIDE**

22 **ANY IMMIGRATION ADVICE, LEGAL OR OTHERWISE, AND ALL EB-5 INVESTOR**

23 **CLAIMANTS ARE ENCOURAGED TO CONSULT THEIR OWN BUSINESS AND**

24 **INVESTMENT ADVISORS AND IMMIGRATION COUNSEL REGARDING ANY**

25 **CONSEQUENCES OF THIS PLAN, RECEIPT OF A PLAN DISTRIBUTION, OR ANY**

26 **SUBSEQUENT USE BY EB-5 INVESTOR CLAIMANTS OF THEIR DISTRIBUTION.**

27

28

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

4.       **Class 4**

Class 4 consists of the Allowed SEC's Claims.  The Allowed SEC's Claims shall be treated as may be agreed to by the SEC and Receiver, subject to Court approval.

5.       **Class 5**

Class 5 consists of the Allowed Equity Holders' Claims.

**V.       PROPOSED PLAN NOTICE**

Upon the filing of the Distribution Plan with the Court in the Case:

1.       The Receiver will file a notice of hearing for approval of the Distribution Plan ("Plan Notice").

2.       The Plan Notice will contain an objection deadline, and the hearing date, time and place.  The Receiver shall serve the Plan Notice, the motion for approval of the Distribution Plan and all supporting pleadings and documents (collectively "Plan Documents") on all Unsecured Creditors, EB-5 Investor Claimants, Equity Holders, the SEC, and Parties in Interest as follows:

(a)       By ECF on those Unsecured  Creditors, EB-5 Investor Claimants, the SEC, Equity Holders and Parties in Interest  that have an ECF ,account on the District Court's website;

(b)       On all known EB-5 Investor Claimants, by email where the email address is known by the Receiver to be valid and current, and regular mail where an email address is not known by the Receiver or is known by the Receiver to be invalid;

(c)       On all known Unsecured Creditors, Equity Holders and Parties in Interest, by regular mail where either the street address is known by the Receiver to be valid and current or the Unsecured Creditor, Equity Holder or Party in Interest provided an address on its Proof of Claim, or by email known by the Receiver to be valid and current where the street address is not known by the Receiver or is known by the Receiver to be invalid.

3.       The Receiver shall post the Plan Documents on the Receiver's website at: sfrc-eb5.com.

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

VI. **CREATION OF PLAN FUND TO PAY CASH CLAIMS IN CLASSES 1, 2, 3, 4 AND 5**

A. **Cash To Create Plan Fund**

The cash in the Distribution Account shall constitute the Plan Fund to pay Claims in Classes 1, 2, 3, 4 and 5 as provided by this Plan.  In addition, to the extent that the Receiver recovers damages or other funds from or on account of the Consolidated Receivership Claims, Avoidance Actions and/or Causes of Action, such recoveries shall be added to the Distribution Account and shall also constitute or be a part of the Plan Fund to pay Claims in Classes 1, 2, 3, 4 and 5, as provided by this Plan.

B. **Priority Of Payment Of Claims From Plan Fund And Fair Funds**

The Plan Fund will be used to pay Classes 1, 2, 3, 4 and 5, as provided by the Plan. To the extent there is a surplus in the Plan Fund following payment of Classes 1, 2, 3, and 4 (if any) the surplus shall be distributed to the Class 3 EB-5 Investor Claimants to reflect the risks they undertook in investing.  To the extent there is a deficiency, Classes 1 and 2 will be paid in full, and Class 3 will receive a pro rata distribution on account their Claims from the remaining funds in the Plan Fund following payment in full to Classes 1 and 2.  Class 5 shall not receive any distribution under the Plan unless or until Classes 1, 2, 3, and 4 are paid in full.

**INTEREST SHALL NOT ACCRUE OR BE PAID ON ANY ALLOWED CLAIM, AND NO HOLDER OF AN ALLOWED CLAIM SHALL BE ENTITLED TO INTEREST ACCRUING ON ANY ALLOWED CLAIM FOR THE PERIOD OF TIME FROM THE DATE OF THE APPOINTMENT OF THE RECEIVER TO THE DATE THE CASE IS CLOSED.**

Allowed Claims shall be paid from the Plan Fund in the following priority:

Class 1: Administrative Claims shall be paid in full from the Plan Fund.  In the Receiver's discretion, the Administrative Cash Reserve shall retain sufficient funds to pay projected Administrative Claims through the close of the Consolidated Receivership Estate.

Class 2: Priority Claims shall be paid in full from the Plan Fund.  In the Receiver's discretion, the Administrative Cash Reserve shall retain sufficient funds to pay Priority Claims through the close of the Consolidated Receivership Estate.

Class 3: Unsecured Creditor Claims and EB-5 Investor Claims shall be paid from the Plan Fund. If the Plan Fund is insufficient to pay the Unsecured Creditor Claims and EB-5 Investor Claims in full, the Unsecured Creditor Claims and EB-5 Investor Claims shall be paid on a pro rata basis.

**NOTWITHSTANDING THE FOREGOING PROVISION, ANY UNSECURED CREDITOR CLAIM AND ANY EB-5 INVESTOR CLAIM SHALL BE TREATED AS A DISALLOWED CLAIM IN THE EVENT THE RECEIVER HAS AN AVOIDANCE ACTION, CLAIM OR CAUSE OF ACTION AGAINST SUCH UNSECURED CREDITOR AND/OR EB-5 INVESTOR UNTIL SUCH TIME THE UNSECURED CREDITOR OR EB-5 INVESTOR SATISFIES THE RECEIVER'S AVOIDANCE ACTION, CLAIM OR CAUSE OF ACTION, AT WHICH TIME THE UNSECURED CREDITOR OR EB-5 INVESTOR MAY RECEIVE A DISTRIBUTION ON THEIR RESPECTIVE CLAIMS.**

Class 4: The SEC's Claims as determined by agreement of the SEC and Receiver, subject to Court approval.

Class 5: The Claims of the Equity Holders shall receive nothing unless or until the Allowed Claims of Classes 1, 2, 3 and 4 (if any) are paid in full.

1.    **Administrative Cash Reserve**:

The Receiver shall have the authority and discretion to retain a reserve from the Plan Fund to ensure that sufficient funds will be available to pay:

(a)    Class 1 and 2 Claims in full through the close of the Case or the Consolidated Receivership Estate;

(b)    Any and all estimated tax liability generated from the previous sale of Receivership Assets to generate the Plan Fund;

(c)    The fees and costs to wind up the Consolidated Receivership Estate;

(d)    Any unanticipated costs of the Consolidated Receivership Estate; and

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

(e)    Any disputed Claim, or Claim for which the Receiver has asserted a Claim Objection, until such time as the dispute or objection is resolved by the Receiver or by order of the Court.

**2.    Fair Funds:**

The disgorgement obtained by the Commission from relief defendant BHD and the disgorgement and penalties obtained by the Commission from defendant Thomas M. Henderson are not assets of the Consolidated Receivership Estate and may, if proposed by the Commission and approved by the Court, be distributed or transferred to the Receiver for placement or deposit in the Fair Fund Distribution Account for distribution to Class 3 EB-5 Investor Claimants <u>only</u>, based upon the EB-5 Investor Claims

**3.    Final Distribution:**

Following the completion of prosecution of all Consolidated Receivership Claims, Avoidance Actions, and Causes of Action of any kind by the Receiver and the distribution of the cash from the Plan Fund and the Fair Fund Distribution Account, the Receiver shall prepare and file final tax returns for SFRC, and, shall seek authority from the Court to make a final distribution of any funds remaining in the Plan Fund and the Fair Fund Distribution Account at that time.

