DANIEL J. DUNNE (*Pro Hac Vice*)
ddunne@orrick.com
SUZETTE J. BARNES (SBN 273116)
sbarnes@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, WA  98104-7097
Telephone:    +1 206 839 4300
Facsimile:    +1 206 839 4301

*Attorneys for Berkeley Healthcare Dynamics, LLC and*
*Intervenors Jennifer Bronson, Clement Chin, and Kevin*
*Shimamoto*

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>SAN FRANCISCO REGIONAL CENTER, LLC; THOMAS M. HENDERSON; CALIFORNIA GOLD MEDAL, L.P.; CALLSOCKET, L.P.; CALLSOCKET II, L.P.; CALLSOCKET III, L.P.; COMPREHENSIVE CARE OF OAKLAND, L.P.; NA3PL, L.P.; WEST OAKLAND PLAZA, L.P.; CALLSOCKET, LLC; CALLSOCKET II, LLC; CALLSOCKET III, LLC; COMPREHENSIVE CARE OF CALIFORNIA, LLC; IMMEDIA, LLC; and NORTH AMERICA 3PL, LLC,<br><br>Defendant,<br><br>-and-<br><br>CALLSOCKET HOLDING COMPANY, LLC; CALLSOCKET III HOLDING COMPANY, LLC; BERKELEY HEALTHCARE DYNAMICS, LLC; CENTRAL CALIFORNIA FARMS, LLC; and JL GATEWAY, LLC,<br><br>Relief Defendants. | Case No. 3:17-cv-00223-RS<br><br>**BERKELEY HEALTHCARE DYNAMICS, LLC'S MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE 60(B)**<br><br>Date:      August 6, 2020<br>Time:     1:30 pm<br>Dept:     450 Golden Gate Ave.<br>             Courtroom 3, 17th Floor<br>             San Francisco, CA 94107<br>Judge:    The Hon. Richard Seeborg |

## NOTICE OF MOTION

**NOTICE IS HEREBY GIVEN** that on August 6, 2020 at 1:30 p.m. or as soon thereafter as counsel may be head, in the Courtroom of the Honorable Richard Seeborg, United States Judge for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, Courtroom 3, 17th floor, San Francisco, CA 94102, Relief Defendant Berkeley Healthcare Dynamics, LLC ("BHD LLC") will and hereby does move the Court for relief from the Final Judgment issued against it on June 27, 2019 (Dkt. No. 634), pursuant to Federal Rule of Civil Procedure Rule 60(b)(6).

BHD LLC bases this motion on this Notice of Motion, the following Memorandum of Points and Authorities, the arguments of counsel, all pleadings, records, and papers on file in this matter, and such other matters that may be presented to the Court.

Dated: July 2, 2020

DANIEL J. DUNNE
SUZETTE J. BARNES
Orrick, Herrington & Sutcliffe LLP


By:    _/s/Daniel J. Dunne_

DANIEL J. DUNNE
*Attorneys for Berkeley Healthcare Dynamics, LLC*

- 1 -

**TABLE OF CONTENTS**

I.      INTRODUCTION AND RELIEF REQUESTED ............................................................... 1

II.     PROCEDURAL BACKGROUND ................................................................................. 2

    A.     The SEC Moved For Summary Judgment Of Disgorgement. ................................ 2

    B.     BHD Opposed Disgorgement Of Funds Used For "Legitimate Business
        Purposes," Preserving the Issue. ......................................................................... 4

    C.     The SEC Conceded on Reply That Its Motion for Partial Summary
        Judgment Included Legitimate Business Expenses. ................................................. 7

    D.     The Court Ordered Disgorgement Of All EB-5 Investor Funds BHD
        Received, Including the Second $2.7 Million "Bucket." ......................................... 7

    E.     The Final Judgment And The Case's Current Status. ............................................. 8

    F.     *Liu* Reverses the Ninth Circuit and Requires Legitimate Business Expenses
        Be Deducted From Disgorgement Orders. ........................................................... 9

    G.     BHD Files This Rule 60 Motion. ....................................................................... 10

III.    ARGUMENT ......................................................................................................... 10

    A.     Application of the *Phelps* Factors Supports Relief Under Rule 60(b)(6). ............ 10

IV.     CONCLUSION ....................................................................................................... 13

BHD LLC's MOTION FOR TO MODIFY
JUDGMENT - 3:17-CV-00223-RS

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bobbit v. Milberg LLP*,
807 F.App'x. 628 (9th Cir. 2020) ........................................................................................11

*Henson v. Fidelity National Financial, Inc.*,
943 F.3d 434 (9th Cir. 2019)..............................................................10, 11, 12, 13

