UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>SAN FRANCISCO REGIONAL CENTER LLC, et al.,<br><br>    Defendants. | Case No. 17-cv-00223-RS<br><br>**ORDER DENYING MOTION TO ALTER JUDGMENT** |

## I. INTRODUCTION

Former relief defendant Berkeley Healthcare Dynamics, LLC moves pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure for relief from the judgment that was entered against it over one year ago. BHD contends that a Supreme Court decision issued this past June represents a change in law that undermines the basis of one portion of the judgment. Even if BHD were to show that the principles protecting the finality of judgments would not necessarily preclude relief, its motion must be denied because the Supreme Court case on which it relies does not affect the grounds on which the challenged portion of the judgment was based.

## II. BACKGROUND

As the parties are familiar with the general factual background of this action and its procedural history, those matters will not be recounted here. In late 2018, the Securities and Exchange Commission moved for partial summary judgment, seeking a finding that BHD,

1   together with defendants San Francisco Regional Center, LLC ("SFRC"), and North America 3PL,
2   LLC ("NA3PL") was liable for "disgorgement" of $23.9 million. The motion was unopposed by
3   SFRC and NA3PL, and was granted as to them.

4   As to BHD, the disgorgement claim had three elements. First, the SEC sought recovery of
5   approximately $2.7 million that went into the purchase of the warehouse owned by BHD. That
6   aspect of the SEC's motion was not challenged, was granted, and is not implicated by the present
7   motion to alter the judgment.

8   The primary dispute at the time of the summary judgment motion was the SEC's claim to
9   approximately $17.4 million in diverted investor funds, which it had not shown were ever in the
10  possession of BHD. That issue was resolved in BHD's favor, and is also not part of the current
11  motion under Rule 60(b).

12  The remaining element of the SEC's claim, and the only one at issue now, involved
13  additional monies, also in the amount of approximately $2.7 million, that had been transferred into
14  BHD from other entities to cover various expenses. The summary judgment order observed in a
15  footnote that the Intervenors were arguing some of those monies were appropriately paid from
16  NA3PL (the warehouse tenant) to BHD (the landlord), to reimburse it for various expenses it had
17  incurred that were actually the tenant's responsibility under the lease. The footnote concluded,
18  however, that there was no factual dispute that those funds "came from and/or were commingled
19  with misdirected investor funds, and therefore are subject to disgorgement."

20  The order on the SEC's motion for summary judgment entered in January of 2019. After
21  the parties met and conferred regarding certain calculation and procedural details, a final judgment
22  was entered against BHD on June 27, 2019. At the same time, a stipulated order issued
23  terminating the receivership as to BHD, effective July 1, 2019.

24  On June 22, 2020, the United States Supreme Court issued *Liu v. Securities & Exch.*
25  *Comm'n*, 140 S. Ct 1936 (2020). BHD contends *Liu* supports a conclusion that most or all of the
26  additional $2.7 million it received for "legitimate business expenses" was not legally subject to
27  disgorgement. BHD filed this motion within 10 days of the *Liu* decision.

28

### III.  LEGAL STANDARD

Rule 60(b)(6) provides that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any . . . reason that justifies relief." Fed. R. Civ. P. 60(b)(6). This clause "gives the district court power to vacate judgments 'whenever such action is appropriate to accomplish justice.'" *United States v. Sparks*, 685 F.2d 1128, 1130 (9th Cir. 1982) (quoting *Klapprott v. United States*, 335 U.S. 601, 615 (1949)). A party movant seeking relief under Rule 60(b)(6), however, "must show '"extraordinary circumstances" justifying the reopening of a final judgment.'" *Jones v. Ryan*, 733 F.3d 825, 833 (9th Cir. 2013) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)).

"[A] change in the controlling law can— but does not always—provide a sufficient basis for granting relief under Rule 60(b)(6)." *Henson v. Fid. Nat'l Fin., Inc.*, 943 F.3d 434, 444 (9th Cir. 2019). In *Henson*, the Ninth Circuit concluded that a list of factors previously applied in the habeas context are also relevant in ordinary civil cases. Those "*Phelps*" factors are, (1) the nature of the intervening change in the law, (2) the moving party's exercise of diligence, (3) the parties' reliance interest in the finality of the case, (4) the length of time between the final judgment and the Rule 60(b)(6) motion, (5) the closeness of the relationship between the decision resulting in the original judgment and the subsequent decision that represents a change in the law. *See Phelps v. Alameida,* 569 F.3d 1120, 1135–40 (9th Cir. 2009); *Henson*, 943 F.3d at 446-453.[1]

### IV.  DISCUSSION

In *Liu*, the Supreme Court reversed a Ninth Circuit decision upholding a disgorgement order in an SEC enforcement action that, like this one, involved EB-5 investors. The question *Liu* addressed was "whether § 78u(d)(5) [of the Securities Exchange Act of 1934] authorizes the SEC to seek disgorgement beyond a defendant's net profits from wrongdoing." 140 S. Ct. at 1942. The

---

[1] A sixth *Phelps* factor, concerns for comity, will not ordinarily apply outside of the habeas context. *See Henson*, 943 F.3d at 453.

court discussed the history of the term "disgorgement" and common law principles of restitution and accountings at length. At all points in the analysis, however, the focus was on *profits-based* remedies imposed against *wrongdoers. See Liu*, 140 S. Ct. at 1942–44 ("Equity courts have routinely deprived wrongdoers of their net profits from unlawful activity, even though that remedy may have gone by different names . . . . Decisions from this Court confirm that a remedy tethered to a wrongdoer's net unlawful profits, whatever the name, has been a mainstay of equity courts.").

