1   JEFFER MANGELS BUTLER & MITCHELL LLP
    BENNETT G. YOUNG (Bar No. 106504)
2   byoung@jmbm.com
    JAMES M. NEUDECKER (Bar No. 221657)
3   jneudecker@jmbm.com
    JOSHUA HAEVERNICK (Bar No. 308380)
4   jhaevernick@jmbm.com
    Two Embarcadero Center, 5th Floor
5   San Francisco, California 94111-3813
    Telephone:    (415) 398-8080
6   Facsimile:    (415) 398-5584

7   Special Counsel for Receiver Susan L. Uecker

8

9                    UNITED STATES DISTRICT COURT

10      NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

11  SECURITIES AND EXCHANGE            Case No. 3:17-CV-00223-RS
    COMMISSION,
12
                Plaintiff,
13
        vs.
14                                     **NOTICE OF MOTION AND MOTION
15  SAN FRANCISCO REGIONAL CENTER, LLC;  FOR ORDER APPROVING
    THOMAS M. HENDERSON; CALIFORNIA     SETTLEMENT AGREEMENT
16  GOLD MEDAL, L.P.; CALLSOCKET, L.P.;  BETWEEN RECEIVER AND KEVIN
    CALLSOCKET II, L.P.; CALLSOCKET III,  SHIMAMOTO, CLEMENT CHIN,
    L.P.; COMPREHENSIVE CARE OF          JENNIFER BRONSON, AND BERKELEY
17  OAKLAND, L.P.; NA3PL, L.P.; WEST     HEALTHCARE DYNAMICS, LLC**
    OAKLAND PLAZA, L.P.; CALLSOCKET,
18  LLC; CALLSOCKET II, LLC; CALLSOCKET  Date:      December 10, 2020
    III, LLC; COMPREHENSIVE CARE OF      Time:      1:30 p.m.
19  CALIFORNIA, LLC; IMMEDIA, LLC; and   Place:     450 Golden Gate Ave.
    NORTH AMERICA 3PL, LLC,                         17th Floor, Courtroom 3
20                                                  San Francisco, CA  94102
                Defendants,            Judge:     Hon Richard Seeborg
21
                -and-
22
    CALLSOCKET HOLDING COMPANY, LLC;
23  CALLSOCKET III HOLDING COMPANY,
    LLC; BERKELEY HEALTHCARE
24  DYNAMICS, LLC; CENTRAL CALIFORNIA
    FARMS, LLC; and JL GATEWAY, LLC,
25
                Relief Defendants.
26

27

28

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1

### NOTICE OF MOTION AND MOTION

2      Susan L. Uecker, the duly appointed receiver (the "Receiver") for Defendant San Francisco

3  Regional Center, LLC ("SFRC") as well as the remaining named entity Defendants and Relief

4  Defendants (collectively the "Receivership Entities"), will and does hereby move the above-

5  captioned Court on Thursday, December 10, 2020, at 1:30 p.m., or as soon as the matter may be

6  heard, for an order approving a proposed settlement agreement (the "BHD Settlement

7  Agreement") between the Receiver and Kevin Shimamoto ("Shimamoto"), Clement Chin,

8  ("Chin"), Jennifer Bronson ("Bronson," and, together with Shimamoto and Chin, the "Individual

9  Defendants"), and Berkeley Healthcare Dynamics, LLC ("BHD," and, together with the Individual

10  Defendants, the "BHD Parties"). Interested parties should note that pursuant to General Order No.

11  72-3 of the United States District Court for the Northern District of California, dated May 21,

12  2020, all civil matters will be decided on the papers, or if the assigned judge believes a hearing is

13  necessary, the hearing will be by telephone or videoconference. For specific instructions on

14  telephone or video appearances, interested parties should see the docket on PACER, the assigned

15  judge's schedule of upcoming proceedings (located on each judge's web page at

16  cand.uscourts.gov/judges), or the ADR webpage.

17      This motion is grounded in law and equity, as well as the Receiver's authority vested in her

18  pursuant to Paragraphs 39-40 of the Order Appointing Receiver and Monitor (Dkt. No. 100) (the

19  "Appointment Order").

20      The Receiver's motion is supported by the following Memorandum, the proposed form of

21  order granting this motion which is attached hereto as **Exhibit A**, and the Declaration of Susan L.

22  Uecker ("Uecker Decl.").

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

68432812v1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND ...............................................................................3

    A.    Procedural History .....................................................................................3

    B.    The EB-5 Program ......................................................................................4

    C.    SFRC Raises $120 Million From Investors ...............................................4

    D.    SFRC Diverts Investor Funds ....................................................................5

    E.    NA3PL LP and NA3PL LLC ....................................................................5

    F.    BHD ...........................................................................................................6

    G.    The Receiver Closes NA3PL, LLC ...........................................................7

    H.    The Receiver's Plenary Actions ................................................................8

    I.    The BHD Parties' Proofs of Claim ............................................................9

    J.    The Mediation ............................................................................................9

III.  SUMMARY OF THE DISPUTES .....................................................................10

    A.    The Receiver's Plenary Actions ..............................................................10

        1.    Bronson ........................................................................................10
        2.    Chin/Shimamoto ..........................................................................10

    B.    The Receiver's Turn Over Claim .............................................................12

    C.    BHD's Tax Distribution ...........................................................................13

    D.    Individual Defendants' Receivership Action Claims ..............................13

    E.    BHD's Threatened Lawsuit Against Receiver .........................................13

IV.   TERMS OF THE PROPOSED SETTLEMENT .................................................14

V.    ARGUMENT ......................................................................................................16

    A.    District Court's Power to Administer The Receivership ..........................16

    B.    Deference To The Receiver's Business Judgment ...................................16

    C.    The BHD Settlement Agreement Is Fair And Reasonable And Should Be Approved Because It Benefits The Receivership Estates .........................17

