JEFFER MANGELS BUTLER & MITCHELL LLP
BENNETT G. YOUNG (Bar No. 106504)
byoung@jmbm.com
JAMES M. NEUDECKER (Bar No. 221657)
jneudecker@jmbm.com
JOSHUA HAEVERNICK (Bar No. 308380)
jhaevernick@jmbm.com
Two Embarcadero Center, 5th Floor
San Francisco, California 94111-3813
Telephone:    (415) 398-8080
Facsimile:    (415) 398-5584

Special Counsel for Receiver Susan L. Uecker

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>  Plaintiff,<br><br>vs.<br><br>SAN FRANCISCO REGIONAL CENTER, LLC; THOMAS M. HENDERSON; CALIFORNIA GOLD MEDAL, L.P.; CALLSOCKET, L.P.; CALLSOCKET II, L.P.; CALLSOCKET III, L.P.; COMPREHENSIVE CARE OF OAKLAND, L.P.; NA3PL, L.P.; WEST OAKLAND PLAZA, L.P.; CALLSOCKET, LLC; CALLSOCKET II, LLC; CALLSOCKET III, LLC; COMPREHENSIVE CARE OF CALIFORNIA, LLC; IMMEDIA, LLC; and NORTH AMERICA 3PL, LLC,<br><br>  Defendants,<br><br>-and-<br><br>CALLSOCKET HOLDING COMPANY, LLC; CALLSOCKET III HOLDING COMPANY, LLC; BERKELEY HEALTHCARE DYNAMICS, LLC; CENTRAL CALIFORNIA FARMS, LLC; and JL GATEWAY, LLC,<br><br>  Relief Defendants. | Case No. 3:17-CV-00223-RS<br><br>Before the Honorable Richard Seeborg<br><br>**DECLARATION OF SUSAN L. UECKER IN SUPPORT OF RECEIVER'S MOTION FOR ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN RECEIVER AND KEVIN SHIMAMOTO, CLEMENT CHIN, JENNIFER BRONSON, AND BERKELEY HEALTHCARE DYNAMICS, LLC**<br><br>Hearing Date:   December 10, 2020<br>Hearing Time:   1:30 p.m.<br>Location:       450 Golden Gate Ave., Courtroom 3, 17th Floor, San Francisco, CA 94107 |

1

Case No. 3:17-CV-00223-RS

DECL OF S UECKER ISO RECEIVER'S MTN FOR ORDER APPROVING STLMNT AGRMNT BETWEEN RECEIVER AND K SHIMAMOTO, C CHIN, J BRONSON AND BHD, LLC

I, Susan L. Uecker, declare:

1. I am the Court-appointed Receiver in this action. I have personal knowledge of the facts stated herein, and could and would competently testify thereto if called as a witness in this matter.

2. Attached as Exhibit A is a copy of the proposed Settlement Agreement between myself as Receiver, on the one hand, and Clement Chin, Kevin Shimamoto, Jennifer Bronson, and Berkeley Healthcare Dynamics, LLC on the other. The settlement was reached following a 12 hour mediation session conducted on September 30, 2020 before Robert Meyer of JAMS.

3. The members of BHD are SFRC (40%), Chin (25%), Shimamoto (25%), and Bronson (10%). Bronson claims a 10% membership interest in BHD based on an assignment from SFRC. Bronson testified that the assignment was a gift to her and that she did not pay anything for the interest. Nor did she contribute any capital to BHD.

4. In August 2019 BHD sold the Oakland Warehouse for approximately $23.8 million. After satisfying the SEC's judgment from the sale proceeds and making other closing-related disbursements, BHD netted over $11.9 million. The closing statement for the sale lists as one of the disbursements that was made from the sale proceeds a payment of $1,983,621 to "CALFIRPTA Withholding Taxpayer ID 90-0905118 to Franchise Tax Board" (the "FTB Disbursement").

5. After the sale closed, I demanded that the BHD Parties turnover to the Receivership Estates SFRC's 40% interest in BHD, an asset I believed was worth at least $4,780,732.82. The BHD Parties refused, asserting, among other things, a right to set off against SFRC's 40% interest the damages they claimed to have suffered as a result of SFRC's breach of its fiduciary duties.

6. Prior to the my appointment, NA3PL, LLC obtained a contract with the United States Customs and Border Patrol ("CBP") to operate a Central Examination Station ("CES") from the Oakland Warehouse. After my appointment in March 2017, I continued to operate NA3PL, LLC's logistics business, including the CES contract, and advised CBP that I intended to sell the Oakland Warehouse. By letter dated November 17, 2017, the CBP terminated the CES agreement because, as the CBP stated in its termination letter, "Mr. Henderson and the entities he controls

defrauded the Employee-Based Immigration Fifth Preference program (EB-5 Program), which is administered by the United States Citizenship and Immigration Services (USCIS), a sister agency of CBP within the Department of Homeland Security."

7. I concluded that without the revenue generated by the CES agreement, NA3PL, LLC was no longer viable. I therefore sought authorization from the Court to close the business. The Individual Defendants opposed this motion. The Court overruled the Individual Defendants' objections and authorized me to close NA3PL, LLC. Subsequently, BHD threatened to assert claims, asserting that my actions breached the Appointment Order, causing damage to BHD.

8. During the claims process, Chin and Shimamoto asserted claims against the Receivership Entities. Chin submitted five claims and Shimamoto seven. Additionally, the Individual Defendants jointly submitted four claims. I rejected Chin and Shimamoto's claims and rejected the joint claims.

9. After a meet and confer process, Chin withdrew three of his claims and agreed that a fourth was an equity claim within the meaning of the Receiver's Plan of Distribution. Chin's sole remaining claim was a claim for $28,588.13 for alleged expense reimbursements. Shimamoto withdrew two of his claims, leaving him with claims for alleged expense reimbursements in the aggregate amount of $25,262.55.

10. The Individual Defendants likewise withdrew three of their joint claims. The sole remaining claim was a claim against SFRC, alleging that through its violation of securities laws, SFRC breached its fiduciary and contractual duties to the Individual Defendants, and committed fraud and negligent misrepresentation, thus causing the Individual Defendants harm. The Individual Defendants asserted that their damages amounted to approximately $5.7 million (the amount of the SEC's disgorgement judgment) and that they could set off their claimed damages against SFRC's 40% interest in BHD.

11. In or about June 2020 the BHD Parties and I determined to pursue mediation of their various disputes. The parties entered into the Tolling Agreement while they pursued mediation. The parties exchanged the names of proposed mediators and eventually selected Robert

Meyer of JAMS as mediator. The mediation was held on September 30, 2020. After over 12 hours of mediation, the parties reached a global settlement of all of their disputes.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED: November 5, 2020

                                         */s/ Susan L. Uecker*
                                         SUSAN L. UECKER