# EXHIBIT A

## MUTUAL RELEASE AND SETTLEMENT AGREEMENT

This Mutual Release and Settlement Agreement ("Agreement") is entered into by and between Berkeley Healthcare Dynamics, LLC ("BHD"), Clement Chin ("Chin"), Kevin Shimamoto ("Shimamoto") and Jennifer Bronson ("Bronson") on the one hand, and Susan L. Uecker, Receiver ("Receiver") on the other hand.  BHD, Chin, Shimamoto and Bronson are collectively referred to as the "BHD Parties."  The BHD Parties, together with the Receiver, are referred to as the "Parties."  This Agreement is entered into with reference to the following facts and recitals.

## RECITALS

A.     On January 17, 2017, the Securities and Exchange Commission ("SEC") commenced that litigation entitled *Securities and Exchange Commission v. San Francisco Regional Center, LLC*; *Thomas M. Henderson; California Gold Medal, L.P.; CallSocket, L.P.; CallSocket II, L.P.; CallSocket III L.P.; Comprehensive Care of Oakland, L.P.; NA3PL, L.P.; West Oakland Plaza, L.P.; CallSocket, LLC; CallSocket II, LLC; CallSocket III, LLC; Comprehensive Care of California, LLC ; Immedia, LLC; North America 3PL, LLC*, Defendants, and *CallSocket Holding Company, LLC; CallSocket III Holding Company, LLC; Berkeley Healthcare Dynamics, LLC; Central California Farms, LLC; and JL Gateway, LLC*, Relief Defendants, in the United States District Court for the Northern District of California (the "District Court") as Case No. 3:17-cv-00223-RS (the "Action").

B.     On January 20, 2017, the SEC filed a motion seeking, among other relief, an order appointing a receiver over the entity Defendants and Relief Defendants.  The District Court entered the Order Granting Motion for Preliminary Injunction and to Appoint a Receiver on March 23, 2017, pursuant to which the Court, among other things, appointed Susan L. Uecker as Receiver over Defendants San Francisco Regional Center, LLC ("SFRC"); California Gold Medal, L.P.; CallSocket, L.P.; CallSocket II, L.P.; CallSocket III L.P.; NA3PL, L.P.; West Oakland Plaza, L.P.; CallSocket, LLC; CallSocket II, LLC; CallSocket III, LLC; Immedia, LLC; and Relief Defendants CallSocket Holding Company, LLC; CallSocket III Holding Company, LLC; Central California Farms, LLC; JL Gateway, LLC (the "Receivership Defendants"); and as Monitor over Defendants Comprehensive Care of California, LLC; Comprehensive Care of Oakland, L.P.; North America 3PL, LLC ("NA3PL"); and Relief Defendant **BHD** (the "Monitor Defendants").  Pursuant to the terms of the Order Granting Motion for Preliminary Injunction and Motion to Appoint a Receiver, on March 29, 2017, the Court entered the Order Appointing Receiver and Monitor ("Appointment Order").

C.     On June 5, 2017, the Court entered its Order Extending Scope of Receivership appointing Susan Uecker as Receiver over the Monitor Defendants Comprehensive Care of California, LLC; Comprehensive Care of Oakland, L.P.; NA3PL; and Relief Defendant **BHD**.  By orders entered on June 20, 2019 and June 27, 2019, the Court terminated the receivership over Monitor Defendants Comprehensive Care of California, LLC; Comprehensive Care of Oakland, L.P.; NA3PL; and Relief Defendant **BHD**. The estates created by the receivership over the Receivership Defendants and Monitor Defendants other than Monitor Defendants Comprehensive Care of California, LLC; Comprehensive Care of Oakland, L.P.; NA3PL; and Relief Defendant **BHD** shall be referred to as the "Receivership Estates."

1

D.      On October 6, 2017, Chin, Shimamoto and Bronson filed a Motion to Intervene in the Action.  On November 8, 2017, the District Court granted Chin, Shimamoto and Bronson's Motion to Intervene.

E.      On September 24, 2018, the Court entered an order in the Receivership Action establishing a procedure for creditors to file claims against the Receivership Entities and establishing summary procedures for resolving disputes regarding claims.

F.      On October 18, 2018, the SEC moved for Partial Summary Judgment against Defendants SFRC and NA3PL, and Ordering Disgorgement Against NA3PL and BHD.  On January 9, 2019, the District Court issued an Order Granting in Part the SEC's Motion for Partial Summary Judgment.  On June 27, 2019, the District Court entered a Final Judgment as to BHD, and an Order Terminating the Receivership as to BHD and Discharging the Receiver as to BHD. After the District Court terminated the Receivership as to BHD, BHD sold the property known as 1700 20th Street, Oakland, CA, for approximately $23.8 million.

G.      On June 27, 2019, the Receiver filed in the Court certain actions against Chin, Shimamoto and Bronson entitled *Uecker v. Chin, et al*., Case No. 3:19-cv-03742-RS and *Uecker v. Bronson*, Case No. 3:19-cv-03746-RS (the "Plenary Actions").  On March 10, 2020, the Court dismissed the Plenary Actions for lack of subject of subject matter jurisdiction.

H.      Various disputes remain between the BHD Parties, on the one hand, and the Receiver, on the other hand, including:

1.      The Receiver contends that she has claims against Chin and Shimamoto for, among other things, alleged breach of fiduciary duties to NA3PL (where Chin and Shimamoto were both managers), and claims against Bronson for alleged fraudulent transfer of a membership interest in BHD, and can bring those claims against Chin, Shimamoto and Bronson in state court;

2.      The Receiver contends that BHD's sale of the Oakland property caused the dissolution of BHD and triggered an obligation to wind-down BHD.  The Receiver also contends that a $1,983,621 closing disbursement to the Franchise Tax Board should not be charged against SFRC's membership interest in BHD;

3.      The Receiver contends that BHD must turn over the value of SFRC's 40% interest in BHD;

4.      Chin, Shimamoto and Bronson  contend they have claims against SFRC arising from SFRC's alleged breach of fiduciary duties, breach of contract, fraud and negligent misrepresentation in SFRC's capacity as a member and former manager of BHD, and Thomas Henderson's actions as a manager of North America 3PL LLC;

2

5.      Chin and Shimamoto have asserted individual claims against the Receivership Estate related to the reimbursement of funds expended on behalf of entities in the Receivership Estate;

6.      BHD asserts tort claims and a contractual right to set-off against SFRC, arising from SFRC's adjudged violations of securities laws and breach of fiduciary duties; and

7.      BHD maintains claims against the Receiver in her individual capacity, for various alleged breaches of her duties as Receiver with respect to property in her custody and control.

