UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

SAN FRANCISCO REGIONAL CENTER LLC, et al.,

Defendants.

Case No. 17-cv-00223-RS

**ORDER DIRECTING SUBMISSION OF ADDITIONAL MATERIALS AND FURTHER MEET AND CONFER**

1. The hearing on the motion brought by Pritzker Levine LLP set for June 16, 2022, is vacated. The Ninth Circuit has ruled that Pritzker is entitled to a "reasonable award of attorney fees under the "common fund" doctrine "in light of [its] contributions." The award is to be treated as an allowed administrative claim.

2. Pritzker now moves for an award of $2,669,449.00, which represents 10% of the "common fund," as calculated by Pritzker. The SEC challenges the computation and points to several reasons the value of the Receivership estate is not calculable except at various "transient snapshot[s]" in time. Pritzker asserts the amount it seeks represents a "compromise" arrived at in discussions with the Receiver and the SEC following the remand, based on those discussions, the relevant facts, the applicable law, the Ninth Circuit's decision, and the current posture of this proceeding. The amount Pritzker seeks, however, is exactly the same as it requested in its first motion, prior to the appeal.

3. Pritzker also suggests the amount it seeks is a "compromise" because it is lower than the percentage "it might otherwise be entitled to under Ninth Circuit common fund jurisprudence." Pritzker goes on to argue it can "easily satisfy" all the factors that would ordinarily justify a 25% benchmark. Missing from Pritzker's analysis, however, is any consideration of Ninth Circuit's observation that the work of the attorneys seeking a fee award need be "*a* cause-in-fact of any claimed benefit to the fund, but not *the only* cause-in-fact." The Ninth Circuit then directed a reasonable award be made "in light of Pritzker's contributions." Thus, while the majority rejected arguments that Pritzker could not recover under the common fund doctrine merely because it obtained no liability determination, it does not follow that 25% "benchmark" applies in circumstances like these, where the attorneys claiming fees participated only in part of the overall litigation.

Consider, for example, a successful consumer class action where one plaintiff's firm substituted for another midway through the litigation. No one would suggest that *both* firms would be presumptively entitled to 25%, for a total of 50% of the fund, leaving the consumers only half. Rather, the firms would share in a total award that began at the benchmark. Here, of course, the SEC does not have a right to recover fees for the work it did in continuing to assist the Receiver in pursuing assets, for establishing liability (through extensive motion practice and settlements), and for bringing the litigation to a close. That the SEC cannot recover for *its* efforts, however, does not make the 25% benchmark an appropriate starting point for valuing Pritzker's contributions. Pritzker has presented no authority for the proposition that the 25% benchmark is properly applied where counsel handles only part of the overall litigation.

4. Pritzker, of course, is seeking only 10%. While that percentage may be more reasonable under circumstances like these, it suffers from a degree of arbitrariness. Even assuming it were an appropriate basis for a fee award here, it is not a "compromise," given the apparent inapplicability of the usual 25% benchmark.

5. Pritzker correctly points out some of the disadvantages—and challenges for a court—in awarding fees on a lodestar basis. It does not dispute, however, that a court retains discretion to utilize either a percentage or a lodestar approach when making fees in common fund cases. The unusual circumstances here may make a lodestar analysis more appropriate for balancing all of the equities and arriving at a fundamentally fair and reasonable award to compensate Pritzker for its work in light of its contributions. It is notable that the Receiver responded to Pritzker's original fee motion by arguing the equities supported awarding Pritzker its lodestar, with no multiplier. Nothing in this order, however, should be construed as a decision that the court necessarily will award a lodestar-based fee rather than a percentage-based fee.

6. While the billing information Pritzker has submitted likely would be sufficient for purposes of performing a lodestar "cross-check" on the reasonableness of a percentage-based fee award, it lacks the detail necessary to make a lodestar-based award. Accordingly, within 20 days of the date of this order, Pritzker shall provide the Receiver and the SEC billing information that would be sufficient to support a claim for a lodestar-based fee award. Actual billing sheets or invoices are not required (nor prohibited), but any summaries shall describe tasks and hours expended in sufficient detail to permit meaningful review.

6. Although the individual defrauded investors were not directly Pritzker's clients, the "common fund" declared by the Ninth Circuit represents monies that are to be distributed to them, and Pritzker is entitled to compensation for the very reason that it worked for that result. The SEC is charged both with enforcing the law, and with restoring funds to the defrauded where possible. The Receiver has duties to the investors as well. Thus, all the relevant actors remaining in this litigation have at least some duty to see this matter brought to a final conclusion as expeditiously and economically as possible. It plainly would not be in the interest of the Receivership estate or the individual investors to face the expense and delay of another appeal.

7. The court appreciates that the parties complied with Civil Local Rule 54-5 to meet and confer regarding any disputed attorney fee issues, even though its application in this receivership context is not beyond question. It is clear, however, that it is appropriate to require the parties to make a further effort to resolve the fee claim, with the benefit of the observations made in this order. Accordingly, no later than 10 days after Pritzker provides the additional billing information (or, at the parties' election, prior to the submission of that information), the parties shall engage in further meet and confer negotiations, either in-person or via voice or video discussions.

8. In the event the parties remain at an impasse after such efforts, Pritzker shall file its additional billing information, with up to 10 pages of briefing addressing what lodestar-based award it contends is appropriate, if the request for a percentage-based award is rejected. Within one week thereafter, the SEC and the Receiver may file responses, also not to exceed 10 pages each. The matter will then be taken under submission or reset for oral argument, in the court's discretion.

**IT IS SO ORDERED**.

Dated: June 10, 2022

RICHARD SEEBORG
Chief United States District Judge