**VII.    TAX TREATMENT**

At the Receiver's discretion, upon consultation with her tax professionals:

1.    The activity of the Consolidated Receivership Estate from and after June 3, 2019, shall be reported as taxable activity of SFRC.

2.    Any tax liability of the Consolidated Receivership Estate shall be paid with cash in the Plan Fund.  No distributions to Classes 3 shall be paid until such time as the Receiver, in her discretion, determines that sufficient funds are available in the Plan Fund to pay all taxes in full, or there is a sufficient reserve for those claims.

3.    The Allowed EB-5 Investor Claims shall be treated as debts of SFRC for tax reporting purposes.

**THE PLAN, THE RECEIVER AND/OR HER PROFESSIONALS DO NOT PROVIDE ANY TAX ADVICE AND ALL UNSECURED CREDITORS AND EB-5**

1  **INVESTOR CLAIMANTS ARE ENCOURAGED TO CONSULT THEIR OWN TAX**
2  **ADVISOR REGARDING ANY TAX CONSEQUENCES OF THIS PLAN.**
3  **VIII.  ADMINISTRATIVE MATTERS**

4  **A.    Jurisdiction of Court**

5  This Court shall have sole and exclusive jurisdiction to interpret and enforce this Plan.
6  This Court shall also have sole and exclusive jurisdiction to resolve all disputes concerning the
7  Plan, and resolve all disputes under the Plan.

8  All Claims, Claims Objections and Allowed Claims shall be subject to the jurisdiction of
9  the Court.

10  Nothing in this Plan shall interfere with or supersede the Receiver's rights and authority
11  under Paragraphs 9(H), 9(I), 39, and 40 of the Appointment Order.

12  **B.    De Minimis, Unclaimed and Undeliverable Distributions**

13  **1.    No Di Minimis Distributions**

14  The Receiver shall not be required to make a distribution to the holder of an Allowed
15  Claim if such a distribution is an amount less than $100.00.  Any holder of an Allowed Claim that
16  does not receive a distribution solely because of this provision will have such distribution reserved
17  until such time as the holder would receive a distribution in the amount of $100.00 or more.

18  **2.    Unclaimed and Undeliverable Distributions**

19  Any Unclaimed Property shall be added back to the Plan Fund in the Distribution Account
20  for Distribution to Class 3 Claimants in accordance with the terms of this Plan.  Any Unclaimed
21  Property remaining after Final Distribution shall be donated to charity to be selected at a later
22  time.

23  **C.    Reports to the Court and to Claimants**

24  The Receiver shall file a written report with the Court regarding the status of efforts to
25  implement this Distribution Plan, which report shall be part of the Receiver's Quarterly Report.

26  **D.    Adjustments and Amendments**

27  To carry out the purposes of the Distribution Plan, the Receiver may make adjustments to
28  the Distribution Plan, consistent with the purposes and intent of the Distribution Plan, as may be

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

agreed upon between the Receiver and the Commission, and approved by the Court. The Court retains jurisdiction over this matter for the purpose of ruling on any such proposed amendments and for any and all other matters that may arise under or relate to the Distribution Plan.

**E.      Possible Avoidance Actions and Retained Claims**

All Consolidated Receivership Claims, Causes of Action, including possible Avoidance Actions, and any Claims and Causes of Action of the entity defendants and relief defendants, are preserved by and for the Consolidated Receivership Estate. The Receiver for the Consolidated Receivership Estate expressly preserves such Claims and Causes of Action for later adjudication, and nothing herein waives the right to bring any such Avoidance Action, Claims and/or Causes of Action unless the same has been settled in this Distribution Plan.

**F.      Filing Final Tax Returns, Wind Up and Dissolution of Consolidated Receivership Entities**

The Receiver may seek to file final tax returns and dissolve any or all of the Consolidated Receivership Entities, except SFRC, for which final tax returns shall be filed and SFRC dissolved as soon as practical following the final distribution under the Plan, as provided in Section VI., B.3. above.  Nothing in the Plan effects or impairs the Consolidated Receivership Entities rights as a member, shareholder or partner in any limited liability company, corporation or partnership.

**G.      Completion of Plan**

The Receiver will complete the distributions required by the Plan within five years from the date the Plan is approved by the Court, unless an application is filed with and approved by the Court to extend the time to complete the distributions.

If the Receiver or the SEC determines that the Receiver has concluded her duties and obligations under the Receivership appointment orders issued by the Court, as may have been amended, either the Receiver or the SEC may apply to the Court for an Order terminating the Receivership.

Any Order terminating the Consolidated Receivership Estate shall provide for the Receiver to file a final accounting providing schedules identifying: (i) all assets, their source and value; and (ii) all liabilities, the nature and amount of such claims.

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

1    Upon the close of the Consolidated Receivership Estate, the Receiver may destroy all

2    records.

3

4    **IX.    RECEIVER'S AUTHORITY**

5    Unless expressly superseded by the provisions of this Distribution Plan or order of the

6    Court, the Appointment Order, and the Order Extending Scope of Receivership dated June 5, 2017

7    (Docket No. 171) shall remain in full force and effect.

8

9    DATED:  December 19, 2019

10

11                                            By:        /s/ Susan L. Uecker

12                                                       Susan L. Uecker, Receiver

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

# EXHIBIT 1

009589.0024\5694303.1

1    JINA L. CHOI (N.Y. Bar No. 2699718)
     ERIN E. SCHNEIDER (Cal. Bar No. 216114)
2     schneidere@sec.gov
     STEVEN D. BUCHHOLZ (Cal. Bar No. 202638)
3     buchholzs@sec.gov
     ANDREW J. HEFTY (Cal. Bar No. 220450)
4     heftya@sec.gov
     SUSAN F. LaMARCA (Cal. Bar No. 215231)
5     lamarcas@sec.gov
     THOMAS J. EME (Ill. Bar No. 6224870)
6     emet@sec.gov

7    Attorneys for Plaintiff
     SECURITIES AND EXCHANGE COMMISSION
8    44 Montgomery Street, Suite 2800
     San Francisco, CA 94104
9    Telephone: (415) 705-2500
     Facsimile:  (415) 705-2501

10

11                 UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                SAN FRANCISCO DIVISION

14

| | |
|---|---|
| 15   SECURITIES AND EXCHANGE COMMISSION, | Case No. 3:17-cv-00223-RS |
| 16         Plaintiff, | |
| 17        v. | [~~PROPOSED~~] ORDER APPOINTING RECEIVER AND MONITOR |
| 18   SAN FRANCISCO REGIONAL CENTER, LLC; THOMAS M. HENDERSON; CALIFORNIA | |
| 19   GOLD MEDAL, L.P.; CALLSOCKET, L.P.; CALLSOCKET II, L.P.; CALLSOCKET III, L.P.; | |
| 20   COMPREHENSIVE CARE OF OAKLAND, L.P.; NA3PL, L.P.; WEST OAKLAND PLAZA, L.P.; | |
| 21   CALLSOCKET, LLC; CALLSOCKET II, LLC; CALLSOCKET III, LLC; COMPREHENSIVE | |
| 22   CARE OF CALIFORNIA, LLC; IMMEDIA, LLC; and NORTH AMERICA 3PL, LLC, | |
| 23       Defendants, and | |
| 24   CALLSOCKET HOLDING COMPANY, LLC; CALLSOCKET III HOLDING | |
| 25   COMPANY, LLC; BERKELEY HEALTHCARE DYNAMICS, LLC; | |
| 26   CENTRAL CALIFORNIA FARMS, LLC; and JL GATEWAY, LLC, | |
| 27 | |
| 28       Relief Defendants. | |