*Liu v. Securities & Exchange Commission*,
Dkt. No. 18-1501, 2020 WL 3405845 (June 22, 2020) ..................................................... *passim*

*Phelps v. Alameida*,
569 F.3d 1120 (9th Cir. 2009)..............................................................11, 12, 13

**Other Authorities**

Federal Rule of Civil Procedure 60(b)(6) ................................................................................. *passim*

BHD LLC's MOTION FOR TO MODIFY
JUDGMENT - 3:17-CV-00223-RS

Relief Defendant Berkeley Healthcare Dynamics, LLC ("BHD") respectfully moves the Court pursuant to Federal Rule of Civil Procedure 60(b)(6) for relief from the Final Judgment as to Relief Defendant Berkeley Healthcare Dynamics LLC ( "Final Judgment") due to a change in the law governing the equitable disgorgement.

## I.    <u>INTRODUCTION AND RELIEF REQUESTED</u>

On June 22, 2020, the United States Supreme Court issued its decision in *Liu et al v. Securities & Exch. Comm'n*, Dkt. No. 18-1501, 2020 WL 3405845 (June 22, 2020) ("*Liu*").  In *Liu*, the Supreme Court reversed a Ninth Circuit decision affirming a disgorgement order arising from an SEC enforcement action involving EB-5 investors.  *Liu* imposed limits on a federal court's power to order equitable disgorgement, in particular, holding that that unless the "entire profit of a business or undertaking" results from the wrongdoing, "a defendant is entitled to a deduction for all marginal costs incurred in producing the revenues that are subject to disgorgement."  *Id. at* *11.  Thus, *Liu* instructs "courts **must** deduct legitimate expenses before ordering disgorgement under §78u(d)(5)."  *Id.* (emphasis added).

One year earlier, on June 27, 2019, this Court issued its Final Judgment, ordering BHD to disgorge $5,440,618 of EB-5 investor funds it received from SFRC and related entities.  Dkt. No. 634.  In doing so, the Court denied BHD's request to deduct up to $2.7 million from the disgorgement award because "the transfers to BHD LLC were ***used for legitimate business purposes*** related to the warehouse/logistics business."[1]  Dkt. No. 515 (Opposition to MSJ ("SJ Opp.") at 11 (emphasis added).  In light of *Liu*—which legally invalidates a significant portion of BHD's disgorgement liability—the Court should grant BHD relief from the Final Judgment and modify the judgment to comply with law governing equitable disgorgement.

In deciding whether to grant relief from a judgment based on a change of law, courts in the Ninth Circuit consider case-specific factors, respecting the finality of judgments while furthering the interests of justice.  Here, those factors warrant granting BHD relief.  At the time of

---

[1] At the time of the SEC's summary judgment motion, BHD was still in the Receivership Estate and was unable to manage its legal affairs, or retain counsel to represent it directly in the litigation.  Intervenors opposed the SEC's summary judgment motion in their capacity as majority owners and managers of BHD.

the original summary judgment, BHD opposed the SEC's disgorgement request for failure to deduct "legitimate business expense"—preserving the exact issue decided in *Liu*. The Court rejected BHD's explicit request based on then-controlling Ninth Circuit law, but that law was subsequently reversed in *Liu*. BHD then filed this Rule 60(b) motion expeditiously, within ten days of the decision in *Liu*. The interest in the finality of judgments does not militate against relief because no party changed its position in reliance on the Final Judgment, this SEC enforcement action remains open and active, and the Court expressly retained jurisdiction over the parties and the disgorged funds and remains fully able to do complete justice. The disgorged funds remain in the SEC's possession, despite its a sudden calculated attempt to transfer the funds to frustrate this motion.[2]  Finally, and more important, denying relief would perpetuate an order that violates the basic principles of equity as defined by the Supreme Court in *Liu*, forcing Relief Defendant BHD—which is not alleged to have engaged in violations of securities laws—to disgorge funds used to pay legitimate business expenses.

Accordingly, the Court should grant relief from the Final Judgment consistent with the Supreme Court's decision in *Liu*.

## II.   **PROCEDURAL BACKGROUND**

The SEC filed this action in 2017. As the Court has previously noted, BHD was named only as a relief defendant; BHD is not a defendant and is not alleged to have violated any laws. *See* Dkt. No. 1 (Complaint) at ¶ 31; Dkt. No. 543 (Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment ("SJ Order")) at 4-5.[3]

### A.   **The SEC Moved For Summary Judgment Of Disgorgement.**

In October 2019, the SEC moved for partial summary judgment against BHD, SFRC and North American 3PL LLC, seeking among other things, the disgorgement of EB-5 investor funds from BHD. Dkt. No. 49 (Motion for Partial Summary Judgment). The undisputed evidence

---

[2]  *See* Dkt No. 803 (Stipulation and Proposed Order Approving Pro Rata Fair Fund Distributions ("Stipulation"))and Dkt. No. 804 (BHD's Opposition to Stipulation).)