The ultimate holding in *Liu* precludes the SEC from recovering a wrongdoer's gross profits—rather only *net* profits after deductions for legitimate business expenses may be recovered from a defendant. *See* 140 S. Ct. at 1946. *Liu*, however, simply has no bearing on the propriety of the judgment entered against BHD, which was not a defendant, was not accused of wrongdoing, and which was not required to disgorge "profits," gross or net.

The SEC's brief in support of its motion for summary judgment did conflate the issues to some degree, particularly because it was seeking to impose a joint and several obligation on relief defendant BHD and ordinary defendants SFRC and NA3PL. Nevertheless, the SEC plainly distinguished the basis of its claim as to BHD from the claims against SFRC and NA3PL. The SEC first recited the legal principles relating to ordinary defendants. *See* Dkt. No. 495 at p. 9 ("Once the district court has found federal securities law violations, it has broad equitable power to fashion appropriate remedies, including ordering that culpable defendants disgorge their profits." *SEC v. Razmilovic*, 738 F.3d 14, 31 (2d Cir. 2013)."). The SEC then went on to invoke authorities relevant to its claim against BHD.

> A relief or nominal defendant "is a person who holds the subject matter of the litigation in a subordinate or possessory capacity as to which there is no dispute." *SEC v. Colello*, 139 F.3d 674, 676 (9th Cir. 1998) (quotations and citation omitted). To order disgorgement against a relief defendant, the "court need find only that [the relief defendant] has no right to retain the funds illegally taken from the victims." *Id.* at 679. Disgorgement is appropriate against a relief defendant where the SEC demonstrates that (1) the relief defendant received ill-gotten funds, and (2) it does not have a legitimate claim to those funds. *E.g.*, *SEC v. Ross*, 504 F.3d 1130, 1141 (9th Cir. 2007); *SEC v. Cavanagh*, 155 F.3d at 136 (citing *SEC v. Colello*,

139 F.3d at 676-77).

Dkt. 495 at p. 11.

The Intervenors, who had not then yet regained control of BHD, filed an opposition that also conflated the issues to some degree, which was understandable given how the SEC presented the motion. Nevertheless, the Intervenors recognized that the SEC's claim against BHD stood on a different footing than the claims against SFRC and NA3PL. The Intervenors expressly acknowledged the case law cited by the SEC applicable to relief defendants, and argued that it supported their own argument that "disgorgement" was "limited to $2.7 million used in the acquisition of the warehouse, and, arguably, the additional $2.7 million lawfully used to develop a state-of-the-art warehouse facility for use as a Customs Examination Station." Dkt. No. 515 at p.17.

Contrary to BHD's current assertions, the Intervenors did *not* argue that the additional $2.7 million represented gross profits from which legitimate expenses should be deducted before a disgorgement amount could be awarded. By the same token, the judgment was not based on any pre-*Liu* authorities that might have permitted an award of gross profits without such deductions. Rather, the dispute regarding the additional $2.7 million at the time of the summary judgment was only whether the SEC met the standard for recovering monies in the hands of a relief defendant by adequately showing BHD did not have "a legitimate claim to those funds." See Intervenor's opposition, Dkt. No. 515 at pp. 20-22 (arguing that the use of the funds was consistent with the disclosures to investors).

The order granting summary judgment expressly cited the same authorities relevant to recovery against a relief defendant. Neither the disgorgement of the $2.7 million used to acquire the warehouse (which Intervenors did not oppose) nor the disgorgement of the additional $2.7 million (which the Intervenors conceded was "arguably" appropriate) represented recovery from a wrongdoer of profits gained from an unlawful activity.

It may be that BHD believes the prior order legally and/or factually erred in rejecting the Intervenors' argument that BHD had a legitimate claim to at least some portion of the additional

$2.7 million, given the representations to investors, the terms of the lease, and all of the circumstances. The time for challenging any such error, however, has long since expired. The *Liu* decision addresses recovery of profits earned by wrongdoers—a theory that was never applied to BHD here. As such, it does not serve as a relevant change in law that would support relief under Rule 60(b)(6).[2]

## V. CONCLUSION

BHD's motion for relief from the judgment is denied. In light of this disposition, BHD's pending motion for a temporary restraining order is denied as moot.

**IT IS SO ORDERED**.

Dated: August 7, 2020

RICHARD SEEBORG
United States District Judge

---

[2] Because this litigation is ongoing and the funds that BHD disgorged pursuant to the judgment have not yet been distributed, BHD is not wrong to argue that the interest in finality of judgments is less pronounced here than in many cases. BHD also acted with appropriate diligence. As *Liu* is not a relevant change in law, however, it is of no consequence that those *Phelps* factors might favor BHD.