VI.   CONCLUSION ...................................................................................................18

i                                          Case No. 3:17-CV-00223-RS

NTC OF MTN & MTN FOR ORDER APPROVING SETTLEMENT AGRMNT BETWEEN RECEIVER AND
KEVIN SHIMAMOTO, CLEMENT CHIN, JENNIFER BRONSON, AND BHD, LLC

JMBM | Jeffer Mangels Butler & Mitchell LLP

68432812v1

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Bennet v. Williams*,
   892 F.2d 822 (9th Cir. 1989)..................................................................................14, 16

*In re Castillo*,
   297 F.3d 940 (9th Cir. 2002)...........................................................................................14

*CFTC v. Tooworth Int'l., Ltd.*,
   205 F.3d 1107 (9th Cir. 1999).........................................................................................16

*New Alaska Dev. Corp. v. Guetschow*,
   869 F. 2d 1298 (9th Cir. 1989)........................................................................................14

*SEC v. Basic Energy & Affiliated Resources*,
   273 F.3d 657 (6th Cir. 2001)...........................................................................................16

*SEC v. Capital Consultants, LLC*,
   397 F.3d 733 (9th Cir. 2005)...........................................................................................16

*SEC v. Elliot*,
   953 F.2d 1560 (11th Cir. 1992).......................................................................................16

*SEC v. Forex Asset Management*,
   LLC, 242 F.3d 325 (5th Cir. 2001) .................................................................................16

*SEC v. Hardy*,
   803 F.2d 1034 (9th Cir. 1986).........................................................................................16

*SEC v. Universal Fin. Co.*,
   760 F.2d 1034 (9th Cir. 1985).........................................................................................12

*SEC v. Wang*,
   944 F.2d 80 (2d Cir. 1991) ..............................................................................................16

*Southwestern Media, Inc. v. Rau*,
   708 F.2d 419 (9th Cir. 1983)...........................................................................................17

*In re Thinking Machines Corp.*,
   182 B.R. 365 (D. Mass. 1995).........................................................................................17

*In re Thinking Machines Corp.*,
   67 F.3d 1021 (1st Cir. 1995)...........................................................................................17

JMBM | Jeffer Mangels
Butler & Mitchell LLP

68432812v1

1

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page**

**Statutes**

California Civil Code section 1542 ............................................................................2, 15

**Other Authorities**

Publication 1016 *Real Estate Withholding Guidelines* .................................................13

NTC OF MTN & MTN FOR ORDER APPROVING SETTLEMENT AGRMNT BETWEEN RECEIVER AND
KEVIN SHIMAMOTO, CLEMENT CHIN, JENNIFER BRONSON, AND BHD, LLC

68432812v1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

The Receiver seeks court approval of a global settlement between the Receiver and the BHD Parties. After extensive litigation over a nearly three year period, the Receiver and the BHD Parties agreed to mediate their disputes before Robert Meyer of JAMS. The mediation took place on September 30, 2020. After over 12 hours of mediation, the Receiver and the BHD Parties reached a settlement of all of their disputes, including the five main disputes/claims between the Receiver and BHD Parties:

*First*, the Receiver asserted claims to recover over $19 million from the Individual Defendants alleging that Chin and Shimamoto breached their fiduciary duties to North America 3PL LLC ("NA3PL, LLC") and aided and abetted breaches of fiduciary duty by Thomas Henderson ("Henderson"), and that Bronson was the recipient of a fraudulent transfer from SFRC.

*Second*, the Receiver contended that BHD's August 2019 sale of the real property known as 1700 20th Street, Oakland, CA (the "Oakland Warehouse") caused the dissolution of BHD and triggered the Individual Defendants' obligation as managers of BHD to wind-down BHD. The Receiver further contended that BHD must turn over the value of SFRC's 40% interest in BHD, worth more than $4.7 million.

*Third*, the Receiver sought an accounting of the net holdbacks of the proceeds from the sale of the Oakland Warehouse and contended that an approximately $2 million disbursement to the Franchise Tax Board should not be charged against SFRC's membership interest in BHD.

*Fourth*, the Individual Defendants submitted a claim against SFRC for breach of fiduciary duty, breach of contract, fraud and negligent misrepresentation related to BHD. After the Receiver rejected the claim, BHD unilaterally assessed its damages as approximately $5.7 million and claimed a set-off right against SFRC's ownership interest in BHD.

/ / /

/ / /

/ / /

/ / /

68432812v1

1    **Fifth**, BHD threatened to seek leave to file a lawsuit against the Receiver in her individual

2    capacity, alleging various breaches of her duties as Receiver.[1]

3        The proposed settlement resolves all of these disputes. A copy of the proposed BHD

4    Settlement Agreement is attached to the Uecker Declaration as Exhibit A. The material terms of

5    the settlement are:

6        1.     The BHD Parties will pay the Receiver seven million dollars ($7,000,000.00) (the

7    "Settlement Funds").

8        2.     The Receiver will assign and transfer SFRC's 40% interest in BHD to BHD, Chin,

9    Shimamoto and/or Bronson (in whatever proportions they request).

10        3.     The Receiver acknowledges and agrees that the benefit, if any, in the form of a

11    refund or otherwise, of the "CALFIRPTA Withholding Taxpayer ID 90-0905118 to Franchise Tax

12    Board" (the "FTB Disbursement") identified in the Closing Statement for the sale of the Oakland

13    Warehouse belongs to the Individual Defendants, and the Receiver irrevocably waives and

14    releases any claim that the allocation of the FTB Disbursement violates California law.

15        4.     The parties agreed to certain provisions concerning federal income tax filings.

16        5.     The Receiver, on the one hand, and the BHD Parties, on the other hand, shall

17    execute broad general mutual releases of any and all known and unknown claims and potential

18    claims they may have against the other side (and in the case of the BHD Parties, against the

19    Receivership Estates). The mutual release shall include a waiver of California Civil Code section

20    1542 and all similar provisions under federal or state law.