I.      On June 26, 2020, the Parties entered into a tolling and standstill agreement whereby both sides agreed, among other things, to toll any applicable statutes of limitations and not to initiate litigation against the other until at least 14 days after either side terminates the agreement (the "Tolling Agreement").

J.      On September 30, 2020, the Receiver and BHD Parties, and their counsel and certain other representatives, participated in a mediation before Robert A. Meyer of JAMS. The parties reached a settlement of all disputes between them, including those referenced in Recital H above. The Parties memorialized the material terms of that settlement through a Summary of Essential Terms and Conditions ("Summary Term Agreement"), a fully executed copy of which is attached hereto as **Exhibit A**. In the Summary Term Sheet, the Parties agreed to prepare a full-form settlement agreement containing the terms stated in the Summary Term, and other standard terms and conditions customarily included in such agreements. This Agreement is the Parties' full-form settlement agreement.

K.      On October 26, 2020, the BHD Parties executed a transfer of the Settlement Funds (defined below) to Boston Private Bank & Trust Company, as escrow agent ("Escrow Agent") pursuant to the Escrow Agreement dated October 20, 2020, a fully executed copy of which is attached hereto as **Exhibit B**, to hold in escrow until Final Court Approval, or such other events as are described therein. The Escrow Agreement is incorporated into and is a material part of this Agreement, and the Parties shall use their best efforts to cooperate fully to effectuate the terms and intent of the Escrow Agreement.

WHEREFORE, in consideration of the foregoing recitals and the acts required by this Agreement, the parties hereby agree as follows:

## AGREEMENT

**1.      Incorporation of Recitals**. The Recitals in Paragraphs A through K form a material part of this Agreement and are fully incorporated herein, and made a part hereof.

**2.      Effective Date Of Agreement**. The "Effective Date" of this Agreement shall be the first business day on which the order approving this Settlement Agreement is final and no longer subject to appeal ("Final Court Approval").

3

3.     **Payment by BHD Parties and Escrow Agreement.**  The BHD Parties shall pay the Receiver seven million dollars ($7,000,000.00) (the "Settlement Funds").  On the Effective Date, the Settlement Funds, plus accrued interest if any, shall immediately be disbursed to the Receiver in accordance with the procedures set forth in Paragraph 1(a) of the Summary Term Sheet and Paragraph 2 of the Escrow Agreement.  If, for any reason, Final Court Approval does not occur, subject to the procedures set forth in Paragraph 4 below, the Settlement Funds shall be distributed in accordance with the procedures set forth in Paragraph 7 of the Summary Term Sheet and Paragraph 2 of the Escrow Agreement.

4.     **Failure to Obtain Final Court Approval.**  In the event the Parties fail to obtain Final Court Approval ("Failure of Approval"), the following shall occur:

    a.     Within 15 days of the Failure of Approval, the Parties shall meet and confer to attempt to negotiate a revised settlement.  If the Parties do not agree to a revised settlement within 15 days, the Parties shall reconvene their mediation before Robert A. Meyer, or if Mr. Meyer is unavailable another mutually agreed mediator from JAMS, at the earliest practicable time.

    b.     If the Parties do not enter into a revised settlement within 45 days of Failure of Approval, the funds being held in escrow pursuant to Paragraph 3 above shall be distributed in accordance with Paragraph 7 of the Summary Term Sheet and Paragraph 2 of the Escrow Agreement.

    c.     If the parties enter into a revised settlement but it does not obtain Court approval, the parties again shall follow the procedure outlined in this paragraph 4.

    d.     In the event the parties do not agree to a revised settlement after exhausting the procedures in the preceding paragraph, any party shall be entitled to terminate the Parties' June 26, 2020 Tolling Agreement according to its terms.

    e.     The broad, mutual releases referenced in Paragraphs 8 and 9 below shall be null and void, and of no further effect whatsoever.

    f.     Any other agreements contained in this Agreement, unless otherwise specified herein, shall be null and void, and of no effect whatsoever.

5.     **Assignment and Transfer of Receiver's Interest in BHD**.  Promptly following execution of this Agreement, the Receiver shall execute a full and complete assignment and transfer to BHD, Chin, Shimamoto and/or Bronson, substantially in the form of the Assignment of Membership Interests attached as Exhibit A hereto, of all membership interests in BHD over which she has been granted possession, custody or control.  The transfer shall become effective only upon occurrence of the Effective Date, and if for any reasons the Effective Date does not occur, the assignment and transfer shall be null and void.

68455167v5

6.     **FTB Tax Withholding**.  By virtue of the settlement, the Receiver acknowledges and agrees that the benefit, if any, in the form of a refund or otherwise, of the $1,983,621 "CALFIRPTA Withholding Taxpayer ID 90-0905118 to Franchise Tax Board" (the "FTB Disbursement") identified in the Closing Statement for the sale of the property known as 1700 20th Street, Oakland, CA, less $11,790 gross receipts, belongs to Chin, Shimamoto and Bronson. The Receiver acknowledges that the other BHD members will file tax returns and seek refunds based on this acknowledgment and agreement.  Notwithstanding any other provision herein, and regardless whether this Agreement is approved by the District Court, the Receiver irrevocably waives and releases any claim that the allocation of the FTB Disbursement herein violates federal or California law.  The Receiver will make reasonable efforts to cooperate with Chin, Shimamoto and Bronson's efforts to realize the benefit, in the form of a refund or otherwise, of the FTB Disbursement.

7.     **Certain Federal Tax and Distribution Provisions**.  By virtue of the settlement, the parties acknowledge and agree to the following provisions concerning federal income tax filings:

a.     BHD may file amended Form K-1s, and any related tax filings, for all members and BHD for calendar year 2019 reflecting the cash distributions memorialized in the Final Settlement Agreement.

b.     Upon Final Court Approval, the Receiver, on behalf of SFRC, will assign to Chin, Shimamoto and Bronson all rights and benefits relating to income, profits and losses of BHD for calendar year 2020, to the full extent permitted by law.

c.     The Receiver acknowledges that following funding of the escrow account under the Escrow Agreement, the majority members and managers intend to make a distribution of cash to Chin, Shimamoto and Bronson related to tax and other expenses ("BHD Distribution").  BHD shall provide the Receiver with a true and correct copy of the resolution authorizing such distribution to members within three days of execution, and shall promptly provide bank statements or documents sufficient to evidence the exact date and amount of any such distributions.  Notwithstanding any other provision herein, and regardless whether this Agreement is approved by the District Court, the Receiver irrevocably waives and releases any claim that such distribution violates federal or California laws.

d.     The Parties shall use their reasonable best efforts and cooperate fully to execute such documents as are necessary to effectuate any subsequent distributions pursuant to Escrow Agreement ¶ 2 and Summary Term Sheet ¶ 4, so that in the event of a Failure of Approval, BHD will be deemed to have made and will have made a catch-up pro rata distribution of cash from escrowed funds to the Receiver in proportion to SFRC's membership in BHD.