1    This matter came before this Court upon the motion of the Securities and Exchange

2  Commission ("SEC"or "Commission") for an order seeking the appointment of a receiver over San

3  Francisco Regional Center, LLC; California Gold Medal, L.P.; CallSocket, L.P.; CallSocket II, L.P.;

4  CallSocket III, L.P.; Comprehensive Care of Oakland, L.P.; NA3PL, L.P.; West Oakland Plaza, L.P.;

5  CallSocket, LLC; CallSocket II, LLC; CallSocket III, LLC; Comprehensive Care of California, LLC;

6  Immedia, LLC; North America 3PL, LLC (collectively, the "entity Defendants"); CallSocket Holding

7  Company, LLC; CallSocket III Holding Company, LLC; Berkeley Healthcare Dynamics, LLC;

8  Central California Farms, LLC; and JL Gateway, LLC (collectively, the "Relief Defendants").  The

9  Court has considered the Commission's Motion for Preliminary Injunction and for the Appointment

10 of Receiver and the Declarations of Ellen Chen, Thomas J. Eme, and Andrew J. Hefty, the exhibits

11 thereto, and any responses thereto; and the record in these proceedings before the Court.

12    On the basis of this record, the Court finds that this Court has subject matter jurisdiction over

13 this action and personal jurisdiction over the entity Defendants and Relief Defendants.  The Court

14 also finds that the appointment of a receiver in this action is necessary and appropriate for the

15 purposes of marshaling and preserving all assets of Defendants San Francisco Regional Center, LLC;

16 California Gold Medal, L.P.; Callsocket, L.P.; Callsocket II, L.P.; Callsocket III, L.P.; NA3PL, L.P.;

17 West Oakland Plaza, L.P.; Callsocket, LLC; Callsocket II, LLC; Callsocket III, LLC; Immedia, LLC

18 (collectively, the "Receivership Defendants"); and of Relief Defendants CallSocket Holding

19 Company, LLC; CallSocket III Holding Company, LLC; Central California Farms, LLC; and JL

20 Gateway, LLC (collectively, "Receivership Relief Defendants") that: (a) are attributable to funds

21 derived from investors of the Defendants or Relief Defendants; (b) are held in constructive trust for

22 the entity Defendants or Relief Defendants; (c) were fraudulently transferred by the Defendants or

23 Relief Defendants; and/or (d) may otherwise be includable as assets of the estates of the entity

24 Defendants or Relief Defendants (collectively, the "Recoverable Assets").

25    The Court further finds that the appointment of a monitor in this action is necessary and

26 appropriate as to Defendants Comprehensive Care of California, LLC; Comprehensive Care of

27 Oakland, L.P.; and North America 3PL, LLC (collectively, the "Monitorship Defendants"); and of

28 Relief Defendant Berkeley Healthcare Dynamics, LLC (the "Monitorship Relief Defendant").

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Commission's Motion for Appointment of a Receiver is GRANTED as to the Receivership Defendants and Receivership Relief Defendants.

2.     This Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the Receivership Defendants and Receivership Relief Defendants.

3.     Until further Order of this Court, Susan L. Uecker is hereby appointed to serve without bond as receiver (the "Receiver") for the estates of the Receivership Defendants and the Receivership Relief Defendants.

4.     Until further Order of this Court, Susan L. Uecker is also hereby appointed to serve without bond as monitor (the "Monitor") for the estates of the Monitorship Defendants and the Monitorship Relief Defendant.

5.     Within 45 days of the date of this Order, the Monitor will submit a report to the Court as to (a) whether there are reasons justifying expansion of her authority over the Monitorship Defendants and Monitorship Relief Defendant from "monitor" to "receiver," and; (b) the likelihood, if any, that her appointment as a receiver over any or all of the Monitorship Defendants and Monitorship Relief Defendant would cause disruption to any of those entities' contractual relationships with third parties.

### I.     General Powers and Duties of Receiver

6.     The Receiver shall have all powers, authorities, rights, and privileges heretofore possessed by the officers, directors, managers, and general and limited partners of the Receivership Defendants and Relief Defendants under applicable state and federal law, by the governing charters, by-laws, articles, and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959, and 1692, and Fed. R. Civ. P. 66.

7.     The trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys, and other agents of the Receivership Defendants and Relief Defendants are hereby dismissed and the powers of any general partners, directors, and/or managers are hereby

1  suspended.  Such persons and entities shall have no authority with respect to the Receivership

2  Defendants' and Relief Defendants' operations or assets, except to the extent as may hereafter be

3  expressly granted by the Receiver.  The Receiver shall assume and control the operation of the

4  Receivership Defendants and Relief Defendants and shall pursue and preserve all of their claims.

5       8.     No person, other than the Receiver, holding or claiming any position of any sort with

6  any of the Receivership Defendants or Relief Defendants shall possess any authority to act by or on

7  behalf of any of the Receivership Defendants or Relief Defendants.

8       9.     Subject to the specific provisions in Sections II through XIII below, the Receiver shall

9  have the following general powers and duties:

10      A.     To use reasonable efforts to determine the nature, location, and value of all
                property interests of the Receivership Defendants and Relief Defendants and
11              all other Recoverable Assets, including, but not limited to, monies, funds,
                securities, credits, effects, goods, chattels, lands, premises, leases, claims,
12              rights, and other assets, together with all rents, profits, dividends, interest, or
                other income attributable thereto, of whatever kind, which the Receivership
13              Defendants or Relief Defendants own, possess, have a beneficial interest in, or
                control directly or indirectly ("Receivership Property" or, collectively, the
14              "Receivership Estates");

15      B.     To take custody, control, and possession of all Receivership Property and
                records relevant thereto from the Receivership Defendants and Relief
16              Defendants; to sue for and collect, recover, receive, and take into possession
                from third parties all Receivership Property and records relevant thereto;
17

18      C.     To manage, control, operate, and maintain the Receivership Estates and hold in
                her possession, custody, and control all Receivership Property, pending further
19              Order of this Court;

20      D.     To use Receivership Property for the benefit of the Receivership Estates,
                making payments and disbursements and incurring expenses as may be
21              necessary or advisable in the ordinary course of business in discharging her
                duties as Receiver;

22      E.     To take any action which, prior to the entry of this Order, could have been
                taken by the officers, directors, partners, managers, trustees, and agents of the
23              Receivership Defendants or Relief Defendants;

24      F.     To engage and employ persons in her discretion to assist her in carrying out
                her duties and responsibilities hereunder, including, but not limited to,
25              accountants, attorneys, securities traders, registered representatives, financial
                or business advisers, liquidating agents, real estate agents, forensic experts,
26              brokers, traders, or auctioneers;

27      G.     To take such action as necessary and appropriate for the preservation of
                Receivership Property or to prevent the dissipation or concealment of
28              Receivership Property;

H.  To issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure, concerning any subject matter within the powers and duties granted by this Order;

I.  To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging her duties as Receiver;

J.  To pursue, resist, and defend all suits, actions, claims, and demands which may now be pending or which may be brought by or asserted against the Receivership Estates; and

K.  To take such other action as may be approved by this Court.

## II.  Access to Information

10.  The officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants, and employees of the Receivership Defendants and Relief Defendants, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Defendants or Relief Defendants and/or all Receivership Property; such information shall include but not be limited to books, records, documents, accounts, and all other instruments and papers.