[3]  In essence, though, the SEC is arguing that BHD, LLC should be treated as if it were a participant in the wrongdoing. Having not pursued such claims against BHD, LLC previously in this litigation, the SEC cannot transform it from a relief defendant to a full defendant in the context of this motion

submitted in connection with the motion reflects that the BHD entities received $5,440,618 in EB-5 investor funds from SFRC, NA3PL LLC, and other SFRC-related entities. Dkt. No. 515 (SJ Opp) at 2.

As to BHD, the SEC sought a judgment that BHD was jointly and severally liable to disgorge $22.8 million. The request for disgorgement fell into three distinct categories:

- *First*, the SEC sought disgorgement of $2.699 million that had been transferred primarily from SFRC affiliate, CallSocket and was used in connection with the original purchase of the Oakland warehouse. BHD did not oppose disgorgement of that amount. Dkt. No. 515 (SJ Opp.) at 20. Thus, the $2.699 million used to purchase the warehouse is not at issue in this motion.

- *Second*, the SEC sought disgorgement of approximately $2.7 million that had been transferred primarily from North America 3PL LLC. BHD opposed disgorgement of these funds because "the transfers to BHD LLC were used for **legitimate business purposes** related to the warehouse/ logistics business." Dkt. No. 515 (SJ Opp.) at 11 (emphasis added). *It is this second "bucket" of $2.7 million that is the subject of this motion.*

- *Finally*, the SEC sought disgorgement of more than $17.4 million that had never been transferred to BHD at all, on various theories of joint and several liability and piercing the corporate veil. BHD also opposed disgorgement of funds that it had never received. Dkt. No. 515 (SJ Opp.) at 12-22. The Court denied the SEC's request for expansive joint and several liability. The $17.4 million is also not at issue in this motion.

In support of its Motion, the SEC submitted a declaration from its forensic accountant— Ellen Chen—who traced the EB-5 investor funds transferred to BHD. Dkt. No. 496 (Declaration of Ellen Chen in Support of SJ ("Chen Decl.")). Among other things, Ms. Chen identified over $2.6 million in business expenses for BHD that are legitimate on their face:

BHD LLC's MOTION FOR TO MODIFY JUDGMENT - 3:17-CV-00223-RS

**Table 6**

| Income and Expenses (11/26/2012-5/31/2014) Berkeley Healthcare Dynamics, L.P. (BHDLP-EWB-2983) and Berkeley Healthcare Dynamics, LLC (BHDLLC-EWB-8923) | | | | |
| --- | --- | --- | --- | --- |
| Category | Date | Inflow | Outflow | Net |
| Expense- Insurance | | | (52,116) | (52,116) |
| Expense- Legal | | | (1,738) | (1,738) |
| Expense- Mortgage payment | | | (1,288,004) | (1,288,004) |
| Expense- Other (Maintenance/Repairs, Utilities) | | 7,500 | (119,382) | (111,882) |
| Expense- Payroll & Other Outside Services | | 2,100 | (119,370) | (117,270) |
| Expense- Security | | | (152,509) | (152,509) |
| Expense- Taxes | | | (997) | (997) |
| Expense- Tenant Improvements | | | (881,282) | (881,282) |
| Grand Total | | 9,600 | (2,615,397) | (2,605,797) |

*Id.* at ¶ 20.[4]  The amount of facially legitimate expenses is virtually identical to the "additional $2.7 million" in the second of the three disgorgement "buckets" that was contested by BHD.

**B.    BHD Opposed Disgorgement Of Funds Used For "Legitimate Business Purposes," Preserving the Issue.**

In its opposition to disgorging the second category of funds, BHD argued as follows:

> First, BHD L.P. and BHD LLC were properly run as operating businesses, as Ms. Chen's own declaration amply demonstrates. Ms. Chen identifies no diversions of funds from BHD LLC for the personal enrichment of the owners, as in a typical fraudulent scheme.  Rather, Ms. Chen's forensic work shows that the non-defendant BHD entities used their funds to pay usual and customary business expenses, such as bank fees, accounting, legal, insurance, mortgage, taxes, security, tenant improvements and payroll.  *See* Chen Decl., Tables 2-6. Over five years from 2012 through 2016, the only payments from the BHD entities to any individuals were to Mr. Chin in the amount of $111,175, which related to the reimbursement of expenses. *Id.* at Table 3, 4, *see also* Crom Decl., Dkt. No. 413-12, Ex. J at 4-5.