21        The proposed settlement is in the best interests of the Receivership Estates and should be

22    approved. The proposed settlement will result in the Receivership Estates' receipt of $7 million in

23    cash and the elimination of over $8 million of claims threatened or asserted by the BHD Parties. In

24    addition to these significant economic benefits, resolution of the disputes with the BHD Parties

25

26    [1] On June 26, 2020, the Receiver and BHD Parties entered into a tolling and standstill
agreement (the "Tolling Agreement") whereby both sides agreed, among other things, to toll any

27    applicable statutes of limitations and not to initiate litigation against the other until at least 14 days

28    after either side terminates the agreement.

Jeffer Mangels
Butler & Mitchell LLP
JMBM

68432812v1

removes a major hurdle in the administration of the receivership and brings the Receiver one big step closer to making a meaningful initial distribution to creditors and defrauded Investors. Litigation of these disputes, on the other hand, would be expensive, time consuming, and uncertain and most likely would delay any distribution for a lengthy period of time.

## II.    FACTUAL BACKGROUND

### A.    Procedural History

This matter was initially brought before the Court pursuant to a complaint filed on January 17, 2017, by the Securities and Exchange Commission (the "SEC"), alleging that the named defendants, including Henderson, SFRC, and others had exploited a federal EB-5 visa program by defrauding investors seeking to invest in the job creation program, earn a return on their investments and obtain a permanent U.S. visa as a way towards United States residency. (Dkt. No. 1). On January 20, 2017, the SEC filed a motion seeking, among other things, an order appointing a receiver over the entity defendants and relief defendants. The Court entered the Order Granting Motion for Preliminary Injunction and to Appoint a Receiver on March 23, 2017, pursuant to which the Court, among other things, appointed Susan L. Uecker as Receiver over defendant SFRC, as well as a majority of the entity defendants and relief defendants; and as Monitor over certain other defendants. (Dkt. Nos. 96, 100,) On June 5, 2017, the Court entered its Order Extending Scope of Receivership appointing Susan L. Uecker as Receiver over the Monitor Defendants. (Dkt. No. 171).

On August 15, 2019 Henderson was charged in a seventeen count criminal information with various crimes, including wire fraud and conspiracy, related to SFRC. One week later, on August 22, 2019, Matt Henderson was charged with a single count of conspiracy related to SFRC.

On December 19, 2019 the Receiver filed her Plan of Distribution (the ("Plan"). On January 16, 2020 the District Court entered an order approving the Plan. (Dkt. No. 728). The Plan provides for the distribution of the assets of the Receivership Entities that have been collected by the Receiver to defrauded investors and other creditors.

/ / /

/ / /

NTC OF MTN & MTN FOR ORDER APPROVING SETTLEMENT AGRMNT BETWEEN RECEIVER AND KEVIN SHIMAMOTO, CLEMENT CHIN, JENNIFER BRONSON, AND BHD, LLC

**B.      The EB-5 Program**

The general background and purpose of the U.S. Citizenship and Immigration Services ("USCIS") EB-5 program is set forth in the Receiver's Recovery Plan and the Declaration of Robert C. Divine in support thereof, filed on June 26, 2017 (Dkt. No. 185), ¶¶ 1-2 ("Devine Decl.") The EB-5 Program allows foreign nationals to obtain permanent resident status in the United States by investing a minimum of $500,000 in a NCE principally doing business in a Targeted Employment Area in the United States in order to create a minimum of 10 full-time jobs for U.S. workers. Alternatively, the NCE may use indirect arrangements to place the full minimum capital in one or more JCE's, and the investors may be credited not only with employees of the JCE's but also with indirect impact jobs up and down the economic chain from the JCE's. This is allowable only if the investors are sponsored by a "regional center" approved by USCIS. Devine Decl. ¶ 13.

SFRC was the USCIS sponsored "regional center" acting, in most instances, either as a member of the general partner of the limited partnership Defendants who were NCE's or as a member of the limited liability company Defendants who were JCE's. SFRC also was a member of the limited liability company Relief Defendants. SFRC sponsored seven EB-5 NCE's or projects, and, through Henderson, one of its managing members, controlled the flow of funds to and among, the Defendant NCE's, the JCE's, and the Relief Defendants.

**C.      SFRC Raises $120 Million From Investors**

Henderson and the entities he controlled solicited funds from investors using Private Placement Memoranda ("PPM") and Business Plans unique to each project. Each PPM identified a limited partnership as the issuer of securities, a general partner as the entity that would control and manage the project, and Henderson as the person who controlled the general partner. Each investor invested $500,000 in exchange for a security constituting an interest in a limited partnership (the NCE) that purported to use the investors' money to operate, or make loans to, a specific, job-creating business (the JCE).

SFRC sponsored seven EB-5 projects involving 224 EB-5 Immigrant Program Investors ("Investors"). The Investors are all foreign nationals, mostly from China and Viet Nam. The seven

68432812v1

JMBM | Jeffer Mangels Butler & Mitchell LLP

1  EB-5 projects were receivership Defendants NA3PL, L.P. ("NA3PL LP"); California Gold Medal,

2  L.P.; Call Socket, L.P.; Call Socket II, L.P.; Call Socket III, L.P.; West Oakland Plaza, L.P.; and

3  Comprehensive Care Of Oakland, L.P. Each Investor invested $500,000 plus varying amounts of

4  fees, and the total Investor funds invested in SFRC's EB-5 projects is $119,959,408. Declaration

5  of Jay D. Crom In Support of Receiver's Motion For Order Consolidating the Receivership

6  Entities For Purposes of Distribution ("Crom Decl.") (Dkt. No. 561-2), , ¶ 3.

7          **D.     SFRC Diverts Investor Funds**

8          Instead of using each Investor's funds for the project for which they were solicited as

9  required under the PPM and the limited partnership agreements, and as represented in the Business

10  Plans, SFRC siphoned off millions of dollars of investors' funds for Henderson's personal use and

11  to fund his non-EB-5 business ventures. Millions of dollars of investors' capital contributions

12  were exported to overseas marketing agents, contrary to express written representations to

13  investors and the law governing the EB-5 program. SFRC diverted most of the money raised from