5

8.    **Release of the Receiver**.

A.    <u>Release</u>.  Conditioned on the full execution of this Agreement and Final Court Approval, the consideration of which is hereby acknowledged, the BHD Parties, and all of them, individually and on behalf of all successors, representatives, attorneys, assigns, devisees, or transferees (the "BHD Releasors") hereby fully and completely release, remise, acquit and forever, absolutely and unconditionally discharge the Receiver, in both her personal capacity and as Receiver in the Action, and each and all of her agents, employees, contractors, attorneys, representatives, devisees, assigns, transferees, and successors, and the Receivership Estates (collectively, the "Receiver Releasees"), from any and all actions, causes of action, claims, demands, rights, debts, obligations, liabilities, interests, contracts, duties, damages, costs, attorneys' fees, expenses or losses of every kind, nature, character, or description whatsoever, by whomever asserted, whether known or unknown, anticipated or unanticipated, direct or indirect, fixed or contingent, arising from any matter, cause or thing, whatsoever occurred, done or omitted, as of the Effective Date of this Agreement relating to any matters arising out of, related to or connected with (a) the receivership in the Action; (b) any and all claims asserted in the Action, and (c) any and all claims arising out of or related to the events described therein, including but not limited the matters referenced in Recital H above (collectively, the "BHD Released Claims").

As part of the Release above, Chin, Shimamoto and Bronson will also dismiss, with prejudice, their appeal of the District Court's August 14, 2020 Order Re Plenary Actions, United States Court of Appeal Case No. 20-17055 (the "Plenary Order Appeal"), within two (2) court days of the Effective Date.  The Parties agree to cooperate in good faith to seek an administrative stay of the Plenary Order Appeal while the Parties seek Final Court Approval.

B.    <u>Waiver of Civil Code Section 1542</u>.  Conditioned on the full execution of this Agreement and Final Court Approval, the consideration of which is hereby acknowledged, it is intended that the release in Paragraph 8.A. above shall be effective as a bar to each and every action, cause of action, claim, liability, obligation, damage, right, interest, injury, loss, salary, commission, benefit, attorney fee and cost, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, that the BHD Releasors, or any of them, may have against the Receiver Releasees and/or the Receivership Estates, relating to any matters arising out of, related to or connected with the BHD Released Claims, and the BHD Releasors expressly waive any and all rights under Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED THE SETTLEMENT WITH THE DEBTOR.

Provided, however, nothing contained in Paragraph 8.A. and this Paragraph 8.B. shall release or relieve the Receiver of her representations, warranties, covenants, obligations, undertakings and agreements under this Agreement of which the Receiver in her representative capacity shall

remain fully liable and obligated therefor and shall survive the execution and delivery of this Agreement.

9.    **Release of the BHD Parties**.

A.    Release.  Conditioned on the full execution of this Agreement and Final Court Approval, the consideration of which is hereby acknowledged, the Receiver on behalf of herself and the Receivership Estates, and each of her representatives, attorneys, assigns, devisees, or transferees (the "Receiver Releasors") hereby fully and completely releases, remises, acquits and forever, absolutely and unconditionally discharges (i) Chin, Shimamoto, and Bronson, and each of them, and all of their spouses, children, successors, representatives, assigns, devisees, or transferees, (ii) BHD, and its successors and assigns, and (iii) solely as to statements, acts, omissions, or events that occurred after June 5, 2017, Daniel J. Dunne, Suzette J. Barnes, Orrick Herrington & Sutcliffe, LLP, David Shomaker, and Haynie & Co. (the parties identified in (i), (ii), and (iii) are collectively referred to as the "BHD Releasees") of and from any and all actions, causes of actions, claims, demands, rights, debts, obligations, liabilities, interests, contracts, duties, damages, costs, attorneys' fees, expenses or losses of every kind, nature, character, or description whatsoever, by whomever asserted, whether known or unknown, anticipated or unanticipated, direct or indirect, fixed or contingent, arising out of, any matter, cause or thing, whatsoever occurred, done or omitted, as of the Effective Date of this Agreement relating to any matters arising out of, related to or connected with (a) the receivership and Receivership Estates in the Action; (b) any and all claims asserted in the Action, and (c) any and all claims arising out of or related to the events described therein, including but not limited the matters referenced in Recital H above (collectively, the "Receiver Released Claims").  Any release of the Receiver Released Claims against the BHD Releasees by the Receiver in this Agreement is undertaken solely in the Receiver's capacity as the court-appointed Receiver in the Action, and does not include the waiver of any claims of third parties not included in the definition of Receiver Releasors.

B.    Waiver of Civil Code Section 1542.  Conditioned on the full execution of this Agreement and Final Court Approval, the consideration of which is hereby acknowledged, it is intended that the release in Paragraph 9.A. above shall be effective as a bar to each and every action, cause of action, claim, liability, obligation, damage, right, interest, injury, loss, salary, commission, benefit, attorney fee and cost, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, that the Receiver Releasors may have against the BHD Releasees, or any of them, relating to any matters arising out of, related to or connected with the Receiver Released Claims, and the Receiver Releasors expressly waive any and all rights under Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED THE SETTLEMENT WITH THE DEBTOR.

Provided, however, nothing contained in Paragraph 9.A. and this Paragraph 9.B. shall release or relieve the BHD Parties, and each of them, from their representations, warranties, covenants,

obligations, undertakings and agreements under this Agreement of which the BHD Parties, and each of them, shall remain fully liable and obligated therefor and shall survive the execution and delivery of this Agreement.

**10.**    **Sole Owner Of Released Claims**. The Parties each warrant and represent that each has not assigned, transferred or otherwise encumbered any of the claims, demands, causes of action herein settled, released, assigned, or transferred including, without limitation, any of the Receiver Released Claims or the BHD Released Claims (together, "Released Claims"), or any portion thereof, and that the Parties are each fully entitled and authorized to enter into this Agreement. The Parties further represent and warrant that their respective Released Claims are not subject to any claims by a bankruptcy estate, bankruptcy trustee, assignee for the benefit of creditors, receiver, liquidation estate or dissolution estate other than the Receivership in this Action. Each of the Parties agrees to indemnify and hold harmless the other Parties from and against any claim, demand, damage, liability, action and cause of action, including the payment of attorney's fees and costs actually and reasonably incurred, based on, in connection with, or arising out of a material breach of that Party's respective representations and warranties regarding BHD Released Claims or Receiver Released Claims in this Section 10.