11.  Within twenty (20) days of the entry of this Order, the Receivership Defendants and Relief Defendants shall serve upon the Receiver and the Commission a sworn statement, listing: (a) the identity, location, and estimated value of all Receivership Property; (b) all employees (and job titles thereof), other personnel, attorneys, accountants, and any other agents or contractors of the Receivership Defendants and Relief Defendants; and, (c) the names, addresses, and amounts of claims of all known creditors of the Receivership Defendants and Relief Defendants.

12.  Within thirty (30) days of the entry of this Order, the Receivership Defendants and Relief Defendants shall provide to the Receiver and the Commission copies of the Receivership Defendants' and Relief Defendants' federal income tax returns for the tax years 2010 through 2015, with all relevant and necessary underlying documentation.

13.  The officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants, and employees of the Receivership Defendants and Relief Defendants, as well as those acting in their place, shall answer to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the

1    Receivership Defendants and Relief Defendants, or any other matter relevant to the operation or

2    administration of the receivership or the collection of funds due to the Receivership Defendants.  In

3    the event that the Receiver deems it necessary to require the appearance of the aforementioned

4    persons or entities, the Receiver shall make discovery requests in accordance with the Federal Rules

5    of Civil Procedure.

6            14.    The Receivership Defendants and Relief Defendants, individual Defendant Thomas

7    M. Henderson, the officers, directors, agents, managers, general and limited partners, trustees,

8    attorneys, accountants, and employees of the Receivership Defendants and Relief Defendants, as well

9    as those acting in their place, are required to assist the Receiver in fulfilling her duties and

10   obligations.  As such, they must respond promptly and truthfully to all requests for information and

11   documents from the Receiver.

12                    **III.    Access to Books, Records, and Accounts**

13           15.    The Receiver is authorized to take immediate possession of all assets, bank accounts

14   or other financial accounts, books and records and all other documents or instruments relating to the

15   Receivership Defendants or Relief Defendants.  All persons and entities having control, custody, or

16   possession of any Receivership Property are hereby directed to turn such property over to the

17   Receiver.

18           16.    The Receivership Defendants and Relief Defendants, as well as their agents, servants,

19   employees, attorneys, any persons acting for or on behalf of the Receivership Defendants or Relief

20   Defendants, and any persons receiving notice of this Order by personal service, email, facsimile, or

21   otherwise, having possession of the property, business, books, records, accounts, or assets of the

22   Receivership Defendants or Relief Defendants, or other Receivership Property, are hereby directed to

23   deliver the same to the Receiver, her agents and/or employees.

24           17.    All banks, brokerage firms, financial institutions, and other persons or entities which

25   have possession, custody, or control of any Receivership Property that receive actual notice of this

26   Order by personal service, email, facsimile, or otherwise shall:

27           A.    Not liquidate, transfer, sell, convey, or otherwise transfer any Receivership
                    Property except upon instructions from the Receiver;

28

B.     Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

C.     Within five (5) business days of receipt of notice of this Order, serve upon the Receiver and counsel for the Commission a certified statement setting forth, with respect to any account or other asset that is Receivership Property, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and

D.     Cooperate expeditiously in providing information and transferring funds, assets, and accounts to the Receiver or at the direction of the Receiver.

## IV.    Access to Real and Personal Property

18.     The Receiver is authorized to take immediate possession of all personal property of the Receivership Defendants, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media, or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies, and equipment.

19.     The Receiver is authorized to take immediate possession of all real property of the Receivership Defendants and Relief Defendants, wherever located, including but not limited to all ownership and leasehold interests and fixtures. Upon receiving actual notice of this Order by personal service, email, facsimile, or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or (c) destroying, concealing, or erasing anything on such premises.

20.     In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above. The Receiver shall have exclusive control of the keys. The Receivership Defendants and Relief Defendants, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership (without the express written permission of the Receiver).

21.     The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Defendants and Relief Defendants, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

22.     Upon the request of the Receiver, the United States Marshal Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out her duties to take possession, custody, and control of, or identify the location of, any assets, records, or other materials belonging to the Receivership Estate.

## V.    Notice to Third Parties

23.     The Receiver shall promptly give notice, which may be by electronic means, of her appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers, and general and limited partners of the Receivership Defendants and Relief Defendants, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

24.     All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to the Receivership Estate shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Defendant or Relief Defendant had received such payment.

25.     In furtherance of her responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity, or government office that she deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estates.  All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the SEC.

26.     The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of any of the Receivership Defendants or Relief Defendants (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Defendants or Relief Defendants.  The

1  Postmaster shall not comply with, and shall immediately report to the Receiver, any change of

2  address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail.

3  The Receivership Defendants and Relief Defendants shall not open any of the Receiver's Mail and

4  shall immediately turn over such mail, regardless of when received, to the Receiver.  The foregoing

5  instructions shall apply to any proprietor, whether individual or entity, of any private mail box,

6  depository, business or service, or mail courier or delivery service, hired, rented, or used by the

7  Receivership Defendants or Relief Defendants.  The Receivership Defendants and Relief Defendants

8  shall not open a new mailbox, or take any steps or make any arrangements to receive mail in

9  contravention of this Order, whether through the U.S. mail, a private mail depository, or courier

10  service.

11      27.    Subject to payment for services provided, any entity furnishing water, electric,

12  telephone, sewage, garbage or trash removal services to the Receivership Defendants or Relief

13  Defendants shall maintain such service and transfer any such accounts to the Receiver unless

14  instructed to the contrary by the Receiver.

15  **VI.   Injunction Against Interference with Receiver**

16      28.    The Receivership Defendants and Relief Defendants and all persons receiving notice

17  of this Order by personal service, email, facsimile, or otherwise, are hereby restrained and enjoined

18  from directly or indirectly taking any action or causing any action to be taken, without the express

19  written agreement of the Receiver, which would:

20         A.    Interfere with the Receiver's efforts to take control, possession, or
           management of any Receivership Property; such prohibited actions include but
21           are not limited to, using self-help or executing or issuing or causing the
           execution or issuance of any court attachment, subpoena, replevin, execution,
22           or other process for the purpose of impounding or taking possession of or
           interfering with or creating or enforcing a lien upon any Receivership Property;
23

24         B.    Hinder, obstruct or otherwise interfere with the Receiver in the performance of
           her duties; such prohibited actions include but are not limited to, concealing,
25           destroying, or altering records or information;

26         C.    Dissipate or otherwise diminish the value of any Receivership Property; such
           prohibited actions include but are not limited to, releasing claims or disposing,
27           transferring, exchanging, assigning, or in any way conveying any Receivership
           Property, enforcing judgments, assessments, or claims against any
28           Receivership Property or any Receivership Defendant or Relief Defendant,
           attempting to modify, cancel, terminate, call, extinguish, revoke, or accelerate

(the due date), of any lease, loan, mortgage, indebtedness, security agreement, or other agreement executed by any Receivership Defendant or Relief Defendant or which otherwise affects any Receivership Property; or

D.   Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estates.

29.   The Receivership Defendants and Relief Defendants shall cooperate with and assist the Receiver in the performance of her duties.