Dkt. No. 515 (SJ Opp.) at 6.  BHD pointed out that under the Private Placement Memorandum that is the basis for the SEC's fraud claims in the motion, NA3PL L.P. was designed as a "debt model" of EB-5 investment, in which a limited partnership "loaned money to the Job Creating Entity 'warehouse business' for its operations."  *Id.* at 7 (citing Eme Decl. Ex. 5).  BHD submitted evidence that:

---

[4] *See also* Dkt. No. 496 (Chen Decl.) at ¶¶ 10-11 and Table 3.

BHD LLC's MOTION FOR TO MODIFY JUDGMENT - 3:17-CV-00223-RS

> BHD LLC was a legitimate business. Intervenors identified and secured the warehouse opportunity, put themselves at great personal financial risk to guarantee a $6 million purchase money mortgage in the midst of the Great Recession, and left their jobs to refurbish and upgrade the facility and to rent it for the operation of legitimate businesses. *See* Chin December 2017 Decl. ¶ 22; Chin July 2018 Decl., ¶¶ 16-18; Shimamoto July 2018 Decl., ¶ 7. BHD LLC would not have acquired and improved the warehouse but for their assumption of risk and hard work.

Dkt. No. 515 (SJ Opp.) at 16-17; *see also id.* at 18 (describing Intervenors' and BHD's lawful efforts to acquire and finance warehouse). After acquisition, "BHD LLC's business was to lease the commercial real estate it owned" (*id.*) to North America 3PL LLC:

> BHD LLC collected monthly rents from tenants, and as the SEC's forensic accountant helpfully demonstrates in her declaration—paid the customary bills for a real estate holding company—security, payroll, insurance, and substantial amounts to upgrade building structure and systems. Chin December 2017 Decl., ¶37, Ex. 13-15; Chen Decl., Tables 2-6.

*Id.* at 19.

The NA3PL L.P. Business Plan advised EB-5 investors that they were investing in an entity that intended to operate a warehouse logistics business … [and] clearly stated that NA3PL LLC would be a tenant paying substantial annual lease payments. Dkt. No. 498-5 (Declaration of Thomas Eme in Support of SJ, Exhibit 5 ("Eme Decl., Ex. 5")) at 55 (projected annual "Warehouse Lease" payments of $1,766,400 - $2,420,161); Dkt. No. 515 (SJ Opp) at 18. The Business Plan stated that investor funds would be used for "development and construction of a state-of-the art warehouse" and for the "purchase of equipment and furnishing, initial salary and wages and working capital." Dkt. No. 498-5 (Eme Decl., Ex. 5) at 8, 53-54. In accordance with the Business Plan, NA3PL LLC operated a lawful, "moderately" profitable warehousing and logistical business through a warehouse owned by BHD, and its predecessor in interest BHD LP. Dkt. No. 294.18 (Declaration of Clement Chin in Support of Receiver's Motion for Order Authorizing Closing NA3PLLLC and Sale of BHD) at ¶¶ 16-47.

BHD argued that its disgorgement liability was "limited to the amounts of EB-5 funds that have been reliably and precisely traced to the accounts of the BHD entities, and that were transferred in violation of securities laws." Dkt. No. 515 (SJ Opp.) at 20. With respect to the

BHD LLC's MOTION FOR TO MODIFY
JUDGMENT - 3:17-CV-00223-RS

$2.7 million transferred from NA3PL L.P. to BHD entities, BHD argued "there are genuine issues of material fact whether the use in the warehouse was consistent with the disclosures in the NA3PL Business Plan so that there were no misrepresentations." *Id.* As BHD explained:

> *Second*, the SEC alleges a "scheme to defraud investors by diverting investor money from the intended purposes." Mot. at 12. The NA3PL Business Plan disclosed that loan proceeds would be used for "development and construction of a state of the art warehouse, purchase of equipment and furnishing, salary and wages, and working capital," and detailed the projected expenses by category. *See* Declaration of Thomas J. Eme in Support of Motion ("Eme Decl.") Ex. 5, NA3PL Business Plan at 1, 46-47 (Dkt. No. 498-5 at 8, 53-54)....
>
> The January 2014 Lease Agreement did not provide any landlord financing for tenant improvements, meaning that all "TI" was the responsibility of NA3PL LLC. Ex. 2 to Monitor's Report, ECF. 129-2 at 77-82. The First Amendment to Lease Agreement, dated as of November 2014, acknowledges "that [t]enant has made improvement to the Premises, with Landlord's permission, without cost to the Landlord, of approximately $1,468,672.25 as of October 31, 2014." Ex. 3 to Monitor's Report, ECF. 129-2 at 84. Indeed, before NA3PL LLC had received any funds for operation, the BHD entities paid for items that benefitted NA3PL LLC as a tenant, such as tenant improvements. As Mr. Shimamoto explains and itemizes based on his review of the general ledger, the $947,754 net transfer from NA3PL LLC to BHD L.P. called out by the SEC, Mot. at 21, is an accounting entry to reflect amounts owed to BHD L.P. because it had previously paid for tenant improvements in the warehouse. Shimamoto Decl., ¶ 37. All of these expenditures were consistent with the NA3PL Business Plan.
>
> As the SEC admits, regardless whether transferred funds were spent directly by NA3PL LLC for tenant improvements or transferred to BHD for BHD to spend on the upgrades needed for NA3PL LLC to operate a fully-compliant Centralized Examination Station (Mot. at 4 and Chin December 2017 Decl., ¶¶ 31-33), NA3PL LLC remained fully liable to NA3PL L.P. through the promissory note and debt agreements executed in favor of NA3PL L.P. The funds transferred to non-defendant BHD LLC were fully accounted for, as Ms. Chen attests, and ***were used for legitimate business purposes in the warehouse/logistics business, as disclosed to NA3PL L.P. investors in the business plan.***

*Id.* at 21-22 (emphasis added).[5]

---

[5] "As represented, and according to the North America 3PL LLC general ledger for 2014 alone, NA3PL LLC spent $1,468,672 for "leasehold improvements," including funds for plumbing, structural work, framing and drywall, sewer, roofing, painting, doors, etc." *Id*. at 21 n.8 (citing Monitor's Report, Ex. 5, Dkt. No. 129-2 at 91-92).

**C.**    **The SEC Conceded on Reply That Its Motion for Partial Summary Judgment Included Legitimate Business Expenses.**

The SEC's Reply made no attempt to rebut BHD's presentation of evidence that the second "bucket" of $2.7 million consisted of legitimate business expenses, including tenant improvements that were the responsibility of the tenant under the lease.  Dkt. No. 517 (SEC SJ Reply).  To the contrary, the SEC admitted that BHD "us[ed] investor funds … to pay the expenses related to the warehouse," suggesting that this was somehow improper.  *Id.* at 6.  While the SEC grudgingly excluded "so-called "rental" payments from its disgorgement calculation, *id.* at 9, the SEC adamantly rejected any obligation to deduct the various other business expenses its own accountant identified in her declaration, broadly asserting "unjust enrichment" based on its legally unfounded argument that BHD should be "jointly and severally liable" for $22.7 million because "all proceeds causally connected to Defendants' fraud" should be disgorged.  *Id.* at 8-10. The SEC declined to address, let alone contest, the evidence from its own accountant and from BHD demonstrating the legitimacy of BHD's business expenses, such as the tenant improvements paid for by BHD that were the responsibility of North America 3PL LLC under the lease.

**D.**    **The Court Ordered Disgorgement Of All EB-5 Investor Funds BHD Received, Including the Second $2.7 Million "Bucket."**

On January 10, 2019, the Court partially granted the SEC's summary judgment motion. Dkt. No. 543 (SJ Order).  The Court ordered BHD to disgorge 100% of the EB-5 investor funds it had received—the first and second categories identified above.  The Court denied the SEC's request for imposition of joint and several liability of $17.4 million, the third category, because these funds "were never in the possession of BHD, LLC."  *Id.* at 4-5.

The second category—"an *additional* $2.7 million … transferred into BHD, LLC from other entities to cover various expenses," *id.* at 3—is at issue on this motion.  Acknowledging BHD's opposition that funds used to pay legitimate business expenses should be deducted from the award, the Court explained its decision to require disgorgement regardless:

> Intervenors argue some of [the transferred EB-5 funds] were appropriately paid from NA3PL, LLC (the warehouse tenant) to BHD, LLC (the landlord), to reimburse it for various expenses it had incurred that were actually the tenant's responsibility under the lease.  Intervenors have not shown, however, that there is any factual

- 7 -

dispute that those funds came from and/or were commingled with misdirected investor funds, and therefore are subject to disgorgement.

*Id.*, 3-4, n. 4.