14  Investors to buy real estate for the benefit of non-Investor insiders, to prop up money-losing

15  ventures, and to fund its massive syndication and administrative costs. SFRC/Henderson also

16  engaged in an elaborate shell game/Ponzi scheme of using funds solicited for one EB-5 project to

17  fund other EB-5 projects, contrary to representations to Investors who were told their investment

18  would be used for a specific EB-5 Project. In total, over $93 million of Investor funds (out of a

19  total of ~$120 million raised) were diverted and commingled in SFRC's bank accounts between

20  November 2010 and December 2016. *See* Crom Decl., ¶ 9; Plaintiff Securities and Exchange

21  Commission's Motion for Preliminary Injunction and for Appointment of Receiver, and

22  Memorandum in Support Thereof, 2:15-27 (Dkt. No. 10). .

23          **E.     NA3PL LP and NA3PL LLC**

24          One of the SFRC sponsored EB-5 Projects was NA3PL LP. NA3PL LP was organized as a

25  New Commercial Enterprise, and NA3PL LLC was organized as the Job Creating Entity under the

26  EB-5 Program. The members of NA3PL LLC are Henderson (40%), Chin (25%), Shimamoto

27  (25%); and Bronson (10%). Henderson, Chin, and Shimamoto were the managers of NA3PL LLC

28  until April 2016 when Bronson replaced Henderson as a manager.

68432812v1

NA3PL LP was organized as a limited partnership capitalized with funds raised from Investors. SFRC is its general partner and the Investors held the limited partnership units. NA3PL LP raised $21,904,192 from 41 Investors. NA3PL LP's Business Plan provides that NA3PL LP will use the EB-5 investor funds to make a six year loan to NA3PL LLC to develop and operate a third party logistics business at the Oakland Warehouse BHD purchased in 2012 (using $2.7 million diverted to BHD from SFRC for the down payment). The loan proceeds were supposed to be used by NA3PL LLC to fund the startup expenses of the company, including the development and construction of a state of the art warehouse, purchase of equipment, furnishing the initial salary and wages, and working capital. Crom Decl., ¶¶ 34 - 36.

Instead, the vast majority of the funds were diverted to SFRC and other Henderson controlled entities. NA3PL LP transferred approximately $18.7 million to NA3PL LLC (which is consistent with the loan structure envisioned in the Business Plan). However, there are at least three different versions of the note evidencing the loan. Further, although the loan from NA3PL LP required quarterly interest payments, no interest was ever paid. More importantly, NA3PL LLC did not use the funds for the purposes outlined in the Business Plan. Instead, the funds were transferred out of NA3PL LLC to various Henderson-controlled entities, including over $16 million to SFRC alone. NA3PL LLC also transferred nearly $1.1 million to BHD. In total, SFRC diverted from NA3PL LLC more than $18 million of Investor funds that were supposed to be used to fund its warehouse/logistics business. Of the $21,904,192 received by NA3PL LP from its Investors, only approximately $1.36 Million, or 6%, was used for purposes identified in the Business Plan. The remainder was transferred by NA3PL LLC and NA3PL LP to SFRC and related entities, and/or commingled with the funds of those entities. Crom Decl., ¶ ¶ 36 – 38.

F.    BHD

BHD is a real estate holding company that purchased the Oakland Warehouse out of which NA3PL LLC operated its logistics business. BHD was one of the recipients of funds diverted by SFRC. BHD purchased the Oakland Warehouse in 2012 for $8.25 million, using $2.7 million SFRC diverted to BHD from a different EB-5 Project (CS LP) and a $100,000 loan from Chin. Neither Chin, Shimamoto nor Bronson contributed any capital to the Oakland Warehouse. Further,

1    SFRC diverted another ~$2.7 million to BHD, mostly from NA3PL LLC, to improve the

2    Warehouse building. Crom Decl., ¶ 54.

3         The members of BHD are SFRC (40%), Chin (25%), Shimamoto (25%), and Bronson

4    (10%). Bronson claims a 10% membership interest in BHD based on an assignment from SFRC.

5    Bronson testified that the assignment was a gift to her and that she did not pay anything for the

6    interest. Nor did she contribute any capital to BHD. Uecker Decl., ¶ 3.

7         In October 2018, the SEC moved for partial summary judgment against SFRC, NA3PL

8    LLC and BHD. In January 2019, the Court mostly granted the SEC's Summary Judgment Motion.

9    Thereafter, the Court entered a judgment ordering BHD to disgorge approximately $5.4 million

10   improperly diverted to BHD, and an order terminating the receivership as to BHD. (Dkt. No. 633,

11   634). The termination of the receivership over BHD permitted BHD to sell the Oakland

12   Warehouse, which it did in August 2019 for approximately $23.8 million. After satisfying the

13   SEC's judgment from the sale proceeds and making other closing-related disbursements, BHD

14   netted over $11.9 million. BHD made the FTB Disbursement of $1,983,621 from these proceeds

15   of the sale, leaving BHD with roughly $10 million. Uecker Decl., ¶ 4.

16        After the sale closed, the Receiver demanded that the BHD Parties turnover to the

17   Receivership Estates SFRC's 40% interest in BHD, an asset the Receiver asserted was worth at

18   least $4,780,732.82. The BHD Parties refused, asserting, among other things, a right to set off

19   against SFRC's 40% interest the damages they claimed to have suffered as a result of SFRC's

20   breach of its fiduciary duties. Uecker Decl., ¶ 5.

21        **G.    The Receiver Closes NA3PL, LLC**

22        Prior to the Receiver's appointment, NA3PL, LLC obtained a contract with the United

23   States Customs and Border Patrol ("CBP") to operate a Central Examination Station ("CES") from

24   the Oakland Warehouse. After her appointment in March 2017, the Receiver continued to operate

25   NA3PL, LLC's logistics business, including the CES contract, and advised CBP that she intended

26   to sell the Oakland Warehouse. By letter dated November 17, 2017, the CBP terminated the CES

27   agreement because, as the CBP stated in its termination letter, "Mr. Henderson and the entities he

28   controls defrauded the Employee-Based Immigration Fifth Preference program (EB-5 Program),

68432812v1

which is administered by the United States Citizenship and Immigration Services (USCIS), a sister agency of CBP within the Department of Homeland Security." Uecker Decl., ¶ 6.