**11.**    **Covenant Not To Sue**. The Parties each covenant and agree to forever refrain from instituting, prosecuting, maintaining or aiding in the commencement or prosecution of any Released Claim.

**12.**    **Tolling Agreement**. The Parties agree and acknowledge that upon Final Court Approval/the Effective Date, the Tolling Agreement between them, dated June 26, 2020, expires as moot.

**13.**    **Choice of Law**. This Agreement shall be construed in accordance with and all disputes hereunder shall be controlled by the laws of the State of California without regard to California's choice of law rules, and the laws and rules of the District Court sitting in equity, as applicable.

**14.**    **Severability**. In the event any provision of this Agreement is held to be invalid, void, voidable, illegal or unenforceable, the remaining provisions of this Agreement will remain in full force and effect.

**15.**    **Authority**. The Parties, and each of them, represent and warrant that they have the full right, power, legal capacity and authority to execute and enter into this Agreement and to execute all other documents and perform all other duties as may be necessary or required in connection with the performance of this Agreement. No approval or consent not heretofore obtained by any person or entity is necessary in connection with the execution of this Agreement by any Party or for the performance of their obligations under this Agreement. Provided, however, that the Receiver's execution and performance of this Agreement is subject to and conditioned upon Final Court Approval. Provided, further, that nothing herein shall excuse the Parties from performing and fulfilling any continuing duties and obligations under this Agreement and the Summary Term Sheet, including with respect to the Escrow Agreement, in the event that the District Court denies the Receiver's motion for approval of this Agreement.

8

**16.**     **Advice of Counsel**. The Parties, and each of them, have read this Agreement and have had the benefit of legal counsel in entering into the same and each warrants, represents and agrees that they and each of them each understands all of the terms and the legal effect of this Agreement and each is voluntarily executing the same of their own free will.

**17.**     **Counterpart Execution**.  This Agreement is being executed in one (1) or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  The Parties agree that signatures to this Agreement transmitted via facsimile, electronically and/or photocopies of signatures have the same force and effect and are considered the same as originals.

**18.**     **Entire Agreement**. This Agreement, the Summary Term Sheet and the Escrow Agreement, together with the Court Order approving this Agreement constitute the entire agreement and understanding between the Parties in relation to the subject matter hereof and there are no promises, representations, warranties, conditions, provisions or terms related thereto other than those set forth in this Agreement.  Except as expressly stated and reserved herein, this Agreement supersedes all previous understandings, agreements and representations between the Parties, including the Summary Term Sheet. In the event of any conflict between this Agreement and the Summary Term Sheet, this Agreement shall control.  Each party acknowledges that no other party, nor any agent or any attorney of any party, has made any promise, representation or warranty whatsoever, express or implied, not expressly contained herein, concerning the subject matter hereto so as to induce such party to execute and perform this Agreement, and each party acknowledges that he or she has not executed this Agreement in reliance on any promise, representation or warranty, express or implied, which is not contained herein.

**19.**     **No Waiver**.  No waiver in any instance by any party of any provision of this Agreement shall be deemed a waiver by such party of such provision in any other instance or a waiver of any other provision hereunder in any instance.

**20.**     **Amendment**.  This Agreement cannot be modified except in writing signed by all the respective Parties hereto.

**21.**     **Time of Essence**.  Time is of the essence under this Agreement.

**22.**     **Headings**.  The Section headings of this Agreement and titles given to Exhibits are for reference purposes only and are to be given no effect in the construction or interpretation of this Agreement.

**23.**     **No Admissions or Denials**.  By entering this Agreement, neither party admits nor denies any allegations related to the disputes set forth herein or any other claims that are being released as a result of this Agreement.  Nothing in this Agreement shall be construed as an admission of any breach of duty, violation of law, liability or wrongdoing by any Party.

**24.**     **Attorneys' Fees**.  In the event any Party brings an action at law or in equity to enforce, interpret, or redress the breach of this Agreement (including, without limitation, any suit, arbitration, entry of judgment, post-judgment motion or enforcement, appeal, bankruptcy, litigation, attachment or levy) the prevailing Party in such action shall be entitled to his/her/its

litigation expenses and reasonable attorneys' fees incurred in additional to any other relief as may be provided by law.

25.     **Parties To Bear Own Costs**.  The BHD Parties shall bear their own costs and attorneys' fees incurred in or related to this Agreement.  The Receiver's costs and attorneys' fees incurred in or related to the Action, the receivership, and prior dealings of the parties and to the negotiation, preparation and execution of this Agreement shall be governed by receivership law and the payment of Administrative Claims from the Consolidated Receivership Estate under the Plan.  However, under no circumstances shall the Receiver seek costs and attorneys' fees directly from the BHD Parties as opposed to from the Consolidated Receivership Estate, as defined in the Plan.

26.     **Continuing Court Jurisdiction.**  The District Court shall retain continuing jurisdiction to resolve any disputes arising under, and to enforce the terms and conditions of, this Agreement upon motion filed by any Party in the Action.  In moving for final approval of this Agreement, the Receiver shall include a provision for the District Court's continuing jurisdiction in the proposed order.

27.     **Notices**.  Unless otherwise expressly provided for herein, any notice or legal service to be delivered pursuant to this Agreement shall be in writing and shall be deemed delivered upon service, if served personally or by overnight courier (i.e., Federal Express), or three (3) days after deposit in the United States Mail if mailed by first class mail, postage prepaid, registered or certified with return receipt requested, and addressed to the other party at the following address, or such address as may be designated in accordance herewith, with a courtesy copy to be served at the email address indicated:

      (a)    if to the Receiver:

> Susan L. Uecker
> Uecker & Associates, Inc.
> 1613 Lyon Street, Suite A
> San Francisco, CA 94115
> Facsimile: (415) 362-7704
> E-mail: suecker@ueckerassoc.com
>
> with a copy (which shall not constitute notice) to:
>
> Bennett G. Young
> Jeffer Mangels Butler & Mitchell, LLP
> Two Embarcadero Center, Fifth Floor
> San Francisco CA 94111
> Facsimile: (415) 398.5584
> E-mail: byoung@jmbm.com

10

(b)    if to the BHD Parties:

       Berkeley Healthcare Dynamics LLC
       c/o Clement Chin
       26 Cotella Court
       Alameda, CA  94502
       Attention:  Clement Chin, Manager
       Email: 4clementchin@gmail.com

       with a copy (which shall not constitute notice) to:

       Daniel J. Dunne
       Orrick Herrington & Sutcliffe
       701 5th Avenue
       Suite 5600
       Seattle, WA 98104-7097
       T (206) 839-4395
       M (206) 849-3336
       Email: ddunne@orrick.com

       [signatures follow on following page]

11

IN WITNESS WHEREOF, the undersigned have executed and delivered this Settlement Agreement on the date set forth opposite their respective signatures below.