30.   The Receiver shall promptly notify the Court and SEC counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

## VII.   Stay of Litigation

31.   As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, are stayed until further Order of this Court:

All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in her capacity as Receiver, or the Monitor, in her capacity as Monitor; (b) any Receivership Property, wherever located, or any property interests of the Monitorship Defendants or Relief Defendant; (c) any of the Receivership Defendants or Relief Defendants, or Monitorship Defendants or Relief Defendant, including subsidiaries and partnerships; or (d) any of the Receivership Defendants' and Relief Defendants' or Monitorship Defendants' or Relief Defendant's past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

32.   The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

33.   All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court.  Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Defendants or Relief Defendants or Monitorship Defendants or Monitorship Relief Defendant against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

## VIII.   **Managing Assets**

34.     For each of the Receivership Estates, where appropriate and necessary in the judgment of the Receiver, the Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Property (the "Receivership Funds").

35.     The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.

36.     Subject to Paragraph 37, immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estates, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property.

37.     Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estates.

38.     The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estates, including making legally required payments to creditors, employees, and agents of the Receivership Estates and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

## IX.   **Investigate and Prosecute Claims**

39.     Subject to the requirement, in Paragraph 40, immediately below, that leave of this Court is required to resume or commence certain litigation, the Receiver is authorized, empowered, and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal, or foreign court or proceeding of any kind as may in her discretion, and in consultation with SEC counsel, be advisable or proper to recover and/or conserve Receivership Property.

40.     Subject to her obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered, and directed to investigate the manner in which the financial and business affairs of the Receivership Defendants and Relief Defendants were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate.  The Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order.

41.     The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by all entity Receivership Defendants and Relief Defendants.

42.     The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, her Retained Personnel (as that term is defined below), and the Receivership Estate.

## X.    Bankruptcy Filing

43.     The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Receivership Defendants and Relief Defendants.  If a Receivership Defendant or Relief Defendant is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estates as a debtor in possession.  In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity.  Pursuant to Paragraph 7 above, the Receiver is vested with management authority for all Receivership Defendants and Relief Defendants and may therefore file and manage a Chapter 11 petition.

44.     The provisions of Section VII above bar any person or entity, other than the Receiver, from placing any of the Receivership Defendants in bankruptcy proceedings.

### XI.   Liability of Receiver

45.     Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with her fiduciary obligations in this matter.

46.     The Receiver and her agents, acting within the scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree.  In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

47.     This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

48.     In the event the Receiver decides to resign, the Receiver shall first give written notice to the Court, and to the SEC's counsel of record, of her intention, and the resignation shall not be effective until the Court appoints a successor.  The Receiver shall then follow such instructions as the Court may provide.

### XII.   Recommendations and Reports

49.     The Receiver is authorized, empowered, and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property (the "Recovery Plan").

50.     Within ninety (90) days of the entry of this Order, the Receiver shall file the Recovery Plan in the above-captioned action, with service copies to counsel of record.

51.     Within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of the Receivership Estates (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those

claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates.

52.   The Quarterly Status Report shall contain the following:

    A.   A summary of the operations of the Receiver;

    B.   The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

    C.   A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

    D.   A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

    E.   A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and (ii) collecting such judgments);

    F.   A list of all known creditors with their addresses and the amounts of their claims;

    G.   The status of any litigation brought by the Receivership Estate and of any Creditor Claims Proceedings, after such proceedings have been commenced; and

    H.   The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

53.   On the request of the Commission, the Receiver shall provide the Commission with any documentation that the Commission deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

### XIII.   Fees, Expenses and Accountings

54.   Subject to Paragraphs 55 to 61 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership.  Further, prior Court approval is not required for payments of applicable federal, state, or local taxes.

55.     Subject to Paragraph 56 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist her in carrying out the duties and responsibilities described in this Order.  The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

56.     The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver.  Such compensation shall require the prior approval of the Court.

57.     Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications").  At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

58.     All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership.  At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

59.     Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court.  The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

60.     Each Quarterly Fee Application shall:

A.     Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

B.     Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and (ii) with the exception of the Billing Instructions, the Receiver has not entered into

[PROPOSED] ORDER APPT. RECEIVER AND MONITOR                    14                    CASE NO. 3:17-CV-00223

1    any agreement, written or oral, express or implied, with any person or
     entity concerning the amount of compensation paid or to be paid from
2    the Receivership Estate, or any sharing thereof.

3    61.    At the close of the Receivership, the Receiver shall submit a Final Accounting, in a

4    format to be provided by SEC staff, as well as the Receiver's final application for compensation and

5    expense reimbursement.

6                          XIV.    **Powers of the Monitor**

7    62.    The Monitor shall be empowered to:

8        A.    Have full and complete access to each of the Monitorship Defendants' and the
9              Monitorship Relief Defendant's books and records, including internal records
               as well as bank, financial institution and other records, but excluding attorney-
10             client communications between the Monitorship Defendants and their
               respective counsel;

11       B.    Have full and complete access to the principals, officers, employees, agents,
12             and consultants of each of the Monitorship Defendants and the Monitorship
               Relief Defendant, or anyone else who is otherwise associated with those
13             entities to carry out the Monitor's assignment, except that no one shall be
               required to disclose attorney client communications between the Monitorship
14             Defendants and their respective counsel;

15       C.    Have full and complete access to the counterparties to any contracts of the
               Monitorship Defendants and the Monitorship Relief Defendant, for the purpose
16             of evaluating the terms of the contract including whether the contractual
               relationship would be disrupted by converting the Monitor to a Receiver over
17             that entity;

18       D.    Review and monitor a report prepared every two weeks of all transactions of
               any Monitorship Defendants or the Monitorship Relief Defendant;

19       E.    Enter into any and all offices and premises and facilities maintained or
20             managed by any of the Monitorship Defendants or the Monitorship Relief
               Defendant, except those facilities for which additional credentials are
21             necessary (and Monitor Defendants and/or Monitor Relief Defendants shall
               assist the Monitor in obtaining the necessary additional credentials if so
22             requested);

23       F.    Identify and locate all money, assets, real property, and investments held by, or
               for the benefit of, each of the Monitorship Defendants and the Monitorship
24             Relief Defendant;

25       G.    Identify and locate all investors and owners in each of the Monitorship
               Defendants and the Monitorship Relief Defendant;

26       H.    Identify all debts, accounts payable, liabilities and unpaid obligations of the
27             Monitorship Defendants and the Monitorship Relief Defendant;

28       I.    Engage and employ the same persons as those employed in her capacity as
               Receiver to assist her in carrying out her duties and responsibilities as Monitor,

including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders, or auctioneers;

J.   Contact any of the EB-5 investors associated with any the Monitorship Defendants and Monitorship Relief Defendant or, if they are represented, counsel for such investors;

K.   Apply to the Court for an order compelling compliance with this Order or seeking a modification of this Order.

## XV.   Fees and Expenses of the Monitor

63.   The Monitor is authorized to employ the same persons and entities she employs as Receiver to assist her in carrying out her duties and responsibilities as Monitor.  The Monitor shall not engage any such persons or entities without first obtaining an Order from the Court authorizing such engagement.

64.   The Monitor and anyone she employs pursuant to Paragraphs 62 and 63 are entitled to reasonable compensation and expense reimbursement.  Such compensation shall require the prior approval of the Court.

65.   The Monitorship Defendants and the Monitorship Relief Defendant shall each pay, upon approval of this Court as set forth below, the reasonable costs, fees and expenses of the Monitor incurred in connection with the performance of the powers and duties described herein related to their respective businesses, as identified by the Monitor, including but not limited to such costs, fees and expenses of all persons retained by the Monitor with the Court's approval to assist in carrying out the Monitor's powers and duties.  All applications for costs, fees and expenses of the Monitor and those employed by the Monitor shall be made by application to the Court, with notice to all parties and an opportunity to be heard, setting forth in reasonable detail the nature of such costs, fees, and expenses.  Such applications shall be submitted quarterly at the same time as the applications made by the Receiver.