In denying BHD's request as to the second category, the Court relied on existing Ninth Circuit precedent:

As the Ninth Circuit has made clear in the context of SEC enforcement actions,

To assert jurisdiction over—and ultimately obtain disgorgement from—[parties] as relief defendants, the SEC was required to demonstrate that [those parties] (1) received ill-gotten funds and (2) do not have a legitimate claim to those funds.

*Sec. & Exch. Comm'n v. World Capital Mkt., Inc.*, 864 F.3d 996, 1004 (9th Cir. 2017) (emphasis added).

*Id.* at 4 (alteration in original). As recognized by the Court at the time, Ninth Circuit law employed a two-part test that did not require identification and deduction of legitimate business expenses.

## E.    The Final Judgment And The Case's Current Status.

On June 27, 2019, the Court issued a Final Judgment as to Relief Defendant BHD, in which it ordered BHD to "pay to the SEC $5,698,911 (comprised of disgorgement of $5,440,618, plus prejudgment interest thereon in the amount of $258,293)." Dkt. No. 634. The Court "retain[ed] jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment." *Id.*

BHD was discharged from the Receivership effective July 1, 2019. Dkt. No. 633 (Order Terminating Receivership as to BHD). In August 2019—in connection with closing and settling the sale of its Oakland warehouse—BHD paid the SEC $5,698,911. *See* Dkt. No. 803, (Stipulation) at 2. All of BHD's disgorged funds remain in the custody of the SEC and none have been transferred to the Receiver, to Treasury, or distributed to third parties. *See id.* The Receivership in this case is ongoing, and the action remains open and pending in this Court.

**F.**   ***Liu* Reverses the Ninth Circuit and Requires Legitimate Business Expenses Be Deducted From Disgorgement Orders.**

On June 22, 2020, the Supreme Court issued its decision in *Liu*. In vacating a disgorgement award affirmed by the Ninth Circuit, *Liu* held that a disgorgement award that does not exceed a wrongdoer's net profits and is awarded to victims is equitable relief permissible under §78u(d)(5). *Liu*, Dkt. No. 18-1501, 2020 WL 3405845 at *5-12.[6] The Court recognized, "however, courts have occasionally awarded disgorgement in three main ways that test the bounds of equity practice," including "imposing joint-and-several disgorgement liability, and declining to deduct even legitimate expenses from the receipts of fraud." *Id.* at * 8. The Court rejected the SEC's argument that Congress had tacitly acceded to courts' expansion of equitable remedies, stating that "a remedy grounded in equity 'must, absent other indication, be deemed to contain the limitations upon its availability that equity typically imposes.'" *Id.* at* 9. The Court imposed three limitations on the disgorgement remedy: *first,* instructing that disgorged funds be distributed to investors and not paid to Treasury; *second,* rejecting disgorgement based on "joint and several liability;" and *third,* requiring the SEC and courts to deduct legitimate business expenses. *Id.* at *9-12. As to the third limitation, the Court explained:

> Courts may not enter disgorgement awards that exceed the gains "made upon any business or investment, when both the receipts and payments are taken into the account." … Accordingly, *courts must deduct legitimate expenses* before ordering disgorgement under §78u(d)(5). A rule to the contrary that "make[s] no allowance for the cost and expense of conducting [a] business" would be "inconsistent with the ordinary principles and practice of courts of chancery."

*Id.* at *11 (citations omitted, emphasis added).[7] In the case before it, the Court in *Liu* called out

---

[6] Although the Court in *Liu* held that disgorgement was a proper remedy against a *defendant* found to have profited from wrongful conduct in violation of securities laws, it did not address whether principles of equity can be expanded to allow courts to order disgorgement from persons who are not defendants and have not been adjudged liable for violations of securities laws. Whether the SEC may continue to seek relief against so-called "Relief Defendants" without a judgment of liability has never been addressed by the Supreme Court, and is doubtful given the reasoning in *Kokesh* and *Liu* that disgorgement is intended to deprive wrongdoers of unlawful profits.

[7] The Court also recognized that no deduction may be required where "a defendant's expenses might be considered wholly fraudulent," explaining "when the entire profit of a business or undertaking' results from the wrongdoing, a defendant may be denied 'inequitable deductions' such as for personal services." *Id.*

BHD LLC's MOTION FOR TO MODIFY JUDGMENT - 3:17-CV-00223-RS

expenses for leases and equipment as examples that "arguably have value independent of fueling a fraudulent scheme." *Id.* at 12.

### G.    BHD Files This Rule 60 Motion.

BHD has acted promptly and expeditiously to file this Rule 60 motion, seeking relief from the portion of the Final Judgment that is inconsistent with the principles stated in *Liu,* within ten days from the date the decision in *Liu* was issued.