The Receiver concluded that without the revenue generated by the CES agreement, NA3PL, LLC was no longer viable. The Receiver therefore sought authorization from the Court to close the business. Dkt. No. 281.) The Individual Defendants opposed the Receiver's motion. The Court overruled the Individual Defendants' objections and authorized the Receiver to close NA3PL, LLC. (Dkt. No. 336.) Subsequently, BHD threatened to assert claims against the Receiver, asserting that the Receiver's actions breached the Appointment Order, causing damage to BHD. Uecker Decl., ¶ 7.

### H.    The Receiver's Plenary Actions

In May 2019, the Receiver filed a Motion for Leave to File "Plenary Actions" against the Individual Defendants alleging claims against Chin and Shimamoto for breaches of fiduciary duty to NA3PL LLC and for aiding and abetting Henderson's fraud, and against Bronson to recover as a fraudulent transfer SFRC's transfer of a 10% membership interest in BHD to her for no consideration. In June 2019, over the Individual Defendants' opposition, the Court granted the Receiver's Plenary Action Motion, after which the Receiver filed two complaints in the Northern District (one against Chin and Shimamoto, one against Bronson). After the Receiver and Individual Defendants stipulated to relating the Plenary Actions to the receivership action, in September 2019, the Individual Defendants moved to dismiss the Plenary Actions for lack of federal subject matter jurisdiction. After the Receiver amended the Complaints, the Individual Defendants again moved to dismiss the Plenary Actions in October 2019. In March 2020, the Court granted the Individual Defendants' Motion to Dismiss the Plenary Actions for lack of subject matter jurisdiction, without prejudice to the Receiver's ability to bring the Plenary Actions in state court.

From March – May 2020, the Receiver and the BHD Parties (and the SEC) extensively briefed the propriety of the Receiver bringing the Plenary Actions against the Individual Defendants in state court. After the extensive briefing, in August 2020, the Court entered an order permitting the Receiver to file the Plenary Actions in state court after submitting a confidential

NTC OF MTN & MTN FOR ORDER APPROVING SETTLEMENT AGRMNT BETWEEN RECEIVER AND KEVIN SHIMAMOTO, CLEMENT CHIN, JENNIFER BRONSON, AND BHD, LLC

JMBM | Jeffer Mangels Butler & Mitchell LLP

report to the Court addressing the scope and anticipated expense of pursuing the Plenary Actions. (Dkt. No. 829.) The Receiver submitted the confidential report on August 25, 2020. (Dkt. No. 830).

**I.      The BHD Parties' Proofs of Claim**

During the claims process, Chin and Shimamoto asserted claims against the Receivership Entities. Chin submitted five claims and Shimamoto seven. Additionally, the Individual Defendants jointly submitted four claims. The Receiver rejected Chin and Shimamoto's claims and rejected the joint claims. Uecker Decl., ¶ 8.

After a meet and confer process, Chin withdrew three of his claims and agreed that a fourth was an equity claim within the meaning of the Receiver's Plan of Distribution. Chin's sole remaining claim was a claim for $28,588.13 for alleged expense reimbursements. Shimamoto withdrew two of his claims, leaving him with claims for alleged expense reimbursements in the aggregate amount of $25,262.55. Uecker Decl., ¶ 9.

The Individual Defendants likewise withdrew three of their joint claims. The sole remaining joint claim was a claim against SFRC, alleging that through its violation of securities laws, SFRC breached its fiduciary and contractual duties to the Individual Defendants, and committed fraud and negligent misrepresentation, thus causing the Individual Defendants harm. The Individual Defendants asserted that their damages amounted to approximately $5.7 million (the amount of the SEC's disgorgement judgment) and that they could set off their claimed damages against SFRC's 40% interest in BHD. Uecker Decl., ¶ 10.

**J.      The Mediation**

In or about June 2020 the Receiver and the BHD Parties determined to pursue mediation of their various disputes. The parties entered into the Tolling Agreement while they pursued mediation. The parties exchanged the names of proposed mediators and eventually selected Robert Meyer of JAMS as mediator. The mediation was held on September 30, 2020. After over 12 hours of mediation, the parties reached a global settlement of all of their disputes. Uecker Decl., ¶ 11. Subsequently, the parties signed the BHD Settlement Agreement, attached to the Uecker Decl. as Exhibit A, memorializing their agreement.

68432812v1

JMBM | Jeffer Mangels
Butler & Mitchell LLP

## III.    SUMMARY OF THE DISPUTES

### A.    The Receiver's Plenary Actions

#### 1.    Bronson

The parties agreed that Bronson owns 10% of the membership interests in BHD LLC, which are valued at approximately $1.1 million, and those interests were transferred to her by SFRC. In her plenary action, the Receiver alleged that SFRC's transfer of the membership units to Bronson constituted a fraudulent transfer under California state law which the Receiver is entitled to set aside. The Receiver contended that Bronson testified at deposition that the assignment was a gift to her, that she did not contribute any capital to BHD LLC, and did not pay anything to SFRC for the assignment.

Bronson contended that SFRC transferred a 10% interest in BHD LLC in connection with her transition from contractor to full-time SFRC employment in approximately October 2012, that BHD LLC had negative equity and that her employment services constituted valuable and sufficient consideration for the transfer at the time, and that the transfer was not made to avoid SFRC's current or anticipated debt obligations. Bronson further contended that the transfer was effective October 17, 2012, and was fully executed by all parties no later than August 2013, and therefore that the statute of limitations on any fraudulent transfer claim had expired.