Dated: __11/4/20__                        _____
                                          Susan L. Uecker, Receiver


Dated: _____                Berkeley Healthcare Dynamics, LLC

                                          By:_____
                                          Its:_____


Dated: _____                _____
                                          Clement Chin


Dated: _____                _____
                                          Kevin Shimamoto


Dated: _____                _____
                                          Jennifer Bronson

12

IN WITNESS WHEREOF, the undersigned have executed and delivered this Settlement Agreement on the date set forth opposite their respective signatures below.

Dated: _____          _____
                                           Susan L. Uecker, Receiver


Dated: _November 5, 2020_                  _____
                                           Berkeley Healthcare Dynamics, LLC

                                           By: _____
                                           Its: _____


Dated: _November 5, 2020_                  _____
                                           Clement Chin


Dated: _____          _____
                                           Kevin Shimamoto


Dated: _____          _____
                                           Jennifer Bronson


12

68455167v5

IN WITNESS WHEREOF, the undersigned have executed and delivered this Settlement Agreement on the date set forth opposite their respective signatures below.

Dated: _____        _____
                                       Susan L. Uecker, Receiver


Dated: _____        Berkeley Healthcare Dynamics, LLC

                                       By:_____
                                       Its:_____


Dated: _____        _____
                                       Clement Chin


Dated: __11/05/2020_____        _____
                                       Kevin Shimamoto


Dated: _____        _____
                                       Jennifer Bronson

12

IN WITNESS WHEREOF, the undersigned have executed and delivered this Settlement Agreement on the date set forth opposite their respective signatures below.

Dated: _____        _____
                                       Susan L. Uecker, Receiver


Dated: _____        Berkeley Healthcare Dynamics, LLC

                                       By:_____
                                       Its:_____


Dated: _____        _____
                                       Clement Chin


Dated: _____        _____
                                       Kevin Shimamoto

Dated: _Nov 5, 2020_                   _____
                                       Jennifer Bronson

# EXHIBIT A

## ASSIGNMENT OF MEMBERSHIP INTEREST

### BERKELEY HEALTHCARE DYNAMICS, LLC

In connection with and for good and adequate consideration as set forth in the Final Settlement Agreement dated November 5, 2020 between Berkeley Healthcare Dynamics, LLC, its members and managers Jennifer Bronson, Clement Chin, Kevin Shimamoto, and Susan Uecker, as Receiver in *Securities and Exchange Commission v. San Francisco Regional Center, et al.*, Case No, 3:17-cv-00223-RS (*SEC* Action), Susan Uecker hereby assigns, sells and transfers without reservation to Berkeley Healthcare Dynamics, LLC all rights, titles, and interests in Berkeley Healthcare Dynamics, LLC that she owns, possesses and/or controls in her capacity as Receiver for member San Francisco Regional Center, LLC (SFRC) pursuant to the Order Appointing Receiver and Monitor and the Order Extending Scope of Receivership in the *SEC* Action (Dkts. 100, 171).

Susan Uecker and Berkeley Healthcare Dynamics, LLC acknowledge that the assignment, sale and transfer of rights, titles and interests in Berkeley Healthcare Dynamics, LLC is subject to court approval in the *SEC* Action per the terms of the Final Settlement Agreement, and that this Assignment of Membership Interests is incorporated in and shall be construed and interpreted as integral to the Final Settlement Agreement.  As provided in paragraph 5 of the Final Settlement Agreement, the transfer shall become effective only upon occurrence of the Effective Date (as defined in the Final Settlement Agreement), and if for any reason the Effective Date does not occur, the assignment and transfer shall be null and void.

Immediately upon occurrence of the Effective Date, all rights, titles and interests that Susan Uecker transfers to Berkeley Healthcare Dynamics, LLC will be forever extinguished.

Susan Uecker and Berkeley Healthcare Dynamics, LLC acknowledge and agree that through this assignment and upon the Effective Date, neither the Receiver nor any person or entity subject to her Receivership shall be a member of Berkeley Healthcare Dynamics, LLC, nor be subject to the privileges and responsibilities of membership set forth in the Operating Agreement of Berkeley Healthcare Dynamics, LLC and California laws.

Susan Uecker represents and warrants that, in her capacity as the Receiver in the *SEC* Action, she owns, possesses and controls a 40% membership interest in Berkeley Healthcare Dynamic LLC, has not previously assigned, transferred or encumbered such interest, and is thus empowered (subject to court approval) to execute this agreement on behalf of SFRC and to assign and transfer all of her rights, titles and interests to such membership interest, as provided above.

Berkeley Healthcare Dynamics, LLC hereby acknowledges receipt of this notice of the assignment, and following occurrence of the Effective Date, shall amend the list of members required by California Corporation Code § 17058 accordingly.

Dated: _____, 2020          SUSAN UECKER, as Receiver for SAN FRANCISCO REGIONAL CENTER, LLC

By: _____
       Susan Uecker, on behalf of SAN FRANCISCO REGIONAL CENTER, LLC

Dated: _____, 2020          BERKELEY HEALTHCARE DYNAMICS, LLC

By: _____
       Kevin Shimamoto, on behalf of BERKELEY HEALTHCARE DYNAMIC, LLC, Manager

**Exhibit B**

## ESCROW AGREEMENT

**THIS ESCROW AGREEMENT** (this "**Agreement**") is made and entered into as of October 20, 2020, by and among SUSAN L. UECKER, the Court-appointed receiver (the "**Receiver**") in the action pending before the United States District Court for the Northern District of California (the "**Court**") entitled *Securities and Exchange Commission v. San Francisco Regional Center, et al.*, (Case No. 17-CV-00223) (the "**SEC Enforcement Action**"), CLEMENT CHIN, KEVIN SHIMAMOTO, JENNIFER BRONSON, and BERKELEY HEALTHCARE DYNAMICS, LLC, a California limited liability company (collectively, the "**BHD Parties**") and BOSTON PRIVATE BANK & TRUST COMPANY ("**Bank**"), as Escrow Agent ("**Escrow Agent**") (the Receiver, the BHD Parties, and the Escrow Agent shall be referred to collectively as the "**Parties**") .