## XVI.   Liability of Monitor

66.   The Monitorship Defendants and Monitorship Relief Defendant shall indemnify, defend and hold harmless the Monitor and her agents, employees, consultants, successors, and assigns, from and against all actions (pending or threatened and whether at law or in equity in any forum), liabilities, damages, losses, costs, and expenses, including but not limited to reasonable

attorneys' and other professionals' fees, arising from the conduct or omission of the Monitor or her agents, employees and consultants under the terms of this Order, except for any such conduct or omission adjudged by the Court to be the result of gross negligence or willful misconduct.

### XVII.   Bankruptcy Filing

67.   The Monitorship Defendants and Monitorship Relief Defendant are each hereby enjoined from filing a voluntary petition in bankruptcy without at least five days' notice to the Monitor, to the SEC (by notice to the attorneys appearing on the SEC's behalf in this matter), and to the Court.  Upon receiving such notice, the Monitor or the SEC may seek appropriate expedited relief from this Court.

### XVIII.   Binding Notice

68.   In accordance with Rule 65(d) of the Federal Rules of Civil Procedure, this Order shall be binding upon all parties to this action and upon all persons who receive actual notice of it through personal service or otherwise.


IT IS SO ORDERED.



DATED  March 29 , 2017

Richard Seeborg
UNITED STATES DISTRICT JUDGE

# EXHIBIT 2

009589.0024\5694303.1

1 | Elizabeth Berke-Dreyfuss (Bar No. 114651)
Tracy Green (Bar No. 114876)
2 | **WENDEL, ROSEN, BLACK & DEAN LLP**
1111 Broadway, 24th Floor
3 | Oakland, California 94607-4036
Telephone: (510) 834-6600
4 | Fax: (510) 834-1928
Email: edreyfuss@wendel.com
5 | Email: tgreen@wendel.com

6 | Attorneys for Susan L. Uecker, Receiver

7

8

9 | UNITED STATES DISTRICT COURT

10 | NORTHERN DISTRICT OF CALIFORNIA

11 | SAN FRANCISCO DIVISION

12

13 | SECURITIES AND EXCHANGE | Case No. 3:17-CV-00223-RS
COMMISSION,

14 |                    Plaintiff,

15 |          vs. | [~~AMENDED PROPOSED~~] ORDER (1)
APPROVING PROPOSED CLAIM FORM
16 | SAN FRANCISCO REGIONAL CENTER, LLC; | FOR NON-EB-5 INVESTMENT CLAIMS
THOMAS M. HENDERSON; CALIFORNIA | AGAINST RECEIVERSHIP ENTITIES;
17 | GOLD MEDAL, L.P.; CALLSOCKET, L.P.; | (2) SETTING A CLAIMS BAR DATE FOR
CALLSOCKET II, L.P.; CALLSOCKET III, | SUBMISSION OF NON-EB-5
18 | L.P.; COMPREHENSIVE CARE OF | INVESTMENT CLAIMS; (3)
OAKLAND, L.P.; NA3PL, L.P.; WEST | ESTABLISHING SUMMARY
19 | OAKLAND PLAZA, L.P.; CALLSOCKET, | PROCEDURES FOR RESOLUTION OF
LLC; CALLSOCKET II, LLC; CALLSOCKET | DISPUTED CLAIMS
20 | III, LLC; COMPREHENSIVE CARE OF
CALIFORNIA, LLC; IMMEDIA, LLC; and | **AS MODIFIED BY THE COURT**
21 | NORTH AMERICA 3PL, LLC,

22 |                    Defendants,

23 |                    -and-  | Date:     September 27, 2018
Time:    1:30 p.m.
24 | CALLSOCKET HOLDING COMPANY, LLC; | Place:    Courtroom 3, 17th Floor
CALLSOCKET III HOLDING COMPANY, |          450 Golden Gate Ave.
25 | LLC; BERKELEY HEALTHCARE |          San Francisco, CA 94102
DYNAMICS, LLC; CENTRAL CALIFORNIA | Judge:   The Hon. Richard Seeborg
26 | FARMS, LLC; and JL GATEWAY, LLC,

27 |                    Relief Defendants.

28

009589.0024\5216897.1

[~~AMENDED PROPOSED~~] ORDER                    **EXHIBIT 2**                    3:17-CV-00223-RS

1    This matter came before the Court on the Receiver Susan Uecker's Motion for Order (1)

2  Approving Proposed Claim Form for Claims Against Receivership Entities For Non-EB-5

3  Investment Claims; (2) Setting a Claims Bar Date for Submission of Claims (<u>Other Than EB-5</u>

4  <u>Investment Claims</u>); (3) Establishing Summary Procedures for Resolution of Disputed Claims

5  ("Claim Process Motion").  The Court, having considered the Claims Process Motion, all

6  submissions filed in support of and in response thereto, and other pleadings filed in this action,

7  and finding that good cause exists to grant the motion, hereby orders as follows:

8    1.    The Claim Process Motion is granted.

9    2.    The Claim Form and Instructions attached as Exhibit A and the form of notice for

10 publication attached as Exhibit B to the Declaration of Susan L. Uecker filed in Support of the

11 Claims Process Motion are approved.

12   3.    Other than claims of EB-5 investors arising from their EB-5 investment, the

13 deadline to submit Claim Forms to the Receiver shall be the first business day that is 60 days after

14 the entry of this order ("Claims Bar Date"), with the Receiver to include the actual calculated date

15 in all notices and to file notice of such date with the Court.  Any claim submitted after the Claims

16 Bar Date will be barred, except for claims of EB-5 investors arising from their EB-5 investment

17 which are preserved and deferred.

18   4.    Disputes regarding claim amounts will be determined by this Court using summary

19 procedures as follows:

20   (a)    The Receiver will evaluate claims received by the bar date against the

21 records of the Receivership Entities, the documents submitted with the claims, and other available

22 sources.  If, after completing the review, the Receiver does not accept the claimant's asserted

23 claim amount, the Receiver will provide written notice to the claimant of the objection and the

24 basis therefore, and the Receiver's proposed claim amount.  The Receiver will attempt to confer

25 with the claimant in an effort to resolve the claim dispute.

26   (b)    As may be necessary and appropriate, the Receiver and claimants may seek

27 Court authority to conduct discovery pursuant to the Federal Rules of Civil Procedure and Local

28 Rules to assist in resolution of any claim dispute.

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

(c)     If differences or objections cannot be resolved informally, the Receiver will submit a motion pursuant to Local Rule 7 for the Court's determination.  Motions may take the form of an omnibus objection motion or independent motions.

(d)     In any such motion, the Receiver will identify the portion of the claim that she believes is unobjectionable, the proposed allowed amount, and the factual and legal basis for the Receiver's objection to the remaining claim amount.  The Receiver will serve all relevant claimants with the motion papers.

(e)     Each claimant may file a response to the motion, and the Receiver may file a reply as provided by the Local Rules.

(f)     To the extent that the Receiver's objections to claims have similar bases and can be grouped according to the nature of the claim objections, groups of claims may be determined in consolidated summary proceedings.  In all events, the Receiver will provide each claimant detailed notice about the nature of the objection and opportunity to respond.

IT IS SO ORDERED.