### III.    ARGUMENT

The Final Judgment ordered disgorgement of all EB-5 funds traced to BHD, based on existing Ninth Circuit law as of 2019.  Reversing another disgorgement order affirmed by the Ninth Circuit, the Supreme Court in *Liu* has since changed the law, ruling that such an order violates fundamental principles of equity, and mandating that courts must deduct "legitimate business expenses."

When it opposed the SEC's motion for partial summary judgment, BHD had requested that it not be ordered to disgorge funds used to pay legitimate business expenses in opposing the SEC's motion for summary judgment, thus preserving this argument.  Because the Final Judgment was based on controlling Ninth Circuit law that violated principles of equity, because there has been a substantial change in controlling law, because the case remains active and the disgorged funds remain in the custody of the SEC, and because no party has taken action in reliance on the judgment, application of proper equitable principles justifies granting BHD relief from the judgment so that the disgorgement award may be reformed to deduct legitimate business expenses and conform to principles of equity.

### A.    Application of the *Phelps* Factors Supports Relief Under Rule 60(b)(6).

Under Federal Rule of Civil Procedure Rule 60(b)(6), courts may grant relief from and modify a final judgment or order against a party for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  In *Henson v. Fidelity National Financial, Inc.*, 943 F.3d 434 (9th Cir. 2019), the Ninth Circuit extended Rule 60(b)(6) relief to civil actions other than *habeas corpus* proceedings, characterizing Rule 60(b)(6) as a "grand reservoir of equitable power." *Id.* at 439.

BHD LLC's MOTION FOR TO MODIFY
JUDGMENT - 3:17-CV-00223-RS

Rule 60(b)(6) should be "liberally applied," "giving due regard to the sound interest underlying the finality of judgments … in the furtherance of justice." *Id.* at 443 (citation omitted).

Applying Rule 60(b)(6), *Henson* relieved a party from a judgment based on a subsequent change in law. In doing so, *Henson* relied on a non-exclusive list of factors previously set out in *Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009). *See Henson,* 943 F.3d at 443-454. This "case-by-case inquiry ... requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Id.* at 444 (quoting *Phelps*, 569 F.3d at 1133). *Henson* reversed the district court's denial of relief from judgment for abuse of discretion, finding that a Supreme Court opinion resulting in a change in applicable law was an "extraordinary circumstance" justifying relief. *Id.* at 443 *et seq*; *see also Bobbit v. Milberg LLP*, 807 F.App'x. 628 (9th Cir. 2020) (applying the *Henson* factors to grant Rule 60(b)(6) relief based on change of applicable law).

Applying the *Phelps* factors weighs overwhelmingly in favor of granting BHD's motion here, for the reasons explained in the following paragraphs:

**(i) Nature of Intervening Change of Law.** Relief is appropriate because the Final Judgment was based on this Court's application of "prevailing" Ninth Circuit law, and the change in the law in *Liu* "adopted the legal position" that BHD had "unsuccessfully advocated" in its opposition to summary judgment. *See Henson*, 943 F.3d at 446 (reciting similar facts leading to relief in *Phelps*). BHD preserved this argument in its original opposition, as explained above.

**(ii) Diligence In Pursuing Relief**. BHD promptly and expeditiously filed this rule 60 motion within ten days of the issuance of the Supreme Court's opinion in *Liu*. Because the Court's summary judgment order and Final Judgment were based on prevailing Ninth Circuit law at the time, BHD did not believe it met the standard for filing a motion for reconsideration under this Court's local rules under the current state of the law in 2019. For the same reason, it did not file an immediate appeal to the Ninth Circuit. "Courts should be cautious to count against a party seeking Rule 60(b)(6) relief the failure to file certain motions, unless the court can determine that

BHD LLC's MOTION FOR TO MODIFY
JUDGMENT - 3:17-CV-00223-RS

filing such a motion would not have been an utter exercise in futility." *Id.* at 450. Litigants are entitled to rely on settled precedent, and this is not a case where BHD took a "knowing and calculated risk" on law that was uncertain. *See id.* at 447-448.