#### 2.    Chin/Shimamoto

The parties agreed that Chin and Shimamoto each own 25% of the membership interests in NA3PL LLC and were managers of the company. The parties also agreed that Henderson had a 40% membership interest in NA3PL LLC and acted as a manager of the company and that on April 18, 2016, the Individual Defendants removed Henderson as a manager of NA3PL LLC and appointed Bronson as a manager in his place. In her plenary action, the Receiver alleged that Chin and Shimamoto breached their fiduciary duties as managers of NA3PL LLC and aided and abetted Henderson's breach of his fiduciary duties as a manager of NA3PL LLC and that NA3PL, LLC suffered over $18 million in damages as a result of these breaches..

The Receiver contended that Henderson acted wrongfully in diverting millions of dollars from NA3PL LLC to SFRC and other Henderson-controlled entities. The Receiver also contended

68432812v1

Case No. 3:17-CV-00223-RS

NTC OF MTN & MTN FOR ORDER APPROVING SETTLEMENT AGRMNT BETWEEN RECEIVER AND KEVIN SHIMAMOTO, CLEMENT CHIN, JENNIFER BRONSON, AND BHD, LLC

that Chin and Shimamoto breached their fiduciary duties to NA3PL LLC because they were aware of, advised, authorized and/or executed over $18 million in transfers initiated by Henderson from NA3PL LLC to SFRC. The Receiver further contended that Chin and Shimamoto acted unlawfully by meeting with prospective investors, and giving presentations on the operations of NA3PL LP and guided tours of the 20th Street Warehouse despite their knowledge of Henderson's illegal conduct. The Receiver further contended that Chin and Shimamoto backdated NA3PL LLC's requests for proposals and manufactured revenue projections for the purposes of complying with the requirements of the EB-5 program, and attended a trip to China and Tibet in October 2015 during which they promoted Henderson's scheme to potential investors. The Receiver also contended that Chin and Shimamoto substantially assisted and/or encouraged Henderson's breaches of fiduciary duties by directing and/or authorizing the transfer of funds from NA3PL LLC, advising indirect transfers of funds to SFRC, and through misrepresentations to investors that NA3PL LLC operated according to its business plan. The Receiver additionally contended that Chin and Shimamoto were unjustly enriched in the amount of so-called "sweat equity" in BHD they received for developing the businesses of BHD and NA3PL, LLC at the expense of the defrauded investors.

Chin and Shimamoto asserted that they did not breach their fiduciary duties to NA3PL LLC and that they acted in accordance with their obligations under the NA3PL LLC Operating Agreement and California law. Chin and Shimamoto contended that they did not aid and abet, substantially assist, or encourage Henderson to breach fiduciary duties he held to NA3PL LLC or any other corporate entity. Chin and Shimamoto further contended that they appropriately relied on the advice of Henderson and the legal counsel and accountants for NA3PL LLC and SFRC that Henderson's transfers were legal and permissible. They also argued that when there were substantial questions about the legality of Henderson's and SFRC's conduct with respect to EB-5 investors—contrary to the advice they received from Henderson as an NA3PL LLC member and manager, and the legal counsel and accountant for NA3PL LLC and SFRC—they and Bronson voted to remove Henderson as an NA3PL LLC manager and eliminated his authorization as a signatory on the company's bank accounts to protect the assets and interests of the company.

NTC OF MTN & MTN FOR ORDER APPROVING SETTLEMENT AGRMNT BETWEEN RECEIVER AND KEVIN SHIMAMOTO, CLEMENT CHIN, JENNIFER BRONSON, AND BHD, LLC

1   Chin and Shimamoto further contended that NA3PL LLC does not have investors, they

2   had no role in the operations of NA3PL LP, did not serve as general or limited partners of NA3PL

3   LP, owed no duties of discovery to NA3PL LP limited partners and investors, and otherwise did

4   not have the contact information for NA3PL LP investors. They also contended that they did not

5   make presentations to persons known to be actual or prospective NA3PL LP investors, and did not

6   make misrepresentations to any actual or potential investor in NA3PL LP or any SFRC-affiliated

7   corporate entity, but even if they had, these actions would not support liability.

8       **B.    The Receiver's Turn Over Claim**

9   In August 2019, BHD liquidated substantially all of its tangible assets, including the

10  Oakland Warehouse. The Receiver contended that SFRC is entitled to 40% of the $11,951,832.05

11  in adjusted net proceeds from BHD's sale of the Oakland Warehouse, amounting to at least

12  $4,780,732.82. The Receiver contended that the BHD Parties acknowledged multiple times that

13  they must turnover SFRC's 40% interest in BHD and that behind the guise of an alleged right to

14  setoff, BHD was holding the net cash proceeds of the sale and had failed and refused to account

15  and turnover to the Receiver the Receivership Entities' share of those proceeds.

16  The Receiver asserted that opposing claims to receivership funds does not postpone

17  turnover of such funds to the Receiver citing *SEC v. Universal Fin. Co.*, 760 F.2d 1034, 1039 (9th

18  Cir. 1985). The Receiver further asserted that the Appointment Order did not permit the Individual

19  Defendants to exercise setoff against the receivership. Instead the Individual Defendants' claims

20  must be adjudicated according to the Claims Procedure Order entered in this action.

21  The Individual Defendants contended that on January 23, 2020, the Individual Defendants,

22  acting as members of BHD, adopted a resolution stating, among things, that SFRC violated its

23  fiduciary and contractual duties to BHD, causing BHD disgorgement liability of $5,698,911 (plus

24  additional damages and attorneys' fees), and therefore, the purchase price for SFRC's 40%

25  membership interest in BHD will be reduced by an amount equal to the damages BHD and the

26  Members suffered as a result of SFRC's breaches.

27  / / /

28  / / /

68432812v1

12                    Case No. 3:17-CV-00223-RS
NTC OF MTN & MTN FOR ORDER APPROVING SETTLEMENT AGRMNT BETWEEN RECEIVER AND
KEVIN SHIMAMOTO, CLEMENT CHIN, JENNIFER BRONSON, AND BHD, LLC

**C.    BHD's Tax Distribution**

According to the August 30, 2019 Sellers Statement from Chicago Title Company, BHD sold the Warehouse for $23,752,000.00 cash. The Final Sellers Statement notes a number of closing-related disbursements. The Receiver contested the FTB Disbursement, a payment of $1,983,621 to the California Franchise Tax Board. The net proceeds of the sale prior to the FTB Disbursement and certain other holdbacks was $11,483,684.41.