## BACKGROUND

The Receiver and the BHD Parties are parties to the SEC Enforcement Action. On September 30, 2020, the Receiver and the BHD Parties, and their counsel and certain other representatives, participated in a mediation before Robert A. Meyer of JAMS. The parties reached a settlement and memorialized the material terms of that settlement by signing a Summary of Essential Terms and Conditions (the "**Summary Term Agreement**") dated October 14, 2020. The parties intend to be legally bound by the Summary Term Agreement pending preparation of a full-form settlement agreement ("**Final Settlement Agreement**"), court approval of the settlement, and preparation of such other documents that may be necessary to effectuate the terms and intent of the parties' settlement.

The Summary Term Agreement provides that within three (3) business days after the parties sign the Summary Term Agreement, the BHD Parties will execute a transfer of seven million dollars ($7,000,000.00) (the "**Settlement Funds**") to an interest bearing escrow account, where the Settlement Funds will remain until expiration of the deadline to appeal a court order approving the settlement ("**Final Court Approval**"). Upon Final Court Approval, the Settlement Funds, plus accrued interest if any, shall immediately be disbursed to the Receiver. If, for any reason, Final Court Approval does not occur, the Settlement Funds shall be distributed as follows: (i) $1,322,414.00, plus pro rata interest earned shall be distributed and released to the Receiver; (ii) an amount equal to the BHD Distribution (as defined in Paragraph 4.c of the Summary Term Agreement), plus pro rata interest earned, shall be distributed and released to the Receiver; and (iii) the balance to the BHD Parties.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements herein contained and for other good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, accepted and agreed to, the parties hereto, intending to be legally bound, hereby agree as follows:

1.    Establishment and Custody of Escrow.

(a)    The Receiver and the BHD Parties each hereby appoints Escrow Agent to serve as Escrow Agent hereunder, and Escrow Agent hereby agrees to serve as Escrow Agent

hereunder. The Escrow Agent agrees to charge for its services in compliance with Paragraph 5 below.

(b)    Escrow Agent shall acknowledge receipt from the BHD Parties of funds in the amount of Seven Million Dollars ($7,000,000) (the "**Initial Escrow Deposit**") upon receipt of the Initial Escrow Deposit. The Initial Escrow Deposit, less distributions made from time to time under this Agreement, is hereinafter referred to as the "**Escrow**." Escrow Agent shall hold, manage, administer, distribute and dispose of the Escrow subject to the terms and conditions of this Agreement.

(c)    Escrow Agent shall hold the Escrow in a market rate interest bearing deposit account with Bank entitled "Boston Private Bank & Trust Company, as escrow agent" pursuant to this Agreement (the "**Escrow Account**"). The Escrow Account shall bear the tax identification number of the San Francisco Regional Center Receivership, Susan Uecker as Receiver. Escrow Agent shall send account statements no less than monthly to the Receiver and the BHD Parties regarding the Escrow Account.

2.    Disbursement of the Escrow.

(a)    Escrow Agent shall hold the Escrow until receipt by Escrow Agent of: (A) joint written instructions signed by the Receiver and the BHD Parties, (B) a written notice signed by the Receiver stating that the Court has entered an order in the SEC Enforcement Action approving the Final Settlement Agreement and that the Receiver is entitled to the remaining balance then in the Escrow, which notice shall have attached a certified copy of a final, non-appealable order of the Court approving the Final Settlement Agreement, or (c) a written notice signed by the Receiver or the BHD Parties stating that the Court has entered an order in the SEC Enforcement Action upon declining to approve the Final Settlement Agreement and that the Receiver is entitled to $1,322,414.00, plus pro rata interest earned, if any, and an amount equal to the BHD Distribution (as defined in Paragraph 4.c of the Summary Term Agreement), plus pro rata interest earned, if any, and that the BHD Parties are entitled to the remaining balance then in the Escrow, which notice shall have attached a certified copy of a final, non-appealable order of the Court declining to approve the Final Settlement Agreement.

(b)    Escrow Agent shall make all disbursements pursuant to Section 2(a) by check deliverable at the address and in the manner set forth in Section 6, unless a specific written request for a wire transfer is received by Escrow Agent, along with the specific wiring instructions.

3.    Exculpation and Indemnification of Escrow Agent.

(a)    The duties and responsibilities of Escrow Agent hereunder shall be determined solely by the express provisions of this Agreement, and Escrow Agent undertakes to perform only such duties as are expressly set forth herein. No further duties or responsibilities of Escrow Agent shall be implied. In the event that Escrow Agent shall be uncertain as to its duties or rights hereunder or shall receive instructions from any of the parties with respect to the Escrow which, in the opinion of Escrow Agent, are in conflict with any provisions of this Agreement, it shall be entitled, without liability to any party, to refrain from taking any action other than to safely keep the Escrow until it shall be directed otherwise in writing by the Receiver and the BHD Parties

or by final order of a court of competent jurisdiction or arbitrator. Escrow Agent may rely and shall be protected in acting or refraining from acting upon any written notice, instruction or request furnished to it hereunder and believed by it to be genuine and to have been signed or presented by the proper party or parties. Escrow Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document. Escrow Agent shall have no duty to solicit any payment which may be due it hereunder. Escrow Agent shall not be liable to the BHD Parties or the Receiver for any action taken or omitted by it unless a court of competent jurisdiction by a final, non-appealable order determines that the subject loss to the BHD Parties or the Receiver was caused by Escrow Agent's gross negligence or willful misconduct.

(b)    In the administration of the Escrow hereunder, Escrow Agent may execute any of its powers and perform its duties hereunder directly or through agents or attorneys and may consult with counsel, accountants and other skilled persons to be selected and retained by it. Notwithstanding anything to the contrary contained in this Agreement, Escrow Agent shall not be liable for anything done, suffered or omitted by it in accordance with the advice or opinion of such counsel, accountants or other skilled persons unless a court of competent jurisdiction by a final, non-appealable order determines that the subject loss to the BHD Parties or the Receiver was caused by Escrow Agent's gross negligence or willful misconduct.