DATED:  September 21, 2018

Richard Seeborg
Judge, United States District Court

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

# EXHIBIT 3

**Non-Investor Claims**

**EXHIBIT 3A**

| UNSECURED CREDITOR NAME<br>All Submitted Claims Without Designation As<br>Disputed, Objected To, Allowed, Disallowed, or Subordinated |
| --- |

Accu-Tech Corporation

Advantage Environmetal & Safety Services, Inc.

Advantage Environmetal & Safety Services, Inc.

AmTrust North America, Inc.
on behalf of Wesco Insurance Company

AmTrust North America, Inc.
on behalf of Security National Insurance Company

AmTrust North America, Inc.
on behalf of Security National Insurance Company

AmTrust North America, Inc.
on behalf of Security National Insurance Company

Angel Keene

Casalina & Disston

Clement Chin

Clement Chin

Clement Chin

Clement Chin

Clement Chin

Darius Meykadeh (Copymat)

Ever-Clean Building Maintenance

Haynie & Company

i4Color, Inc.

J. C. Phelan and Son

**EXHIBIT 3A**

Non-Investor Claims
EXHIBIT 3A

| UNSECURED CREDITOR NAME |
| :---: |
| All Submitted Claims Without Designation As<br>Disputed, Objected To, Allowed, Disallowed, or Subordinated |

Ken Marg, Successor to Skytec Security Services, LLC

Kevin Shimamoto

Kevin Shimamoto

Kevin Shimamoto

Kevin Shimamoto

Kevin Shimamoto

Kevin Shimamoto

Kevin Shimamoto

Kevin Shimamoto, Clement Chin, Jennifer Bronson

Kyle Shimamoto

Pritzker Levine LLP

Red Star Holdings, LLC

R.P. Gallagher Associates, Inc.

SRI Nine Market Square  LLC

State of California Franchise Tax Board

State of Indiana

State Water Resources Control Board

TechCompose Solutions PVT. Ltd.

Tipton Community Service District

Valley Pump & Dairy System, Inc.

Non-Investor Claims

EXHIBIT 3A

| **UNSECURED CREDITOR NAME** |
| --- |
| All Submitted Claims Without Designation As |
| Disputed, Objected To, Allowed, Disallowed, or Subordinated |

VCom Solutions

Vortex Industries, Inc.

Vortex Industries, Inc.

WOMAC Properties Inc.

**EXHIBIT 3A**

| ENTITY | LAST NAME | FIRST NAME |
|---|---|---|
| CallSocket LP | CHEN | SHAOLIN |
| CallSocket LP | DU | CHAO |
| CallSocket LP | FAN | SHUYI |
| CallSocket LP | GUO | WENJING |
| CallSocket LP | HAN | YUJING |
| CallSocket LP | JIANG | YUHUA |
| CallSocket LP | LI | FENG |
| CallSocket LP | LI | HONGMEI |
| CallSocket LP | LI | XIAOPING |
| CallSocket LP | LIU | QI |
| CallSocket LP | LU | CHUAN |
| CallSocket LP | LUO | LI |
| CallSocket LP | MA | SONGJUN |
| CallSocket LP | MA | WENLI |
| CallSocket LP | MA | XIAO |
| CallSocket LP | QU | YAN |
| CallSocket LP | RAJAN | RANJEET |
| CallSocket LP | SHAO | GANG |
| CallSocket LP | SU | HAIMING |
| CallSocket LP | SUN | WENJING |
| CallSocket LP | TIAN | ZHIQIANG |
| CallSocket LP | WANG | LUWEI |
| CallSocket LP | WANG | WEI |
| CallSocket LP | WANG | XUEBIN |
| CallSocket LP | WEI | JIANJUN |
| CallSocket LP | WU | YIFAN |
| CallSocket LP | XIANG | JUN |
| CallSocket LP | XU | BO |
| CallSocket LP | YANG | BIN |
| CallSocket LP | YU | JIFENG |
| CallSocket LP | YUAN | ZHILIN |
| CallSocket LP | ZENG | XIANG |
| CallSocket LP | ZHANG | JING |
| CallSocket LP | ZHANG | SHUHONG |
| CallSocket LP | ZHAO | HONG |

**EXHIBIT 3B**

| ENTITY | LAST NAME | FIRST NAME |
|--------|-----------|------------|
| CallSocket II LP | GUPTA | AJAY |
| CallSocket II LP | ZHUANG | YU |
| CallSocket II LP | NI | YILING |
| CallSocket II LP | LI | XIN |
| CallSocket II LP | CAI | MENG |
| CallSocket II LP | XUE | JING |
| CallSocket II LP | GUI | HONGMIN |
| CallSocket II LP | WANG | JIANXIN |
| CallSocket II LP | XIN | CHUNJIAN |
| CallSocket II LP | NI | PING |
| CallSocket II LP | FANG | XILIN |
| CallSocket II LP | ZHU | HONGMING |
| CallSocket II LP | MA | YUHONG |
| CallSocket II LP | XU | XIAOPING |
| CallSocket II LP | LI | XIAOJUN |
| CallSocket II LP | TANG | SENJING |
| CallSocket II LP | CAO | YINYUN |
| CallSocket II LP | LIU | SUNHAI |
| CallSocket II LP | PENG | WENBIN |
| CallSocket II LP | TAN | WENBIN |
| CallSocket II LP | ZHU | NAN |
| CallSocket II LP | LI | ZHEN LIAN |
| CallSocket II LP | ZHANG | XIAOTING |
| CallSocket II LP | HUANG | ZHENGHUI |
| CallSocket II LP | KOU | YUANYUAN |
| CallSocket II LP | LUO | RONG |
| CallSocket II LP | MA | LI |
| CallSocket II LP | NI | YILAI |
| CallSocket II LP | DONG | SHAOYUN |
| CallSocket II LP | YUAN | QINGJIANG |

**EXHIBIT 3C**

| ENTITY | LAST NAME | FIRST NAME |
|---|---|---|
| CallSocket III LP | CHENG | ZHEN |
| CallSocket III LP | ZHU | PEIJUN |
| CallSocket III LP | LAN | HONGYANG |
| CallSocket III LP | LIU | JIALI |
| CallSocket III LP | SHAOQING | ZENG |
| CallSocket III LP | ZHAO | LIXIA |
| CallSocket III LP | CHEN | LEI |
| CallSocket III LP | PENG | BAOYI |
| CallSocket III LP | CHEN | HAO |
| CallSocket III LP | HAN | CONGREN |
| CallSocket III LP | HU | QIAN |
| CallSocket III LP | ZHAO | RONG |
| CallSocket III LP | CUI | JINGXUAN |
| CallSocket III LP | ZHENG | NAN |
| CallSocket III LP | YU | YIQI |
| CallSocket III LP | JING YI | YAN |
| CallSocket III LP | ZHOU | TAO |
| CallSocket III LP | LI | SHENG |
| CallSocket III LP | THI HONG DUNG | NGUYEN |
| CallSocket III LP | ZOU | YONGPING |
| CallSocket III LP | PING | HAN |
| CallSocket III LP | ZHAO | YUNHAO |
| CallSocket III LP | ZHANG | ZHIRUI |
| CallSocket III LP | BING | YE |
| CallSocket III LP | YINGQIU | CHEN |
| CallSocket III LP | JIANRONG | SUN |
| CallSocket III LP | YU | WANG |
| CallSocket III LP | WEIQING | LING |
| CallSocket III LP | WEIHUA | WU |
| CallSocket III LP | YANG | XIAOLING |
| CallSocket III LP | YAN | CHEN |
| CallSocket III LP | NA | HU |
| CallSocket III LP | YINGXIN | DONG |
| CallSocket III LP | LIN | TANG |
| CallSocket III LP | XIAO | XIA |
| CallSocket III LP | JIFENG | YANG |
| CallSocket III LP | YINGPIN | ZHANG |
| CallSocket III LP | YIN JEK | KIAN |
| CallSocket III LP | LAN | JIANG |