(iii) **Parties' Reliance Interest In The Finality Of The Case**. Here, no party has changed its position in reliance on the Final Judgment. The funds paid to the SEC in 2019 have remained in the custody of the SEC for the better part of a year, and have not been paid to Treasury or investors. Relief will not "undo the past, executed effects of the judgment." *Id.* at 450-51 (quoting *Phelps*, 569 F.3d at 1137 (holding district court abused its discretion in finding defendant's reliance interest in stipulated dismissal weighed against relief). In fact, it was not until four days after the issuance of *Liu*, following months of inactivity, that the SEC suddenly sought an immediate order—improperly by stipulation with the Receiver—to transfer the BHD disgorged funds *out of* SEC custody. *See* Dkt. No. 803 (Stipulation). Because that order was sought with the apparent intention of frustrating this anticipated motion, BHD opposed that stipulation within hours and asked that the order be denied. Dkt. No. 804 (BHD Opposition to Stipulation).

(iv) **Delay Between The Final Judgment And The Rule 60(b) Motion.** BHD has acted promptly and expeditiously, filing its motion within 10 days of the entry of the decision in *Liu*. The Court's interest in the finality of its judgments is not threatened under the unique circumstances of this case because, in the Final Judgment, the Court *retained* jurisdiction over all matters related to this issue, the Court *retains* jurisdiction over the SEC's disposition of the disgorged funds in SEC custody, and the underlying case, *SEC v. SFRC*, remains pending and active in this Court. There is no prejudice to the SEC or any party.

(v) **Relationship Between Original Judgment And Change Of Law.** This factor "looks to the closeness of the relationship between the decision resulting in the original judgment and the subsequent decision that represents a change in the law." *Henson*, 943 F.3d. at 452 (citation omitted). As described above, BHD argued that its "legitimate expenses" should be excluded from the Court's order of disgorgement, preserving the exact issue that is the subject of the Supreme Court's decision in *Liu*. *Supra* at 4-6. Applying existing Ninth Circuit law which did

not require deductions for legitimate business expenses, this Court instead ruled that all "commingled" funds must be disgorged. *Supra* at 6-7. *Liu* reversed the Ninth Circuit's prevailing law that no deduction for legitimate business expenses was required when ordering disgorgement of commingled investor funds.

**(vi) Principles Of Comity.** Unlike a *habeas corpus* proceeding, there is no state judgment involved and comity is not implicated. *See Henson,* 943 F.3d at 453.

**(vii) Additional Considerations (Including Equity).** As to additional consideration, granting BHD relief from the Final Judgment and reforming the judgment order to account for legitimate business expenses "will ensure than any disgorgement award falls within the limit of equitable practice while preventing defendants from profiting from their own wrongs." *See Liu*, 2020 WL 3405845 at *11. The Court may also wish to consider whether the SEC's sudden effort to remove the funds at issue from its custody in light of *Liu* indicates inequitable conduct that should also be weighed in favor of relief.

The *Phelps* factors—as adopted in *Henson*—all weigh heavily in favor of granting relief from the Final Judgment pursuant to Rule 60(b)(6). In light of *Liu,* it is now clear that disputed issues of material fact concerning the amount of legitimate business expenses should have precluded entry of summary judgment as to the second category of funds at issue, the "*additional* $2.7 million … transferred into BHD, LLC from other entities to cover various expenses." *See* Dkt. No. 543 (SJ Order) at 3 (emphasis in original). The SEC's own Accountant, Ellen Chen, has submitted a schedule of uses of investor funds by BHD L.P. and BHD LLC proving that a significant portion of the approximately $2.7 million was used to pay legitimate business expenses of BHD. *Supra* at 3. The summary judgment order should also be modified in accordance with *Liu*.

## IV.   CONCLUSION

For the reasons set forth above, and pursuant to Fed.R.Civ.P. 60(b)(6), BHD respectfully requests that the Court **GRANT** its motion for relief from the Final Judgment. Pending decision and entry of a modified judgment as to BHD, the Court should **DENY** the SEC authority to transfer BHD's disgorged funds to the Receiver.

BHD respectfully suggests that the Court order the parties to meet and confer in an effort to reach agreement on a modified judgment applying the principles of *Liu* concerning deduction of legitimate business expenses from an order of disgorgement. BHD further suggests that within 28 days of entry of the order granting BHD's motion, the parties shall either (i) submit a stipulation and order for entry of a modified judgment reflecting BHD's revised agreed-upon disgorgement obligation, or if the parties are unable to reach agreement, (ii) submit a joint status report identifying those material issues on which the parties agree and disagree, along with a proposal to adjudicate BHD's disgorgement obligation, including any disputed issues of material fact as to the calculation of the proper amount of disgorgement consistent with *Liu*.

Dated: July 2, 2020

DANIEL J. DUNNE
SUZETTE J. BARNES
Orrick, Herrington & Sutcliffe LLP


By:      /s/Daniel J. Dunne

DANIEL J. DUNNE
*Attorneys for Berkeley Healthcare Dynamics, LLC*