The Receiver contended that the FTB Disbursement was improper and should not be charged to SFRC's Capital Account. The Receiver asserted that BHD is an LLC and therefore is a pass-through entity for income tax purposes. BHD does not owe any income tax; any gains and losses flow through to its members. Furthermore, according to the FTB's guidance in Publication 1016 *Real Estate Withholding Guidelines*, in 2019, BHD LLC was qualified to be 100% exempt from California's income tax withholding provisions. The Receiver therefore contended that there was no basis for any withholding. Moreover, even if the withholding was required (which it is not), the amount withheld exceeded the maximum amount required.

**D.    Individual Defendants' Receivership Action Claims**

The Individual Defendants jointly submitted a claim against SFRC, alleging that through its violation of securities laws, SFRC breached its fiduciary and contractual duties to the Individual Defendants, and committed fraud and negligent misrepresentation, thus causing the Individual Defendants harm. The Individual Defendants' asserted that they suffered damages of at least $5.7 million as a result of SFRC's alleged wrongful conduct. The Receiver rejected this joint claim. The Receiver contended that the Individual Defendants were not harmed by SFRC's securities law violations. The Court ordered BHD to disgorge approximately $5.7 million because that is the amount of money SFRC wrongfully diverted to BHD. The Receiver contended that BHS was not damaged by having to return money to which it was never entitled in the first place.

**E.    BHD's Threatened Lawsuit Against Receiver**

BHD threatened to seek leave to file a lawsuit against the Receiver in her individual capacity. BHD claimed that the Receiver colluded with the CBP to cause the termination of the CES Agreement which caused NA3PL, LLC to be unable to pay rent to BHD. BHD contended

68432812v1

1  that the Receiver's actions violated her obligations under the Receivership Order and threatened to

2  assert claims against the Receiver. BHD claimed damages of approximately $1,440,000 in lost

3  rental income and other expenses from February 2018 to July 2019 (the date the BHD receivership

4  was terminated). The Receiver contended that as a court appointed receiver she was protected by

5  quasi-judicial immunity. *See In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2002); *New Alaska Dev.*

6  *Corp. v. Guetschow*, 869 F. 2d 1298, 1303 (9th Cir. 1989). The Receiver further contended that

7  the Court's order authorizing the closure of NA3PL, LLC was res judicata and barred any claims

8  by BHD. Finally, the Receiver contended that she was protected by the business judgment rule,

9  *see, e.g., Bennet v. Williams*, 892 F.2d 822, 824 (9th Cir. 1989), that BHD's claims were barred by

10  the exculpatory provisions of the Receivership Order, and that the underlying premise of BHD's

11  argument – that the CBP suspended and terminated NA3PL LLC's CES status because the

12  Receiver represented that she would soon sell BHD's Oakland Warehouse – was not true.

## IV.    TERMS OF THE PROPOSED SETTLEMENT

14      In order to resolve these matters and avoid costly litigation the Receiver agreed to the

15  following proposed settlement with the BHD Parties, subject to Court approval pursuant to

16  Paragraph 39 of the Appointment Order. A true and correct copy of the proposed BHD Settlement

17  Agreement is attached as Exhibit A to the Uecker Decl. The essential terms of the proposed

18  settlement are:

19      1.      The BHD Parties will pay the Receiver the Settlement Funds of seven million

20  dollars ($7,000,000.00). The BHD Parties transferred the Settlement Funds to an interest bearing

21  escrow account, where the Settlement Funds will remain until expiration of the deadline to appeal

22  a court order approving the settlement, or expiration and exhaustion of all appeals ("Final Court

23  Approval"). Upon Final Court Approval, the Settlement Funds, plus accrued interest, if any, shall

24  immediately be disbursed to the Receiver. The escrow account was established and fully funded

25  by the BHD Parties on October 26.

26      2.      The Receiver will assign and transfer SFRC's 40% interest in BHD to BHD, Chin,

27  Shimamoto and/or Bronson (in whatever proportions they request). The transfer shall not be

28  effective unless and until Final Court Approval.

JMBM | Jeffer Mangels
Butler & Mitchell LLP

68432812v1

3.       The Receiver acknowledges and agrees that the benefit, if any, in the form of a refund or otherwise, of the $1,983,621 FTB Disbursement identified in the Closing Statement for the sale of the Oakland Warehouse, less $11,790 gross receipts, belongs to the Individual Defendants and the Receiver irrevocably waives and releases any claim that the allocation of the FTB Disbursement violates California law.

4.       The parties acknowledge and agree to the following provisions concerning federal income tax filings:

a.       BHD may file amended Form K-1s, and any related tax filings, for all members and BHD for calendar year 2019 reflecting the cash distributions memorialized in the Final Settlement Agreement.

b.       Upon Final Court Approval, the Receiver, on behalf of SFRC, will assign to the Individual Defendants all rights and benefits relating to income, profits and losses of BHD for calendar year 2020, to the extent permitted by law.

c.       The Receiver acknowledges that following execution of this agreement and funding the escrow, the majority members and managers intend to make a distribution of cash to the Individual Defendants related to tax and other expenses ("BHD Distribution"). The Receiver irrevocably waives and releases any claim that such distribution violates any and all federal or California laws.

5.       The parties agree not to terminate the Tolling Agreement and agree that the Tolling Agreement will expire as moot upon Final Court Approval.

6.       The Receiver, on the one hand, and the BHD Parties, on the other hand, shall execute broad general mutual releases of any and all known and unknown claims and potential claims they may have against the other side (and in the case of the BHD Parties, against the Receivership Estates). The mutual release shall include a waiver of California Civil Code section 1542 and all similar provisions under federal or state law. Notwithstanding the broad scope of the releases, the Settlement Agreement does not provide for third party releases, such as a release of claims of the SEC or the Investors in the Receivership Entities.