(c)    Escrow Agent may resign from its duties and obligations hereunder by giving not less than thirty (30) days' notice in writing of such resignation or may be removed by the mutual consent of the Receiver and the BHD Parties at any time upon written notice to Escrow Agent. In the event of resignation or discharge of Escrow Agent, the BHD Parties and the Receiver shall jointly appoint a successor agent, to hold the Escrow, and any such successor escrow agent shall execute and deliver to the predecessor escrow agent an instrument accepting such appointment, upon which successor agent shall, without further act, become vested with all of the rights, powers and duties of the predecessor escrow agent as if originally named herein. The Receiver and the BHD Parties shall be jointly liable for any expenses incurred by Escrow Agent in transferring the Escrow to a successor escrow agent. If no successor escrow agent is appointed prior to the effective date of the termination or resignation of Escrow Agent, Escrow Agent, at the expense of the BHD Parties and the Receiver, may place all of the Escrow at the disposal of a court and petition the court to act as the successor escrow agent or to appoint another entity to act as the successor escrow agent.

(d)    The BHD Parties and the Receiver (each, an "**Indemnitor**"), jointly and severally, hereby agree to indemnify and hold Escrow Agent and its directors, officers, agents and employees and attorneys (collectively, the "**Indemnitees**") harmless from and against any and all claims, liabilities, losses, damages, fines, penalties and expenses, including out-of-pocket and incidental expenses and legal fees and expenses ("**Liabilities**") that may be imposed on, incurred by, or asserted against the Indemnitees or any of them for following any instructions or other directions upon which Escrow Agent is authorized to rely pursuant to the terms of this Agreement. In addition to and not in limitation of the immediately preceding sentence, the Indemnitors also agree to indemnify and hold the Indemnitees and each of them harmless from and against any and all Liabilities that may be imposed on, incurred by, or asserted against the Indemnitees or any of them in connection with or arising out of Escrow Agent's performance under this Agreement, provided that the Indemnitees have not acted with gross negligence or  engaged in willful misconduct in each case, as determined by a final, non-appealable order of a court of competent

jurisdiction. Each of the Indemnitors hereby grants to Escrow Agent a lien on and a security interest in the Escrow, to the extent of such Indemnitor's interest therein, to secure such Indemnitor's indemnification obligations to Escrow Agent as described above.

(e)     All amounts payable to Escrow Agent pursuant to this Section 3 shall be paid equally by the BHD Parties and the Receiver, provided, however, that if either the BHD Parties or the Receiver cannot pay their equal amount, then either the BHD Parties or the Receiver, as the case may be, shall be responsible for paying all or a portion of the other's share to in order to pay the total amount payable to Escrow Agent. Anything in this Agreement to the contrary notwithstanding, in no event shall Escrow Agent be liable for special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action. The provisions of this Section 3 shall survive the termination of this Agreement and the resignation or removal of Escrow Agent for any reason.

4.     <u>Termination of Agreement</u>. This Agreement shall terminate on the final disposition of the Escrow hereunder, provided that the rights of Escrow Agent and the obligations of the Receiver and the BHD Parties under Section 3 shall survive the termination hereof.

5.     <u>Escrow Agent's Fee</u>. The fees of Escrow Agent for the provision of all services under this Agreement are set forth on Schedule A attached hereto and shall be shared equally by the Receiver and the BHD Parties.

6.     <u>Notices</u>. All notices, demands or other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered in person, by e-mail or fax, by United States mail, certified or registered with return receipt requested, or by a nationally recognized overnight courier service, or otherwise actually delivered:

(a)     if to the Receiver, to:

> Susan L. Uecker
> Uecker & Associates, Inc.
> 1613 Lyon Street, Suite A
> San Francisco, CA 94115
> Facsimile: (415) 362-7704
> E-mail: suecker@ueckerassoc.com

with a copy (which shall not constitute notice) to:

> Bennett G. Young
> Jeffer Mangels Butler & Mitchell, LLP
> Two Embarcadero Center, Fifth Floor
> San Francisco CA 94111
> Facsimile: (415) 398.5584
> E-mail: byoung@jmbm.com

(b)     if to the BHD Parties, to:

> Berkeley Healthcare Dynamics LLC

c/o Clement Chin
26 Cotella Court
Alameda, CA 94502
Attention: Clement Chin, Manager
Email: 4clementchin@gmail.com

with a copy (which shall not constitute notice) to counsel to the BHD Parties:

Daniel J. Dunne
Partner
Orrick Herrington & Sutcliffe
701 5th Avenue
Suite 5600
Seattle, WA 98104-7097
T (206) 839-4395
M (206) 849-3336
Email:ddunne@orrick.com

(c)    If to Escrow Agent, to:

Boston Private Bank & Trust Company
255 Battery Street
San Francisco, CA 94111
Attention: Michael Abendroth
Facsimile:
Email: mabendroth@bostonprivate.com

With a copy to:

Boston Private Bank & Trust Company
801 S. Figueroa St., Suite 1825
Los Angeles, CA 90017
Attention: Esther Kamp
Facsimile: 213-947-1278
Email: ekamp@bostonprivate.com

Boston Private Bank & Trust Company
10 Post Office Square
Boston, MA 02109
Attention: Beth Lombardo
Facsimile: 617-912-4496
Email: blombardo@bostonprivate.com

or at such other address as may have been furnished by such person in writing to the other parties. Any such notice, demand or communication shall be deemed given (i) on the date given, if

delivered in person, e-mailed or faxed or otherwise actually delivered, (ii) on the date received, if given by registered or certified mail, return receipt requested, or given by overnight delivery service, or (iii) three days after the date mailed, if by first class mail, postage prepaid.

7.    Miscellaneous.

(a)    This Agreement is made pursuant to, and shall be construed and enforced in accordance with, the laws of The Commonwealth of Massachusetts (and United States federal law, to the extent applicable), irrespective of the principal place of business, residence or domicile of the parties hereto, and without giving effect to otherwise applicable principles of conflicts of law.

(b)    This Agreement constitutes the entire agreement among the parties with respect to the Escrow Account and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter of this Agreement. This Agreement may not be modified, amended or replaced, except by written agreement signed by each of the parties.

(c)    The invalidity or unenforceability of any particular provision, or part of any provision, of this Agreement shall not affect the other provisions or parts hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provisions or parts were omitted, provided that the rights, obligations and responsibilities of the Parties are not materially altered or modified.

(d)    This Agreement may be executed and delivered, including by electronic signature methods acceptable to both parties, scanned and emailed signatures, facsimile or scanned and emailed signature, in two or more counterparts, each of which shall be deemed an original; and any person may become a party hereto by executing a counterpart hereof, but all of such counterparts together shall be deemed to be one and the same instrument. It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts.