**EXHIBIT 3D**

| ENTITY | LAST NAME | FIRST NAME |
|--------|-----------|------------|
| NA3PL LP | LIU | YISHA |
| NA3PL LP | CHU | MIN |
| NA3PL LP | ZHANG | JIANMIN |
| NA3PL LP | YANG | BEI |
| NA3PL LP | LI | YUE |
| NA3PL LP | ZHANG | YONGHONG |
| NA3PL LP | QU | YANI |
| NA3PL LP | ZHU | CHUNMEI |
| NA3PL LP | JIN | TAO |
| NA3PL LP | LI | JUN |
| NA3PL LP | PAN | QI |
| NA3PL LP | HE | WENHONG |
| NA3PL LP | WU | TAO |
| NA3PL LP | CAO | YABIN |
| NA3PL LP | HUANG | YANJUN |
| NA3PL LP | REN | LEI |
| NA3PL LP | CAO | XICHEN |
| NA3PL LP | ZHANG | YAN |
| NA3PL LP | SONG | YANXIN |
| NA3PL LP | GONG | RUI |
| NA3PL LP | MA | CHUNHONG |
| NA3PL LP | MA | JIANYUE |
| NA3PL LP | NGUYEN | VINH SON |
| NA3PL LP | NGUYEN | THI THANH THUY |
| NA3PL LP | TU | THI LAN |
| NA3PL LP | HONG | SASHUANG |
| NA3PL LP | DING | YANQIN |
| NA3PL LP | DAI | WEI |
| NA3PL LP | WANG | QIQI |
| NA3PL LP | LU | KUN |
| NA3PL LP | FUDUAN | CHEN |
| NA3PL LP | HUANG | JINGUANG |
| NA3PL LP | LI | CONG |
| NA3PL LP | HUANG | GUIYUAN |
| NA3PL LP | LIU | GAOYUN |
| NA3PL LP | TIAN | SHUANG |
| NA3PL LP | XIANG | JIN |
| NA3PL LP | LI | YURUO |
| NA3PL LP | YANG | SHU |
| NA3PL LP | LIU | SHENGLI |
| NA3PL LP | LIANG | XUECHUN |

**EXHIBIT 3E**

| ENTITY | LAST NAME | FIRST NAME |
|---|---|---|
| West Oakland Plaza LP | GU | TAO |
| West Oakland Plaza LP | ZHU | XUEHONG |
| West Oakland Plaza LP | ZHENG | ZHAOXIA |
| West Oakland Plaza LP | WANG | YONG |

**EXHIBIT 3F**

| ENTITY | LAST NAME | FIRST NAME |
|---|---|---|
| California Gold Medal LP | PAN | XIAOQING |
| California Gold Medal LP | ZHANG | XIN |
| California Gold Medal LP | QIAN | JUN |
| California Gold Medal LP | ZHANG | YATING |
| California Gold Medal LP | JIA | YUMEI |
| California Gold Medal LP | SHAO | JINGYI |
| California Gold Medal LP | HE | LINJIN |
| California Gold Medal LP | YU | XIAODING |
| California Gold Medal LP | WU | XIUCHUN |
| California Gold Medal LP | FENG | JIE |
| California Gold Medal LP | HUANG | XIAO |
| California Gold Medal LP | XIA | TAO |
| California Gold Medal LP | WANG | YINGHUI |
| California Gold Medal LP | SUI | ZONGYUAN |
| California Gold Medal LP | LUAN | QINGPING |
| California Gold Medal LP | LI | WEN |

**EXHIBIT 3G**

# STATEMENT OF CLAIM-INVESTOR

### SECURITIES AND EXCHANGE COMMISSION VS. SAN FRANCISCO REGIONAL CENTER ET AL
United States District Court Northern CA Receivership Case #3:17-cv-00223-RS

**PROJECT:**   Check √ EB5 Investment Entity:

- ☐   Callsocket, L.P.                     (Claimant Class 3B)
- ☐   Callsocket II L.P.                   (Claimant Class 3C)
- ☐   Callsocket III L.P.                  (Claimant Class 3D)
- ☐   NA3PL L.P.                          (Claimant Class 3E)
- ☐   West Oakland Plaza L.P.             (Claimant Class 3F)
- ☐   California Gold Medal L.P.          (Claimant Class 3G)

**INVESTOR NAME:** _____
(Please Print)

**INVESTOR WAC #:** _____

**INVESTOR EMAIL ADDRESS:** _____
(Please Print)

**INVESTOR CAPITAL CONTRIBUTION: $**_____      **Date Investment Made:** _____

Pursuant to the Receiver's Proposed Distribution Plan, Investors in the above referenced EB5 New Commercial Enterprise entities shall be entitled to an Investor Claim for Capital Contribution **up to $500,000.00. IN ORDER TO ASSERT YOUR INVESTOR CLAIM AND TO ENSURE RECEIPT OF PAYMENT, THIS COMPLETED FORM MUST BE RECEIVED BY THE RECEIVER, SUSAN L. UECKER, ON OR BEFORE:**       **DECEMBER 31, 2019**

**COMPLETED FORM MAY BE EMAILED (suecker@ueckerassoc.com) BUT ORIGINAL FORM MUST BE RECEIVED AT BELOW ADDRESS BEFORE ANY DISTRIBUTION MAY BE MADE.**

**I hereby request any and all Distributions under the Court approved Distribution Plan be**
☐ **Wired as follows:**                     **OR**                  ☐ **Check Mailed USPS as follows:**

Beneficiary Name: _____        Payee Name: _____
Beneficiary Account Number: _____        Mailing Address:
Beneficiary Bank Name: _____        _____
Beneficiary Bank Address: _____        _____
                                                  _____
Beneficiary Bank Routing Number:_____        _____
Beneficiary Bank Swift Code: _____        _____

_____                     _____
Investor Signature                           Print Investor Name

THIS COMPLETED FORM MUST BE ACCOMPANIED BY
**NOTARY ACKNOWLEDGEMENT OR EQUIVALENT CERTIFICATION**
SUBSTANTIALLY IN ONE OF THE FORMS ATTACHED

**RETURN ORIGINAL FORM TO:**   **Susan L. Uecker, Receiver**
**1613 Lyon Street, Suite A**
**San Francisco, California 94115 USA**

**EXHIBIT 3H**

## ACKNOWLEDGMENT

State of _____

County of _____

On _____ before me, _____
    (Date)                              (insert name and title of the officer)

personally appeared _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ **(Seal)**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**OR**

## APOSTILLE

1.  **CITY/COUNTY/COUNTRY:** ........................................................................
    **THIS DOCUMENT**
2.  **HAS BEEN SIGNED BY** ........................................................................

3.  **BEARS THE SEAL/STAMP OF** ...............................................................
    ........................................................................................................

**CERTIFIED**

4.  **AT** ................................    5. **THE** ....................................................
6.  **BY** ..............................................................................................
7.  **NO.** ............................................................................................

8.  **SEAL/STAMP**          9. **SIGNATURE**

                    ........................................................................

**EXHIBIT 3H**