/ / /

Jeffer Mangels
Butler & Mitchell LLP
JMBM
68432812v1

7.    The BHD Settlement Agreement is conditioned upon the entry of an order of the Court approving the BHD Settlement Agreement and the order becoming a Final Order as that term is defined in the BHD Settlement Agreement.

## V.    ARGUMENT

### A.    District Court's Power to Administer The Receivership

A district court's power to administer an equity receivership is extremely broad. *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986); *SEC v. Forex Asset Management*, LLC, 242 F.3d 325, 331 (5th Cir. 2001); *SEC v. Basic Energy & Affiliated Resources*, 273 F.3d 657, 668 (6th Cir. 2001); *SEC v. Elliot*, 953 F.2d 1560, 1566 (11th Cir. 1992); *SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991). The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. The Ninth Circuit has explained:

> A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad. The district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership. The basis for this broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions.

*SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005) (citations omitted); *see also CFTC v. Tooworth Int'l., Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999) ("This court affords 'broad deference' to the court's supervisory role, and 'we generally uphold reasonable procedures instituted by the district court that serve th[e] purpose' of orderly and efficient administration of the receivership for the benefit of creditors."). Accordingly, this court has broad equitable powers and discretion in formulating procedures, schedules and guidelines for administration of the estate, and should approve the Receiver's proposed BHD Settlement Agreement as described herein.

### B.    Deference To The Receiver's Business Judgment

In the estate administration context, courts are deferential to the business judgment of bankruptcy trustees, receivers, and similar estate custodians. *See, e.g., Bennett v. Williams*, 892 F.2d 822, 824 (9th Cir. 1989) ("[W]e are deferential to the business management decisions of a

68432812v1

1  bankruptcy trustee."); *Southwestern Media, Inc. v. Rau*, 708 F.2d 419, 425 (9th Cir. 1983) ("The

2  decision concerning the form of [estate administration] rested with the business judgment of the

3  trustee."); *In re Thinking Machines Corp.*, 182 B.R. 365, 368 (D. Mass. 1995) ("The application of

4  the business judgment rule and the high degree of deference usually afforded purely economic

5  decisions of trustees, makes court refusal unlikely.") (rev'd on other grounds, *In re Thinking*

6  *Machines Corp.*, 67 F.3d 1021 (1st Cir. 1995).

7      **C.    The BHD Settlement Agreement Is Fair And Reasonable And Should Be**
8          **Approved Because It Benefits The Receivership Estates**

9          After nearly three years of hard fought litigation, the Receiver and the BHD Parties have

10  resolved their disputes. The BHD Settlement Agreement is the product of arms' length

11  negotiations between the BHD Parties and the Receiver. The parties reached the settlement as a

12  result of a mediation session before an experienced mediator that lasted over 12 hours. Under the

13  Settlement, the BHD Parties will pay the Receivership Estates $7,000,000 and release claims

14  against the Receivership Estates of over $8.1 million.

15          Equally importantly, the resolution of the disputes with the BHD Parties eliminates a major

16  hurdle in the administration of the receivership and will facilitate distributions to creditors and

17  Investors. The Receivership Estates' interest in BHD and its claims against the Individual

18  Defendants were valuable assets of the Estates. The Estates' interest in BHD was worth

19  approximately $4.7 million, while the claims against the Individual Defendants exceeded $19

20  million. These assets needed to be liquidated and reduced to cash for purposes of making

21  distributions. The BHD Settlement Agreement monetizes these assets at $7,000,000, representing

22  a significant recovery on the Estates' claim against the Individual Defendants.

23          Furthermore, the BHD Parties asserted claims in the receivership of over $5.7 million and

24  threatened to assert a claim against the Receiver of over $1.4 million. These claims were disputed.

25  Absent a settlement, the Receiver would need to reserve funds from any distribution until the

26  claims were resolved. These claims are released in the BHD Settlement Agreement.

27          The Receiver does not view the other options available to be as beneficial as the proposed

28  settlement. The alternative would be litigation of the multiple disputes outlined above with the

JMBM | Jeffer Mangels Butler & Mitchell LLP

1   BHD Parties. This litigation would be multi-faceted and likely would be expensive and protracted.

2   Litigation of the Plenary Actions in the state courts through trial and appeal likely would take

3   three or four years. Although the Receiver believes her claims are meritorious, litigation is

4   inherently uncertain. Furthermore, while the Receiver is informed and believes that the Individual

5   Defendants have the ability to satisfy a judgment she might obtain, that is not certain either.

6   Moreover, since two major assets – SFRC's 40% interest in BHD and the Plenary Actions - would

7   not have been monetized and two significant disputed claims would be outstanding, the Receiver's

8   ability to make distributions to creditors and Investors would be adversely impacted and delayed.

9   Accordingly, the Receiver's business judgment is that the proposed settlement is the best option

10  and is in the best interests of the Receivership Estates.

11  **VI.    CONCLUSION**

12         For the foregoing reasons, the Receiver requests the entry of an order in the form attached

13  hereto as **Exhibit A** approving the BHD Settlement Agreement.

14  DATED:  November 5, 2020                    JEFFER MANGELS BUTLER & MITCHELL LLP
                                                 BENNETT G. YOUNG

15

16

17                                             By:    _____/s/ Bennett G. Young_____
                                                         BENNETT G. YOUNG
18                                               Special Counsel for Receiver Susan L. Uecker

19

20

21

22

23

24

25

26

27

28

Case No. 3:17-CV-00223-RS
NTC OF MTN & MTN FOR ORDER APPROVING SETTLEMENT AGRMNT BETWEEN RECEIVER AND
KEVIN SHIMAMOTO, CLEMENT CHIN, JENNIFER BRONSON, AND BHD, LLC

68432812v1

Jeffer Mangels
Butler & Mitchell LLP
JMBM