(e)    The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto, and their respective successors and permitted assigns.  Except as set forth in the following sentence, this Agreement may not be transferred or assigned by Escrow Agent without the prior written consent of the Receiver and the BHD Parties. Any corporation, association, or other entity into which Escrow Agent may be converted or merged, or with which it may be consolidated, or to which it may sell or otherwise transfer all or substantially all of its corporate trust business, or any corporation, association or other entity resulting from any such merger, conversion, consolidation, sale or other transfer, shall, ipso facto, be and become successor Escrow Agent hereunder, vested with all of the powers, discretions, immunities, privileges and all other matters as was its predecessor, without the execution or filing of any instrument or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding; provided that any successor Escrow Agent shall promptly notify the BHD Parties and the Receiver in writing upon its appointment hereunder.

(f)      In the event that a dispute concerning the subject matter of this Agreement is such that Escrow Agent deems it necessary or appropriate for its protection to do so, Escrow Agent may deposit the Escrow into a court of competent jurisdiction and thereupon shall have no further duties with respect to this Agreement. Without limiting the foregoing, in the event that all or any portion of the Escrow shall be attached, garnished or levied upon by any court order, or if the delivery of any portion of the Escrow shall be stayed or enjoined by any court order, or if any court order, judgment or decree shall be entered affecting the Escrow or Escrow Agent in respect of the Escrow, Escrow Agent may, in its sole discretion, obey and comply with such orders, decrees, writs and judgments so issued or entered, notwithstanding any other provision of this Agreement to the contrary.

(g)      If any payment under this Agreement is to be made on a day which is a Saturday, Sunday or a day on which Escrow Agent is closed, then such payment shall be made, with no penalty or interest being due because of such delayed payment, on the next succeeding day which is not a Saturday, Sunday or a day on which Escrow Agent is closed.

(h)      The Receiver and the BHD Parties each acknowledges that Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account in order to help the government fight the funding of terrorism and money laundering activities. Accordingly, each of the Receiver and the BHD Parties shall provide Escrow Agent with such information as Escrow Agent shall request to identify the relevant parties to this Agreement, and Escrow Agent shall only use such information for that purpose.

(i)      THE RECEIVER, THE BHD PARTIES AND ESCROW AGENT AGREE THAT NONE OF THEM NOR ANY ASSIGNEE OR SUCCESSOR SHALL (A) SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM OR ANY OTHER ACTION BASED UPON OR ARISING OUT OF, THIS AGREEMENT OR THE DEALINGS OR THE RELATIONSHIP BETWEEN OR AMONG ANY OF THEM, OR (B) SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED.  THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY DISCUSSED BY THE RECEIVER, THE BHD PARTIES AND ESCROW AGENT, AND THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS.

[Signature page follows]

IN WITNESS WHEREOF, each of the parties hereto has duly executed this Agreement all as of the date first above written.

SUSAN L. UECKER, AS RECEIVER

By: _____

Taxpayer ID#: ████████████████

BERKELEY HEALTHCARE DYNAMICS, LLC, a California Limited Liability Company

By: _____
Name:  Clement Chin
Title:  Manager
By: _____
Name:  Kevin Shimamoto
Title:  Manager
By: _____
Name:  Jennifer Bronson
Title:  Manager
Taxpayer ID#:

CLEMENT CHIN

By: _____
Taxpayer ID#:

KEVIN SHIMAMOTO

By: _____
Taxpayer ID#:

JENNIFER BRONSON

By: _____
Taxpayer ID#:

BOSTON PRIVATE BANK & TRUST COMPANY, as Escrow Agent

By: _____
Name:  Torrance Childs
Title:  Executive Vice President Private Banking

IN WITNESS WHEREOF, each of the parties hereto has duly executed this Agreement all as of the date first above written.

SUSAN L. UECKER, AS RECEIVER

By: _____

Taxpayer ID#:

BERKELEY HEALTHCARE DYNAMICS, LLC, a California Limited Liability Company

By: _____

Name: Clement Chin

Title: Manager

By: _____

Name: Kevin Shimamoto

Title: Manager

By: _____

Name: Jennifer Bronson

Title: Manager

Taxpayer ID#:

CLEMENT CHIN

By: _____

Taxpayer ID#: █████████████

KEVIN SHIMAMOTO

By: _____

Taxpayer ID#:

JENNIFER BRONSON

By: _____

Taxpayer ID#:

BOSTON PRIVATE BANK & TRUST COMPANY, as Escrow Agent

By: _____

Name: Torrance Childs

Title: Executive Vice President Private Banking

IN WITNESS WHEREOF, each of the parties hereto has duly executed this Agreement all as of the date first above written.

SUSAN L. UECKER, AS RECEIVER

By: _____
Taxpayer ID#:

BERKELEY  HEALTHCARE  DYNAMICS,  LLC,  a California Limited Liability Company

By: _____
Name:  Clement Chin
Title:  Manager
By: _____
Name:  Kevin Shimamoto
Title:  Manager
By: _____
Name:  Jennifer Bronson
Title:  Manager
Taxpayer ID#:

CLEMENT CHIN

By: _____
Taxpayer ID#:

KEVIN SHIMAMOTO

By: _____
Taxpayer ID#: ██████████████

JENNIFER BRONSON

By: _____
Taxpayer ID#:

BOSTON  PRIVATE  BANK  &  TRUST  COMPANY,  as Escrow Agent

By: _____
Name:  Torrance Childs
Title:  Executive Vice President Private Banking

IN WITNESS WHEREOF, each of the parties hereto has duly executed this Agreement all as of the date first above written.

SUSAN L. UECKER, AS RECEIVER

By: _____
Taxpayer ID#:

BERKELEY HEALTHCARE DYNAMICS, LLC, a California Limited Liability Company

By: _____
Name: Clement Chin
Title: Manager
By: _____
Name: Kevin Shimamoto
Title: Manager
By: _____
Name: Jennifer Bronson
Title: Manager
Taxpayer ID#: ███████████

CLEMENT CHIN

By: _____
Taxpayer ID#:

KEVIN SHIMAMOTO

By: _____
Taxpayer ID#:

JENNIFER BRONSON

By: _____
Taxpayer ID#: ███████████

BOSTON PRIVATE BANK & TRUST COMPANY, as Escrow Agent

By: _____
Name: Torrance Childs
Title: Executive Vice President Private Banking

**Schedule A**

**Escrow Agent Fees**

$2,500, due and payable simultaneously with execution of this Agreement.